# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE CONFERENCE OF THE** | ) | |
| **NATIONAL ASSOCIATION FOR THE** | ) | |
| **ADVANCEMENT OF COLORED** | ) | |
| **PEOPLE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 3:20-cv-01039** |
| | ) | |
| **v.** | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Frensley** |
| | ) | |
| **WILLIAM LEE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' MEMORANDUM IN
## SUPPORT OF THEIR MOTION TO DISMISS

---

The Attorney General, on behalf of the State Defendants, hereby submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction—under Fed. R. Civ. P. 12(b)(1)—and for failure to state a claim—under Fed. R. Civ. P. 12(b)(6).

### ARGUMENT

Plaintiffs bring a total of seven claims: they allege deprivations of procedural due process, infringement on the fundamental right to vote, violations of the National Voter Registration Act (NVRA), and imposition of a poll tax in violation of the Twenty-Fourth Amendment. Plaintiffs' claims should be dismissed for two reasons. First, because this Court lacks subject-matter jurisdiction. All Plaintiffs lack standing to pursue their claims, a fact that deprives this Court of subject-matter jurisdiction. This Court also lacks subject-matter jurisdiction over several specific

claims because they are barred by Eleventh Amendment immunity. Second, because Plaintiffs have failed to state a claim upon which relief can be granted.

**I.     Plaintiffs Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction.**

Actions are subject to dismissal when the court lacks subject-matter jurisdiction over the claims. *See* Fed. R. Civ. P. 12(b)(1). When a defendant challenges the court's exercise of subject-matter jurisdiction, the plaintiff bears the burden of establishing it. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) may be either a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleadings." *Id*. As a result, when reviewing a facial attack, this Court must take the allegations in the complaint to be true. *Id*. Yet even taking the allegations in Plaintiffs' complaint as true, they have failed to "bear[] the burden of establishing" their entitlement to federal-court jurisdiction. *See Moir*, 895 F.2d at 269.

**A.     All Plaintiffs Lack Standing.**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies, and a series of "justiciability doctrines" enforce that limitation. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). "Perhaps the most important" of these doctrines is standing, *id.*, which requires the plaintiff to demonstrate "(1) that he has suffered an 'injury in fact,' (2) that there is 'a causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision,'" *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each of these three elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Plaintiffs here—five individuals and one organization—have not even alleged, let alone offered evidence of, a cognizable injury that can be traced to the State Defendants. It follows that all Plaintiffs lack standing.

### 1.    The individual Plaintiffs lack standing.

Individual Plaintiffs include five Tennessee residents, all of whom previously lost the right to vote and now claim that they are eligible to regain that right through a Certificate of Restoration of Voting Rights (COR) but have been denied that opportunity. (*See* Compl., DE 1, PageID# 12-16, ¶¶ 40-44.) Not one of these Plaintiffs has alleged injuries in fact that can be fairly traced to the conduct of Defendants. *See Lujan*, 504 U.S. at 560-61. In short, they lack standing.

Plaintiffs Lamar Perry and Curtis Gray, Jr., both allege that they are residents of Shelby County, Tennessee who were convicted of crimes and consequently disenfranchised under Tennessee law. (*See* Compl., DE 1, PageID# 12-13, ¶¶ 40, 41.) They both further allege that they are now eligible to have their voting rights restored and have taken steps to obtain CORs. (*See id.*) Finally, both Plaintiffs allege that they were wrongfully denied CORs by the Shelby County Clerk. (*See id.*) As a result, both Plaintiffs have challenged the State's voter-rights-restoration scheme on several grounds. But neither Plaintiff has alleged an injury in fact. The Sixth Circuit has recognized that once an individual is disenfranchised, they no longer have any constitutional right to vote. *See Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (explaining that "[t]he state may, within the bounds of the Constitution, strip convicted felons of their voting rights" and that "[h]aving lost their voting rights, [those convicted felons] lack any fundamental interest to assert"). So Plaintiff Perry's and Gray's claims, which are predicated on a deprivation of the right to vote, necessarily fail because they have not—and cannot—allege a cognizable violation of that right. What's more, even if they could allege a cognizable injury, that injury would not be "fairly traceable" to the Defendants' actions. *See Lujan*, 504 U.S. at 560 (cleaned up). Perry and Gray

do not allege that the *State* Defendants have denied them CORs. Instead, they allege that a county official, who is not named as a Defendant, erroneously denied their requests for CORs. (*See* Compl., DE 1, PageID# 12-13, ¶¶ 40, 41.) Thus, even if denial of a COR were a cognizable injury, it cannot be fairly traced to any conduct by the Defendant State officials.

Plaintiffs John Weare and Benjamin Virgil Tournier fair no better. Both Plaintiffs were convicted of crimes in Arizona and were disenfranchised under that State's laws. (*See* Compl., DE 1, PageID# 13-15, ¶¶ 42, 43.) The two Plaintiffs further allege that county officials *in Arizona* have refused to issue CORs. (*See id.*) In an attempt to link this alleged injury to Defendants in this case, Weare and Tournier claim that "[t]he Governor of Tennessee has the power to grant clemency" but that there is "no mechanism" for them to "request a COR from the Governor." (*Id.*) Again, because Plaintiffs have no constitutional right to a COR, they cannot allege a cognizable injury. *See Johnson*, 624 F.3d at 746. But even if they could allege such an injury, they cannot tie it to the conduct of Defendants. Indeed, neither Weare nor Tournier allege that Defendants have taken any action at all. Quite the opposite. They allege that the Governor has declined to exercise his discretionary power to grant clemency—something they have not even attempted to seek. This is a far cry from the sort of "concrete and particularized" injury that Article III requires. *See Lujan*, 504 U.S. at 560.

Finally, Plaintiff Amanda Lee Martin has—like the other individual Plaintiffs—failed to allege sufficient facts to establish standing. Plaintiff Martin alleges that she was convicted of a federal drug-related felony in the Eastern District of Tennessee. (*See* Compl., DE 1, PageID# 16, ¶ 44.) She further alleges that after completing her sentence, her probation officer gave her a partially completed COR. (*Id.*) Because her probation officer declined to complete the remaining portion of the form, Martin alleges that she sought assistance from State- and federal-court-clerk's offices. (*Id.*) Eventually, Martin received a completed COR and brought that form to the Greene

County Election Commission. (*Id.*) But shortly after that, she was informed that she had submitted the wrong form and would need to complete a different form. (*Id.*) Plaintiff Martin then alleges that "after facing arbitrary and unjustifiable administrative roadblocks," she "feared that her COR would not be accepted a second time." (*Id.*) This final allegation dooms Martin's claims. To establish standing, Martin needs to show a concrete injury that can be traced to the conduct of Defendants. *See Lujan*, 504 U.S. at 560-61. Like the other individual Plaintiffs, Martin cannot allege a concrete injury because she has no right to a COR. *See Johnson*, 624 F.3d at 746. But even assuming that inability to obtain a COR was an actionable injury, Plaintiff Martin has not shown how that injury can be traced to the Defendants. Instead, she alleges only that she had difficulty obtaining a completed COR (though none of those difficulties are directly attributed to Defendants) and that because of that past difficulty, she declined to pursue the process further when she was asked to submit the information again in another form. (*See* Compl., DE 1, PageID# 16, ¶¶ 44.) In other words, any failure to obtain a COR is attributable to Martin's decisions—not to the State.[1]

### 2. The NAACP lacks standing.

Organizational plaintiffs must establish standing in one of two ways. One option—associational standing—is to assert injuries on behalf of their members. *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). The other is to assert injuries suffered by the organization itself. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir.), *cert. denied*,

---

[1] Any other conclusion would border on absurd. The State is unquestionably within its rights to place conditions on the restoration of voting rights. *See, e.g.*, *Johnson*, 624 F.3d at 747 (upholding Tennessee's requirement that those seeking voting-rights restoration pay child support and pay victim restitution). By definition, those conditions will require prospective voters to take some action. A prospective voter, like Plaintiff Martin, cannot simply choose not to try to meet those conditions and then blame the State for its failure to make the process easier. To the extent that such a voter's inability to obtain a COR is an injury at all, it is one of their own making.

141 S. Ct. 257 (2020) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).  The NAACP has failed to establish standing under either theory.

a. *The NAACP has no associational standing.*

To prevail on the theory of associational standing, an organization must present evidence that "at least one identified member," *Summers*, 555 U.S. at 498, "would otherwise have standing to sue in [their] own right," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  Plaintiffs have not done so here.

The NAACP has not identified a single member of its organization—much less a member with standing to challenge the State's voter-rights-restoration process.  Instead, Plaintiffs suggest that the NAACP is "aware of members who are eligible for CORs and have requested them but have not received them" as well as other "members who were convicted of felonies only during the grace period and therefore have never lost the right to vote, but have been denied voter registration."  (Compl., DE 1, PageID# 11, ¶ 35.)  Plaintiffs further claim that "[b]ecause of the demographic its membership represents, there is a high statistical probability that numerous [NAACP] members are disenfranchised and have a statutory right to a COR, but are unable to vindicate that right."  (*Id.*)  But vague allegations about unidentified members and conclusory assertions about statistical probabilities are not enough.

Again, to obtain associational standing on behalf of its members, the NAACP must show that "at least one *identified* member," *Summers*, 555 U.S. at 498 (emphasis added), would have standing to sue.  *See Friends of the Earth, Inc.*, 528 U.S. at 181.  Any other "novel approach" would "make a mockery" of the Supreme Court's standing precedents.  *See Summers*, 555 U.S. at 498.  The "requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity."  *Id.* at 498-99 (emphasis in original).  Plaintiffs here do not allege that every

member of the NAACP has been harmed by the State's voting-rights-restoration procedures. Nor could they—by definition, those procedures are only applicable to a small subset of the population. *See generally* Tenn. Code Ann. § 40-29-201 *et seq.* (offering a voting-rights-restoration path to certain individuals with previous felony convictions). This means that the NAACP cannot escape its obligation to identify a member with standing. And because the NAACP failed fulfil that obligation, it cannot demonstrate associational standing and its claims should be dismissed.

b.   *The NAACP has no standing based on direct harm.*

The NAACP also seeks to establish standing based on direct harm to its organizational mission in the form of resource diversion. (*See* Compl., DE 1, PageID# 11-12, ¶¶ 37-39.) They cannot do so for two independent reasons.

*First*, self-inflicted harm from resource diversion is not a basis for standing. "[A]n organization can no more spend its way into standing based on speculative fears of future harm than an individual can." S*helby Advocates for Valid Elections*, 947 F.3d at 982; *see also Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014) (holding that mere "efforts and expense to advise others how to comport with the law" do not confer standing). Yet self-inflicted resource expenditures are all Plaintiffs have alleged. (*See* Compl., DE 1, PageID# 11-12, ¶ 37-38.) And although the Sixth Circuit has held that an organization had standing where it diverted resources because of "newly enacted provisions," *Ne. Coal. for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016), that case is of no help to Plaintiffs because the challenged rights-restoration laws are hardly new.

*Second*, the NAACP must identify the mission-related activities it will "divert resources away *from*" to combat the State's allegedly unlawful voting-rights-restoration laws. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020); *see also Havens*, 455 U.S. at 379 & n.21 (requiring an organization to prove that it "suffered impairment" of its normal activities). The

7

NAACP claims that it is allocating additional resources toward "assist[ing] its constituents and other community members with the voting rights restoration process," (*see* Compl., DE 1, PageID# 11, ¶ 37), and that it "expends significant resources helping its members register to vote, almost exclusively using the Tennessee state voter registration form or directing them to the online registration portal." (*Id.* at PageID# 11-12, ¶ 38.) But Plaintiffs never explain how these resource-allocation decisions detract from other activities or "divert resources from [their] mission." *Shelby Advocates for Valid Elections*, 947 F.3d at 982. In fact, the other allegations in their complaint make clear that these sorts of voter-education and engagement activities *are* their mission. (*See* Compl., DE 1, PageID# 9, ¶ 29 (noting that the NAACP's "mission is to eliminate race-based discrimination through securing *political*, educational, social, and economic equality rights") (emphasis added)).[2]

### 3.    *The NAACP has no prudential standing.*

The Supreme Court has consistently held that plaintiffs "generally must assert [their] own legal rights and interests, and cannot rest [their] claim[s] to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Indeed, "[w]ithout such limitations," courts "would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.* at 500. Thus, to overcome this prudential limitation on third-party standing, a plaintiff must show: (1) an injury-

---

[2] At another point in their complaint, Plaintiffs note that the NAACP's "core mission is to empower the African American community in Tennessee and pass policy reforms that improve the lives of its constituents." (Compl., DE 1, PageID# 12, ¶ 39.) But again, efforts to educate Tennesseans about the State's rights-restoration process do not detract from that mission—they are arguably central to it. In fact, that same paragraph of Plaintiffs' complaint argues that the NAACP's "political power is diminished by the inability of its members and its constituency to vindicate their statutory right to a COR and their right to vote." (*Id.*) But in making this argument, Plaintiffs confirm that the NAACP's work to assist Tennesseans with the rights-restoration process directly furthers its mission.

in-fact; (2) a close relationship between itself and the person whose right it seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests. *See Powers v. Ohio*, 499 U.S. 400, 410-11 (1991).

The NAACP cannot make this showing. First, the NAACP itself has no right to vote, so it is not harmed by the State's alleged conduct and cannot show an "injury in fact." *See id.* at 411. Second, the NAACP cannot show a close relationship between it and the unspecified individuals it seeks to represent. *See id.*; *see also Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014) (concluding that the relationship between a voting-rights organization and "unidentified" voters "does not resemble the close relationship of the lawyer-client or doctor-patient relationships recognized by the Supreme Court"). And finally, the NAACP has not even attempted to argue that its unidentified members are "hind[ered]" in their ability to protect their own interests. *See Powers*, 499 U.S. at 411. All of this means that the NAACP lacks third-party standing and its claims should be dismissed.

*      *      *

This case "begins and ends with standing." *See Carney v. Adams*, No. 19-309, 2020 WL 7250101, at *3 (U.S. Dec. 10, 2020). Standing is a "threshold question in every federal case." *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016). And as "the parties invoking federal jurisdiction," Plaintiffs must "bear the burden of proving the three elements of standing." *Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). At the pleading stage, Plaintiffs must carry this burden by "clearly alleg[ing] facts demonstrating each element." *Id.* (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (cleaned up). None of the Plaintiffs here have carried this burden for any of their seven claims. *See id.* (recognizing that "each of [a plaintiff's claims] must independently meet the requirements for standing"). That failure deprives this Court of subject matter jurisdiction and

means that Plaintiffs claims should be dismissed.

## B.     The Eleventh Amendment Bars Plaintiffs' Constitutional Claims.

Plaintiffs bring a total of seven claims against the State—five of which arise under the First, Fourteenth, and Twenty-Fourth Amendments to the Constitution.  It is well settled that the Eleventh Amendment erects a "true jurisdictional bar" to such suits against the State unless an exception applies.  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  And it is equally well settled that in *Ex Parte Young*, the Supreme Court recognized that there is an exception to this "jurisdictional bar" for challenges to unconstitutional legislative enactments.  This is because those enactments are "void," and thus do not "impart to [the state officer] any immunity from responsibility to the supreme authority of the United States."  209 U.S. 123, 160 (1908).  As a result, "a federal court can"—despite the Eleventh Amendment—"award a prospective injunction against a state official who is enforcing a statute that violates the Fourteenth Amendment."  *Cicchini v. Blackwell*, 127 F. App'x. 187, 190 (6th Cir. 2005) (emphasis added).

Plaintiffs, however, do not allege that the re-enfranchisement statutes are unconstitutional.  To the contrary, Plaintiffs describe these statutes as "clear" and "straightforward."  (Compl., DE 1, PageID# 2, 8-9, ¶¶ 2, 28.)  Thus, Plaintiffs' claim does not lie in the statutes themselves, but instead with the Defendants alleged "failure to administer the [state] law properly."  (*Id*. at PageID# 2, ¶ 2.)  Specifically, Plaintiffs first assert that the "implementation" of these clear and straightforward statutes has been "unequal, inaccessible, opaque, and error-ridden" (*id*. at PageID# 2, ¶ 1), in derogation of the Defendants' purported "responsibility for managing the COR process" (*Id*. at PageID# 2, ¶ 2; *see also id*. ¶ 3 (alleging that "neither the Governor nor TDOC has implemented adequate policies, guidance, or directives to comply with that statutory mandate").)  And second, Plaintiffs  argue that the Defendants' "fail[ure] to administer the straightforward

process set forth in Tennessee law" (*id*. at PageID# 8-9, ¶ 28) "violates due process" (*id*. at PageID# 18, ¶ 52) and state law (*id*. at PageID# 42, ¶ 151). Accordingly, Plaintiffs seek an injunction from this Court, directing the Defendants "to implement constitutionally required safeguards to ensure that the COR system meets the minimum requirements of the Due Process Clause and Equal Protection Clause." (*Id*. at PageID# 43, Request for Relief ¶ B.)

These claims are barred by the Eleventh Amendment to the Constitution.

As to their first argument, Plaintiffs allege that procedural "safeguards" are "constitutionally-mandated." (*Id*. at PageID# 18, ¶ 52.) Plaintiffs, however, fail to point to the "constitutional" source of this "mandate." This is because none exists. Indeed, the Due Process Clause 'does not protect procedure for procedure's sake.'" *Fowler v. Benson*, 924 F.3d 247, 259 (6th Cir. 2019) (quoting *Rector v. City and County of Denver*, 348 F.3d 935, 943-44 (10th Cir. 2003)). Rather, "[p]rocedure" is constitutionally required only to protect "a legal entitlement that falls within the Fourteenth Amendment's protection." *Id*. Here, there is no such entitlement because there is no constitutional "right" to re-enfranchisement. *See Johnson*, 624 F.3d 746. Moreover, the right to vote—were it even implicated here—is not a "liberty interest" to which procedural due process constraints attach. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 479 (6th Cir. 2008); *Memphis A. Phillip Randolph Institute v. Hargett*, --- F.Supp.3d ---, 2020 WL 5095459 at *9-10 (M.D. Tenn. 2020), *aff'd on other grounds*, 978 F.3d 378 (6th Cir. 2020). Thus, absent a constitutional right or cognizable liberty interest, there is no constitutional mandate to "implement constitutionally sufficient procedures" relating to re-enfranchisement.

For their second argument, Plaintiffs assert throughout their Complaint that Defendants have "abdicat[ed] [their] responsibility" to institute "uniform procedures" that are "statutorily required," (Compl., DE 1, PageID 19, ¶ 54) and "failed in their duty to administer a standardized, accurate, and navigable process for eligible citizens to 'request' and 'be issued' CORs under

Tennessee law." (*Id*. at PageID# 18, ¶ 51.) In short, Plaintiffs simply accuse the Defendants of not doing their job.

But a cause of action for failing to follow *state* law cannot be maintained under the Eleventh Amendment. *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The purpose of *Ex Parte Young* and its progeny is to preserve "the supreme authority of the United States" when a court is faced with an "unconstitutional [state] enactment." *Id*. at 102. This means that when the constitutionality of a state enactment is *not* at issue, that interest falls away. Put another way, "a federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id*. In fact, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id*. Permitting suits of that sort to proceed would "conflict[] directly with the principles of federalism that underlie the Eleventh Amendment." *Id*.

But this is precisely what Plaintiffs ask this Court to do here. They do not challenge the State's concededly "clear" and "straightforward" re-enfranchisement statutes. (*See* Compl., DE 1, PageID# 2, 8-9, ¶¶ 2, 28.). They instead challenge the manner in which those statutes have been "implemented." (*See* Compl., DE 1, PageID# 2-4, 18, ¶¶ 1, 3, 8, 11, 52.) Plaintiffs themselves make this crystal clear: "Plaintiffs do not seek to compel issuance of their individual CORs; rather *they seek the implementation of a process* that will allow them to receive their CORs." (*Id*. at PageID# 33, ¶ 110 (emphasis added).) Thus, Plaintiffs' Complaint "alleges only dissatisfaction" with the *manner* by which Tennessee has "implemented" its clear, straightforward, and unchallenged re-enfranchisement statutes. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 526 (6th Cir.), *cert. denied*, 474 U.S. 824 (1985). But "[c]ase law is legion that the Eleventh Amendment to the United States Constitution directly prohibits federal courts from ordering state

officials to conform their conduct to state law." *Id.* Still, Plaintiffs seek an injunction directing the State to do just that. The Eleventh Amendment prohibits such an action, and for this reason Counts One, Two, Three, Six, and Seven should be dismissed.

## II. Plaintiffs' Complaint Should be Dismissed for Failure to State a Claim.

Even if Plaintiffs could establish standing, and even if many of their claims were not barred by the Eleventh Amendment, their complaint should also be dismissed for failure to state a claim under Rule 12(b)(6). When considering a Rule 12(b)(6) motion, the Court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). But this deference to the allegations in the complaint is not without limits. First, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Second, a plaintiff must plead facts that make his or her right to relief more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, simply pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs' complaint fails to state a claim for many of the same reasons that Plaintiffs lack standing—Plaintiffs cannot point to any cognizable injury stemming from Defendants' conduct. Plaintiffs, then, have failed to "plead facts that make [their] right to relief more than merely speculative." *See Twombly*, 550 U.S. at 555. It follows that their complaint should be dismissed.

### A. The challenged laws do not deprive anyone of due process (Counts 1 and 2).

Plaintiffs argue that Tennessee's re-enfranchisement procedures deprive them of constitutional and state-created liberty interests without due process. As explained above, the

13

Plaintiffs here lack standing to raise any such challenge. But even if they had standing, Plaintiffs' procedural-due-process claims would fail.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Thus, consideration of a procedural-due-process claim begins with a two-step inquiry to determine (1) whether there exists a liberty or property interest with which the State has interfered such that "due process applies," and, if so, (2) whether the procedures followed by the State were constitutionally sufficient to sustain the deprivation. *See Memphis A. Phillip Randolph Institute*, 2020 WL 5095459 at *6 (citing *Johnson v. Morales*, 946 F.3d 911, 921 (6th Cir. 2020); *Miller v. Lorain County Bd. Of Elections*, 141 F.3d 252, 259 (6th Cir. 1998)), *aff'd* 978 F.3d 378 (6th Cir. 2020); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). To make the latter determination, courts employ the three-factor test set forth in *Mathews*. Under that test, courts consider: "'[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'" *See Johnson v. Morales*, 946 F.3d at 922 (quoting *Mathews*, 424 U.S. at 335).

But before this two-step inquiry is reached, and long before the three-factor test is applied, it first should be noted that "[p]rocedural due process rules are meant to protect persons . . . from the mistaken or unjustified *deprivation* of life, liberty, or property." *Carey v. Piphus*, 435 U.S.

247, 259 (1978) (emphasis added).[3]   This means that to invoke the protections of procedural due process, a plaintiff must show a deprivation.   Here, Plaintiffs' claims do not focus on the "deprivation" of any right; Plaintiffs do not assert that their disenfranchisement violated the Due Process Clause.[4]   Instead, Plaintiffs' claims pertain to the *restoration* of voting rights, which previously and legitimately had been taken away.   (*See* Compl., DE 1, PageID# 10-11, 12-16, ¶¶ 34-36, 40-44.)

Yet, there is no "right" to re-enfranchisement.   *See Johnson*, 624 F.3d at 746.   So even if Plaintiffs' factual allegations (i.e., that the "implementation" of an otherwise "clear" and "straightforward" statute has been "unequal, inaccessible, opaque, and error-ridden") are taken as true, no procedural-due-process claim exists, because no "deprivation" has occurred.[5]   Absent a deprivation of a liberty or property interest, a procedural due process claim does not exist.   *See New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1289 (11th Cir. 2020) (concluding that

---

[3] *See also Mathews*, 424 U.S. at 901 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (holding that procedural due process protects against the erroneous "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property'"); *Memphis A. Phillip Randolph Institute*, 2020 WL 5095459, at *5 and *6 (holding that "[t]he Fourteenth Amendment protects an individual from deprivation of life, liberty or property without due process of law" and that "procedural due process is . . . a safeguard against erroneous or unjustified *deprivations* of liberty or property interests") (emphasis added).

[4] Nor could they.   "[I]t can scarcely be deemed unreasonable for a state to decide that perpetrators of serious crimes shall not take part in electing the legislators who make the laws, the executives who enforce these, the prosecutors who must try them for further violations, or the judges who are to consider their cases."   *Green v. Bd. of Elections*, 380 F.2d 445, 451 (2d Cir. 1967); *see also Richardson v. Ramirez*, 418 U.S. 24, 54 (1974) (noting that "the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment"); *Wesley*, 791 F.2d at 1260-61.

[5] Indeed, if "the remedy for a procedural due process violation is restoration of the status quo ante," *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 822 (11th Cir. 1987) (Tjoflat, J., concurring-in-part, dissenting-in-part) (citing *Mathews*, 424 U.S. at 349), then no remedy can be given to Plaintiffs here, because their disenfranchisement was entirely proper.

15

"felons challenging a voting rights restoration scheme had no rights to procedural due process because they lost their right to vote due to a provision of the Florida Constitution") (citing *Jones v. Governor of Florida*, 975 F.3d 1016, 1047-49 (11th Cir. 2020)).

Further, even if an alleged "failure to administer a functional rights restoration system," (Compl., DE 1, PageID# 34, 37, ¶¶ 112, 125), rises to the level of a "deprivation" (and prosecution of that claim is not barred by the Eleventh Amendment), Plaintiffs' procedural due process claim still fails because they have presented no cognizable liberty interest to satisfy the first step of the two-step inquiry. Liberty interests arise in two ways: from either "the Constitution itself, by reason of guarantees implicit in the word liberty," or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal quotation marks omitted). Here, Plaintiffs claim both a state-created liberty interest in the "statutory right" to franchise restoration, (Compl., DE 1, PageID# 3, 34-36, ¶¶ 6, 111-123 (Count 1)), and in the "fundamental right to vote that [they contend] is protected by the doctrine of procedural due process" (*id.* at PageID#, 37, ¶ 127 (Count 2)). But neither alleged interest can support their procedural-due-process claim.

### 1. Plaintiffs have no state-created liberty interest

Plaintiffs contend that "[t]he Tennessee legislature has created a liberty interest, protected by procedural due process, in a COR for individuals who meet certain eligibility criteria." (Compl., DE 1, PageID# 34-35, ¶ 115.) They are wrong.

State-created liberty interests are "generally limited to freedom from restraint." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, "[t]he range of deprivations implicating a cognizable state-created liberty interests is narrow." *Memphis A. Phillip Randolph Institute*, 2020 WL 5095459, at *7; *see also Richardson*, 978 F.3d at 230. And while Plaintiffs cite out-of-circuit

cases for the proposition that the "right to vote" is a "liberty interest,"[6] they wholly overlook the fact that the Sixth Circuit has ruled to the contrary, and has held that the "right to vote does not . . . implicate procedural due process." *Brunner*, 548 F.3d at 479. Like the plaintiffs in *Brunner*, Plaintiffs here "contend[] that [Tennessee law] deprives [them] of 'their liberty interest in voting and does so without adequate pre- or post-deprivation process.' However, [Plaintiffs] ha[ve] *not alleged a constitutionally protected interest*." *Id.* (emphasis added); *see also Richardson*, 978 F.3d 231 (noting that "[t]he Sixth Circuit, the only circuit to squarely address this issue, [has] held that the right to vote does not constitute a liberty interest") (footnotes omitted).[7]

This Court recently followed the Sixth Circuit's instructions in *Brunner* and rejected the same theory that Plaintiffs advance here. As this Court recognized, "the Sixth Circuit has made

---

[6] (*See* Compl., DE 1, PageID# 37, ¶ 127 (citing *Cook v. Randolph County, Georgia*, 573 F.3d 1143, 1152 (11th Cir. 2009) and *Barefoot v. City of Wilmington*, 306 F.3d 113, 124 n.5 (4th Cir. 2002)).

[7] To the extent that *Cook* and *Barefoot* may be read to reach holdings that conflict with *Brunner*, they are not the controlling law of this Circuit and do not support Plaintiffs' novel and expansive conception of procedural due process.

*Cook* involved "a shotgun pleading" which "pile[d] on . . . a slew of claims stated in only the most conclusory fashion" requiring the Eleventh Circuit "to impose order on the chaos." *Cook*, 573 F.3d at 1151. And while the Eleventh Circuit made the unremarkable pronouncement that "[t]he Constitution certainly protects the right to vote," *id.* at 1152, it never actually held that the "right to vote" was a liberty interest for procedural due process purposes. *See id.* (citing *Duncan v. Poythress*, 657 F.2d 691, 705 (5th Cir. 1981) for the proposition that the right to vote implicates "substantive guarantees of the due process clause").

*Barefoot* similarly provides no support for Plaintiffs' theory. While the Fourth Circuit stated—in a footnote—that "[t]he right to vote . . . is certainly a protected liberty interest," 306 F.3d at 124 n.5, it never reached plaintiffs' asserted procedural due process claim because they did not have the "right to vote" on the annexation at issue and thus presented "no cognizable liberty interest." *Id.* at 124.

clear that a plaintiff's right to vote is not a cognizable 'liberty' interest arising from the constitutional (First Amendment) right to vote" and "not a cognizable liberty interest arising from the Due Process Clause of the Fourteenth Amendment to the Constitution." *Memphis A. Phillip Randolph Institute*, 2020 WL 5095459, at *9. Nor is the right to vote "a cognizable state-created liberty interest." *Id.* These realities mean that the right to vote is "not a cognizable liberty interest for purposes of procedural due process, period." *Id.*[8] Still, Plaintiffs insist that the right to vote supports their procedural-due-process claims. This Court should follow the Sixth Circuit's guidance and should reject that theory once again.

In sum, Plaintiffs fail to meet the first step in the procedural due process inquiry—they have no "liberty interest" to which procedural due process applies. Accordingly, there is no procedural due process violation under this theory. "[W]here the alleged procedural due process violation is based on a[n] [alleged] state-created liberty interest, there is no such violation (and indeed the above-referenced *Mathews* test need not even be conducted) if there in fact is no state-created liberty interest." *Id.* at *8.

### 2. Plaintiffs have no constitutionally-created liberty interest

A plaintiff who "fails to show a state-created liberty interest still may have a cognizable liberty interest arising from the Constitution itself." *Id.* But here, Plaintiffs do not. It is without question that the right to vote is fundamental. *See McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 807 (1969). But it is also not the "right" implicated here: that right was lost when Plaintiffs were disenfranchised. Plaintiffs, then, claim a "right" to re-enfranchisement. But that "right" does not exist. *See Johnson*, 624 F.3d at 746. Rather, because "the right of felons

---

[8] It should be noted that the Tennessee Conference of the NAACP (a Plaintiff here) also was a plaintiff in *Memphis A. Phillip Randolph Institute*. By advancing its novel procedural-due-process theory again, the NAACP ignores this Court's previous holding as well as the Sixth Circuit's holding in *Brunner* on which this Court relied.

to vote is not fundamental," *Wesley*, 791 F.2d at 1261, "Tennessee's re-enfranchisement law [does not] implicate[] a fundamental right," *Johnson*, 624 F.3d at 746.

Moreover, "[f]or procedural due process, the question is not whether the plaintiffs assert a *fundamental* right, but instead whether the right they assert is a *liberty interest*." *Richardson v. Texas Secretary of State*, 978 F.3d 220, 230-31 (5th Cir. 2020) (emphasis in original). And "the Sixth Circuit has made clear that a plaintiff's right to vote is not . . . a cognizable liberty interest arising from the Due Process Clause of the Fourteenth Amendment to the Constitution." *Memphis A. Phillip Randolph Institute*, 2020 WL 5095459, at *9. If "the fundamental right to vote does not . . . implicate procedural due process," *Brunner*, 548 F.3d at 479, it follows that restoration of that right cannot either. Accordingly, Plaintiffs' have no procedural-due-process claim.

Again, Plaintiffs do not challenge the "clear" and "straightforward" statutory requirements for re-enfranchisement. (Compl., DE 1, PageID# 2, 8-9, ¶¶ 2, 28.) They challenge only their implementation. (*Id*. at PageID# 34, 37, ¶¶ 112, 125.) Thus, Plaintiffs' claims are not "about the substance of the [re-enfranchisement] criteri[a]" set forth in the statutes, "but rather about the *accuracy* of state officials' [application] of . . . those criteria." *Memphis A. Phillip Randolph Institute*, 2020 WL 5095459, at *20 (emphasis added). That is not a cognizable procedural due process claim, because the "right to vote"—or, in this case, the "right" to re-enfranchisement—is not "recognized as a liberty interest in that context." *See id*.

Further, Plaintiffs' complaint is not so much about the failure of *State* officials to apply the criteria of the re-enfranchisement statutes, as it is about the alleged failures of various *county* clerks—who are not parties here—to comply with the statutes. (*See* Compl., DE 1, PageID# 12-16, ¶¶ 40-45.) But even if county clerks have failed to properly apply the statutes in question, those failures cannot be attributed to the State Defendants here. Indeed, there is no constitutional mandate for the State to promulgate "uniform procedures for determining if that person meets the

19

eligibility criteria" beyond those already expressed in the statutes themselves. (Compl., DE 1, PageID# 3, ¶ 4.)[9] "The Due Process Clause does not require States to provide individual process to help citizens learn the facts necessary to comply with laws of general application." *Jones*, 975 F.3d at 1049. And if a felon believes that he or she is "eligible to apply for a voter registration card and have the right of suffrage restored," and a county official fails to apply the criteria set forth in the statute, the proper recourse for that individual lies in either a state-court declaratory judgment action, or—if necessary—pursuit of a writ of mandamus.

Because Plaintiffs have failed to assert a protectable liberty interest, their procedural due process claims fail as a matter of law. This means that there is "no need to proceed to the second step (the *Mathews* test) to determine whether more process was due." *Memphis A. Phillip Randolph Institute*, 2020 WL 5095459, at *8.

### B. The challenged laws do not deprive anyone of equal protection (Count 3).

Plaintiffs claim that Tennessee's voting-rights-restoration process results in "[a]rbitrary and [u]nequal [d]isenfranchisement." (*See* Compl., DE 1, PageID# 37.) More specifically, Plaintiffs assert that "Defendants' application of the COR statutes has created a system where similarly situated Tennesseans" receive unequal treatment regarding one's "fundamental right to

---

[9] As Plaintiffs have alleged, Tenn. Code Ann. § 40-29-205 states that "[t]he coordinator of elections shall prepare a certificate of voting rights restoration form and the written statement explaining the form and the procedure by which a person can apply for a voter registration card and become eligible to vote as required by this part." Plaintiffs acknowledge, though, the Coordinator of Elections has done so. (*See* Compl., DE 1, PageID# 7-8, ¶ 25, and Ex. A.)

Plaintiffs do *not* allege that Exhibit A fails to conform to the requirements of Section 205, or any of the other re-enfranchisement statutes. Instead, Plaintiffs allege that "[i]nherent in these [statutory] responsibilities is the duty to ensure that COR-issuing authorities properly interpret and apply the statutory requirements." (*Id*. at PageID# 36, ¶ 123; *see also id*. at PageID# 2, ¶ 2 (alleging, without citation, that "[t]he legislature assigned Defendants responsibility for managing the COR process.")) There is no support in the text of Section 205, or in any of the other re-enfranchisement statutes, for the suggestion that the State Defendants are charged with the responsibility to monitor or police the actions of county officials.

vote" in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*Id*. at PageID# 37-38, ¶¶ 130, 133).

The "Equal Protection Clause of the Fourteenth Amendment 'protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights."  *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006)).  To state an equal-protection claim, "a plaintiff must adequately plead that the government actor treated her 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Arsan v. Keller*, 784 F. App'x 900, 912 (6th Cir. 2019) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)).  Plaintiffs equal-protection claim fails for two reasons.

*First*, Plaintiffs cannot show that the State discriminates among "similarly situated" individuals.  *Davis*, 679 F.3d at 438.  Plaintiffs argue that "Defendants' application of the COR statutes has created a system where similarly situated Tennesseans—convicted of the same crime and who have served the same sentence and met their relevant LFOs—may be granted or denied access to the right to vote based solely on the county of their felony conviction."  (Compl., DE 1, PageID #37-38, ¶ 130.)  But in making this argument, Plaintiffs undermine their equal-protection claim.  Plaintiffs acknowledge that to the extent that individuals are being treated differently, they are not being treated differently by the State or through any State law.  Instead, "whether or not an eligible individual is able to request and be issued a COR and thereby regain their right to vote depends entirely on the willingness of *local* and *county-level* officials to entertain COR requests." (Compl., DE 1, PageID# 38, ¶ 131 (emphasis added).)  In other words, Plaintiffs have failed to show that the State is treating similarly situated individuals differently.  Plaintiffs, then, have failed to state an equal-protection claim against the State Defendants.  *See Jolivette v. Husted*, 694 F.3d

760, 771 (6th Cir. 2012) (explaining that "[a] successful equal-protection claim requires that "the *government* treated the plaintiff disparately as compared to similarly situated persons." (emphasis added)).

*Second*, Plaintiffs cannot show discrimination "implicating fundamental rights." *Davis*, 679 F.3d at 438. Plaintiffs argue that the COR process "implicates an individual's fundamental right to vote." (Compl., DE 1, PageID# 38, ¶ 133.) But again, Plaintiffs' arguments miss the mark. Even if individuals are being treated differently in that they are not equally able to obtain CORs, that unequal treatment does not implicate a fundamental right. As the Sixth Circuit has recognized, there is no "fundamental right" to re-enfranchisement. *See Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). And because Plaintiffs have already lost their right to vote, they "lack any fundamental interest to assert." *Id.*

In sum, Plaintiffs have shown neither discrimination by the State among similarly situated individuals nor discrimination implicating a fundamental right.[10] These two failures are fatal to their equal-protection claim.

### C. Plaintiffs have failed to state a claim under the NVRA (Counts 4 and 5).

Plaintiffs bring two claims under the NVRA. These two claims were brought by the NAACP alone, without participation by any individual Plaintiff. But the NAACP lacks statutory standing to pursue its claims under the NVRA. In other words, it has failed to state a claim. *See Coutu v. Bridgestone Americas, Inc.*, No. 3:17-CV-01492, 2019 WL 6492899, at *4 (M.D. Tenn. Dec. 3, 2019) (recognizing that "statutory standing' does not affect the Court's subject matter

---

[10] Plaintiffs could also have sought to state an equal-protection claim by alleging disparate treatment that "targets a suspect class" or "has no rational basis," *see Arsan*, 784 F. App'x at 912, Plaintiffs failed to do so. Indeed, Plaintiffs never allege that the State "target[ed] a suspect class." *See id.* And while Plaintiffs do suggest that no rational basis could support the State's disparate treatment of individuals seeking restoration of their voting rights, (*see* Compl., DE 1, PageID# 38, ¶ 33), that argument gets Plaintiffs nowhere because the *State* is not treating any of those individuals differently at all.

jurisdiction to hear a case, only whether the plaintiff has a statutory cause of action"). Plaintiffs have failed to state a claim under the NVRA for two reasons: first, because the NVRA created a cause of action for *individuals* aggrieved by violations of the Act—not organizations with unidentified members; and second, because the NAACP failed to give proper notice in accordance with the NVRA.

*First*, the NVRA grants a private right of action to individuals who have been "aggrieved by a violation" of the Act. *See* 52 U.S.C. § 20510(b)(1). Put another way, the Act enables those who "allege that their rights to vote in an election for federal office have been impaired by a violation of the NVRA" to bring suit. *See Minnesota Voters All. v. City of Minneapolis*, No. CV 20-2049 (MJD/TNL), 2020 WL 6119937, at *6 (D. Minn. Oct. 16, 2020) (quoting *Dobrovolny v. Neb.*, 100 F. Supp. 2d 1012, 1031 (D. Neb. 2000)) (internal quotation marks omitted); *see also Krislov v. Rednour*, 946 F. Supp. 563, 566 (N.D. Ill. 1996) ("Standing under the NVRA is *limited* to the United States Attorney General and the 'aggrieved persons' whose voting rights have been denied or impaired." (emphasis added)).

Here, no individual Plaintiff has brought claims under the NVRA. Instead, Plaintiffs' NVRA claims have been brought by the NAACP alone. But of course, the NAACP is an organization and has no right to vote. *See Memphis A. Phillip Randolph Inst.*, 2020 WL 5095459, at *21 (recognizing that "[o]rganizational Plaintiffs will suffer no deprivation [of the right to vote], of course, inasmuch as organizations cannot vote."). So it has no direct standing to bring claims under the NVRA. That leaves associational standing. Setting aside whether an organizational Plaintiff could bring an NVRA claim on behalf of its members, the NAACP certainly cannot do so here because it has not identified any members, much less any members who have been

"aggrieved by a violation" of the NVRA.  This failure is fatal to the NAACP's standing to challenge the alleged violations of the NVRA.[11]

Second, the NAACP failed to give proper notice of their NVRA claims.  Under the NVRA, "[a] person who is aggrieved by a violation of [the Act] may provide written notice to the chief election official of the State involved."  *See* 52 U.S.C. § 20510(b)(1).  While "notice is framed here as permissive rather than mandatory, other NVRA provisions indicate that notice is mandatory."  *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014).  The next paragraph, for example, provides that if the "violation is not corrected within 90 days after receipt of a notice under [the previous paragraph], or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."  52 U.S.C. § 20510(b)(2).  This means that a party cannot bring suit "if no proper notice is given, since the 90–day period never runs."  *Scott*, 771 F.3d at 835.

The NAACP here alleges that it provided the required notice through a letter sent to Defendants Hargett and Goins on August 22, 2018.[12]  (*See* Compl., DE 1, PageID# 40, ¶ 140; *Id.*

---

[11] This argument could also be fairly characterized as a lack of Article III standing based on the NAACP's failure to allege any injury to an identified member. S*ee, e.g.*, *Summers*, 555 U.S. at 499 (noting that the Supreme Court has "required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm").  But no matter how this Court chooses to view the State's arguments on this point, the bottom line is that the NAACP has not shown any concrete injury stemming from the alleged NVRA violations.  And for that reason, the NAACP's NVRA claims must be dismissed.

[12] Pursuant to F.R.C.P. 10(c), Defendants have attached a copy of the NAACP's August 22, 2018 letter as Exh. 1.  *See Oppenheimer v. Mountain States Health All.*, No. 2:19-CV-189, 2020 WL 1867235, at *2 (E.D. Tenn. Apr. 14, 2020) (court may consider documents not attached to complaint if they are referred to in the plaintiff's complaint and are central to plaintiff's claim); *see also* 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1327 (4th ed. 2019) ("when the plaintiff fails to introduce a pertinent document as part of her pleading, the defendant may be permitted to introduce the document as an exhibit to a motion attacking the sufficiency of

24

at PageID# 41, ¶ 143.)  But this notice was insufficient.  The NAACP has brought two NVRA claims.  The first alleges that Tennessee's voter-registration form is inaccurate and misleading.  (*See* Compl., DE 1, PageID # 39-40, ¶¶ 136-40.)  The second alleges that Tennessee's "practice of rejecting all registration forms on which the applicant affirmed that they have a felony conviction" violates "the NVRA's requirement that the state 'ensure that any eligible applicant is registered to vote" in Federal elections if the eligible applicant timely submits a "valid voter registration form.'"  (*See* Compl., DE 1, PageID # 40-41, ¶¶ 141-43.)  The Sixth Circuit has observed that the NVRA's notice requirement exists to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation."  *See Ass'n of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997).  The notice here failed to provide that opportunity for either of Plaintiffs' NVRA claims.

As for Plaintiffs' first claim, the NAACP's letter did point out alleged violations of the NVRA stemming from Tennessee's voter-registration form.  *See* Exh. 1.  But *that* form (which was the subject of the 2018 letter) is no longer in use.  The *current* form explains that if the applicant has "had a felony conviction, [their] eligibility to register and vote depends upon the crime [they] were convicted of and the date of [their] conviction."  *See* Tennessee Secretary of State, *Tennessee Mail-In Application for Voter Registration*, https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf (last visited Dec. 23, 2020).  And for applicants who need more information about their eligibility, the form provides both a phone number and a web address.  *See id.*  The NAACP's letter, then, gave notice of alleged violations that no longer exist.  And even if the NAACP believes that the State's *current* form also violates the NVRA, the notice is defective

---

the pleading if the plaintiff has referred to the item in the complaint and it is central to the affirmative case").

because it provided no "opportunity to attempt compliance before facing litigation." *See Miller*, 129 F.3d at 838.

And as for Plaintiffs' second NVRA claim, the NAACP's letter provided no notice of any kind. *See* Exh. 1. Indeed, the notice letter makes no mention of the State's alleged "practice of rejecting all registration forms on which the applicant affirmed that they have a felony conviction." The NAACP's letter thus gave the State no chance "to attempt compliance before facing litigation." *See Miller*, 129 F.3d at 838. *See also Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1334 (S.D. Fla. 2017) (holding that "the pre-suit notice requirement . . . is violation specific" and "notice as to one potential NVRA violation is not the equivalent of notice as to all potential NVRA violations").

All of this means that Plaintiffs have failed to state a claim under the NVRA. First, because the NVRA created a cause of action for individuals aggrieved by violations of the Act—not organizations that have failed to identify a single aggrieved member. And second, because the NAACP failed to give proper notice for either of its two NVRA claims.

**D.      The challenged laws do not deprive anyone of the right to vote (Count 6).**

Plaintiffs allege "upon information and belief" that the Tennessee Division of Elections instructs all election officials to reject all voter registration applications on which an applicant has noted they are a convicted felon. (Compl., DE 1, PageID# 29-30, ¶ 95). The NAACP asserts that this alleged practice violates some felon applicants' fundamental right to vote. As explained above, the NAACP lacks standing to bring this claim—it has failed to show direct harm and has failed to identify a single member that would have standing. But even if the NAACP did have standing to bring this claim, it would still fail.

The crux of this claim is the NAACP's unsupported allegation that the State rejects all voter-registration "applications on which an applicant has noted they are a convicted felon." (*See*

*id.*)  And while it is true that, at the pleading stage, this Court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," *Directv, Inc.*, 487 F.3d at 476, this Court "need not accept as true legal conclusions or unwarranted factual inferences."  *Kottmyer*, 436 F.3d at 689.  Put another way, a plaintiff cannot simply plead[] facts that are consistent with a defendant's liability or that permit the court to infer misconduct."  *See Ashcroft*, 556 U.S. at 679.

This Court need not—and should not—accept Plaintiffs' suggestion that Tennessee rejects all voter-registration applications on which an applicant has noted that they are a convicted felon. Indeed, this allegation cannot be squared with the State's existing voter-registration procedures and forms.  As discussed above, the State's voter-registration form has changed.  The current form asks each applicant whether they have been convicted of a felony, but specifically instructs them to answer "no" if the conviction has been expunged.  Tennessee Secretary of State, *Tennessee Mail-In Application for Voter Registration*, https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf (last visited Dec. 23, 2020).  Not only that, but the form also instructs applicants who must answer yes to provide information about the crime of conviction, the timing and location of that conviction, and finally the form asks whether the applicant has received a pardon or had their voting rights restored.  *See id.*

Plaintiffs' claim, then, is premised on forms and procedures that do not exist.  And while this Court must "draw all reasonable inferences in favor of the plaintiff," *Directv, Inc.*, 487 F.3d at 476, the inference that Plaintiffs ask this Court to draw—that despite the State's instructions to applicants and questions on its voter-registration form, it automatically rejects any application on which the applicant discloses a past felony conviction—is not "reasonable."  For that reason, as well as the NAACP's failure to allege sufficient facts to establish standing, this Court should dismiss this claim.

E.  **The challenged law is not a poll tax in violation of the Twenty-Fourth Amendment (Count 7).**

Plaintiffs' final claim is for an alleged violation of the Twenty-Fourth Amendment. Plaintiff NAACP asserts that the Rutherford County Circuit Court Clerk imposes a poll tax on felons in violation of the Twenty-Fourth Amendment by "refus[ing] to fill out or issue CORs unless the requestor pays a fee." (Compl., DE 1, PageID# 42, ¶ 150.) The NAACP further asserts that Coordinator Goins has violated the Twenty-Fourth Amendment by failing "to meet his statutory mandate to issue instructions for completion of the COR by failing to specify that fees for complete are not authorized by the legislature." (*Id.* at PageID# 42, ¶ 151.) As with Plaintiffs' other claims against the State Defendants, this claim must fail: first, because the NAACP lacks standing; and second, because the NAACP has failed to state any claim against Coordinator Goins.

As discussed above, to establish standing as an organization, the NAACP must make "*specific* allegations establishing that at least one *identified* member had suffered or would suffer harm." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 254-55 (6th Cir. 2018) (emphasis added); *see also Tennessee Republican Party v. Sec. and Exch. Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017) (requiring "the plaintiff-organization [to] 'name the individuals who were harmed' unless '*all* the members of the organization are affected by the challenged activity'" (quoting *Summers*, 555 U.S. at 498-99 (emphasis in original))). Here, the NAACP has not even alleged that any of its members have been denied a COR because of this fee, much less identified any member who has been required to pay this fee in Rutherford County or has been denied a completed COR because of failure to pay the fee. Instead, the NAACP has only alleged that it "has an active chapter in Murfreesboro, Rutherford County." (Compl., DE 1, PageID# 10, ¶ 34.) These allegations are not enough to establish organizational standing. For that reason alone, this claim should be dismissed.

28

But even if the NAACP could establish standing for its poll-tax claim, Plaintiffs' complaint utterly fails to state a claim against Coordinator Goins for violation of the Twenty-Fourth Amendment. Section 1 of that Amendment reads:

> The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

U.S. Const. Amend. XXIV, Sec. 1. Thus, "the Twenty-Fourth Amendment prohibits denials of the right to vote motivated by a person's failure to pay a tax." *Jones*, 975 F.3d at 1045. But the NAACP does not allege that Tennessee's felon-voting-restoration statute imposes a poll tax, nor can it as the Sixth Circuit has expressly ruled otherwise. *See Johnson*, 624 F.3d at 751. Indeed, Plaintiffs admit that the statute does not authorize or require the payment of any tax. (*See* Compl., DE 1, PageID# 42, ¶ 151.)

Instead, the NAACP asserts that Coordinator Goins has violated the Twenty-Fourth Amendment because he has not issued instructions explaining that fees for completion of a certificate of voting rights restoration form cannot be charged because the statute does not authorize it. Yet Plaintiff cites to no authority to support this novel theory of liability other than citing to Tenn. Code Ann. § 40-29-205. But this statute imposes no such duty on Coordinator Goins. Rather, the statute only requires that the Coordinator:

> prepare a certificate of voting rights restoration form and *the written statement explaining the form and the procedure by which a person can apply for a voter registration card* and become eligible to vote as required by this part. The coordinator shall be responsible for printing and distributing a sufficient number of the forms to the department of correction, the board of parole and any other authority that may discharge a parson to whom this part applies.

Tenn. Code Ann. § 40-29-205 (emphasis added). And Tenn. Code Ann. § 40-29-203(b)[13] requires that this "written statement" be provided to "the person being released," not the person completing the certificate of voting rights restoration form. Thus, contrary to Plaintiff's assertions, Tenn. Code Ann. § 40-29-205 imposes no statutory duty on Coordinator Goins to issue instructions *to the person completing the form* that the statute does not authorize them to charge a fee. Consequently, the NAACP has wholly failed to state any claim against Coordinator Goins for violation of the Twenty-Fourth Amendment.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court dismiss this case for lack of subject-matter-jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ Janet M. Kleinfelter
JANET M. KLEINFELTER (BPR 013889)
Deputy Attorney General
Janet.kleinfelter@ag.tn.gov
ANDREW B. CAMPBELL (BPR 014258)
Senior Assistant Attorney General
Andrew.campbell@ag.tn.gov
MATTHEW D. CLOUTIER (BPR 036710)
Assistant Attorney General
Matt.cloutier@ag.tn.gov
KELLEY L. GROOVER (BPR 034738)
Assistant Attorney General
Kelley.Groover@ag.tn.gov
Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207

---

[13] Specifically, Tenn. Code Ann. § 40-29-203(b) provides that the "issuing authority shall supply the person being released with a written statement explaining the purpose and effect of the certificate of voting rights restoration and explaining the procedure by which the person may use the certificate to apply for a receive a voter registration card and become eligible to vote."

Nashville, TN 37202
(615) 741-7403

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing document has been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

Danielle Lang
Mark Graber
Aseem Mulji
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

Charles K. Grant
Denmark J. Grant
Baker, Donelson, Bearman
Caldwell & Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, TN 37201

Phil Telfeyan
Natasha Baker
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004

Keeda Haynes
Free Hearts
2013 25th Ave. N.
Nashville, TN 37208

Date: December 30, 2020

/s/ Janet M. Kleinfelter
JANET M. KLEINFELTER (BPR 013889)
Deputy Attorney General