**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, *et al.*<br><br>                                  Plaintiffs,<br><br>   v.<br><br>WILLIAM LEE, *et al.*<br><br>                               Defendants. | Civil No. 3:20-cv-01039<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE FRENSLEY<br><br>[Class Action] |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
HARRELL'S MOTION TO DISMISS**

In this case, the Tennessee Conference of the National Association for the Advancement of Colored People ("TN NAACP") and five individuals with felony convictions who wish to restore their right to vote challenge various aspects of Tennessee's voting rights restoration and voter registration procedures. State Defendants Lee, Parker, Goins, and Hargett jointly filed a motion to dismiss, ECF No. 24, which has been briefed. Now, Defendant Melissa Harrell, the Clerk of Circuit Court for Rutherford County, has also moved to dismiss the single count brought against her by TN NAACP, which alleges that her policy of charging a $25 fee to obtain a Certificate of Restoration of Voting Rights ("COR") is a poll tax in violation of the Twenty-Fourth Amendment to the U.S. Constitution.[1]

---

[1] As stated in Plaintiffs' complaint, the Twenty-Fourth Amendment claim (Count 7) against Defendant Harrell is brought only by TN NAACP, on behalf of itself and its members. Individual Plaintiffs do not bring any claims against Defendant Harrell.

1

CKG 4852-3838-4862
2860000-008970

Defendant Harrell seeks to dismiss this claim under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. Both arguments are unpersuasive. This Court has jurisdiction because TN NAACP has pled facts sufficient to establish both associational standing to assert the poll tax claim on behalf of its members and organizational standing to sue on its own behalf. Additionally, Plaintiffs' complaint contains allegations sufficient to state a valid and straightforward claim under the Twenty-Fourth Amendment. The Court should deny Defendant Harrell's motion.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). In considering a facial attack, the court must consider all allegations by the plaintiff as true, whereas in considering a factual attack, the court "must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack questions merely the sufficiency of the pleadings [unlike] a factual attack [where] the court may consider evidence outside the pleadings." *Durham v. Martin*, No. 3:17-cv-01172, 2019 WL 2123262, at *4 (M.D. Tenn. May 14, 2019) (internal quotation marks and citations omitted). In assessing standing at the pleading stage, general allegations are presumed to "embrace those specific facts that are necessary to support the claim." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (citation omitted). The "district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim," whereas, when "an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of

CKG 4852-3838-4862
2860000-008970

the plaintiff's claim." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (internal quotation marks and citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citation omitted). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (citation omitted).

## ARGUMENT

### I.     Plaintiff TN NAACP Has Standing to Pursue its Twenty-Fourth Amendment Claim.

Organizational plaintiffs may establish standing in either of two ways, by alleging either that they have organizational standing in their own right, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), or by asserting associational standing on behalf of their members, *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). TN NAACP establishes both forms of standing with respect to its poll tax claim. This Court therefore has jurisdiction to hear it.

### A.  TN NAACP Has Associational Standing on Behalf of Its Individual Members.

An organization has the right to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires

3

the participation of individual members in the lawsuit." *Daunt v. Benson*, 956 F.3d 396, 417 (6th Cir. 2020) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Here, TN NAACP satisfies all three elements of associational standing with respect to its poll tax claim.

### 1. Individual TN NAACP Members Have Standing in Their Own Right.

To sue on behalf of its members, an organizational plaintiff must first demonstrate that (1) its members have or will imminently suffer an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision. *Id.* (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). TN NAACP has made this showing with respect to its poll tax claim.

First, TN NAACP members suffer injury in fact, *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). TN NAACP's complaint alleges—and Defendant Harrell does not deny— that the Rutherford County Circuit Court Clerk's office has a policy of charging $25 to fill out each COR form (a "COR fee"). Compl. ECF No. 1, at ¶¶ 7, 101. A COR serves as proof that an individual is no longer disqualified from voting because of a prior disenfranchising felony conviction, and is a prerequisite to registering to vote and exercising the franchise. *Id.* ¶¶ 21-27, 152; Tenn. Code Ann. § 40-29-203(c). And while Defendant Harrell stresses that she is not statutorily obligated to issue a COR, TN NAACP's complaint alleges that court clerks are often the only officials available to complete CORs, Compl. ¶ 57, the COR form itself directs returning citizens to criminal court clerks, *id.* ¶ 56, and for convictions in Rutherford County, failure to pay Defendant Harrell's COR fee makes the COR unavailable, *id.* ¶ 7. Because Defendant Harrell's COR fee denies the right to vote to all individuals who fail to pay but are nonetheless eligible to

4

receive a COR and register to vote, TN NAACP alleges that it is a poll tax in violation of the Twenty-Fourth Amendment. *Id.* ¶¶ 153-54.

TN NAACP alleges sufficient facts to establish that its members are subject to Defendant Harrell's fee in order to obtain a COR and thus as a condition of exercising the franchise. TN NAACP has more than 10,000 members across the state and an active chapter in Rutherford County. *Id.* ¶¶ 30, 34. TN NAACP alleges knowledge of specific members who have struggled to obtain CORs to which they are entitled. *Id.* ¶ 35. TN NAACP also alleges the specific harms those members face and that it seeks to vindicate: "TN NAACP members who are disenfranchised but have a statutory right to a COR (or may have a statutory right to a COR) are harmed by their inability to request and be issued a COR pursuant to Tennessee law. Defendants' failure to administer the COR process deprives TN NAACP members of their right to vote and inflicts harm on these members each time an election passes in which they are not allowed to cast a ballot." *Id.* ¶ 36. These allegations pertain not only to State Defendants' actions but also to Defendant Harrell's imposition of a COR fee.

TN NAACP's complaint allegations—which contemplate individual affected members— suffice to establish standing at the motion to dismiss stage. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan,* 497 U.S. at 889)). As shown in the two sworn declarations attached herein, TN NAACP has identified two such members, both of whom were convicted of felonies in Rutherford County, who intend to obtain CORs to restore their right to vote and will have to obtain a COR from Defendant Harrell's office. *See* Ex. 1, Decl. of Andrew Ron Fields ("Fields Decl.") ¶¶ 3, 6-7; Ex. 2, Decl. of James W. Owens ("Owens Decl.")

5

¶¶ 3, 6-7. Thus, as the case progresses to stages that require documentary evidence, TN NAACP will be able to meet the requirements of those stages with evidence of individual affected members.

Because TN NAACP members with convictions in Rutherford County who seek to restore their right to vote are subject to the COR fee as a pre-condition to voting, they suffer a concrete injury in fact.[2] *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (finding plaintiffs "had standing to challenge [a program to remove ineligible voters from the rolls] because they were directly injured by it when they were wrongly identified as non-citizens. Even though they were ultimately not prevented from voting, an injury like theirs is sufficient to confer standing."); *Common Cause Georgia v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009) (finding that a requirement to produce photo identification to vote was an injury sufficient to confer standing for a Twenty-Fourth Amendment challenge even though the right to vote had not yet been "wholly denied"); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient."). Thus, Defendant Harrell's COR fee itself inflicts a concrete injury on TN NAACP members with convictions in Rutherford County.

---

[2] Defendant Harrell contends that Plaintiffs cannot establish injury in fact because "there exists no constitutional protected interest under the Twenty-Fourth Amendment with respect to the re-enfranchisement process." Defs.' Mem. Supp. of Defs.' Mot. to Dismiss, ECF No. 48 ("Def. Br."). But this impermissibly collapses the injury in fact inquiry with the merits. *Hicks v. State Farm Fire & Cas. Co*., 965 F.3d 452, 463 (6th Cir. 2020) ("State Farm's standing argument improperly conflates Article III's injury in fact requirement with the merits."); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal . . . ." (internal quotation marks omitted)). A person forced to pay $25 to receive a COR faces an undeniable injury in fact; whether that injury in fact violates the 24th Amendment is a distinct merits inquiry.

6

Injury is also imminent because TN NAACP members with Rutherford County convictions must seek a COR from Defendant Harrell, the only official available to complete the legal financial obligation portion of the COR, and Defendant Harrell's office charges the COR fee *as a matter of policy*. Compl. ¶ 34-35, 101, 153-54. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) (holding that a plaintiff could establish imminent injury from a police chokehold so long as he could show that all officers always place suspects in a chokehold and that the practice was authorized by the city—in other words, that it was a policy); *Arcia*, 772 F.3d at 1341 (individual plaintiffs had standing to challenge a system that created a "realistic probability" that they would be purged from the voting rolls because of their demographic background even though it had not yet happened); *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) ("A plaintiff asserting standing to challenge a law before it has been enforced against him must show a 'credible fear' that the state or its agents will in fact enforce the law in his case. . . .A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past."). Thus, when seeking their CORs, Mr. Fields and Mr. Owens will certainly be required to pay the fee. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392, *certified question answered sub nom. Commonwealth v. Am. Booksellers Ass'n, Inc.*, 236 Va. 168, 372 S.E.2d 618 (1988) (finding the "threatened or actual injury" requirement is met when "the law is aimed directly at plaintiffs"); *Kiser*, 765 F.3d at 608 (finding a plaintiff has standing "when he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest'" that is "concrete" and not "speculative"). Thus, identified TN NAACP members with felony convictions in Rutherford County who intend to seek CORs and register to vote will imminently suffer the concrete and particularized injury of being charged a poll tax.

CKG 4852-3838-4862
2860000-008970

<u>Second</u>, TN NAACP members also satisfy the causation element of Article III standing. To have standing, "the injury has to be fairly traceable to the challenged action of the defendant." *Parsons*, 801 F.3d at 710 (quoting *Lujan*, 504 U.S. at 560-61). Plaintiffs satisfy this burden by alleging a "meaningful nexus" between public officials and their injuries. *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018) (citations omitted). The nexus here is clear: Defendant Harrell's office charges the alleged poll tax. Both of the members identified by TN NAACP intend to seek assistance from Defendant Harrell's office with their CORs—as directed by the Secretary of State's website and because, as a practical matter, she is the only official available to complete the portion of the COR regarding legal financial obligations—and will face her poll tax when they do. Fields Decl. ¶ 7; Owens Decl. ¶¶ 6-7. These allegations easily satisfy the "relatively modest" burden of showing causation at this stage of litigation. *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Defendant Harrell contends that these members' injuries are "self-inflicted" because "if Plaintiffs did not want to pay any alleged fee" they "could have . . . taken the appropriate statutory steps . . . and obtained a COR from the appropriate officials as provided in the restoration of voting rights statutes." Def. Br. at 17. But as alleged in TN NAACP's complaint, the issuing authorities named in Tenn. Code Ann. § 40-29-203(a) explicitly *direct* individuals seeking CORs to solicit information from circuit court clerks. Compl. ¶ 56. The COR form itself prohibits applicants from filling out any part of the form and requires that it be completed by a "proper authority/agent," including criminal court clerks. *Id.* Ex. A. Thus, individuals who come to Defendant Harrell's office seeking CORs are following state instructions and taking the only steps available to them. For those seeking CORs in Rutherford County, paying Defendant Harrell's poll tax is not a path of their choosing. Even if some of these individuals could find an alternative channel to seek a COR without paying the exaction, Defendant Harrell's poll tax nonetheless inflicts

CKG 4852-3838-4862
2860000-008970

unconstitutional injury. *See Harman v. Forssenius*, 380 U.S. 528, 542 (1965) (holding that a poll tax was unconstitutional even where the law had an alternative "escape hatch" allowing individuals to vote without paying it, because under the Twenty-Fourth Amendment "the poll tax is abolished absolutely as a prerequisite to voting, and no equivalent or milder substitute may be imposed").

Moreover, the fact that the COR statute "does not impose upon Defendant Harrell the duty to fill out COR forms" is irrelevant to the question at hand. Def. Br. at 18-19. This is because Defendant Harrell's office *does* participate in the state-directed COR process and *does* fill out COR forms, but only upon payment of a $25 per COR poll tax. Compl. ¶¶ 101, 102. To the extent Defendant Harrell engages in completing CORs, she must do so in a manner that comports with the U.S. Constitution. The injuries endured by members of TN NAACP with respect to its poll tax claim flow directly from Defendant Harrell's COR fee policy and therefore satisfy the requirements of Article III causation.

<u>Third</u>, TN NAACP members' injuries are redressable by this Court, satisfying the third element of Article III standing. TN NAACP members with criminal records in Rutherford County will be required to pay Defendant Harrell's COR fee to receive CORs and register to vote. *See, e.g.*, Fields Decl. ¶¶ 3, 5; Owens Decl. ¶¶ 3-4. An injunction enjoining imposition of the COR fee will remove this unconstitutional barrier and provide TN NAACP's members with "substantial and meaningful relief." *Parsons*, 801 F.3d at 715 (quoting *Larson v. Valente*, 456 U.S. 228, 243 (1982)); Compl. at 44. TN NAACP members therefore have standing in their own right.

### 2. The Interests TN NAACP Seeks to Protect Are Germane to Its Purpose.

To determine whether the interests an organizational plaintiff seeks to protect are germane to its purpose, courts examine the organization's history and constitution or mission statement. *See Int'l Union v. Brock*, 477 U.S. 274, 286 (1986). Defendant Harrell does not contest this element

of TN NAACP's standing. Enforcement of the Twenty-Fourth Amendment is plainly germane to the purpose of the TN NAACP, a state chapter of the nation's largest and most pre-eminent civil rights organization, which itself drove the passage of that very Amendment. Compl. ¶ 29. TN NAACP's mission is to "eliminate race-based discrimination through securing political, educational, social, and economic equality rights and ensuring the health and well-being of all persons." *Id.; see also id.* ¶¶ 32-35. A principal aim for the passage of the Twenty-Fourth Amendment was to stop poll taxes because they were used by states to deny Black men the right to vote. *See Harman*, 380 U.S. at 540. Eliminating poll taxes is undoubtedly part and parcel of TN NAACP's mission. *See Arcia*, 772 F.3d at 1341 (holding that enforcement of voting rights laws was germane to the purpose of organizations with "missions that include voter registration and education, or encouraging and safeguarding voter rights").

### 3. Participation of Individual TN NAACP Members Is Not Required.

The third prong of the associational standing test asks whether the claim asserted or relief requested requires the individual participation of an organization's members. *Hunt*, 432 U.S. at 343. This inquiry is prudential rather than jurisdictional. *United Food & Com. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553-554 (1996). It is also largely dependent on the nature of the relief sought. *Warth v. Seldin*, 422 U.S. 490, 515 (1975). Organizations seeking broad equitable remedies on behalf of their members satisfy this element under the assumption that injunctive or declaratory relief will "inure to the benefit of those members of the association actually injured." *United Food & Com. Workers*, 517 U.S. at 553-54; *Arcia*, 772 F.3d at 1342 ("[T]he declaratory and injunctive relief sought by the organizations does not require the individual participation of the organizations' members."). Here, the requested relief is an injunction enjoining Defendant Harrell's COR fee policy, Compl. at 44, and thus participation of individual members

10

is not required. TN NAACP therefore satisfies all three elements of associational standing to bring its poll tax claim against Defendant Harrell on behalf of its members.

### B. TN NAACP Has Organizational Standing in Its Own Right.

An organizational plaintiff also demonstrates standing in its own right by alleging an organizational injury in fact, causation, and redressability. *See Havens*, 455 at 379; *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013). To demonstrate injury in fact, an organization must allege either a "concrete and demonstrable injury to [an] organization's activities" or a "drain on the organization's resources." *Havens*, 455 U.S. at 379. Here, TN NAACP has standing in its own right to assert the poll tax claim against Defendant Harrell because her COR fee impedes the TN NAACP's mission and causes it to divert resources from its other core activities, TN NAACP's injuries are fairly traceable to Defendant Harrell, and its injuries would be redressed by an order of this Court.

The denial of CORs to those unable to pay a fee frustrates TN NAACP's ability to execute its mission of securing political rights for its constituents, which it attempts to achieve in part through voter registration. Compl. ¶¶ 29, 38. Its ability to register voters and integrate them into the political process is directly and concretely impeded when its constituents are unconstitutionally charged a poll tax and therefore cannot obtain the documentation they need (*i.e.*, a COR) to register to vote. Defendant Harrell's poll tax "perceptively impair[s]" the ability of TN NAACP, including its Rutherford County chapter, to carry out its voter registration and restoration work. *Id.* ¶¶ 34, 38; *see Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (holding that an organization suffered injury in fact where a challenged law made an organization's "overall task more difficult," including by "reduc[ing] the effectiveness of any given level of outreach efforts" (citing *Havens*, 455 U.S. at 379)). These impediments amount to

11

"concrete and demonstrable injur[ies] to [TN NAACP's] activities," and "far more than simply a setback to [its] abstract social interests." *Havens*, 455 U.S. at 379.

Additionally, Defendant Harrell's COR fee creates a drain on TN NAACP's resources, which "[t]he Supreme Court and this Circuit have found . . . constitutes a concrete and demonstrable injury for standing purposes." *Miami Valley*, 725 F.3d at 576 (citing *Havens*, 455 U.S. at 379). TN NAACP, including its Murfreesboro Chapter, regularly directs its limited personnel, time, and monetary resources towards voter registration, including helping constituents understand and navigate the COR process. Compl. ¶¶ 34, 37-38. Rutherford County's poll tax causes the TN NAACP to divert more of its resources towards rights restoration only to reap little reward when constituents cannot pay the poll tax to obtain CORs. *See id.* ¶ 37. This forces TN NAACP to divert its limited resources and "detracts from the core work of the TN NAACP," including its broader efforts to "eliminate race-based discrimination through securing political, educational, social, and economic equality rights and ensuring the health and well-being of all persons" and its aims to "empower the African American community in Tennessee[,] and pass policy reforms that improve the lives of its constituents." *Id.* ¶¶ 29, 37-39. Despite Defendant Harrell's urgings to the contrary, these allegations explain how her COR policy "diverts resources from [TN NAACP's] mission," and are more than sufficient to plead organizational injury. Def. Br. at 12.[3]

Finally, TN NAACP's claims also meet the causation and redressability requirements for

---

[3] Defendant Harrell makes two more unpersuasive claims regarding TN NAACP's organizational standing: first, that a diversion-of-resources theory of standing only applies to challenges to "newly enacted provisions," and second, that TN NAACP's injuries are self-inflicted because any resource diversions as a result of Defendant Harrell's poll tax are just expenditures in furtherance of its mission. *Id.* at 12-13. Plaintiffs directly address both of these claims, and the cases upon which they rely, in their opposition to State Defendants' motion to dismiss, which Plaintiffs incorporate here in full. *See* Pls.' Mem. Opp'n to Defs.' Mot. to Dismiss, ECF No. 29, at 7-9, n.4.

12

standing. For the reasons articulated above, *supra* Part I.A.1, TN NAACP's injuries are fairly traceable to Defendant Harrell's maintenance of the COR fee policy and redressable by this Court. For these and the aforementioned reasons, TN NAACP has standing to bring its poll tax claim, and this Court has jurisdiction.

## II.     Plaintiff TN NAACP Has Stated a Valid Poll Tax Claim.

The Twenty-Fourth Amendment provides that "[t]he right of citizens of the United States to vote . . . shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." U.S. Const. Amend. XXIV, § 1. This Amendment was enacted to ensure that states could no longer "exact[] a price for the privilege of exercising the franchise." *Harman*, 380 U.S. at 539. The Amendment's broad language—prohibiting both denial and abridgement of the franchise through either a poll tax or any other tax—is intended to prevent both "sophisticated as well as simple-minded modes of impairing the right guaranteed." *Id.* at 540-41. "Wealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process." *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 668 (1966). As such, no government official may "introduce wealth or payment of a fee as measure of a voter's qualifications," no matter how small the fee exacted. *Id.*

Defendant Harrell does not deny that her office requires applicants to pay a $25 fee to obtain a COR. Compl. ¶ 101. Instead, she argues Plaintiffs have failed to state a valid claim for three reasons: (1) the $25 fee her office imposes is not a poll tax and is instead merely compensation for the time and resources expended on issuing CORs, a function which is outside of her statutory mandate; (2) the protections of the Twenty-Fourth Amendment do not reach voters with past felony convictions whose rights can be restored under Tennessee law; and (3) Plaintiff

13

CKG 4852-3838-4862
2860000-008970

has failed to allege sufficient facts to make their claim. Each of these arguments, however, must fail.

First, Defendant Harrell's $25 COR fee is a poll tax. The Supreme Court has stated clearly that a tax to fund election administration is valid only "so long as it is not made a condition to the exercise of the franchise." *Harper*, 383 U.S. at 669. Under Tennessee law, would-be voters with past felony convictions require CORs to register to vote and cast their ballots. In Rutherford County, however, voters with past felony convictions cannot obtain a COR from Defendant Harrell—and therefore cannot register to vote and exercise the franchise—without paying a $25 fee. Thus, by placing paperwork (*i.e.*, the COR) that voters must obtain in order to register and vote behind a paywall, Defendant Harrell has levied a poll tax. Defendant Harrell's reliance on the poll tax to cover administrative expenses to justify her imposition of this poll tax is irrelevant: "[i]n this context—that is, as a condition of obtaining a ballot—the requirement of fee paying causes an 'invidious' discrimination." *Id*. at 668.

Moreover, as discussed above, *supra* Part I.A.1, the fact that "the statute . . . does not impose upon Ms. Harrell the duty to fill out COR forms," Def. Br. at 18, is irrelevant here. Because Defendant Harrell has decided to issue CORs and therefore to facilitate access to the franchise for COR-eligible voters, she must do so in a way that comports with the requirements of the U.S. Constitution. *Bush v. Gore*, 531 U.S. 98, 106 (2000).

Second, the Twenty-Fourth Amendment does not allow for the imposition of a poll tax on COR-eligible voters. Defendant Harrell's argument that the Twenty-Fourth Amendment does not apply in this context relies on two inapposite cases, *Johnson v. Bredesen*, 624 F.3d 742, 744 (6th Cir. 2010) and *Howard v. Gilmore*, 205 F.3d 1333, 2000 WL 203984 (4th Cir. Feb. 23, 2000), which concern challenges to states' eligibility criteria for rights restoration. In both *Johnson* and

CKG 4852-3838-4862
2860000-008970

*Howard*, plaintiffs were *ineligible* voters who challenged the constitutionality of requirements that they pay certain financial obligations in order to be eligible to have their rights restored. *Johnson*, 624 F.3d at 751 (holding that "[b]y exercising its 'power to fix qualifications,' Tennessee permissibly limits the vote to individuals without felony convictions, and lawfully conditions the restoration of voting rights on satisfaction of such court-ordered obligations that exist independently of the re-enfranchisement statute or any tax law violations"); *Howard*, 2000 WL 203984 at *2 (challenging a court fee that was imposed on disenfranchised individuals who sought to file discretionary petitions seeking the restoration of their rights).[4] By contrast, here, Tennessee law does not require people with felony convictions to pay Defendant Harrell's $25 fee in order to be eligible to have their rights restored, so the challenged fee certainly cannot be excused as an exercise of the State's "power to fix qualifications." *Johnson*, 624 F.3d at 751.

While the State has broad authority to fix voter qualifications, once the right to vote has been extended it must be administered in accordance with the Constitution. *Bush*, 531 U.S. at 104-05 ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). Defendant Harrell nevertheless claims "the Twenty-Fourth Amendment does not apply" because "Plaintiffs whose voting rights have been lawfully stripped have no right to vote." Def. Br. at 19. But this is incorrect. Tennessee law provides that voters who have been disenfranchised because of a previous felony conviction may register to vote and participate in the franchise upon meeting certain fixed criteria. Defendant Harrell seeks to impose a fee on these eligible voters' access to the franchise. This, the Twenty-Fourth Amendment will not countenance.

---

[4] *Howard v. Gilmore* is also, notably, an out of circuit *pro se* case that was disposed of with little reasoning and should therefore be entitled to less weight than Defendant suggests. *See* 2000 WL 203984 at *1.

CKG 4852-3838-4826
2860000-008970

Defendant Harrell's reliance on *Johnson v. Bredesen* for the assertion that the Twenty-Fourth Amendment does not apply in the rights restoration context is misplaced. The Sixth Circuit in *Johnson* did not establish rights restoration as a constitution-free zone. For example, while the court rejected the plaintiffs' Equal Protection claim on the merits, the Sixth Circuit did not question that the Equal Protection Clause was *applicable* in the rights restoration context. 624 F.3d at 746-50. With respect to other voting-rights amendments, including the Twenty-Fourth Amendment, *Johnson* cannot be read to suggest that they simply *never* apply the re-enfranchisement context. The Eleventh Circuit in *Jones v. Governor of Florida*, 975 F.3d 1016, 1040-41 (11th Cir. 2020) (en banc), explained why such a reading would be wholly illogical:

> [T]he State contends that the Twenty-Fourth Amendment "does not apply when the right to vote has been constitutionally forfeited." . . .
>
> The implication of that logic for the other voting-rights amendments shows why the State's argument is plainly wrong. If the voting-rights amendments protect only those with a pre-existing right to vote and do not apply to so-called "reenfranchisement laws," then a State would not violate the Fifteenth Amendment by denying that right to reenfranchisement only to black felons. A State also would not violate the Nineteenth Amendment by denying the right only to female felons. And it would not violate the Twenty-Sixth Amendment by denying the right only to younger felons. According to the State's logic, none of the voting-rights amendments would have anything to say about discriminatory "reenfranchisement" laws, because reenfranchisement is "an act of grace" extended to a class that has no cognizable rights. . . . Any of the discriminatory reenfranchisement laws described above would clearly violate the voting-rights amendments. . . .
>
> [J]ust as it would plainly violate the other amendments to reenfranchise only white, male, or 30-year old felons, it would also violate the Twenty-Fourth Amendment to reenfranchise only felons who pay a poll tax—that is, a tax on the franchise itself.

The Eleventh Circuit thus affirmed that "[t]he Twenty-Fourth Amendment plainly applies to felon reenfranchisement." *Id.* The *Jones* court went on to hold that conditioning re-enfranchisement on payment restitution and court costs did not violate the Twenty-Fourth Amendment because, in that case:

CKG 4852-3838-4862
2860000-008970

"The *reason* [the Florida laws] leave some felons disenfranchised—the justification for their continued disenfranchisement—is not their failure to pay a tax. It is instead Florida's legitimate interest in restoring to the electorate only fully rehabilitated felons who have satisfied the demands of justice. Because the justification for the voting qualifications in Amendment 4 and Senate Bill 7066 is a constitutionally legitimate interest and not the failure to pay a tax, they satisfy the requirements of the Twenty-Fourth Amendment.

*Id.* at 1045-46. Here, the *Jones* logic requires a finding of a poll tax violation. *Id.* at 1041 ("[J]ust as it would plainly violate the other amendments to reenfranchise only white, male, or 30-year old felons, it would also violate the Twenty-Fourth Amendment to reenfranchise only felons who pay a poll tax—that is, a tax on the franchise itself."). Defendant Harrell's fee is not tied to the State's power to set qualifications nor is it tied to any legitimate interest in "restoring to the electorate only full rehabilitated felons." *Id.* at 1046. The *reason* the COR fee leaves some felons disenfranchised is simply their failure to pay a tax.

The restitution and child support requirements upheld in *Johnson* are similarly akin to the requirements upheld in *Jones* and distinguishable from the poll tax here. Both restitution and child support payments are "legal financial obligations Plaintiffs themselves incurred" as part of a court-ordered debt to a victim that exists wholly independent of the rights restoration process. *Johnson*, 624 F.3d at 751. They are conditions on the franchise which the *Johnson* court held are a valid exercise of the State's "power to fix qualifications." *Id.* Defendant Harrell's $25 fee is not a preexisting debt one is independently obligated to pay; rather it is a fee that only applies to those seeking a COR so they can vote. Those forced to pay that fee meet all the requirements for a COR—of which the payment of a fee is not one—but Defendant Harrell has erected a financial barrier applicable only to those seeking a COR. As a clerk of court, Defendant Harrell has no power to fix qualifications, nor could such a fee function as a valid voter qualification because it serves no function other than as an impediment to the franchise. In other words, unlike the

CKG 4852-3838-4862
2860000-008970

exactions at issue in *Johnson*, the COR fee is precisely "the sort of tax[] the [Twenty-Fourth] Amendment seeks to prohibit." *Id.*

Furthermore, to adopt a narrow reading of the Twenty-Fourth Amendment in this context would go against its text and spirit. Defendant Harrell herself notes that the text of the Amendment "states, in pertinent part, that '[t]he *right* of citizens of the United States to vote . . . shall not be denied or abridged . . . by reason of failure to pay any poll tax or other tax,'" Def. Br. at 19 (quoting U.S. Const. Amend. XXIV, § 1). This text plainly does not limit the scope of its protection to the *constitutional* right to vote but also covers *statutory* rights to the franchise. It also enacts notably broad protections in a variety of circumstances, safeguarding not against only poll taxes, but any other tax that might deny or abridge a would-be voter's ability to participate in "any primary or other [federal] election," U.S. Const. Amend. XXIV, § 1, including a would-be voter's ability to obtain a COR so that they can register to vote. *See Harman*, 380 U.S. at 540-41 ("[T]he Twenty-fourth [Amendment] 'nullifies sophisticated as well as simple-minded modes' of impairing the right guaranteed."). The Supreme Court has only had one occasion to interpret the Twenty-Fourth Amendment, and it embraced a similarly expansive understanding of the scope of its protection, ultimately finding a law that perpetuated "the disenfranchising characteristics of the poll tax which the Twenty-Fourth Amendment was designed to eliminate" to be unconstitutional. *See id.* at 542.

Finally, Plaintiffs' allegations that Defendant Harrell's office charges $25 per COR and thus denies the right to vote to eligible individuals who fail to pay, Compl. ¶¶ 101, 150, 152-53, provide more than sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And though the Twenty-Fourth Amendment prohibits levying poll taxes on all voters, not just those who are indigent, Plaintiffs' complaint alleges that the COR fee is applied without a clear process for the

18

indigent to request a waiver of the fee. Defendant Harrell's contention that the complaint was "devoid of any allegations that Defendant Harrell or her office have refused to assist" indigent individuals is both inaccurate and not material to Plaintiffs' claim. Def. Br. at 21 n.14.

Because Plaintiff TN NAACP alleges that Defendant Harrell's $25 COR fee functions solely to impair otherwise qualified voters' ability to register to vote and participate in elections, it has sufficiently pled that the challenged fee constitutes a poll tax in violation of the Twenty-Fourth Amendment.

## CONCLUSION

For the reasons articulated herein, the Court should deny Defendant Harrell's motion to dismiss.

Dated: February 24, 2021

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Natasha Baker**
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org

* Admitted pro hac vice
** Application for admission *pro hac vice* pending

Respectfully submitted,

/s/ Charles K. Grant

Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Danielle Lang*
Mark P. Gaber*
Blair Bowie*
Aseem Mulji*^
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
Dlang@campaignlegal.org

19

^ Licensed in CA only; supervision by Mark P. Gaber, a member of the D.C. Bar

Mgaber@campaignlegal.org
Bbowie@campaignlegal.org
Amulji@campaignlegal.org

*Counsel for the Petitioners-Plaintiffs and the Putative Classes*

CKG 4852-3838-4862
2860000-008970

## CERTIFICATE OF SERVICE

I hereby certify under Rule 5 of the Federal Rules of Civil Procedure that on February 24, 2021, a true and exact copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant Harrell's Motion to Dismiss was served upon the following counsel of record by operation of the Court's electronic filing system:

> Nick C. Christiansen
> 16 Public Square North
> PO Box 884
> Murfreesboro, TN  37133
>
> Janet M. Kleinfelter
> Andrew B. Campbell
> Matthew D. Cloutier
> Kelly L. Groover
> Office of the Tennessee Attorney General
> Public Interest Division
> PO Box 20207
> Nashville, TN 37202

> ***/s/ Charles K. Grant***
> Attorney

21

CKG 4852-3838-4862
2860000-008970