IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE of the ) <br> NATIONAL ASSOCIATION for the ) <br> ADVANCEMENT of COLORED ) <br> PEOPLE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WILLIAM LEE, et al., ) <br> ) <br> Defendants. ) | NO. 3:20-cv-01039 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendants William Lee, in his official capacity as Governor of the State of Tennessee; Tony C. Parker, in his official capacity as Commissioner of the Department of Correction of the State of Tennessee; Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee; and Tre Hargett, in his official capacity as Secretary of State of the State of Tennessee (collectively the "State Defendants"). (Doc. No. 24). Plaintiffs filed a Response in Opposition (Doc. No. 29), and the State Defendants filed a Reply (Doc. No. 34). The State Defendants filed a Notice of Supplemental Authority (Doc. No. 73), and Plaintiffs filed a Response (Doc. No. 74). The State Defendants filed a second Notice of Supplemental Authority. (Doc. No. 79). And Plaintiffs filed a Notice of Supplemental Authority in Opposition to the Motion to Dismiss. (Doc. No. 82).

For the reasons discussed below, the State Defendants' Motion will be **GRANTED** in part and **DENIED** in part.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs challenge the constitutionality of Tennessee's process for restoring the right to vote after a felony conviction. Plaintiffs Curtis Gray Jr., John Weare, Benjamin Tournier, and Amanda Lee Martin (collectively the "Individual Plaintiffs") are all Tennessee residents and convicted felons. (Doc. No. 1 ¶¶ 40-44). Plaintiff Tennessee Conference of the National Association for the Advancement of Colored People ("TN NAACP") is a nonpartisan, multi-racial, non-profit membership organization headquartered in Jackson, Tennessee. (*Id*. ¶ 29).

The primary pathway to voting rights restoration in Tennessee is a Certificate of Restoration of Voting Rights ("COR"). (*Id*. ¶ 2). Individuals who meet certain eligibility criteria "may request, and then shall be issued, a certificate of voting rights restoration upon a form prescribed by the coordinator of elections[.]" Tenn. Code Ann. § 40-29-203(a); (Doc. No. 1 ¶ 23). Tennessee's rights restoration statute, Section 40-29-203(a), delegates the responsibility of issuing Certificates of Restoration of Voting Rights to the State Defendants, who together comprise the pardoning, incarcerating, and supervising authorities of the State. (*Id*. ¶ 51).

Defendant Governor Lee is the State's pardoning authority. (*Id*. ¶ 46). He also appoints the Commissioner of the Department of Correction. (*Id*.). Defendant Parker, the Commissioner of the Department of Correction, supervises the wardens, parole officers, agents, and other officers who are responsible for issuing Certificates of Restoration of Voting Rights to eligible persons. (*Id*. ¶ 47). Defendant Goins, the Coordinator of Elections, is responsible for creating the Certificate of Restoration of Voting Rights form and a written statement explaining the form and the procedure for voting rights restoration. (*Id*. ¶ 48). Defendant Goins is also responsible for coordinating implementation of the requirements of the National Voting Rights Act, 52 U.S.C. § 20501, *et seq*. (*Id*.). Defendant Hargett, the Secretary of State of Tennessee, appoints the

Coordinator Elections and may make regulations as necessary to carry out the election code. (*Id*. ¶ 49).

Under the State Defendants' application of the Certificate of Restoration of Voting Rights statutes there is no uniform procedure for potentially eligible Tennesseans to initiate a Certificate of Restoration of Voting Rights request with an impartial decisionmaker; no procedure requiring officials who are statutorily required to issue Certificates of Restoration of Voting Rights to provide an affirmative or negative determination of a person's eligibility; no procedure requiring the statutorily designated officials to explain a decision not to issue a Certificate of Restoration of Voting Rights; no state-level guidance or regulation to help county officials uniformly interpret and apply the statutory eligibility requirements; and no appeals process for individuals who believe they have been erroneously deprived of a Certificate of Restoration of Voting Rights. (*Id*. ¶¶ 53-85). Rather, according to Plaintiffs, the State Defendants' application of the Certificate of Restoration of Voting Rights statutes has created an arbitrary system where similarly situated Tennesseans – convicted of the same crime and who have served the same sentence – may be granted or denied access to the right to vote based entirely on the willingness of local and county-level officials to entertain Certificate of Restoration of Voting Rights requests, their varying interpretations of state law, and their processes for keeping and maintaining records. (*See id*.).

The Individual Plaintiffs all attempted to request Certificates of Restoration of Voting Rights using the State Defendants' process, but none of them were successful because of the State Defendants' failure to administer a standardized, accurate, and navigable process for eligible Tennessee citizens to request and be issued Certificates of Restoration of Voting Rights with safeguards against erroneous deprivation and non-arbitrary treatment. (*Id*. ¶¶ 40-44, 65, 78).

Additionally, the State Defendants' voter registration form does not accurately inform applicants of the voter eligibility requirements in Tennessee or how specific felony convictions impact eligibility to vote. (*Id*. ¶¶ 86-93). And the State Defendants have created a system that rejects voter registration applications from voters with previous felony convictions, even if those convictions were not disqualifying, and imposes additional documentation requirements on applicants who must appeal erroneous denials. (*Id*. ¶¶ 94-100). At least one county in Tennessee has a policy of charging citizens $25 to fill out each Certificate of Restoration of Voting Rights, effectively enacting a poll tax, and Defendant Goins has not issued written instructions stating that fees cannot be charged for the completion of a Certificate of Restoration of Voting Rights. (*Id*. ¶¶ 7, 101-102).

Plaintiffs filed this action against the State Defendants on December 3, 2020, alleging claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United Constitution (Counts 1-3), violations of the National Voting Rights Act ("NVRA"), 52 U.S.C. § 20501, *et seq*., (Counts 4-5), and claims under 42 U.S.C. § 1983 (Counts 6-7). Plaintiffs seek declaratory and injunctive relief. The State Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and, alternatively, for failure to state a claim.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id*.; *DLX, Inc.*

*v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *Gentek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999).

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

### III. ANALYSIS

In their motion to dismiss, the State Defendants first argue that, under Federal Rule of Civil Procedure 12(b)(1), this Court lacks subject jurisdiction because Plaintiffs lack standing and their

claims are barred by the Eleventh Amendment. The State Defendants then argue that Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim.

**A. Article III Standing**

Article III of the Constitution gives the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have Article III standing, a plaintiff must allege "(1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan*, 504 U.S. at 559-61). Standing is assessed under the facts existing when the complaint is filed. *See Am. C.L. Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004). "The standing inquiry is not a merits inquiry." *Gerber*, 14 F.4th at 505 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). Through the pending motion to dismiss, the State Defendants contest the first element of standing – injury in fact – as to all Plaintiffs' claims and traceability with respect to Counts 1-3.

   1. <u>Individual Plaintiffs (Counts 1-3)</u>

An injury capable of supporting Article III standing requires the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). To allege the invasion of a legally protected interest, "requires only that the plaintiff have a 'right to relief if the court accepts' the plaintiff's legal position about the meaning of a constitutional provision or a statute." *Gerber*, 14 F.4th at 507 (quoting *CHKRS*, 984 F.3d at 488).

Here, the Complaint alleges deprivation of a statutory right without due process and in a manner that results in arbitrary and unequal treatment. (Doc. No. 1 ¶¶ 112, 125, 130). These

pleaded injuries to constitutional rights are sufficient for the Individual Plaintiffs' due process and equal protection claims in Counts 1-3. *See Wright v. O'Day*, 706 F.3d 769, 771–72 (6th Cir. 2013). "As to traceability, a defendant's actions must have a 'causal connection' to the plaintiff's injury." *Gerber*, 14 F.4th at 505 (citing *Lujan*, 504 U.S. at 560). The Complaint alleges that the State Defendants caused Plaintiffs' due process and equal protection injuries by setting up an arbitrary process for requesting CORs. (Doc. No. 1 ¶ 57). These allegations satisfy the "relatively modest" burden of demonstrating Article III causation at this stage of litigation. "As to redressability, it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Gerber*, 14 F.4th at 505 (quoting *Lujan*, 504 U.S. at 561). If the State Defendants are required to implement a uniform, accessible, transparent, and appealable process for issuing CORs, then the harms that allegedly flow from the current system will be prevented, and thus Plaintiffs' claimed injuries redressed. The State Defendants' merit-based arguments concerning the Individual Plaintiffs' injuries in fact are not persuasive. *See CHKRS*, 984 F.3d at 488-89 (reversing district court that granted motion to dismiss for lack of standing for failure to allege a legally protectable interest because the trial court relied on merit-based precedent rather than cases articulating the requirements for Article III standing).

   2. <u>TN NAACP (Counts 1-7)</u>

Perceptible impairment to "the organization's activities" or a "drain on the organization's resources" qualify as concrete and demonstrable injuries for standing purposes. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013). In the present case, TN NAACP claims organizational injuries to sue on its own behalf.

One of TN NAACP's alleged core activities is voter registration, which requires it to distribute, use, and explain the state's voter registration form. (*See* Doc. No. 1 ¶ 38). The Complaint alleges that the State Defendants' failed administration of Tennessee's COR program has forced TN NAACP to "divert[] significant resources from its other activities related to its core mission in order to assist its constituents and other community members with the voting rights restoration process." (*Id.* ¶ 37). TN NAACP allegedly must "expend additional money and time helping individuals navigate a process that is designed to fail," "hold[] public education workshops trying to explain the COR process," undertake efforts to "tailor these [educational] events to what they understand the 'process' to be in each county," and "mak[e] phone calls and taxi[] [their] members between county offices," to counteract the systemic barriers that currently exist and to give its members and constituents an opportunity to seek CORs. (*See id.*). TN NAACP's injuries are allegedly exacerbated in Rutherford County by the Clerk requiring COR applicants to pay a fee. (*Id.*). At the motion to dismiss stage, these allegations are sufficient to establish injury in fact for Counts 1, 2, 3, and 7. The allegations that TN NAACP is injured when a person it helps register to vote is rejected despite being eligible because such denials cause it to divert significant time and resources to correct the error are sufficient to establish organizational injuries for Counts 4, 5, and 6. (*See id.* ¶ 38).

TN NAACP's alleged injuries underlying Counts 4-7 are traceable to Defendants Goins and Hargett; the Complaint alleges that Defendant Goins is responsible for coordinating implementation of the NVRA, issuing instructions for completion of CORs, and, under supervision of Defendant Hargett, implementing the unlawful policy of rejecting all voter registration applications by applicants with felony convictions. (*See* Doc. No. 1 ¶¶ 17, 151, 49, 95). As noted above with respect to the Individual Plaintiffs, if the State Defendants are required to implement a

8

uniform, accessible, transparent, and appealable process for issuing CORs, as Plaintiffs request, then the harms that allegedly flow from the current system will be prevented, and Plaintiffs' claimed injuries redressed.

The State Defendants' challenges to TN NAACP's standing are without merit. They contend that TN NAACP cannot establish standing based on direct harm because the alleged resource expenditures are (1) self-inflicted and (2) fall within its mission. (*See* Doc. No. 25-1 at 7-8 (citing *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020)). While the Sixth Circuit "has not addressed when an injury is self-inflicted," *see Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020), it is well-established that a plaintiff cannot create an injury "by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 400 (2013). However, *Clapper* is no bar to standing in the present matter as TN NAACP does not claim its resource expenditures were incurred based on a fear of future harm.

The State Defendants' second argument – that TN NAACP cannot establish standing based on direct harm because the alleged resource expenditures fall within its mission – has been expressly rejected by the Sixth Circuit:

> The Attorney General's sole rejoinder is that the Guild cannot point to its recent price-gouging expenditures to establish direct organizational standing because they fall within its mission to advocate for the interests of online merchants. To support this argument, he cites *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir.) (per curiam), cert. denied, —— U.S. ——, 141 S. Ct. 257, 208 L.Ed.2d 28 (2020), for the sweeping proposition that if an organizational plaintiff's new expenditures "are actually part of the organization's mission, then there is no diversion of resources and thus no injury-in-fact." Appellant's Br. at 14. But *Shelby Advocates* stands for no such thing, because that would contradict the various earlier—and thus controlling—cases to the contrary from this circuit, not to mention Supreme Court precedent, all of which affirm that within-mission organizational expenditures

9

> are enough to establish direct organizational standing. *See, e.g., Miami Valley Fair Hous. Ctr.*, 725 F.3d at 576 (concluding that an organization with a mission to "promote fair housing and eliminate housing discrimination" had direct standing to sue over an allegedly discriminatory housing advertisement); *Hous. Opportunities Made Equal, Inc.*, 943 F.2d at 646; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

*Online Merchants Guild v. Cameron*, 995 F.3d 540, 548–49 (6th Cir. 2021).

**B. Prudential Standing**

The State Defendants claim that TN NAACP lacks prudential standing to assert the rights of third parties. TN NAACP argues that it "seeks to vindicate the rights and interests of its members and constituents, with whom it has a strong identity of interests." (Doc. No. 29 at 17 (citing Doc. No. 1, ¶¶ 34-39)). "There is no prudential standing bar when member-based organizations advocate for the rights of their members." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021). Accordingly, the State Defendants' motion will not be granted on this ground.

**C. Eleventh Amendment Sovereign Immunity**

The State Defendants contend that Counts 1, 2, 3, 6, and 7 are barred by the Eleventh Amendment. "Eleventh Amendment '[s]overeign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court.'" *Courser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020) (quoting *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017)). Plaintiffs argue that these claims are not barred by the Eleventh Amendment and may proceed under the *Ex Parte Young* exception. (Doc. No. 29 at 19-20).

The *Ex parte Young* exception allows plaintiffs to bring "a suit challenging the constitutionality of a state official's action." *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). "To determine if *Ex parte Young* applies, a court 'need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.'" *Universal Life Church Monastery Storehouse v. Nabors*, 508 F. Supp. 3d 221, 236–37 (M.D. Tenn. 2020) (quoting *Boler*, 865 F.3d at 412) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Whether the state official's challenged action is actually inconsistent with federal law is not part of the inquiry into whether suit lies under *Ex parte Young*. *See Verizon*, 535 U.S. at 646 (rejecting suggestion that *Ex parte Young* did not apply because the order at issue was not inconsistent with federal law and stating that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."). The only relevant inquiry under *Ex parte Young* is whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *See id*. at 636.

Here, the State Defendants concede that the Complaint seeks prospective relief and alleges violations of the Due Process and Equal Protections Clauses of the Fourteenth Amendment (Counts 1-3), infringements on the fundamental right to vote (Count 6), and violation of the Twenty-Fourth Amendment (Count 7). This satisfies the inquiry. *See Verizon*, 535 U.S. at 645. Accordingly, the Court finds that the *Ex parte Young* exception applies to Counts 1, 2, 3, 6, and 7, and that they are not barred by the Eleventh Amendment.

**D. Merits**

    1. <u>Procedural Due Process Claims (Counts 1 and 2)</u>

"In general, procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Schulkers v. Kammer*, 955 F.3d 520, 545 (6th Cir. 2020) (citation and internal quotations omitted). "To establish a procedural due process violation, Plaintiffs must show (1) that they have been deprived of a cognizable liberty interest, and (2) that such deprivation occurred without adequate procedural protections." *Id*. The

11

State Defendants argue the Complaint fails to state a claim for procedural due process because procedural due process does not apply to the alleged liberty interest. Plaintiffs argue that the Complaint adequately alleges the deprivation of a state-created liberty interest to which due process applies.

"A liberty interest may arise from the Constitution itself … or it may arise from an expectation or interest created by state [or federal] laws or policies." *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "When… a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). In the present case, the Complaint alleges that the Tennessee legislature created a liberty interest in a COR for individuals who meet certain eligibility criteria. (Doc. No. 1 ¶ 115). The Complaint further alleges that "[t]he interest in a COR is significant because it is the key to exercising the fundamental right to vote." (*Id*. ¶ 116).

The State Defendants argue Plaintiffs' procedural due process claims should be dismissed because the Sixth Circuit "has held that the 'right to vote does not …implicate procedural due process.'" (Doc. No. 25-1 at 17 (quoting *League of Women Voters v. Brunner*, 548 F.3d 463, 479 (6th Cir. 2008)). However, "*Brunner* did not categorically bar procedural due process claims for voting rights cases []. Instead, the Court found that the procedural due process claim as alleged in the plaintiffs' complaint failed." *League of Women Voters of Ohio v. LaRose*, 489 F. Supp. 3d 719, 737 n.25 (S.D. Ohio 2020). Next, the State Defendants contend Plaintiffs' procedural due process claims should be dismissed under *Sandin v. Conner*, 515 U.S. 472, 484 (1995) because the alleged state-created liberty interest does not relate to freedom from restraint. In response, Plaintiffs argue that *Sandin* does not determine whether a state law establishes a liberty interest triggering due

process requirements outside of the context of prison regulations. The State Defendants filed a reply but did not respond to Plaintiffs' arguments. (*See* Doc. No. 34). Plaintiffs' interpretation of *Sandin* is consistent with Sixth Circuit authority:

> In *Sandin*, the only issue was the prisoners' right to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. The *Sandin* Court observed that it had previously employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." 515 U.S. at 481, 115 S.Ct. 2293. The Court abandoned this methodology, significantly limiting the authority of courts to find liberty interests stemming from positive state law in the prison context. Instead, it stated that the relevant inquiry must focus on the nature of the deprivation imposed on a prisoner, holding that if the nature of the deprivation does not impose an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," prisoners will not have a liberty interest in avoiding the deprivation.

*Bazzetta v. McGinnis*, 430 F.3d 795, 802 (6th Cir. 2005) (alterations in original); *see also Wilkinson v. Austin*, 545 U.S. 209, 222 (2005) ("In *Sandin*, we criticized [the methodology of parsing the language of particular prison regulations] as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons."); *Tony L. By & Through Simpson v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995) (citing *Sandin* as "reasoning that, in the prison context, the analysis should focus on the nature of the deprivation rather than the language of the regulation involved.").

The Court finds that the Complaint adequately alleges the deprivation of a state-created liberty interest to which due process applies. As such, the Court need not reach whether Plaintiffs have shown that a constitutionally protected liberty interest is also at stake, and the State Defendants' motion will be denied as to Plaintiffs' procedural due process claims.

13

### 2. Equal Protection Claim (Count 3)

"To establish an equal-protection violation, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Resurrection Sch. v. Hertel*, 11 F.4th 437 (6th Cir. 2021) (citation and internal quotations omitted). Here, the Complaint alleges that "Defendants' application of the COR statutes has created a system where similarly situated Tennesseans – convicted of the same crime and who have served the same sentence and met their relevant LFOs – may be granted or denied access to the right to vote based solely on the county of their felony conviction." (Doc. No. 1 ¶ 130). It further alleges that "[w]hether or not an eligible individual is able to request and be issued a COR and thereby regain their right to vote depends entirely on the willingness of local and county-level officials to entertain COR requests, their varying interpretations of state law (especially regarding LFO requirements), and their processes for keeping and maintaining records." (*Id.* ¶ 131). It also alleges that "the COR implicates an individual's right to vote" and that "Defendants cannot present even a rational basis for maintaining such a discriminatory system." (*Id.* ¶ 133).

The State Defendants first argue that the Complaint fails to state an equal protection claim against them because it alleges that local and county-level officials are treating individuals differently rather than the State. (*See* Doc. No. 25-1 at 21). Plaintiffs argue that the Complaint alleges that it is the State Defendants who deprive them of equal protection because it alleges that it is the State Defendants who have failed to provide statewide uniform standards and procedures to ensure the non-arbitrary treatment of COR applicants. (Doc. No. 29 at 30). The State Defendants do not argue otherwise in their reply. (*See* Doc. No. 34). Second, the State Defendants argue that the Complaint fails to state an equal protection claim because the right that is allegedly burdened

14

Case 3:20-cv-01039 Document 83 Filed 03/30/22 Page 14 of 18 PageID #: 466

by the State's disparate treatment – the right to vote – is not fundamental for individuals convicted of felonies. (Doc. No. 25-1 at 22 (citing *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010)). The Court need not reach this argument because, as the State Defendants concede, the Complaint alleges that the disparate treatment has no rational basis. (Doc. No. 1 ¶¶ 130-134). Accordingly, the State Defendants' motion will be denied as to Count 3.

        3. <u>National Voting Rights Act Claims (Counts 4 and 5)</u>

The National Voting Rights Act regulates voter registration. *See* 52 U.S.C. § 20501, *et seq*. The NVRA contains a civil enforcement provision that allows a person aggrieved by a violation to bring a civil action if they provide written notice of the violation to the chief election official of the State involved and the violation is not corrected within 90 days after receipt of the notice. *See* 52 U.S.C. § 20510(b).[1] The purpose of the NVRA's notice requirement is to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). The State Defendants move to dismiss TN NAACP's National Voting Rights Act claims (Counts 4 and 5) on the basis that it failed to provide statutory notice. (Doc. No. 25-1 at 22-26).[2] District courts have found notice sufficient "when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA

---

[1] This provision also creates a 20-day pre-suit notice period if the defendant's alleged violation occurs within 120 days of a federal election. 52 U.S.C. § 20510(b)(1). And it waives the notice period if the alleged violation occurs within 30 days of an election. *Id*. These provisions are inapplicable in the present case.

[2] While the State Defendants argue that TN NAACP does not have statutory standing to assert claims under the NVRA because it is an organization with unidentified members, they concede that this argument could "be fairly characterized as a lack of Article III standing based on the NAACP's failure to allege any injury to an identified member." (*See* Doc. No. 25-1 at 24 n.11; Doc. No. 34 at 7-9 n.3). The Court agrees that it has already determined that TN NAACP has Article III standing to pursue these claims.

and intends to commence litigation if the violation is not timely addressed." *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019) (collecting cases).

With respect to Count 4, the State Defendants do not dispute that TN NAACP sent them a letter setting forth reasons that they purportedly failed to comply with the NVRA, and clearly communicating that it was asserting a violation of the NVRA and intended to commence litigation if the violation is not timely addressed. (*See* Doc. No. 25-1 at 25). Instead, they assert that TN NAACP failed to provide the requisite statutory notice for the violation alleged in Count 4 because the form that was the subject of the notice letter is no longer in use. This contention fails to explain how the letter failed to provide the State Defendants with notice of the alleged violations in Count 4. Moreover, the State Defendants do not cite to any supporting authority for their position or defend it in their reply. The motion to dismiss will be denied as to Count 4.

As for Count 5, the State Defendants argue that TN NAACP's letter did not provide notice because it "makes no mention of the State's alleged practice of rejecting all registration forms on which the applicant affirmed that they have a felony conviction." (*See* Doc. No. 25-1 at 26). TN NAACP argues that its letter gave adequate notice of the violations at issue in Count 5 because they stem directly from the violations at issue in Count 4, which were described in the letter. (Doc. No. 29 at 35). The Court finds that TN NAACP's letter does not satisfy the NVRA's pre-suit notice requirement of giving sufficiently detailed notice of the NVRA violation. Accordingly, Count 5 will be dismissed without prejudice.

   4. <u>Section 1983 Claims (Counts 6 and 7)</u>

In Count 6, TN NAACP claims that Tennessee's practice of rejecting all voter registration forms on which the applicant affirmed that they have a felony conviction burdens eligible voters' fundamental right to vote in violation of the First and Fourteenth Amendments. The State

16

Defendants assert that the Court should not accept the foregoing factual allegation as true because it "cannot be squared with the State's existing voter-registration procedures and forms." (Doc. No. 25-1 at 27). Thus, the State Defendants ask the Court to construe the factual allegations in their favor rather than TN NAACP's. Such would be inappropriate at the motion to dismiss stage. Accordingly, the State Defendants' motion will not be granted on this ground.

In Count 7, TN NAACP alleges that Defendant Goins has failed to meet his statutory mandate to issue instructions for the COR by failing to specify that fees cannot be charged for completion of the COR. (Doc. No. 1 ¶ 151 (citing Tenn. Code Ann. § 40-29-205)).[3] The State Defendants argue this claim should be dismissed because Section 40-29-205 does not require Defendant Goins to issue instructions to the persons completing the COR. (Doc. No. 25-1 at 30 ("Thus, contrary to Plaintiff's assertions, Tenn. Code Ann. § 40-29-205 imposes no statutory duty on Coordinator Goins to issue instructions *to the person completing the form* that the statute does not authorize them to charge a fee.")) (emphasis in original). This argument does not support dismissal as it is premised on a mischaracterization of the allegations in the Complaint. Accordingly, the State Defendants' motion will not be granted on this ground.

---

3  Section 40-29-205 provides:

> The coordinator of elections shall prepare a certificate of voting rights restoration form and the written statement explaining the form and the procedure by which a person can apply for a voter registration card and become eligible to vote as required by this part. The coordinator shall be responsible for printing and distributing a sufficient number of the forms to the department of correction, the board of parole and any other authority that may discharge a person to whom this part applies.

## IV.     CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss will be **GRANTED** in part and **DENIED** in part. The motion will be granted as to Count 5 and will be denied as to all other Counts.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE