# **<u>EXHIBIT A</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

TENNESSEE CONFERENCE of the NATIONAL
ASSOCIATION for the ADVANCEMENT of
COLORED PEOPLE, on behalf of itself and its
members, and LAMAR PERRY, CURTIS GRAY Jr.,
JOHN WEARE, BENJAMIN TOURNIER, LEOLA
SCOTT, and REGINALD HENDRIX, for themselves
and those similarly situated,

                              Plaintiffs,

    v.

WILLIAM LEE, in his official capacity as Governor of
the State of Tennessee, LISA HELTON, in her official
capacity as interim Commissioner of the Department of
Correction of the State of Tennessee, MARK GOINS, in
his official capacity as Coordinator of Elections for the
State of Tennessee, and TRE HARGETT, in his official
capacity as Secretary of State of Tennessee,

                              Defendants.

Civil No. 3:20-cv-01039

JUDGE CAMPBELL
MAGISTRATE JUDGE
FRENSLEY

**[Class Action]**

## FIRST AMENDED COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiffs the Tennessee Conference of the National Association for the Advancement of

Colored People, Lamar Perry, Curtis Gray Jr., John Weare, Benjamin Tournier, Leola Scott, and

Reginald Hendrix ("Plaintiffs") bring this class action against Defendants William Lee, in his

official capacity as Governor of the State of Tennessee, Lisa Helton, in her official capacity as

Interim Commissioner of the Department of Correction of the State of Tennessee, Mark Goins, in

his official capacity as Coordinator of Elections for the State of Tennessee, and Tre Hargett, in his

official capacity as Secretary of State of the State of Tennessee, and allege the following:

1

CKG 4864-0573-6758
2860000-008970

## INTRODUCTION

1.      This case challenges the state of Tennessee's unequal, inaccessible, opaque, and error-ridden implementation of the statutes granting restoration of voting rights to citizens who lost the right to vote because of a felony conviction. Plaintiffs' claims arise under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the Twenty-Fourth Amendment of the United States Constitution. Plaintiffs also challenge aspects of the voter registration process for individuals with felony convictions under the National Voter Registration Act ("NVRA").

2.      The primary pathway to voting rights restoration in Tennessee is a Certificate of Restoration of Voting Rights ("COR"). Tennessee law makes clear that an individual who meets certain criteria—including completion of sentence and certain legal financial obligations—has a statutory right to a COR. The legislature intended the COR system to streamline and make uniform and objective the voting rights restoration process, which had previously primarily depended on judicial discretion. The legislature assigned Defendants responsibility for managing the COR process. But due to Defendants' failure to administer the law properly, the process is far from streamlined, uniform, or objective. It is opaque, decentralized, inaccurate, and inaccessible.

3.      By statute, if a COR is requested by an eligible Tennessean, it must be completed by an official of the "pardoning authority or incarcerating authority"—meaning the Governor or the Tennessee Department of Corrections ("TDOC"). But neither the Governor nor TDOC has implemented adequate policies, guidance, or directives to comply with that statutory mandate.

4.      Many eligible and potentially eligible Tennesseans have nowhere to go to begin the COR process, except to embark on what is often a wild-goose chase to find a local official willing to complete their COR. If they are actually able to find an official who will consider completing

CKG 4864-0573-6758
2860000-008970

the COR, there are no uniform procedures for determining if that person meets the eligibility criteria. A person with the same facts surrounding their conviction and service of the terms of their sentence may get a different result depending on their county of conviction and which official in that county is making the determination of their eligibility. A refusal to fill out the COR comes with no statement of reasons; the person is simply turned away. There are no means to appeal.

5.     This lack of guardrails and uniform policies creates a high risk of erroneous deprivation of the statutory right to a COR. Indeed, erroneous deprivation of CORs occurs regularly.

6.     Tennessee has created a statutory right to a COR for individuals who meet certain criteria and who request a COR from a designated issuing authority, but Defendants collectively deprive individual plaintiffs and those similarly situated of those CORs, and the right to vote that a COR restores, without due process.

7.     Moreover, this error-ridden decentralized process also creates a risk of erroneous *issuance* of CORs. Many Tennesseans have been issued CORs by Defendants which contain incorrect information. Worse still, at least one Tennessean has been prosecuted for a felony for submitting a COR completed by Defendant TDOC with incorrect information and initially sentenced to six years and one day in state prison. That conviction was overturned because it was discovered that unproduced evidence showed TDOC had conducted an internal investigation and found that its own officer was negligent in issuing the COR.  Whether Defendant's inadequate procedures lead to an erroneous denial or erroneous issuance, Tennesseans attempting to restore their voting rights are liable for the cost of the mistake.

3

8. The implementation failures of the rights restoration process create an unequal, scattershot system across Tennessee's ninety-five counties, causing disparate results for similarly situated individuals, in violation of the Equal Protection Clause.

9. Furthermore, elements of Tennessee's voter registration process violate the NVRA and create additional, unnecessary barriers to the franchise for individuals with felony convictions even when they never lost the right to vote or have already had their voting rights restored.

10. These constitutional and federal law violations injure Plaintiffs and members of organizational Plaintiff, the Tennessee Conference of the National Association for the Advancement of Colored People, some of whom have been disenfranchised and seek to restore their rights, others of whom never lost the right to vote but are unable to register to vote because of their non-disqualifying felony convictions. These constitutional and NVRA violations also injure the organization itself by requiring it to divert resources from its other core priorities to provide supplementary assistance to individuals seeking rights restoration and voter registration, often without success.

11. Defendants must implement constitutionally sufficient procedures so that Tennesseans who meet the statutory requirements may receive their CORs and exercise their right to vote.

## JURISDICTION AND VENUE

12. This action is brought under 42 U.S.C. § 1983, 52 U.S.C. § 20507 (the National Voter Registration Act), and the United States Constitution. This Court therefore has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

13. This Court has personal jurisdiction over each Defendant because each is a citizen of Tennessee or has his or her principal place of business in the State.

CKG 4864-0573-6758
2860000-008970

14. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because some Defendants reside in this District and all Defendants reside in Tennessee, and because a substantial portion of the events giving rise to these claims occurred in the Middle District of Tennessee.

## LEGAL FRAMEWORK

15. The Tennessee Constitution permits the state legislature to disenfranchise citizens upon "conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." Tenn. Const. art. I, § 5. This provision is not self-executing, and disenfranchisement cannot be applied retroactively. *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983). Thus, persons convicted of crimes are not disenfranchised unless prior to their conviction the legislature has by law "ascertained" that those crimes are infamous and "declared" that conviction of those crimes results in loss of the right to vote.

16. Before January 15, 1973, the legislature defined a specific class of infamous crimes that resulted in disenfranchisement. A conviction before January 15, 1973 only disqualifies a person from voting if the conviction is for one of approximately twenty specific crimes listed in state law at the time *and* the judgment of conviction included a statement rendering the crime "infamous."

17. Between January 15, 1973 and May 17, 1981, Tennessee had no law on the books stating that convictions for infamous crimes result in disenfranchisement. *See Crutchfield v. Collins*, 607 S.W.2d 478, 482 (Tenn. Ct. App. 1980). Thus, felony convictions during this "grace period" *never* disqualify a Tennessean from voting. An otherwise qualified person with convictions only from this period has never lost the right to vote and is eligible to register and vote.

18. For convictions on or after May 17, 1981, the legislature defined "infamous crimes" to mean *all* felonies. Tenn. Code Ann. § 40-20-112. All felony convictions from May 17, 1981

5

on—whether by a Tennessee court, a court in another state, or a federal court—result in loss of the right to vote, until that right has been restored. *Id.* at § 2-19-143.

19.      A select few felony convictions *permanently* strip a person of their right to vote with no possibility of restoration, including convictions:

a.      after July 1, 1986 for first-degree murder, aggravated rape, treason, or voter fraud;

b.      between July 1, 1996 and July 1, 2006 for any degree of murder or rape, treason, or voter fraud; and

c.      after July 1, 2006 for any degree of murder or rape, treason, voter fraud, bribery under Tenn. Code Ann. § 39-16-1, misconduct involving a public official or employee under *id.* § 39-16-4, interference with government operations under *id.* § 39-16-5, or any felony sexual offense under *id.* § 40-39-202 where the victim was a minor. *Id.* § 40-29-204.

20.      Like its felony disenfranchisement rules, Tennessee's rights restoration process has also changed over the years. From 1981 to 2006, for most disqualifying convictions, the primary avenue to restore the right to vote was to seek a court order upon completion of the maximum sentence, or upon receiving a pardon. *See* Tenn. Code Ann. §§ 40-29-101, 2-19-143.

21.      In 2006, the Tennessee legislature created a new administrative pathway for those eligible citizens to restore their right to vote by seeking a Certificate of Restoration of Voting Rights (COR). 2006 Tenn. Pub. Acts c. 860 (codified at Tenn. Code Ann. § 40-29-201 *et seq.*).

22.      A person disenfranchised due to felony convictions after May 18, 1981 is *entitled* to voting rights restoration by COR if they meet four requirements:

a.      First, the person must have "(1) [r]eceiv[ed] a pardon, except where the pardon contains special conditions pertaining to the right of suffrage; (2) [been] discharge[d] from custody by reason of service or expiration of the maximum sentence imposed by the court for the

CKG 4864-0573-6758
2860000-008970

[disqualifying felony]; or [have been] granted a certificate of final discharge from supervision by the board of parole pursuant to § 40-28-105, or any equivalent discharge by another state, the federal government, or county correction authority." Tenn. Code Ann. § 40-29-202(a). In other words, the person must have finished their sentence and/or have been discharged from supervision

b.      Second, the person must have "paid all restitution . . . ordered by the court as part of the sentence" and "all court costs assessed against the person at the conclusion of the person's trial, except where the court has made a finding at an evidentiary hearing that the applicant is indigent at the time of application." *Id.* § 40-29-202(b). While the statute requires payment of restitution and court costs related to felony convictions (absent a declaration of indigency), it does *not* require payment of any criminal fines or other legal financial obligations not considered restitution or "court costs." Nor does it require payment of any legal financial obligations ("LFOs") related to misdemeanor convictions, civil violations, or fees associated with supervision or debts otherwise imposed after "the conclusion of the person's trial."

c.      Third, the person must be "current in all child support obligations." *Id.* § 40-29-202(c).

d.      Fourth, the person may not have been convicted of certain serious crimes, which vary based on the date of the conviction. *Id.* § 40-29-204; *see supra* paragraph 19.

23.      A person who meets these eligibility requirements has a right to "request, and then *shall* be issued," a COR. *Id.* § 40-29-203(a) (emphasis added).

24.      Tenn. Code Ann. § 40-29-203(a) names the categories of officials who must issue CORs upon request by eligible persons: "(1) [t]he pardoning authority; (2) [t]he warden or an agent or officer of the incarcerating authority; or (3) [a] parole officer or another agent or officer of the

CKG 4864-0573-6758
2860000-008970

supervising authority." This list encompasses the Governor (the pardoning authority) and officials within TDOC (the incarcerating and supervising authority).

25.     The Coordinator of Elections is required to create the COR form along with a statement adequately explaining the form and procedure for voting rights restoration. *Id.* § 40-29-205. The Coordinator of Elections is also responsible for printing and distributing the form to TDOC and the other supervising and pardoning authorities. *Id.*

26.     A COR serves as "sufficient proof that the person . . . is no longer disqualified from voting by reason of having been convicted of an infamous crime." *Id.* § 40-29-203(c). In other words, a validly issued COR indicates that a person has regained their right to vote.

27.     After requesting and being issued a completed COR, a person seeking to exercise their right to vote must submit the COR to the election administrator in the county where the person intends to register to vote. *Id.* § 40-29-203(d). The county election administrator must send the COR to the state Coordinator of Elections, who determines whether the COR was lawfully issued and notifies the county election administrator of that decision. *Id.* If the COR is approved, the person may submit a voter registration application and, once registered, exercise their right to vote. *Id.*

28.     Under this statutory framework, tens of thousands of Tennesseans are eligible for a COR and, as a matter of law, have a statutory right to restore their right to vote upon request. And state law places a mandatory duty to issue CORs to eligible citizens squarely on Defendants. But Defendants have failed to administer the straightforward process set forth in Tennessee law, leaving eligible citizens to chase down various local and county-based officials to request CORs and endure a system that is unequal, inaccessible, opaque, and inaccurate. The problems with Defendants' COR system are avoidable and easily fixed. Until those remedies are implemented,

8

Tennesseans attempting to restore their voting rights will be subject to a system lacking the minimum safeguards of due process, and fully eligible Tennesseans will be erroneously denied restoration of their voting rights. This suit seeks to compel Defendants to administer the COR system in a manner that passes constitutional muster.

<u>**PARTIES**</u>

**I.     Plaintiffs**

**A.  Organizational Plaintiff**

29.     Plaintiff the Tennessee State Conference of the National Association for the Advancement of Colored People ("TN NAACP") is a nonpartisan, multi-racial, non-profit membership organization headquartered in Jackson, Tennessee and is the state's chapter of the largest and most pre-eminent civil rights organization in the country. The TN NAACP was founded in 1946 to serve as the Tennessee arm of the National Association for the Advancement of Colored People. Its mission is to eliminate race-based discrimination through securing political, educational, social, and economic equality rights and ensuring the health and well-being of all persons.

30.     The TN NAACP has three regional divisions—Eastern, Middle, and Western Tennessee—as well as the 33 local branch units and 22 college chapters and youth councils. The TN NAACP and most of its local branch units are primarily volunteer-run, and all officers are volunteers. In total, the TN NAACP has more than 10,000 members across the state.

31.     More than 90% of the TN NAACP's membership is Black.

32.     Black voters in particular have long been silenced by Tennessee's felony disenfranchisement regime. During Reconstruction "[d]enying African Americans citizenship due to criminal convictions, thereby rendering them legally infamous, was part of the larger effort to

9

save the status quo of white supremacy in the South."[1] The 1870 Tennessee Constitution, enacted shortly after the passage of the Reconstruction Amendments, denied the right to vote to anyone convicted of "infamous crimes," a phrase which is still the basis for disenfranchisement in the state today.

33.     Tennessee's felony disenfranchisement law continues to have a disparate impact on Black Tennesseans. Black people make up 16% of the state's total voting-age population, but account for 39% of its disenfranchised population.[2] Of the state's 451,000 disenfranchised citizens, nearly 175,000 are Black, accounting for more than 21% of the Black voting-age population—one of the highest rates of Black disenfranchisement in the United States.[3] Tennessee's felony disenfranchisement laws also disenfranchise nearly 11% of the state's Latino voting-age citizens, the highest rate of Latino disenfranchisement in the country by a significant margin.[4]

34.     More than 81% of Black Tennesseans who have lost the right to vote are post-sentence, meaning they may be eligible for CORs.[5] Because of the demographic its membership represents, there is a high statistical probability that numerous TN NAACP members are disenfranchised and have a statutory right to a COR, but are unable to vindicate that right because of Defendants' failure to institute due process. The TN NAACP has an active chapter in Murfreesboro, Rutherford County. There is also a high statistical probability that many TN NAACP members had felony convictions only during the "grace period," between January 15,

---

[1] *See* Pippa Holloway, *Living in Infamy: Felon Disenfranchisement and the History of American Citizenship* 12 (2014).
[2] Sentencing Project, *Locked Out 2020: Estimates of People Denied Voting Rights Due to a Felony Conviction*, at 17 (Oct. 30, 2020), https://www.sentencingproject.org/publications/locked-out-2020-estimates-of-people-denied-voting-rights-due-to-a-felony-conviction/.
[3] *Id.* at 18.
[4] *Id.*
[5] *Id.*

10

1973 and May 17, 1981, meaning they never lost the right to vote but are still unable to register using the Tennessee state voter registration form or the online registration form.

35.    Through its rights restoration work, TN NAACP is aware of members who are eligible for CORs and have requested them but have not received them. It is also aware of members who were convicted of felonies only during the grace period, and therefore have never lost the right to vote, but have been denied voter registration.

36.    TN NAACP members who are disenfranchised but have a statutory right to a COR (or may have a statutory right to a COR) are harmed by their inability to request and be issued a COR pursuant to Tennessee law. Defendants' failure to administer the COR process deprives TN NAACP members of their right to vote and inflicts harm on these members each time an election passes in which they are not allowed to cast a ballot.

37.    The TN NAACP diverts significant resources from its other activities related to its core mission in order to assist its constituents and other community members with the voting rights restoration process. The lack of procedural due process in Defendants' administration of CORs forces the TN NAACP to expend additional money and time helping individuals navigate a process that is designed to fail. Staff and volunteers spend significant time and money holding public education workshops trying to explain the COR process. They must tailor these events to what they understand the "process" to be in each county. Assisting individuals seeking a COR may take dozens of hours and be spread across many months. It requires spending time and money-making phone calls and taxiing those members between county offices, often to no avail. The time and money spent navigating the COR process detracts from the core work of the TN NAACP.

38.    The TN NAACP also expends significant resources helping its members register to vote, almost exclusively using the Tennessee state voter registration form or directing them to the

CKG 4864-0573-6758
2860000-008970

online registration portal. But the Tennessee state voter registration form and online portal are designed to exclude individuals with felony convictions, even if they have the right to vote. The TN NAACP is injured when a person they identify and help register to vote is rejected despite being eligible. When this occurs, the TN NAACP must conduct extensive follow up, including spending additional time and resources troubleshooting the problem which may include seeking very old court records that are not easily accessible. Often these efforts will not be enough to correct erroneous denials of CORs, voter registration, and the right to vote.

39.     The TN NAACP's political power is diminished by the inability of its members and its constituency to vindicate their statutory right to a COR and their right to vote. The TN NAACP's core mission is to empower the African American community in Tennessee and pass policy reforms that improve the lives of its constituents.

**B. Individual Plaintiffs**

40.     Plaintiff Lamar Perry is a resident of Shelby County, Tennessee. In 2006, Plaintiff Perry was convicted of three counts of  felony Forgery of $1,000 or less. He served two years on probation. In 2013, he went through a second-chance program. At the conclusion of that program, he learned of the availability of the COR to restore voting rights in Tennessee. Eager to do so, Plaintiff Perry sought a COR but was told he did not qualify because he had been assessed $3,288.10 in LFOs. . Plaintiff Perry was surprised to learn that he owed these LFOs. Still, he worked to pay down this debt. In 2020, Plaintiff Perry, believing his debt to be fully paid, again sought a COR. Because probation officers in Shelby County routinely refuse to fill out CORs, Plaintiff Perry sought his COR from the Shelby County Clerks of Criminal Court, which will sometimes complete CORs upon request. In August 2020, the Shelby County Clerk of Court's office refused to fill out his COR, stating by email that he still owed "$1,160.10 in court costs" on his case. At the time of the original filing in this case, however, his records showed that his only

CKG 4864-0573-6758
2860000-008970

outstanding LFO was a criminal fine of $952.10. Under Tennessee law, fines are *not* required to be paid to qualify for a COR, only court costs and restitution. *See supra* paragraph 22.b. Plaintiff Perry was wrongly denied a COR in time to register to vote for the 2020 Presidential Election. Defendants have provided no specific statement of reasons for the denial of Plaintiff Perry's COR on the basis of an outstanding fine and no means for Plaintiff Perry to appeal the Shelby County Clerk's refusal to complete his COR despite his eligibility.

41.     Plaintiff Curtis Gray Jr. is a resident of Shelby County, Tennessee. In 1989, Mr. Gray was convicted of one count of drug possession in Shelby County. He wishes to vote but Shelby County officials refuse to issue him a COR because of alleged outstanding LFOs. His court records show that he owes only $279.00 in court costs and no restitution. However, officials in the Shelby County clerk of court's office have stated by email that he must pay more than twice that amount, which appears to include $500 clearly labeled as a "fine." Tennessee law does not require payment of fines to be eligible for a COR. *See supra* paragraph 22.b. Defendants have provided no statement of reasons explaining the reasons for the denial of Plaintiff Gray's COR on the basis of an outstanding fine and no means for Plaintiff Gray to appeal the Shelby County Clerk's assessment of what he must pay to receive his COR.

42.     Plaintiff John Weare is a resident of Lewis County, Tennessee. He wishes to restore his right to vote in Tennessee but has been unable to acquire a COR, or, in the alternative, a denial of a COR and a statement of reasons that would allow him to understand or appeal such a denial. Instead, he has been passed from agency to agency, spending countless time waiting on hold or being hung up on, only to be told that no one is willing to fill out his COR. In 1997, Mr. Weare was convicted of aggravated assault in Maricopa County, Arizona, and of aggravated assault on a minor in Yuma County, Arizona in 2003. He has completed all terms of his sentence and does not

CKG 4864-0573-6758
2860000-008970

believe that he owes any court costs or restitution. Plaintiff Weare has asked multiple officials, including clerks and probation officers in Maricopa and Yuma Counties, to fill out his COR but none has agreed or given him written denial. He has no means to appeal these non-decisions. The officials he has spoken with have directed him instead to Arizona's rights restoration process which involves a court petition in Arizona state court that would not achieve recognition of his right to vote in Tennessee. The Governor of Tennessee has the power to grant clemency to Plaintiff Weare for purposes of restoring his right to vote, and is therefore "a pardoning authority" for purposes of Tenn. Code Ann. § 40-29-202; however, there is no mechanism for Plaintiff Weare to request a COR from the Governor.

43.     Plaintiff Benjamin Virgil Tournier is a resident of Jackson, Madison County, Tennessee. For many years, Plaintiff Tournier believed that he was permanently barred from the franchise because he was convicted of theft of $1,000-$2,000 in Yavapai County, Arizona in 1997 and drug possession and forgery in Maricopa County, Arizona in 2000 and 2001. But in 2020, he learned that he may be eligible for rights restoration and, if so, could register to vote by seeking CORs for his convictions and submitting them to his county election commission. It is his understanding that he would need one COR completed for each of his felony convictions, although this is an outstanding question that Defendants have failed to clarify. Three days after being released from prison in Arizona for his forgery conviction, Plaintiff Tournier moved to Tennessee through an interstate compact to be with his mother. He completed parole in Tennessee in 2003 under the authority of the Tennessee Department of Corrections. He does not believe he owes (and his records do not show) any outstanding court costs or restitution on his Maricopa County felony conviction. However, he and his advocates' attempts to find an official in Maricopa County willing to complete the COR have failed. Officials in probation and the county clerk's office have

14

CKG 4864-0573-6758
2860000-008970

repeatedly referred him to Arizona's rights restoration process by petition to a court. Completing that process would be burdensome and pointless because, according to the Tennessee Secretary of State's Elections Division, it would not restore his right to vote in Tennessee. He has received no official denial from Maricopa County, has no more officials to ask, and has no means to appeal his inability to receive a COR from Maricopa County. Since he served out his sentence on his conviction from Maricopa County under the supervision of TDOC, under law, he should be able to request a COR from a Tennessee probation officer. However, he has been unable to obtain a COR from the probation office in Madison County. Upon going in person to request a COR, Plaintiff Tournier was told to fill out the top portion of the form (despite the instructions on the form that it is not to be filled out by the applicant) and to leave it there to be filled out by an officer. He was told they will only fill out the half of the form then he must bring it to the Madison County Clerk of Court to complete the rest. The Clerk of Court in Madison County will not have a record of Plaintiff Tournier's conviction, however, because it originated in Maricopa County, Arizona. Therefore, even if he received the partially filled out form – which he still has not - he will still need to an official in Maricopa County to complete the rest, which they have already refused to do. Additionally, Plaintiff Tournier's attempts to find an official willing to complete a COR in Yavapai County led to the discovery that he has outstanding LFOs in that county. The Yavapai County Clerk has reported that Plaintiff Tournier still owes $1,855 in "probation fees and attorneys' fees." He does not owe any child support obligations. It is not clear based on Yavapai's categorization of these obligations whether they would be considered "court costs" for purposes of the Tennessee COR requirements. He has no means by which to seek a determination on that matter. The Governor of Tennessee has the power to grant clemency to Plaintiff Tournier for his convictions for purposes of restoring his right to vote, and is therefore "a pardoning authority," for

CKG 4864-0573-6758
2860000-008970

purposes of Tenn. Code § 40-29-202, however, there is no mechanism for Plaintiff Tournier to request a COR from the Governor.

44. Plaintiff Leola Scott is a resident of Dyer County, Tennessee. She is a member of and the Civic Engagement Chair for the Dyersburg Chapter of the Tennessee NAACP. In that capacity, she helps NAACP members and constituents attempt to restore their voting rights. She is also working to restore her own right to vote by seeking a COR. In 1992, Plaintiff Scott was convicted of Fraudulent Use of Credit Cards and Drug Possession in Dyer County. In 2004, she was convicted of felony evading arrest also in Dyer County. It has been nearly 20 years since her last felony conviction. She has since served all time and supervision imposed on those convictions. In 2022, she attempted to restore her voting rights by asking a probation officer in Dyer County for a COR. The officer filled out the top half of three CORs for her three felonies in Dyer County. The officer would not complete the bottom half of the forms. Plaintiff Scott took the three partially completed CORs to the Clerk of Court in Dyer County, who completed them. The clerk certified that Plaintiff Scott owed no court costs or restitution on one, but added notes on the other two CORs stating "court costs still owed." On request, the clerk provided her with a printout of her LFOs on those two cases. One shows an outstanding balance of $93 which appear to be for "clerk data processing" and "sheriff data processing." The total legal debt she paid on that case includes obligations labeled as "state litigation," "officer," and "judgement," among others. The other case shows an outstanding balance of $2,297. This sheet shows similar categories of debt, but also includes $2,000 labeled as a fine. The court did not provide her of an explanation of which of these obligations are considered court costs for purposes of Tenn. Code Ann. § 40-29-202(b). Instead, the clerk orally stated that she would need to pay all debts to complete those CORs. Plaintiff Scott believes that the summation of LFOs is in error and that payments she made to her community

16

supervision officer were not properly accounted for. If there were an appeal process, Plaintiff Scott would appeal. Absent that, she is unable to get CORs—— or written statements of denial related to these convictions, preventing restoration of her voting rights.

45.     Plaintiff Reginald Lamar Hendrix is a resident of Nashville, Davidson County, Tennessee. Mr. Hendrix is a small business owner who takes care of his 92-year-old mother and enjoys playing jazz in his free time. He is also attempting to restore his right to vote through the COR Process. Mr. Hendrix struggled with drug addiction and was convicted of a series of drug and theft crimes in Williamson and Davidson Counties over a roughly fifteen-year period starting in his early thirties. None of his convictions are for permanently disqualifying crimes listed under Tenn. Code § 40-29-202. His most recent felony conviction occurred in 2012. He was released from supervision in 2016 and has since changed his whole life. He knew that he had lost his voting rights and that there was a process to restore them, but his pursuit of restoration has been long and complicated. He requested a COR from the parole and probation office in Williamson County and was given two completed CORs covering his five convictions in that county. He submitted those to the elections office in Davidson County, where he resides. On May 13, 2022, the Elections Division denied restoration of Mr. Hendrix's voting rights, stating that the reason for denial was "additional convictions not listed on COR." This rejection is not a determination of his eligibility under the criteria for issuance of a COR and restoration of voting rights listed in Tenn. Code Ann. § 40-29-202. Plaintiff Hendrix has requested CORs for his Davidson County convictions from the Davidson County probation office, but to date he has not received the requested CORs nor denials of his requests. If they are not provided to him in time to submit to the Davidson County election office, or transmitted directly to that office, before the voter registration deadline on October 11, 2022, Plaintiff Hendrix will not be able to vote in the November 2022 elections.

17

46.     Plaintiffs Perry, Gray, Weare, Tournier, Scott, and Hendrix ("Individual Plaintiffs") seek to represent the class of similarly situated Tennessee residents as defined below.

## II.     Defendants

47.     Defendant William Lee is the Governor of Tennessee ("the Governor") and is sued in his official capacity. The Governor is Tennessee's chief executive, must "take care that the laws be faithfully executed," and has the "power to grant . . . pardons" to any individual convicted of a crime. Tenn. Const. art. III, §§ 1, 6, 10. The Governor also appoints the Commissioner of the Department of Correction who holds the office at his pleasure. Tenn. Code Ann. § 4-3-112.

48.     Defendant Lisa Helton is the interim Commissioner of the Department of Correction ("the Commissioner") and is sued in his official capacity. The Commissioner is the executive officer of TDOC and is charged with the department's general management. *Id.* §§ 4-3-111, 4-3-603. As interim Commissioner, Helton supervises the wardens, parole officers, probation officers, managers, agents, contractors, and other officers who are responsible for issuing CORs to eligible persons. *Id.* §§ 40-29-203(a), 4-6-107, 4-3-602.

49.     Defendant Mark Goins is the Coordinator of Elections for Tennessee ("the Coordinator") and is sued in his official capacity. The Coordinator is the head of the Tennessee Secretary of State's Election Division (the "Election Division"), "the chief administrative election officer of the state," and charged with "obtain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of the election code." *Id.* § 2-11-201(b); *see also id.* §§ 2-11-202, 2-2-115. As Coordinator, Goins is responsible for "prepar[ing] a certificate of voting rights restoration form and the written statement explaining the form and the procedure by which a person can . . . become eligible to vote." *Id.* § 40-29-205. As the chief election officer, Goins is thereby the official responsible for coordinating implementation of the requirements of the National Voter Registration Act. *See* 52 U.S.C. § 20509.

18

50. Defendant Tre Hargett, is the Secretary of State of Tennessee ("the Secretary") and is sued in his official capacity. The Secretary appoints the Coordinator of Elections who serves "at the pleasure of the secretary of state" and may make regulations only as necessary to carry out the election code with "the concurrence of the secretary of state." Tenn. Code Ann. § 2-11-201(a), (c).

## FACTS

**I.    Defendants' Failure to Properly Administer the Rights Restoration Process Arbitrarily and Erroneously Deprives Thousands of Eligible Voters Access to the Franchise.**

51. Tennessee's rights restoration statute delegates the responsibility of issuing CORs to Defendants, who together comprise the pardoning, incarcerating, and supervising authorities in the state. Tenn. Code Ann. § 40-29-203(a). Yet Defendants have failed in their duty to administer a standardized, accurate, and navigable process for eligible citizens to "request" and "be issued" CORs under Tennessee law. *Id.* In the absence of any meaningful action by Defendants, various local and county-level officials have been left to field COR requests, resulting in a decentralized, inaccurate, and inaccessible COR system that fails to meet the basic demands of due process.

52. This scattershot COR system violates due process. It lacks basic constitutionally mandated safeguards that Defendants could readily implement to minimize erroneous deprivation of the right to a COR. These safeguards include access to an impartial decision-maker, a decision based on the legal rules, an explanation of the reasons for the decision, guidance to ensure uniform interpretation of the law, and an opportunity to be heard on appeal. *See Mathews v. Eldridge*, 424 U.S. 319, 325 n.4 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

53. The current COR system creates a high risk that an eligible person will be erroneously deprived of a COR in at least six ways:

i.    There is no uniform procedure for potentially eligible Tennesseans to initiate a COR request with an impartial decisionmaker.

19

ii. There is no procedure requiring officials who are statutorily required to issue CORs to provide an affirmative or negative determination of a person's eligibility.

iii. There is no procedure requiring the statutorily designated officials to explain a decision not to issue a COR.

iv. There is no state-level guidance or regulation to help county officials uniformly interpret and apply the statutory eligibility requirements.

v. Restoration of eligible Tennesseans' voting rights are regularly improperly denied for immaterial errors or omissions that officials make on their CORs, rather than based on the eligibility criteria.

vi. There is no appeal process for individuals who believe they have been erroneously deprived of a COR.

i. *Initiating a COR Request*

54. First, a lack of uniform procedures about where to initiate the COR process and abdication of responsibility from officials who are statutorily required to issue CORs leaves tens of thousands of potentially eligible citizens with nowhere to start the COR process.

55. There is no formal mechanism to request and be issued a COR from any statewide official or central office. Instead, the responsibility of fielding requests and issuing CORs has been implicitly delegated to an indeterminate set of TDOC and county-level officials.

56. As a result of this decentralized system, it is often the case that when a person attempts to seek a COR, no record is created of that effort, even when they have asked an official who is designated by statute to complete CORs.

57. In its only public guidance on the COR process, the Secretary of State's website simply provides a link to a blank COR, *see* Ex. A, and instructs citizens to seek out "an agent, such

CKG 4864-0573-6758
2860000-008970

as a probation/parole officer or a criminal court clerk, who has the authority to provide the required information regarding the individual's conviction, final release date and information regarding restitution or court cost."[6] Notably, these instructions even direct individuals to request a COR from "a criminal court clerk" even though criminal court clerks are not part of any pardoning, incarcerating, or supervising authority and are not responsible for issuing CORs under Tenn. Code Ann. § 40-29-203(a).

58.     The COR itself offers no further clarity. It states only that the four sections on the form regarding the individual's conviction, release date, court costs, and restitution must "be completed by an agent of the pardoning authority, an agent or officer of the incarcerating authority, or a probation/parole officer or agent of the supervising authority." *See* Ex. A. Thus, the only apparent way for a citizen to "request" and "be issued" a COR is to print out blank copies of the COR from the Secretary's website, and then hunt for one or more officials—including criminal court clerks, who are not statutorily responsible for issuing CORs but are often the only officials willing to address the LFO portions of a COR—to fill out the required information.

59.     On August 15, 2016, TDOC issued a three-page administrative policy (the "TDOC Policy") requiring community supervision officers to issue CORs to eligible citizens upon final discharge from supervision. That policy expired August 15, 2019 and, upon information and belief, has not been renewed or replaced. In determining eligibility, officers are instructed to "review an offender's case record to determine if he/she has met all financial obligations to the court and/or the victim." But the TDOC Policy then contradicts its own mandate to "issue" a COR to every newly released eligible citizen because it forbids an officer from completing sections of the COR

---

[6]     Restoration of Voting Rights, Tennessee Secretary of State, https://sos.tn.gov/products/elections/restoration-voting-rights (last accessed Sept. 30, 2022).

CKG 4864-0573-6758
2860000-008970

for which the officer does not have information. As a practical matter, TDOC officers rarely have access to information regarding a person's outstanding LFOs, and the TDOC Policy does not instruct officers to seek it out. And TDOC has not created any mechanism to facilitate the sharing of LFO information between the Tennessee court system and TDOC to enable this process. Thus, CORs are rarely, if ever, "issued" upon final discharge from supervision or prison. The TDOC Policy also says nothing about the process for issuing CORs to those citizens who were never issued a COR upon discharge or who completed their sentence in the distant past.

60.    In at least a handful of counties, the probation and parole offices do not issue CORs at all, sometimes citing limited capacity or a lack of records with which to determine eligibility. In Knox County, there was only *one* probation officer available for two days per week who was willing to fill out CORs in 2019.[7] As a result, some eligible individuals in Knox County did not receive CORs or even a response after waiting for months.

61.    In some counties, probation and parole offices will only complete the sections of the COR relating to the individual's conviction and release date, leaving eligible citizens to figure out which, if any, official will fill out the sections relating to restitution and court costs. On information and belief, probation officials in Cooke, Crockett, Cumberland, Greene, Hamilton, Lewis, Madison, Marshall, Maury, Monroe, and Shelby Counties have policies against filling out or have refused to fill out some or all of the CORs.

---

[7] Isabel Lohman, *In Knox County, it can be tough for felons to vote again. Volunteers want to change that*, Knox News (Aug. 9, 2019), https://www.knoxnews.com/story/news/local/2019/08/09/right-to-vote-felons-tennessee-knoxville/1753895001/.

62.     In addition, during the COVID-19 pandemic, officials in Maury, Marshall, Madison, and Crockett Counties insisted that individuals initiate the COR process in person, even when the relevant offices have been closed to the public.

63.     Tennesseans with disenfranchising felony convictions from other states face an even greater challenge: finding and convincing an out-of-state authority to complete and sign a foreign document. These out-of-state offices also often refuse to fill out CORs—which are foreign to them—even when the requestor clearly meets the eligibility criteria for rights restoration. The Governor of Tennessee has the power to grant clemency to all of its residents and is therefore a pardoning authority for purposes of issuing CORs. Despite that, Defendants have delegated COR responsibility for Tennessee residents with out-of-state convictions to out-of-state officials. They have provided nowhere for Tennessee residents to go if an appropriate out-of-state official cannot be reached or refuses to cooperate. There is no mechanism for Tennesseans with out-of-state convictions to request CORs from the Governor.

64.     As a result of this decentralized system, it is often the case that when a person attempts to seek a COR, no record is created of that effort, even when they have asked an official who is designated by statute to complete CORs.

65.     When officials charged with issuing CORs abdicate their duty under law, would-be voters have nowhere to turn. These voters are erroneously denied the right to a COR and/or a determination of their eligibility to have their voting rights restored.

*ii.     Refusals to Issue CORs*

66.     Second, even if a Tennessean is able to find an official that accepts COR requests, that official may simply refuse to issue a COR.

23

67. Plaintiffs Weare and Tournier had their requests for a COR turned down without final decisions or explanations.

68. A refusal to fill out a COR is not the same as a determination of ineligibility. Absent a formal request mechanism and a formal denial, a refusal to fill out a COR leaves a Tennessean in limbo, unable to restore their right to vote, unable to determine what they would need to do to restore it, and unable to take any further action for lack of a final decision.

### iii. No Written Decisions

69. Third, if an official does not issue or fill out some portion of a COR because they have determined the requestor to be ineligible, there is no requirement that the official explain in writing how they came to that conclusion. A written determination of ineligibility is necessary to inform Tennesseans of what they must do to become eligible for voting rights restoration.

70. Moreover, without a statement of reasons, an individual who has been denied a COR cannot determine whether the issuing authority followed or properly interpreted the eligibility rules prescribed by the rights restoration statute. Nor can the individual assess whether the determination of ineligibility was based on accurate information about their sentence or outstanding LFOs.

71. The risk of error in determining an individual's outstanding restitution and court costs for purpose of rights restoration is significant because there is no statewide criminal record database that tracks LFO obligations. The only publicly available databases are haphazardly managed by county-level court clerk offices, and Tennessee's 95 counties do not use a consistent system for tracking LFOs assessed against individuals for criminal convictions.

72. An individual who has been convicted of a crime in Tennessee may be assigned several different kinds of LFOs by the court clerk—for example, restitution, fines, court costs,

CKG 4864-0573-6758
2860000-008970

litigation taxes, and expenses related to supervision and rehabilitation—all of which are authorized by and/or separately defined in the Tennessee criminal code. *See, e.g.*, Tenn. Code Ann. § 40-24-105; *see also City of Chattanooga v. Davis*, 54 S.W.3d 248, 270 n.23 (Tenn. 2001). However, the only criminal LFOs that a person needs to pay to become eligible for a COR are "restitution" and "all court costs assessed against a person at the conclusion of the person's trial" for a felony offense. Tenn. Code Ann. § 40-29-202.

73.     But county LFO records often fail to clearly distinguish between court costs and restitution on one hand and the non-disqualifying LFOs on the other. Naming conventions for different types of LFOs also vary across counties. For older convictions, many county officials lack ready access to the judgments, sentencing documents, and cost bills, which may have been recorded by hand, have not been digitized, and/or are locked away in paper archives. Even when judgments, sentencing documents, and cost bills for older convictions are available and legible, the total "court costs" obligation may comprise fees that are no longer collectable under state or county law. In addition, some counties permit or require that restitution payments be made directly to the victim. In these counties, records of restitution payment never come into possession of the county government.

74.     County officials who field COR requests have refused to fill out CORs or have otherwise deemed individuals ineligible because of sloppy, incomplete, or missing LFO records through no fault of the requestor. They have also erroneously deemed COR requestors ineligible based on nonpayment of debts that do not implicate COR eligibility under Tennessee law, including fines, litigation taxes, probation fees, drug education and rehabilitation program costs, and even legal obligations related to misdemeanors. The instructions on the COR itself add to the

25

confusion by referring to "court fines" when explaining how to fill out the portion of the application that is about court costs. *See* Ex. A.

75.     Tennesseans who are denied CORs solely because of outstanding LFOs therefore face a high risk of erroneous deprivation and have no way to contest or verify whether they do, in fact, owe debts that must be paid to restore their right to vote.

        *iv.     No Interpretation Guidelines*

76.     Fourth, upon information and belief, Defendants have failed to release any meaningful guidance or regulation to ensure officials uniformly interpret and apply the statutory eligibility requirements for rights restoration.

77.     No statewide authority has issued clear guidance to local officials as to which legal debts should or should not be counted when assessing COR eligibility. The TDOC Policy fails to explain that LFOs other than restitution and court costs imposed at the time of trial need not be paid before a COR is issued. The Secretary of State's website and the COR itself similarly offer no guidance delineating LFOs that need and need not be paid to vote.

78.     Upon information and belief, this lack of guidance causes officials who field COR requests to improperly deny individuals their CORs based on legal debt which as a matter of law does not impact their right to a COR. Upon information and belief, clerks of court in Shelby County and Davidson County require payment of LFOs clearly labeled "fines" before issuing CORs. Individuals seeking CORs have even been told by clerks in Shelby County that they must pay legal debt associated with non-felonies in order to be issued their CORs.

79.     Additionally, the lack of guidance causes those officials to incorrectly report the amount of legal debt to the individual seeking the COR, causing them to opt out of the process on the belief that the debt amount is insurmountable.

CKG 4864-0573-6758
2860000-008970

80. Shelby County clerks have stated that in order to be issued CORs, Plaintiff Perry will need to pay a $952.10 debt that is labeled as a fine. Shelby County clerks have also said that Plaintiff Gray will need to pay a $500 debt which is also labeled as a fine. Under Tennessee law, "fines" are distinct from "court costs." *City of Chattanooga*, 54 S.W.3d at 270 n.23 (distinguishing court costs from fines). And the statute governing CORs states that applicants must pay "court costs" and "restitution," not "fines." Tenn. Code Ann. § 40-29-202(b).

81. Nor is there a uniform policy or guidance as to how officials who issue CORs must evaluate COR eligibility when a requestor's records are unclear or unavailable. Upon information and belief, individuals have been denied CORs solely because the county has failed to keep copies of their records. Additionally, restitution debts are often turned over to private debt collections companies, at which point the counties no longer keep records of payments. Upon information and belief, individuals have been denied CORs solely due to alleged debts that have gone to collections and been paid, but for which the county no longer has records.

82. Nor is there a uniform policy or guidance about how to administer COR requests. In Davidson County, for example, the local TDOC office that issues CORs prefers that individuals (or advocates on their behalf) email COR requests to a single parole and probation manager who then mails a completed COR to the requestor. However, that system failed in July 2020 when that one individual went on leave, causing at least some emailed COR requests to go unprocessed. In other counties, however, the requestor herself must appear in person at several different offices to get different portions of their COR filled out. Some counties continue to require in-person requests for CORs even during the COVID-19 pandemic and even during periods when the relevant office was physically closed. As there is no formal mechanism for requesting a COR, there is also no system for tracking COR requests.

27

27

83.     Many, but not all, county election offices require citizens with felony convictions to submit a separate completed COR for each disenfranchising felony conviction. Defendants have not issued guidance on whether such duplicative COR processes are necessary or appropriate. Nonetheless, the Elections Division sometimes approves CORs that list multiple convictions.

84.     Additionally, there is a lack of uniformity around what is considered sufficient documentation to make use of the indigency exception as to court costs. Court clerks who field COR requests routinely do not accept declarations of indigency for various reasons. Counties differ as to whether the indigency declaration is a waiver of court costs or a statement that the existing debt is not a barrier to the restoration of voting rights. For example, in Shelby County, courts regularly order payment plans when granting applications for declarations of indigency. However, upon information and belief, the Shelby County criminal court clerks do not view such indigency declarations as sufficient for purposes of a COR if they do not completely waive the costs.

85.     Defendants have provided no guidance as to what indigency declarations are sufficient, what is meant by the requirement that the declaration be issued "at the time of application," whether declarations need to be issued by a certain court, how declarations can be issued for court costs for out-of-state convictions, and whether one declaration is sufficient for the issuance of multiple CORs. Tenn. Code Ann. § 40-29-202(b)(2).

*v.  Denials for immaterial reasons*

86.     Fifth, even if a Tennessean secures a completed COR, he or she may still be denied restoration of the right to vote for immaterial reasons.

87.     A formal approval process exists only where a Tennessean has overcome the previously listed barriers and been able to secure a completed COR from an official (or officials) willing to fill it out and has submitted it to the elections office in the county where they are

28

registered to vote. The COR will be transmitted to the Elections Division which responsible for this final validation of a completed COR, pursuant to Tenn. Code Ann. § 40-29-203 ("The administrator of elections shall send the certificate to the coordinator of elections who shall verify that the certificate was issued in compliance with this section.")

88.    Even at this final stage in the COR process, where the Elections Division has implemented a practice of issuing written denials or approvals, the office generally only provides a brief phrase in support of a denial. There is no appeal process.

89.    However, during this final stage, many Tennesseans are improperly denied validation of their COR and restoration of their voting rights for immaterial reasons.

90.    For example, many Tennesseans who submit a COR or multiple CORs are denied voting rights restoration because they have additional felony convictions which are not listed on the documents submitted. However, a denial for this reason is not a determination whether the applicant meets the statutory eligibility criteria found in Tenn. Code Ann. § 40-29-202. Rather, it is an observation that the officer who completed the form failed to include information on all convictions. When the individual who completed the form is an officer of TDOC and the unlisted felony convictions also occurred in Tennessee state court—which is often the case—the failure is entirely due to a lack of diligence on the part of Defendants, not on the part of the applicant. In these cases, the applicant has requested a COR from the authority with a statutory duty to issue CORs to eligible individuals. It is no fault of the applicant if the issuing authority fails to do so in a way that satisfies the Elections Division's final validation. Yet, when a person is denied for this reason, they are essentially told to start over. The Elections Division does not have a policy or practice of informing the issuing authorities of the shortcomings in the CORs they have issued,

CKG 4864-0573-6758
2860000-008970

leaving them to repeat those alleged deficiencies and continue to issue CORs that will be denied by the Elections Division.

91.     Such a denial is improper because the Elections Division has the ability to communicate with the issuing authority and confirm the applicant's eligibility without requiring the applicant to reinitiate the process of seeking a COR. Because denials based on incomplete COR forms are not determinations on eligibility, they may and often do erroneously deny restoration of the right to vote to eligible individuals.

92.     Another common example of an improper denial for immaterial reasons is one based on "incomplete CORs." For example, restoration of voting rights is sometimes denied because the official who completed the form failed to complete some aspect of it, including an omission as minor as not checking a single box. Rather than seeking confirmation from the issuing official, the Elections Division denies restoration of the right to vote, forcing the applicant to begin again from scratch when the alleged problem with the form was no fault of their own, but entirely due to a lack of diligence by Defendants and their officials.

93.     Because denials based on incomplete COR forms are not determinations on eligibility, they may and often do erroneously deny restoration of the right to vote to eligible individuals.

*vi. No Appeals*

94.     Sixth, despite the obvious risk of erroneous deprivation in Tennessee's decentralized, dysfunctional COR system, there is no appeals process for individuals who believe they have been wrongly denied a COR. With local officials in 95 counties using their own system of recordkeeping and interpreting the COR statute without any guidance, there is ample room for mistakes. No process exists to correct them.

CKG 4864-0573-6758
2860000-008970

95. Without an appeal process, a person seeking a COR who has not been issued one, or who has been denied but believes that they are eligible, has only two options: attempt to find a different official who may provide a different answer, or ask the same official who turned them away to take another look at their discretion.

96. These limited options—which exclude a legitimate opportunity to appeal—can put COR seekers at risk of prosecution. Indeed, a Memphis resident was charged with and convicted of a felony for submitting false election documents because she availed herself of these options. Initially told she was ineligible for a COR but believing that to be an error, the individual asked a TDOC officer to look at her file again. After an hour of reviewing her records, the officer completed her COR. At trial, her self-advocacy was characterized as "tricking the probation officer."

97. Taken together, these deficiencies demonstrate Defendants' creation of a woefully inadequate rights restoration system, devoid of adequate process, that erroneously deprives tens of thousands of eligible voters of their statutory right to a COR. More than 80% of the disenfranchised population in Tennessee—at least 365,356 people—has completed their sentence including probation and parole.[8] At minimum, tens of thousands of these individuals are eligible for a COR. They live in their communities, pay taxes, and work to be productive members of society. But as a result of Tennessee's dysfunctional COR system, fewer than 5% of potentially eligible Tennesseans have been able to obtain a completed COR and submit it to the Election Commission

[8] Sentencing Project, *Locked Out*, at 16.

31

for approval.[9] The Election Division has reported that only 3,415 individuals have been granted CORs since 2016 — less than 1% of the post-sentence population.[10]

## II. Defendants' Voter Registration Form Does Not Inform Applicants with Felony Convictions of Relevant Voter Eligibility Requirements.

98. The NVRA requires each state to "inform applicants . . . of voter eligibility requirements" no matter whether applicants seek to register with a state or federal voter registration form or though the department of motor vehicles or any other voter registration agency. 52 U.S.C. § 20507(a)(5).

99. The NVRA also requires that both the federal voter registration form (the "federal form") and any state-issued mail-in voter registration form used to register voters for federal elections must "specif[y] each eligibility requirement" for applicants. 52 U.S.C § 20508(b)(2)(A); *see also* § 20505(a)(2) (stating that a state mail-in form should meet "all of the criteria stated in section 20508(b)").

100. Tennessee's state voter registration form and the Tennessee-specific instructions on the federal form fail to accurately inform applicants of the voter eligibility requirements in Tennessee.

101. Under Tennessee law, not all individuals convicted of felonies lose their eligibility to vote. Individuals with felony convictions only between January 15, 1973 and May 17, 1981— the so-called "grace period"—fully retain their right to vote, as do individuals who were convicted

---

[9] Marc Meredith & Michael Morse, *Discretionary Disenfranchisement: The Case of Legal Financial Obligations*, at appendix 6 (January 18, 2017) ("We are 95% confident that the population [COR submission] rate is between 2.5% and 4.9%. This [COR submission] rates provide an upper bound on the legal limit of ex-felons eligible to vote: the vast majority of ex-felons do not [submit a COR to the Elections Division] and thus remain ineligible.").
[10] Sentencing Project, *Locked Out*, at 16.

before January 15, 1973 of felonies that were not considered infamous. *See Gaskin*, 661 S.W.2d at 868; *Crutchfield*, 607 S.W.2d at 482.

102.    But the state and federal forms fail to accurately notify voters about how specific felony convictions impact eligibility to vote.

103.    At the time of filing the original complaint, the state form inaccurately stated that to register, "you must not have been convicted of a felony, or if you have, your voting rights must have been restored."[11] The form also required applicants to swear as to whether they have "ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court."[12]

104.    After the filing of the original complaint, the Elections Division posted a new version of the state registration form on some locations on its website. The new form states that "[i[f you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call 1-877-850-4959 or visit sos.tn.gov/restoration." Additionally, the new form provides space for individuals who have been convicted of felonies to provide information on their crime of conviction, the date, the place (city/state), and whether they have received a pardon or restoration of voting rights.

105.    The new form still does not inform applicants of eligibility requirements for a person with a prior felony. The new form vaguely explains that "if you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and

---

[11] Tenn. Sec'y of State, Tennessee Mail-In Application for Voter Registration, https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf.
[12] *Id.*

CKG 4864-0573-6758
2860000-008970

the date of your conviction." This statement, while true, does not "inform voters of the eligibility requirements," per the NVRA's mandate. 52 U.S.C. § 20507(a)(5); see also 52 U.S.C § 20508(b)(2)(A) (requiring mail registration forms to "specif[y] each eligibility requirement"); § 20505(a)(2) (stating that a state mail-in form should meet "all of the criteria stated in section 20508(b)").

106.    The state-specific instructions for Tennessee on the federal form states only that to be eligible to vote applicants must "not have been convicted of a felony, but if convicted, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction."[13] These instructions still fail to "specif[y] each eligibility requirement" in a way that would fully "inform applicants . . . of voter eligibility requirements." 52 U.S.C § 20508(b)(2)(A); 52 U.S.C. § 20507(a)(5).

107.    Voters with felony convictions only during the grace period *never* lost their right to vote and need not seek rights restoration to be eligible to register to vote. This omission and others from the new registration form and federal instructions therefore fail to inform voters about whether they are eligible to vote in Tennessee due to a prior felony conviction in violation of the NVRA.

108.    On January 27, 2021, Plaintiff Tennessee NAACP sent a notice letter to Defendants Goins and Hargett explaining why the new registration form continues to violate the NVRA's requirement that the registration form specify eligibility requirements, 52    U.S.C    § 20508(b)(2)(A).

**III.    Defendants' Processing of Voter Registration Applications Denies Eligible Tennesseans with Felony Convictions their Right to Vote.**

---

[13]    Election Assistance Comm'n, National Mail Voter Registration Form, http://www.eac.gov/voters/national-mail-voter-registration-form/.

CKG 4864-0573-6758
2860000-008970

109.     The Election Division instructs the County Administrators of Elections not to place on the voter rolls any registrants who affirm on the new voter registration form that their only felony conviction(s) occurred between January 15, 1973 and May 17, 1981 *unless* and *until* those registrants provide additional documentation proving the date of their conviction. Yet otherwise eligible individuals who have only ever been convicted of a felony between January 15, 1973 and May 17, 1981 have never lost the right to vote are eligible to register vote under Tennessee law.

110.     The Election Division also instructs the County Administrators of Elections not to place on the voter rolls any registrants who affirm on the new voter registration form that their only felony conviction(s) were prior to January 15, 1973 *unless* and *until* those registrants provide additional documentation proving the date of their conviction and that their judgement did not render them infamous. Yet otherwise eligible individuals who have only ever been convicted of a felony prior to January 15, 1973 did not lose the right to vote unless they were convicted of a subset of certain crimes and adjudged infamous.

111.     These procedures and features of the state registration system violate the NVRA, which requires states to "ensure that any eligible applicant is registered to vote" in Federal elections if the eligible applicant timely submits a "valid voter registration form." 52 U.S.C.A. § 20507(a)(1). Applicants with felony convictions who never lost the right to vote or who have had their rights restored are "eligible" to vote and the Division of Elections cannot reject them wholesale.

112.     The NVRA also requires that voter registration forms include "an attestation that the applicant meets each [eligibility] requirement," 52 U.S.C. § 20508(b)(3), and prohibits states from creating additional documentation requirements to register to vote beyond the registration form itself. *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013). Yet, Defendants'

35

voter registration form requires eligible Tennesseans with past convictions to disclose information that ensures that their registrations will be rejected. Then, in order to fight the erroneous denial, the state forces those Tennesseans to provide additional paperwork proving their eligibility. These procedures violate the NVRA.

113.    On January 27, 2021 Plaintiff TN NAACP sent a second notice letter to Defendants Hargett and Goins ("Second Notice Letter") notifying them that the state's registration procedures for applicants with prior felony convictions remained non-compliant with the NVRA. The Second Notice Letter notified Defendants that placing the burden of proving eligibility onto the eligible prospective voter with a prior felony conviction—and requiring them to fight the erroneous rejection with additional paperwork not required of other eligible applicants without a prior felony conviction—created a non-uniform registration process in violation of Section 8(b)(1) of the NVRA. *See id.* at 3.

114.    On May 24, 2021, Plaintiffs' counsel sent a third notice letter ("Third Notice Letter") to Defendant Goins on behalf of Plaintiff TN NAACP responding to the steps detailed in Defendant Goins' letter and reiterating that the continued requirement of additional paperwork for certain eligible applicants was improper under the NVRA. Additionally, Plaintiffs put Defendant Goins on notice that his proposed policies in his April 27, 2021, letter regarding registrants with felony convictions prior to January 15, 1973, failed to comply with Tennessee law and the NVRA.

115.    More than 90 days have elapsed since the Second and Third Notice Letters provided written notice of Tennessee's NVRA violation with respect to rejecting eligible applicants with prior felony convictions.

116.    On March 30, 2022, this Court entered a Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss this action in its entirety.

36

117.    The Order dismissed Count 5 of the original complaint without prejudice and denied Defendants' motion to dismiss on all other Counts. Count 5 challenged Tennessee's practice of rejecting all registration forms from applicants who've affirmed that they have a felony conviction, even if that applicant never lost their right to vote or had the right restored. With respect to Count 5, this Court held that Plaintiff TN NAACP's First Notice Letter did not satisfy the NVRA's pre-suit notice requirement.

118.    Upon information and belief TN NAACP's Second and Third Notice Letters cure this technical defect.

## CLASS ALLEGATIONS

119.    Pursuant to Federal Rule of Civil Procedure 23(b)(2), Individual Plaintiffs bring this action on behalf of themselves and all other similarly situated persons.

120.    Plaintiffs Perry, Gray, Weare, Tournier, Scott, and Hendrix seek to represent the class of COR seekers. This class consists of Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a COR from the pardoning, incarcerating, or supervising authority, but to date have not received a COR sufficient to restore their voting rights.

121.    Individual Plaintiffs do not seek claims for compensatory relief. They seek only declaratory and injunctive relief that is broadly applicable to all class members. The requirements of Federal Rule of Civil Procedure 23, and in particular Rule 23(b)(2), are met with respect the class as defined above.

122.    Class members are so numerous that joinder of all such members is impracticable. According to the latest estimates, more than 451,000 Tennesseans lost the right to vote due to a felony conviction. Upon information and belief, a vast majority of these individuals were convicted

CKG 4864-0573-6758
2860000-008970

of felonies that do not permanently strip them of their right to vote. And it has been estimated that at least 365,000 of these disenfranchised individuals have completed their sentences, including parole and probation. Upon information and belief, at minimum, tens of thousands of such individuals are current on child support obligations and have paid all felony court costs and restitution.

123.    At minimum, thousands of people have submitted filled out CORs to elections offices which have been forwarded to the Elections Division yet ultimately been rejected. That number is the lower bound of the class size because, as this Complaint's allegations demonstrate, many more people are turned away while attempting to obtain CORs from the pardoning, supervising, or incarcerating authorities.

124.    Common questions of law and fact predominate over questions affecting only individual class members with respect to allegations in this complaint. Plaintiffs have individual circumstances with regards to their felony convictions and efforts they have undertaken to restore their voting rights. However, questions of what minimum procedures and protections are constitutionally due to them, and to those similarly situated, as candidates for CORs is a matter of law and requires a uniform answer. Those questions include, but are not limited to, whether Defendants' failure to administer the statutory rights restoration process creates a substantial risk of erroneous deprivation of a statutory and constitutionally protected right, and whether Defendants must provide constitutionally mandated procedures to those who are eligible to request and be issued a COR, including but not limited to, a mechanism to formally request a COR, a final decision on that request, a written statement of reasons for denial that uses uniform standards for interpreting the eligibility requirements, procedures to prevent denials based on improper reasons, and an appeals process.

CKG 4864-0573-6758
2860000-008970

125. Individual Plaintiffs' claims are typical of the class. Plaintiffs Perry, Gray, Weare, Tournier, Scott, and Hendrix are not aware of any conflict between their interests and those of the class they seek to represent.

126. Individual Plaintiffs can fairly and adequately represent the interests of the class because they are similarly situated with class members. Plaintiffs have retained counsel experienced in class-action and voting rights litigation to represent them and the class for the purposes of this litigation.

127. Defendants have acted, or refused to act, on grounds generally applicable to the class as a whole. Any injunctive and declaratory relief awarded to remedy Defendants' failure to administer the COR process will be appropriate respecting the class as a whole. Plaintiffs do not seek to compel issuance of their individual CORs; rather they seek the implementation of a process that will allow them to receive their CORs or, if they are deemed ineligible, will provide them with a fair and accurate assessment of what they must do to become eligible, and a means of appealing an eligibility determination they believe is erroneous.

## CAUSES OF ACTION

### COUNT ONE
### Denial of Procedural Due Process in Violation of
### the Fourteenth Amendment regarding the Statutory Right to a COR, 42 U.S.C. § 1983
### (All Plaintiffs against Defendants Lee, Helton, Goins, & Hargett)

128. Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

129. Defendants' failure to administer a functional rights restoration system denies Plaintiffs, and those similarly situated, their statutory right to a COR without procedural due process in violation of the Fourteenth Amendment.

39

130.     Under *Mathews v. Eldridge*, the determination of what process is due rests on the balance between (1) the interest affected; (2) the risk of erroneous deprivation under the current procedures and the "probable value, if any, of additional or substitute procedural safeguards;" and (3) the state's interest, including the "fiscal and administrative burdens" additional procedures would entail. 424 U.S. 319, 335 (1976).

131.     The Sixth Circuit has described the *Mathews* test "less as a three-way see-saw, and more as a two-step template." *Hicks v. Comm'r of Soc. Sec.,* 909 F.3d 786, 800 (6th Cir. 2018). First, the court must determine whether there is a legitimate risk of erroneous deprivation; if there is, then at least some amount of due process is required, and the court must proceed to determine what procedures are required by weighing the value of the interest affected and additional procedures against the cost of those procedures. The Sixth Circuit has made clear that "where the liberty or property interest is significant and the cost to the government of providing additional, valuable process is low, then greater procedures must be implemented." *Id.*

132.     The Tennessee legislature has created a liberty interest, protected by procedural due process, in a COR for individuals who meet certain eligibility criteria. Tenn. Code Ann. § 40-29-203. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies."); *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (holding that due process applies to interests "created by state laws or policies" where such laws or policies "contain substantive limitations on official discretion, embodied in mandatory statutory or regulatory language").

133.     The interest in a COR is significant because it is the key to exercising the fundamental right to vote. *See Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1270–71 (11th

40

Cir. 2019) (holding that where an interest "implicates the fundamental right to vote, it [is lent] more than modest weight").

134.    The Tennessee legislature assigned Defendants the responsibility for issuing CORs and administering the COR system. But they have abdicated their duty to provide Tennesseans a uniform, accurate, and functional system for issuing CORs upon request of eligible citizens. The patchwork system that has emerged in this administrative void fails to provide adequate procedural safeguards against a high risk of erroneous deprivation.

135.    Specifically, the current COR process lacks uniform access to an impartial decisionmaker, clear decisions based on the rules, a statement of reasons for the decision, uniform procedures for assessing eligibility, protections against denials for immaterial reasons, and an opportunity to be heard (on appeal). *See Mathews*, 424 U.S. at 319 n.4 (citing *Goldberg v. Kelley*, 397 U.S. 254, 267-71 (1970)).

136.    The risk of erroneous deprivation of the statutory right to a COR is high because the current COR process is opaque, decentralized, inaccurate, and inaccessible.

137.    The errors experienced by Plaintiffs are not atypical but rather emblematic of risks inherent in the COR system due to Defendants' failure to provide uniform guidance, policies, procedures, and training. *See Mathews*, 424 U.S. at 344; *Jones v. Commissioner of Soc. Sec.*, 2011 WL 1527159 at *7 (E.D. Tenn. 2011).

138.    Tennesseans who meet certain eligibility requirements are entitled to a COR. Tennesseans who request a COR but do not meet the eligibility requirements are entitled to a written determination that clearly explains what they must do to become eligible for a COR and restore their right to vote.

CKG 4864-0573-6758
2860000-008970

139. Implementing procedures to ensure due process would not impose an undue burden on the state. Indeed, there is a simple, low-cost solution to remedy the state's current unconstitutional COR system: the administration of a central, state-level application process. This would give each potentially eligible Tennessean a place to formally request a COR, as contemplated by state law, and initiate the rights restoration process. A neutral decision-maker would render a decision based on uniform rules and either issue a COR or a written denial explaining why the person does not meet the requisite criteria. A centralized process would also facilitate appeals.

140. Creating a central COR process would further the state's interest in streamlining inefficient systems, conserving state resources, coming into compliance with the law, and not discriminating against the indigent, among others. The state would spend fewer net resources and government staff time on each COR. In addition, Tennessee law makes clear that the responsibility for issuing CORs sits squarely with the Governor and TDOC, as the pardoning, incarcerating, and supervising authorities. But in many counties, TDOC agencies have abdicated that responsibility, often implicitly delegating their authority, without guidance or agreement, to clerks without any statutory directive. State law also requires the Division of Elections to create the COR form and verify that CORs are lawfully issued. Inherent in these responsibilities is the duty to ensure that COR-issuing authorities properly interpret and apply the statutory requirements.

**COUNT TWO**
**Denial of Procedural Due Process in Violation of**
**the Fourteenth Amendment regarding the Fundamental Right to Vote, 42 U.S.C. § 1983**
**(All Plaintiffs against Defendants Lee, Helton, Goins, & Hargett)**

141. Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

42

142.    Defendants' failure to administer a functional rights restoration system also denies Individual Plaintiffs, and those similarly situated, the fundamental right to vote without procedural due process in violation of the Fourteenth Amendment.

143.    A validly issued COR indicates that a person who was previously disenfranchised can exercise their fundamental right to vote. *See* Tenn. Code Ann. § 40-29-203(c).

144.    There is a liberty interest in the fundamental right to vote that is protected by the doctrine of procedural due process. *See, e.g.*, *Cook v. Randolph Cty.*, 573 F.3d 1143, 1152 (11th Cir. 2009) (noting that "[t]he Constitution guarantees procedural and substantive due process when a liberty interest is at stake," including "the right to vote"); *Barefoot v. City of Wilmington*, 306 F.3d 113, 124 n.5 (4th Cir. 2002) ("The right to vote . . . is certainly a protected liberty interest.").

145.    Thus, Defendants' failure to administer procedures to protect against erroneous deprivation of CORs, and the attendant right to vote, also violates the Due Process Clause.

**COUNT THREE**
**Violation of the Equal Protection Clause**
**Arbitrary and Unequal Disenfranchisement, 42 U.S.C. § 1983**
**(All Plaintiffs against Defendants Lee, Helton, Goins, & Hargett)**

146.    Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

147.    Defendants' application of the COR statutes has created a system where similarly situated Tennesseans —convicted of the same crime and who have served the same sentence and met their relevant LFOs—may be granted or denied access to the right to vote based solely on the county of their felony conviction. Such an unequal system cannot withstand even rational basis review.

148.    Whether or not an eligible individual is able to request and be issued a COR and thereby regain their right to vote depends entirely on the willingness of local and county-level

43

officials to entertain COR requests, their varying interpretations of state law (especially regarding LFO requirements), and their processes for keeping and maintaining records.

149. It is well established that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Thus, "the State may not by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–5 (2000). The same logic applies to rights restoration. If the state restores the right to vote to certain individuals, it may not deny it to others similarly situated simply because they must seek rights restoration in a different county.

150. Because the COR implicates an individual's fundamental right to vote, Defendants' existing system for restoring the right to vote is subject at least to intermediate scrutiny. But Defendants cannot present even a rational basis for maintaining such a discriminatory system.

151. No criminal justice interest is served by treating individuals differently who have met the COR requirements but were convicted in different counties and therefore must seek CORs from officials who adhere to differing procedures. No election protection or ballot integrity purpose is served by maintaining a system where qualified individuals, even those who may now reside in the same county, are either allowed to participate in an election or not, based solely on *where* they were convicted of a felony. In fact, election integrity is *threatened* where county-level officials can make inconsistent decisions to grant or not grant a COR, and the attendant right to vote, to similarly situated individuals. No state interest in economic efficiency is served by a system that requires a person to chase down multiple state- and county-level officials for information that a single individual could verify to determine a person's eligibility for rights restoration.

CKG 4864-0573-6758
2860000-008970

152. Absent a uniform process and standards for requesting and issuing CORs, including an appeal mechanism, there is no way to ensure equal application of the COR process and the attached right to vote to similarly situated individuals.

## COUNT FOUR
### Violation of the National Voter Registration Act, 52 U.S.C. § 20501, *et seq.*
### (Plaintiff TN NAACP against Defendants Goins and Hargett)

153. Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

154. Tennessee's paper and online voter registration forms violate the NVRA's requirement that they "inform applicants . . . of voter eligibility requirements," 52 U.S.C. § 20507(a)(5), and that they "specif[y] each eligibility requirement" for applicants, 52 U.S.C § 20508(b)(2)(A); *see also* § 20505(a)(2) (stating that a state mail-in form should meet "all of the criteria stated in section 20508(b)").

155. The State Form fails to fully inform applicants with felony convictions of their eligibility under Tennessee law. To the contrary, it plainly misinforms voters of the eligibility requirements by stating that no individual with a felony conviction may register to vote unless she has undergone the restoration of rights process. Nowhere on Tennessee's mail-in registration form is the blanket exception for felony convictions between January 15, 1973 and May 17, 1981 explained to voters, nor the limited list of offenses punishable by disenfranchisement prior to January 15, 1973. These omissions are a clear violation of Defendants Goins' and Hargett's duty under the NVRA to accurately inform applicants of the relevant qualifications to vote.

156. The state-specific instructions for Tennessee on the Federal Form are do not fully inform registrants of state law. To ensure the Federal Form's accuracy, a state's chief election official must notify the EAC of any changes in the state's voter eligibility requirements within 30

CKG 4864-0573-6758
2860000-008970

days. 11 C.F.R. § 9428.6. Given the deficiencies in the State Form, it appears that Defendants have not specified the exceptions to its blanket felony disenfranchisement provision. Regardless of the source of the errors, Defendants should immediately provide the EAC with accurate substitute instructions.

157.    On August 22, 2018, on behalf of Plaintiff TN NAACP, Plaintiff's Counsel sent Defendants Hargett and Goins a letter notifying them that Tennessee's registration forms and procedures are out of compliance with the NVRA. The Elections Division subsequently acknowledged receipt of that letter but has not corrected the violations.

**COUNT FIVE**
**Deprivation of the Fundamental Right to Vote**
**in Violation of the First and Fourteenth Amendments, 42 U.S.C. § 1983**
**(Plaintiff TN NAACP against Defendants Goins and Hargett)**

158.    Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

159.    Tennessee's eligible citizens have a fundamental right to vote under the First and Fourteenth Amendments to the Constitution of the United States. When analyzing the constitutionality of a voting procedure, the Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

160.    Tennessee's practice of rejecting *all* voter registration forms on which the applicant affirmed that they have a felony conviction—even those of applicants who never lost their right to

46

vote or had the right restored—violates eligible voters' fundamental right to vote in violation of the First and Fourteenth Amendments. This practice imposes a severe burden on the right to vote of citizens with felony convictions who are nonetheless eligible to exercise the franchise.

161.     There is no state interest in favor of rejecting all voter registration forms on which the applicant affirmed that they have a felony conviction that justifies the severe burden placed on such applicants who are eligible to vote and have timely submitted a valid voter registration form. No state interest justifies depriving these eligible citizens their fundamental right to vote.

## COUNT SIX
### Violation of the National Voter Registration Act, 52 U.S.C. § 20501, *et seq.*
### (Plaintiff TN NAACP against Defendants Goins and Hargett)

162.     Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of in this complaint.

163.     Defendant Goins's and Hargett's policy and practice of rejecting *all* registration forms on which the applicant affirmed that they have a felony conviction—even those of applicants who never lost their right to vote or had the right restored—violates the NVRA's requirement that the state "ensure that any eligible applicant is registered to vote" in Federal elections if the eligible applicant timely submits a "valid voter registration form." 52 U.S.C.A. § 20507(a)(1). This policy and practice also results in a dis-uniform and discriminatory manner of maintaining the voter registration rolls in violation of the NVRA. 52 U.S.C.A. § 20507(b)(1).

164.     Defendant Goins's and Hargett's blanket policy of rejecting or indefinitely delaying voter registration applications submitted by certain voters with felony convictions places the burden of proving eligibility onto the prospective voter and requires them to rebut an erroneous denial or delay of their registration application with additional paperwork. This process violates the NVRA, which prohibits states from creating additional documentation requirements to register

47

to vote beyond the registration form itself, and requires states to "accept and use" the federal voter registration form, which does not require any additional documentation. *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013); 52 U.S.C. §§ 20505(a)(1), 20508(b)(3).

165. On August 22, 2018, Plaintiff's Counsel sent Defendants Hargett and Goins Plaintiff TN NAACP's First Notice Letter notifying them that Tennessee's registration forms and procedures are out of compliance with the NVRA.

166. On January 27, 2021, Plaintiff's Counsel sent Defendants Hargett and Goins Plaintiff TN NAACP's Second Notice Letter notifying them that Tennessee's registration procedures for applicants with prior felony convictions remained non-compliant with the NVRA, including an explicit notification that requiring eligible prospective voters with prior felony convictions to fight erroneous rejection with additional paperwork not required of other eligible applicants without a prior felony conviction violates of Section 8(b)(1) of the NVRA.

167. On May 24, 2021, Plaintiff's Counsel sent Defendants Hargett and Goins Plaintiff TN NAACP's Third Notice Letter reiterating that the continued requirement of additional paperwork for certain eligible applicants was improper under the NVRA.

168. Plaintiffs complied with the NVRA's notice requirement by providing Defendants Hargett and Goins written notice of this violation and the Elections Division subsequently acknowledged receipt of each of these letters, but the noticed NVRA violation has not been corrected within the notice period set forth in Section 11(b) of the NVRA.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

CKG 4864-0573-6758
2860000-008970

A. Certify the putative plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(2).

B. Enter a preliminary and permanent injunction requiring Defendants Lee, Helton, Hargett, and Goins to implement constitutionally required safeguards to ensure that the COR system meets the minimum requirements of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. Such a system must include the following procedural elements:

      i. a uniform, formal mechanism to request a COR before an impartial decisionmaker,

      ii. a requirement to issue formal decisions on COR requests,

      iii. a requirement to provide a written statement of reasons for any denials of COR requests,

      iv. a requirement that any denials be based upon the statutory criteria for eligibility,

      v. uniform procedures for interpreting the COR requirements, particularly with regard to the LFO requirements and indigency declarations, and

      vi. a uniform appeals process.

C. Enter a preliminary and permanent injunction enjoining Defendants Hargett and Goins from rejecting valid voter registration applications from eligible voters and requiring Defendants Hargett and Goins to create registration forms and policies that comply with the NVRA and do not impose an undue burden on the right of eligible citizens to register and vote, including:

      i. specifying the eligibility requirements on all registration forms,

      ii. modifying the state voter registration form such that it can be used by all eligible citizens even if they have been convicted of a felony,

49

iii. modifying the online voter registration portal such that it can be used by all eligible citizens even if they have been convicted of a felony, and

iv. issuing statewide guidance prohibiting requirement that people with convictions provide documentary proof of their eligibility and proscribing the rejection of valid voter registration applications from eligible voters because the applicant has a felony conviction.

D. Award Plaintiffs their reasonable attorneys' fees and costs.

E. Grant such other relief the Court may deem just and proper.

Date: October 3, 2022

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Danielle Lang*
Blair Bowie*
Alice Huling*
Aseem Mulji*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
Dlang@campaignlegal.org
Bbowie@campaignlegal.org
Ahuling@campaignlegal.org
Amulji@campaignlegal.org

Keeda Haynes, BPR No. 031518•
Free Hearts

50

2013 25th Ave N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan*
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org

*Counsel for the Petitioners-Plaintiffs and the Putative Classes*

\* Application for admission *pro hac vice* forthcoming

▪Application for admission to the United States District Court for the Middle District of Tennessee submitted

51