IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, and LAMAR PERRY, CURTIS GRAY, Jr, JOHN WEARE, BENJAMIN TOURNIER, LEOLA SCOTT, and REGINALD HENDRIX, for themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, TONY C. PARKER, in his official capacity as Commissioner of the Department of Correction of the State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, and TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, , as a class, all Tennessee county clerks of criminal court, and, as a class, all directors of local offices of probation, <br><br> Defendants. | Civil No. 3:20-cv-01039 <br><br> JUDGE WILLIAM L. CAMPBELL <br> Magistrate Judge Jeffrey S. Frensley <br><br> CLASS ACTION |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

Plaintiffs respectfully move this Court to enter an order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). In Tennessee, individuals who have been disenfranchised because of a felony conviction face a decentralized and error-ridden process when seeking restoration of their voting rights through a Certificate of Restoration (COR). Many people are unable to access a neutral decision-maker and are turned away without a formal

1

denial. Decisions are made based on rules that vary from county to county and official to official. Written statements of reasons for a refusal or denial are rare. When formal denials are issued, many are based on problems unrelated to the eligibility criteria that are out of applicants' control. Despite these obvious problems, there is no avenue for appeal. Tennessee's unequal, inaccessible, opaque, and error-ridden implementation of the statutes granting restoration of voting rights results in a high risk of Tennesseans being erroneously denied a COR and being unlawfully deprived of the right to vote.

Named Plaintiffs Lamar Perry, Curtis Gray, John Weare, Benjamin Tournier, Leola Scott, and Reginald Hendrix seek to represent a class pursuant to Counts One, Two, and Three of Plaintiffs' First Amended Complaint, which alleges that Tennessee's administration, or lack thereof, of the rights restoration process lacks the basic guardrails required to ensure procedural due process and denies Plaintiffs equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

For the reasons described herein, Plaintiffs' class claims are appropriate for class treatment and satisfy the requirements of Federal Rule of Civil Procedure 23. Plaintiffs thus respectfully request that the Court certify these claims as a class action.

## ARGUMENT

The Court should certify Counts One, Two, and Three of Plaintiffs' First Amended Complaint for class treatment pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). To have a suit certified as a class action, Plaintiffs must satisfy the requirements of Rule 23(a) as well as the additional requirements of one of three categories of class actions. Rule 23(a) has four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). A class action may be maintained pursuant to Rule 23(b)(2) when

4854-4455-9165

"the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In assessing whether a suit satisfies Rule 23(a)'s requirements, courts should err on the side of favoring class treatment, particularly in civil rights suits. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (referring to civil rights cases as "prime examples" of cases appropriate for class certification under Rule 23(b)(2)). As discussed below, because Plaintiffs clearly satisfy the requirements of Rule 23(a) and class certification is appropriate under Rule 23(b)(2), Plaintiffs' motion for class certification should be granted.

## I. Proposed Plaintiff Class Definition

An order certifying a class action must define the class. *See* Fed. R. Civ. P. 23(c)(1)(B). Plaintiffs here propose one class defined as:

> Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a COR from the pardoning, incarcerating, or supervising authority, but to date have not received a COR sufficient to restore their voting rights.

In keeping with certified classes in other procedural due process cases, Plaintiffs' proposed class includes people who have been denied adequate process in seeking a protected interest (in this case, voting rights restoration). *See e.g.*, *Barry v. Corrigan*, 79 F. Supp. 3d 712, 730 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) (certifying class of "all past, present, and future applicants for, or recipients of, benefits administered [by a public assistance agency] who have suffered or will suffer actual or threatened denial, termination, or reduction of public assistance benefits based on [challenged procedures]"); *Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016) (affirming class of "[a]ll individuals who have applied for Medicaid (TennCare) on or after October 1, 2013, who have not received a final eligibility determination in

3

45 days (or in the case of disability applicants, 90 days), and who have not been given the opportunity for a 'fair hearing' by the State Defendants after these time periods have run").

Should the Court ultimately grant the injunctive and declaratory relief Plaintiffs seek with respect to the proposed class, Defendants will be required to offer the plaintiff class uniform, constitutionally mandated procedures for requesting CORs in satisfaction of the right to due process.[1] Plaintiffs' proposed class definition relies on objective criteria—*e.g.*, whether a class member has been disqualified from voting under Tennessee laws, Tenn. Code Ann. §§ 40-20-112, 2-10-143(2)(3), and whether a member has made a request to a government entity for a COR.

## II. The Proposed Plaintiff Class Satisfies the Criteria of Rule 23(a)

Plaintiffs' proposed class meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.

### a. Numerosity

The proposed plaintiff class easily meets the numerosity requirement of Rule 23(a)(1). To be maintained as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no strict numerical test exists, 'substantial' numbers of affected [individuals] are sufficient to satisfy this requirement." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 416 (6th Cir. 2012). The Court may consider class size, geographic distribution of members and the ability of class members to pursue individual litigation; however, federal district courts in Tennessee have held that forty or more

---

[1] "[A]scertainability is not a[] . . . requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016). However, class members can be identified based on records (where such records exist) of convictions, COR requests made to government entities and individuals, and COR decisions made by the Election Division. The requested injunctive relief of an accessible, fair, and equitable COR process will benefit all class members, regardless of whether they can be identified or notified. The proposed class definition thus satisfies the requirements of Rule 23.

members is generally sufficient to meet the numerosity requirement of Rule 23(a). *See, e.g.*, *Robinson v. Purkey*, 326 F.R.D. 105, 166 (M.D. Tenn. 2018); *Allard v. SCI Direct, Inc.*, 2017 WL 3236448, at *3 (M.D. Tenn. 2017) ("The modern trend for meeting the numerosity factor is to require at a minimum 'between 21 and 40' class members.") (internal citation omitted).

The numerosity requirement is met here because the proposed class numbers well into the thousands. Based on expert analysis of documents produced by Defendants, Plaintiffs' expert Dr. Traci Burch estimates that the proposed class falls between 1,774 and 289,501 people. *See* **Ex. A** (Expert Decl. of Dr. Traci Burch), ¶ 13. According to Dr. Burch, the total number of Tennesseans who have lost the right to vote due to a felony conviction is at least 289,501, not including those disenfranchised due to out-of-state or federal felony convictions. *Id.* ¶ 10; *see also* Sentencing Project, Locked Out 2020: Estimates of People Denied Voting Rights Due to a Felony Conviction, at 16 (Oct. 25, 2022), https://www.sentencingproject.org/reports/locked-out-2022-estimates-of-people-denied-voting-rights/ (estimating that 471,592 Tennesseans were disenfranchised as of 2022). This estimate constitutes a rough upper bound on the number of class members.[2] Of those who have managed to obtain a COR and submit it to their county elections office for approval, at least 1,774 have been rejected. Burch Decl. ¶ 12. However, many, if not, most requests for CORs do not result in a COR being transmitted to an elections office for approval. *See, e.g.*, Burch Decl. ¶ 11 (finding that of the requests for CORs that were tracked by the Davidson County Criminal

---

[2] While it is unlikely that every disenfranchised Tennessean has sought, attempted to seek, or will seek a COR, the flawed procedures challenged in this case render unknowable the exact number of people who have attempted to do so. There is no process for initiating a COR request from the relevant incarcerating, supervising, or pardoning authorities, and many who attempt to make such requests are turned away by officials who simply refuse to fill out a COR. Am. Compl. ¶¶ 58-63. A refusal to fill out a COR almost never leaves a paper trail. Am. Compl. ¶¶ 55-56, 64. The probation office based in Davidson County, for example, does not keep a running record of COR requests made to its office. **Ex. B** (Dep. of Juanita Shaw) at 44:23-46:8.

Clerk of Court from roughly September, 2019 to October, 2022, only 47% resulted in CORs being transmitted to the county elections office for approval); *see also*, Am. Compl. at ¶¶ 40, 41, 42, 43, 44 (Plaintiffs Perry, Gray, Weare, Tournier, and Scott have been unable to obtain CORs to submit to the elections office for approval). Therefore, the number of disenfranchised Tennesseans who have requested or attempted to request CORs and not received one sufficient to restore voting rights is *at minimum* 1,774.

Because the class size is somewhere between 1,774 and hundreds of thousand, Plaintiffs surpass the numerosity threshold.

### b. Commonality

Plaintiffs also satisfy the requirement that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "Even a single [common] question will do" to satisfy the requirement. *Id.* at 359 (internal quotation marks omitted). Ultimately, the standard is met if the question "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. In assessing commonality, the Sixth Circuit looks for "a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc); *see also Wal-Mart*, 564 U.S. at 359.

The commonality requirement is met here. Claims One and Two present concrete common questions applicable to the proposed plaintiff class, including, but not limited to: (a) whether Plaintiffs have been deprived of a statutorily or constitutionally protected interest in restoration of their right to vote; (b) whether adequate process was afforded prior to that deprivation; and

(c) whether Defendants must provide additional procedures to ensure due process including but not limited to, a mechanism to formally request a COR, a final decision on that request, a written statement of reasons for denial, decisions based on uniform standards for interpreting the eligibility requirements, procedures to prevent denials based on improper reasons, and an appeals process. *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 389 (6th Cir. 2020) ("When considering whether a challenged state action violates procedural due process, we first consider whether there is a protected liberty interest" and if so "we consider what process is due[.]") (internal quotation marks omitted); *see also Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Additionally, Claim Three presents the common question of whether the class is subject to arbitrarily different rules and procedures for regaining the right to vote based only on the county of a person's felony conviction.

For all these questions, class treatment has the capacity "'to generate common *answers* apt to drive the resolution of the litigation.'" *Wal-Mart*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). The question of what minimum procedures and protections are constitutionally required for a legally sufficient COR process is a matter of law and requires a uniform answer, regardless of Plaintiffs' individual records, circumstances, prior efforts to restore their voting rights, or ultimate eligibility for a COR. Plaintiffs do not seek compensatory relief. Nor do they seek issuance of CORs and restoration of voting rights for themselves or members of the class. They seek only declaratory and injunctive relief as to the COR *process* that is broadly applicable to all class members. Tennessee's failure to administer a standardized, accurate, and navigable restoration process for eligible citizens affects all class members in the same manner—by creating a high risk of erroneous deprivation of a statutory and constitutionally protected right. Because

Plaintiffs' injuries stem from the same "common mode," injunctive and declaratory relief as to the lawfulness of the state's administration of the rights restoration process will resolve all class members' claims "in one stroke." *Id.* at 350. Plaintiffs satisfy the commonality requirement.

### c. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), and Plaintiffs' claims meet this requirement for similar reasons that they meet the commonality requirement.[3] The Sixth Circuit has stated the following with respect to the typicality requirement:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct . . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (internal citation omitted). Thus, "the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Id.*; *see also*, *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

Here, there is no question that the named Plaintiffs' claims are aligned with those of the unnamed class members. The claims of all Plaintiffs, named and unnamed, arise from the same decentralized, inaccurate, and inaccessible COR system that fails to meet the basic demands of due process. The named and unnamed Plaintiffs alike seek relief under the same statutory and

---

[3] Indeed, the Supreme Court has noted that the typicality, adequacy of representation, and commonality requirements "tend[ ] to merge." *Amchem*, 521 U.S. at 626 n. 20.

constitutional theories: violation of due process regarding the deprivation of the statutory right to a COR and the constitutional right to vote, and violation of the equal protection clause for arbitrary and unequal disenfranchisement.

This is not undercut by any potential variation in the facts of the named Plaintiffs' convictions nor the circumstances around the denials of their CORs. Rather, typicality is satisfied as the injury to the named Plaintiffs and the class are all caused by the same constitutionally inadequate system administered by Defendants. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) ("Defendants will have some individualized defenses against certain policyholders; however, the existence of these defenses does not defeat the commonality requirement under the theory asserted by Plaintiffs."); *see also*, *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988) ("Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.")

Since the mechanism that is causing injury– the state's inadequate COR system— violates the rights of named and unnamed class members alike, a finding by the court that the system is unlawful as to the named Plaintiffs would "also advance the interests of the class members." *See Sprague*, 133 F.3d at 399. The class meets the typicality requirement.

### d. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry overlaps with the inquiries into commonality and typicality. *See Amchem*, 521 U.S. at 626 n.20. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. "A class representative must be part of the class and

9

possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (internal citations omitted); *Beattie*, 511 F.3d at 562. "Accordingly, to satisfy the adequate representation requirements under Rule 23 . . . there must be an absence of a conflict of interest, and the presence of common interests and injury." *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998). To determine whether a class of plaintiffs meet Rule 23(a)(4)'s adequacy of representation requirement, courts must consider two criteria: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative[ ] will vigorously prosecute the interests of the class through qualified counsel." *Beattie*, 511 F.3d at 563 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

Here, the class representatives are well-positioned to represent the interests of the class. The named Plaintiffs do not have any conflict, much less a fundamental one, with the other members of the class in this case. As described above, they share with unnamed Plaintiffs common interests in a constitutionally valid system for voting rights restoration. The injunctive and declaratory relief they seek will benefit the entire class in the same manner—requiring Tennessee to administer a standardized, accurate, and navigable process for eligible citizens to have their voting rights restored. Named Plaintiffs are adequate class representatives.

Plaintiffs' counsel likewise meet the requirement for adequate representation. "The adequacy [requirement] also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20. "The adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified, experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class." 1 William B. Rubenstein, *Newberg on Class Actions* § 3:72 (5th ed. 2017) (internal quotation marks and footnotes omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 71 (6th Cir. 2000).

Plaintiffs are represented by counsel with substantial experience in election law and voting rights litigation, civil rights litigation, and class actions. For these reasons, as demonstrated in counsel's declarations, class counsel also satisfy the requirements of Rule 23(g), which requires that the Court appoint class counsel at the time of certification, and that in doing so the Court consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs' counsel Campaign Legal Center is a national, nonpartisan, nonprofit organization with two decades of experience litigating voting rights cases, including voting rights class action lawsuits. *See* **Ex. C**, Lang Decl. at ¶ 3.

Plaintiffs' counsel Baker Donelson is a leading law firm that specializes in class actions, including employment and other class actions. *See* **Ex. D**, Grant Decl. at ¶ 3. Counsel from Baker Donelson has considerable experience litigating on behalf of clients in numerous complex litigations as well as voting rights cases. *Id.*

Plaintiffs' counsel Free Hearts is a Tennessee-based nonprofit lead by women directly impacted by the criminal legal system that focuses on, among other things, voting rights issues. *See* **Ex. E**, Haynes Decl. at 1. Free Hearts has extensive experience in the subject matter of this case—Certificates of Restoration and voting rights restoration in Tennessee, generally. *See id.* at 1-2.

Plaintiffs' counsel Equal Justice Under Law is a non-profit, non-partisan organization that has extensive experience litigating complex, federal class action cases, including in Tennessee. *See* **Ex. F**, Baker Decl. at 1-2.

11

Plaintiffs have satisfied their initial burden to demonstrate adequacy of representation, 3 *Newberg on Class Actions*, *supra* § 3:72, and absent any evidence to the contrary, the Court should thus presume the adequacy has been satisfied, *id*.

## III. Class Certification is Appropriate Under Rule 23(b)(2)

The Court should certify the class pursuant to Rule 23(b)(2). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has noted that certification under Rule 23(b)(2) is particularly appropriate in "[c]ivil rights cases against parties charged with unlawful, class-based discrimination." *Amchem*, 521 U.S. at 614. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Here, the action is maintainable under Rule 23(b)(2) because Defendants have acted or failed to act in the same way toward the class and the complaint seeks declaratory and injunctive relief that will remedy the injuries of all class members. Defendants have failed to implement constitutionally mandated procedures to administer Tennessee's system of restoring the voting rights of eligible persons previously convicted of certain felonies, thereby depriving them of the right to vote without due process. All class members have been injured in the same way: members have sought restoration of their voting rights through Defendants' deficient COR process and come up empty-handed without access to the core elements of due process in that adjudication.

Because the harm is common to all class members, the injunctive or declaratory relief requested is appropriate as to the proposed class as a whole. Should the Court ultimately grant the declaratory and injunctive relief Plaintiffs seek with respect to the proposed class, Defendants will be required to implement a process that allows all class members to request and be issued CORs or, if they are deemed ineligible, provides applicants with a fair and accurate assessment of what they must do to become eligible and a means of appealing an eligibility determination they believe is erroneous. *See* Am. Compl., Request for Relief, ¶ B.

A single order of the court enjoining Tennessee's unlawful administration of its COR system and requiring Defendants to implement a centralized process for rights restoration that incorporates the key elements of due process would remedy the harm as to all class members. Plaintiffs do not seek to compel issuance of their individual CORs, nor the CORs of the class, but rather the implementation of an accessible, fair, and standardized COR process that provides an accurate assessment of their eligibility and a means of appealing wrongful denials[4]. Individual determinations need not be made to redress the injuries suffered by class representatives or

---

[4] Class certification is important to achieve the requested injunctive relief because Defendants have the power to restore voting rights to the individual plaintiffs. The Sixth Circuit has recognized the potential for defendants to "pick off" plaintiffs and applies a specific exception to mootness in class actions as a guard against it. *Unan v. Lyon*, 853 F.3d 279, 285 (6th Cir. 2017) ("The 'picking off' exception was developed to prevent defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that 'would be contrary to sound judicial administration.'") (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). The Sixth Circuit recently applied this exception in a class action challenging facets of TennCare's denial system when, on the eve of the hearing on class certification, Tennessee officials suddenly enrolled all of the named plaintiffs and many of the other 100 identified members of the putative class in TennCare. *Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016). Class certification will help ensure that similar tactics cannot be deployed to avoid judicial scrutiny of the rights restoration process. See *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)) ("In class actions, standing must exist both at the time the complaint is filed and at the time the class was certified . . . . Once a class is certified, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists.").

unnamed class members. The court's decision as to whether the state's current process satisfies constitutional requirements can supply relief to all class members.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify their proposed class pursuant to Rule 23(b)(2) for Counts One, Two, and Three and appoint the undersigned as class counsel.

Date: November 1, 2022

Respectfully submitted,

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Danielle Lang*
Blair Bowie*
Alice Huling*
Aseem Mulji*
Valencia Richardson**
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
Dlang@campaignlegal.org
Bbowie@campaignlegal.org
Ahuling@campaignlegal.org
Amulji@campaignlegal.org
Vrichardson@campaignlegal.org

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave N,

14

Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org

*Counsel for the Petitioners-Plaintiffs and the Putative Classes*

\* Admitted pro hac vice
\*\* Application for admission pro hac vice pending

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on November 1, 2022 by operation of the Court's electronic filing system on the following:

JANET M. KLEINFELTER (BPR #13889)
Deputy Attorney General
Janet.kleinfelter@ag.tn.gov

ALEXANDER S. RIEGER (BPR #29362)
Assistant Attorney General
Alex.rieger@ag.tn.gov

MATTHEW D. CLOUTIER (BPR #36710)
Assistant Attorney General
Matt.cloutier@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

/s/ *Charles K. Grant*
Charles K. Grant