IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LEE, et al., <br><br> Defendants | No. 3:20-cv-01039 <br><br> Judge Campbell <br> Magistrate Judge Frensley |

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

The Attorney General, on behalf of the official-capacity state defendants in this matter, submits this response in opposition to Plaintiffs' Motion for Class Certification. (DE 104). Because Plaintiffs cannot demonstrate numerosity, typicality, and commonality or satisfy the requirements of Fed. R. Civ. P. 23(b), the motion should be denied.

**FACTS**

A. **The First Amended Complaint**[1]

On October 20, 2022, Plaintiffs filed their First Amended Complaint, raising multiple claims for violations of the Fourteenth Amendment's guarantees of due process and equal protection, the Twenty-Fourth Amendment, and the National Voter Registration Act. (DE 102). Plaintiffs named as defendants Tennessee's Governor, Interim Commissioner of the Department of Corrections, the Coordinator of Elections, and the Secretary of State, all in their official capacities only. (DE 102, PageID# 627-28).

---

[1] For ease of discussion, this response will omit a description of Plaintiffs' claims for which they are not seeking class certification. Allegations from the First Amended Complaint are set forth herein solely for the purpose of responding to Plaintiffs' Motion for Class Certification and not admitted for any other purpose.

The Individual Plaintiffs are Lamar Perry, Curtis Gray Jr., John Weare, Benjamin Virgil Tournier, Leola Scott and Reginald Lamar Hendrix. (DE 102, PageID# 621-26). And each pleaded their individual circumstances which they contend entitled them to relief:

Plaintiff Perry sought a Certificate of Restoration ("COR") but was denied for unpaid court costs. He believes that he does not owe these amounts, that the Shelby County Criminal Court Clerk is incorrect, and that he is entitled to a COR and to regain his eligibility to vote. (DE 102, PageID# 621-22).

Plaintiff Gray also sought a COR but was denied by the Shelby County Criminal Court Clerk for failing to pay $279.00 in unpaid court costs and what he contends is a wrongly-required $500 fine. He likewise asserts that the Shelby County Criminal Court Clerk was incorrect. (DE 102, PageID# 622).

Plaintiff Scott sought three CORs for her three felonies in Dyer County. A probation officer filled out the top half of all three, and the Dyer County Clerk of Court filled out the remainder, but noted that on two of the CORs, court costs were still owed. The Clerk provided a printout showing a balance of $93 for clerk data processing and sheriff data processing for the first, and a balance of $2,297 for the second, including $2,000 Plaintiff Scott contends is a fine. Plaintiff Scott contends that the Clerk's accounting was incorrect and that payments were not properly accounted for. (DE 102, PageID# 625-26).

Plaintiff Weare's disqualifying conviction happened out of state, in Maricopa County, Arizona. He asserts that he has completed his sentence and does not believe that he owes court costs or restitution. He contends that Arizona's officials have not completed his COR, which leaves him ineligible to vote in Tennessee. He asserts that the Governor of Tennessee *could* grant him clemency and that there is no mechanism to request a COR from the Governor should he do so. (DE 102; PageID# 622-23). He does not allege that he has sought clemency.

Plaintiff Tournier was convicted of multiple offenses in Yavapai and Maricopa Counties in Arizona. He does not believe he owes court costs or restitution for his Maricopa convictions but has been unable to find an Arizona official to complete his COR. The Yavapai County clerk reported that he owes $1,855 in probation fees and attorneys' fees, and Plaintiff Tournier is unsure whether these are considered court costs. He alleges that a Tennessee probation officer could fill out the top part of the form, but

conspicuously does not plead that he has provided a COR to the appropriate officials. And like Plaintiff Weare, he asserts that the Governor of Tennessee *could* grant him clemency and that there is no mechanism to request a COR from the Governor should he do so. (DE 102; PageID# 622-23). He has also not alleged that he has sought clemency.

Finally, Plaintiff Hendrix was convicted of a series of drug and theft crimes in Williamson and Davidson Counties. He was provided two completed CORs covering his five convictions in Williamson County but his restoration of voting rights was denied by the Division of Elections for having additional convictions in Davidson County for which he did not have a COR. He complains that he has requested the CORs for his remaining convictions from Davidson County officials but that if he does not timely receive them, he would not be able to vote in the November 2022 elections. His complaint omits the date when he made the request for CORs for his Davidson County convictions. (DE 102, PageID# 626).

1. Count One

Count One of the First Amended Complaint alleges violation of procedural due process pursuant to 42 U.S.C. § 1983. Plaintiffs allege that "[t]he Tennessee legislature has created a liberty interest, protected by procedural due process, in a COR for individuals who meet certain eligibility criteria." (DE 102, PageID# 649). They assert that "the current COR process lacks uniform access to an impartial decisionmaker, clear decisions based on the rules, a statement of reasons for the decision, uniform procedures for assessing eligibility, protections against denials for immaterial reasons, and an opportunity to be heard (on appeal)." (DE 102; PageID# 649-50).

2. Count Two.

Count Two of the First Amended Complaint likewise alleges violation of procedural due process pursuant to 42 U.S.C. § 1983, this time concerning the fundamental right to vote. (DE 102; PageID# 651). Plaintiffs allege that because a validly-issued COR is required for a previously-disenfranchised felon to exercise the right to vote, the "failure to administer procedures to protect against erroneous deprivation of CORs, and the attendant right to vote, also violates the Due Process Clause." (DE 102; PageID# 652).

3. <u>Count Three</u>

Count Three of the First Amended Complaint alleges violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983. Plaintiffs allege that a disenfranchised felon's ability "to request and be issued a COR and thereby regain their right to vote depends entirely on the willingness of local and county-level officials to entertain COR requests, their varying interpretations of state law (especially regarding [legal financial obligation] requirements) and their processes for keeping and maintaining records." (DE 102, PageID# 652-53). Plaintiffs contend that "[a]bsent a uniform process and standards for requesting and issuing CORs, including an appeal mechanism, there is no way to ensure equal application of the COR process and the attached right to vote to similarly situated individuals." (DE 102, PageID# 654).

**B.     Information Regarding Plaintiffs' Proposed Class.**

Plaintiffs' proposed class consists of "Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a Certificate of Restoration ("COR") from the pardoning, incarcerating, or supervising authority, but to date have not received a COR sufficient to restore their voting rights." (DE 104; PageID# 666; DE 102, PageID# 646). Plaintiffs seek class certification as to Counts One, Two, and Three of the First Amended Complaint. (DE 104; PageID# 666). Plaintiffs ask that Plaintiffs Perry, Gray, Weare, Tournier, Scott, and Hendrix be appointed as class representatives and that their counsel be appointed as class counsel. (DE 104, PageID# 666).

**LAW AND ARGUMENT**

Here, the individual plaintiffs present a mixed bag. Apart from being disenfranchised felons who must comply with Tennessee's voting restoration laws by receiving a COR, there is no common thread to follow. Some have grievances with Tennessee's County Clerks of Court regarding whether an owed sum is a court cost, restitution, or fine—even though some admit that they still have unpaid court costs on top of the uncertain sum. Some complain that the Clerks move too slowly, even though they haven't plead the date of which a request was made. Some are upset with officials in other states who won't complete a COR for them. Some complain that they have no ability to seek a COR from the Governor—even though they haven't been granted clemency and haven't alleged that they have sought clemency.

### A. Class Certification Standard

A class may be certified only if the movant proves that (1) the class is so numerous that joinder of all members would be impracticable ("numerosity"); (2) there are questions of fact and law common to the class ("commonality"); (3) the claims of the representatives are typical of the claims of the unnamed members ("typicality"); and (4) the named representatives will be able to represent the interests of the class adequately ("adequacy"). Fed. R. Civ. P. 23(a). In addition to Rule 23(a), at least one of the three alternative subsections of Rule 23(b) must also be satisfied. Fed. R. Civ. P. 23(b).

While the trial court has broad discretion in determining whether to certify a class, that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The "rigorous analysis" requirement means that a class is not maintainable merely because the complaint and the motion parrot the legal requirements of Rule 23. *In re Am. Med. Syst., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Instead, plaintiffs must "satisfy through evidentiary proof [each of the Rule 23(a) factors and] at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

### B. Plaintiffs cannot meet their burden for class certification.[2]

1. <u>Plaintiffs cannot satisfy the numerosity requirement.</u>

Plaintiffs cannot show numerosity. To prove numerosity, a plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has observed that "while the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and *cannot be speculative*." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (emphasis added).

---

[2] Based upon the discovery process and counsel's performance thus far, Defendants do not challenge the adequacy requirement for class representatives or class counsel.

In *Golden*, the putative class consisted of Columbus tenants whose water service was or was going to be terminated because of a prior tenant's or the landlord's indebtedness. *Id.* at 966. To establish numerosity, the plaintiff relied upon the number of renters in Columbus (150,000). *Id*. The Court found this was not sufficient to establish numerosity:

> Golden must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent. The gravamen of Golden's equal protection claim is that the City irrationally terminates certain tenants' water service. Golden does not allege that *all* tenants in Columbus are at risk of constitutional harm, only those whose predecessors or landlords are indebted to the City. Thus, reference to the total number of tenants in Columbus is not probative of the number of tenants reasonably likely to face the harm for which Golden seeks redress. Of course, the total number of tenants in Columbus is probative in the very limited sense that it represents the absolute maximum number of plaintiffs that could be in any class action brought by a tenant against the City. But the district court must engage in a "rigorous analysis" when evaluating the plaintiff's proof of numerosity.

*Golden*, 404 F.3d at 966 (emphasis in original).

Plaintiffs' argument here fails for similar reasons. They rely entirely upon the declaration of Dr. Traci Burch to conclude that 1,774 people out of 311,937 supervised by the Tennessee Department of Corrections have submitted COR applications that have not been granted. (DE 105-1, PageID# 695). But there is no explanation as to the circumstances of each of those persons as to whether the ungranted applications were explainable and benign or otherwise. Nor does she provide any insight into whether those 1,774 people would have potentially suffered a constitutional violation similar to that alleged by the individual plaintiffs to determine whether they could be putative class members. And Plaintiffs admit the problems with their upper bound of 289,501 class members given that not every disenfranchised Tennessean will meet their class definition of "Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a Certificate of Restoration ("COR") from the pardoning, incarcerating,

or supervising authority, but to date have not received a COR sufficient to restore their voting rights." (DE 105, PageID# 675, fn. 2; DE 104; PageID# 666; DE 102, PageID# 646). Nor do any of the individual Plaintiffs purport in their First Amended Complaint or Motion for Class Certification to have specific information regarding other potential class members.

A number is just that. It provides no insight into individual circumstances to allow the Court to determine whether there is any likelihood that each individual could be a class member. Plaintiffs are forcing the Court to guess whether these individuals might fall within the ambit of the First Amended Complaint and the putative class definition. And the burden is theirs, not Defendants. Because Plaintiffs have failed to go beyond mere speculation as to showing that the number of claimants is "so numerous that joinder of all members is impracticable," their request for class certification should be denied. *Golden*, 404 F.3d at 966.

2. <u>Plaintiffs cannot satisfy the commonality requirement.</u>

Plaintiffs also cannot show commonality. Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires Plaintiff to demonstrate that class members have suffered the same injury, and that their claims depend upon a common contention. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349-50 (2011). "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In the present case, this Court will be unable to resolve the issues that are central to the validity of each one of the claims "in one stroke." Importantly, the balancing required for equal-protection and due-process analyses (which is critical for the claims) must take place for each individual, and not the class as a whole.

Plaintiffs have identified three questions they contend are applicable here to each claim: "(a) whether Plaintiffs have been deprived of a statutorily or constitutionality protected interest in restoration of their right to vote; (b) whether adequate process was afforded prior to that deprivation; and (c) whether Defendants must provide additional procedures to ensure due process including but not limited to, a mechanism to formally request a COR, a final decision on that request, a written statement of reasons for denial, decisions based on uniform standards for interpreting the eligibility requirements, procedures to prevent denials based on improper reasons, and an appeals process." (DE 105, PageID# 676-77). Plaintiffs raise one additional question for Claim Three, "whether the class is subject to arbitrarily different rules and procedures for regaining the right to vote based only on the county of a person's felony conviction." (DE 105, PageID# 677).

The plaintiff in *Secreti* similarly identified five questions common to all members, but such questions (like the ones raised here) are insufficient because *the* question central to the validity of each claim cannot be *answered* as to the class as a whole, but must be examined through a balancing of interests for each individual. *Secreti v. PTS of America, LLC*, No. 3-13-1065, 2015 WL 3505146 (M.D. Tenn. June 3, 2015); *Dukes*, 564 U.S. at 349-50. As the Supreme Court explained, "[w]hat matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009) (emphasis added).

Because this Court will not be able resolve the issues that are central to the validity of each one of the claims "in one stroke," there is no commonality.[3]

Plaintiffs make a smart move here. Knowing that the divergent facts and circumstances of each individual plaintiff would certainly doom a commonality analysis regarding individual *entitlement* to a COR, they expressly disclaim that they are seeking this relief, instead arguing that they seek a different *process*. (DE 105, PageID#677). The problem with Plaintiffs' commonality analysis, though, is that they must show a high risk of erroneous deprivation that could be remedied by their preferred restoration process. And that won't fix their issues with out-of-state officials— no process the Court could impose on Tennessee could compel Maricopa County, Arizona to complete Plaintiff Weare's COR. Same goes for Plaintiff Tournier's CORs for his Yavapai and Maricopa County convictions.

Plaintiff Hendrix doesn't complain that an error was made regarding his Davidson County COR request, he just asserts that it might not be timely for the November 2022 election—all the while conveniently omitting when he requested it. That is far different from Plaintiffs Gray and Scott's issues with how the County Clerks categorize unpaid legal obligations. And even further away are Plaintiffs Tournier and Weare's assertions that they need a COR process for gubernatorial clemency they haven't received yet or alleged that they have sought. Each of these circumstances has a different weight in terms of risk of erroneous deprivation. And for those that admit that they

---

[3] *Secreti* at *4. *See also Phillips v. Sheriff of Cook Cty.,* 828 F.3d 541, 553–54 (7th Cir. 2016) (affirming district court's finding of no commonality in class action against county jail for inadequate dental care because the merits of each plaintiff's claim would depend on facts of each individual and could not be resolved for the class as a whole); *Wharton v. Coupe*, 2015 WL 5768936, at *4 (D. Del. 2015) (commonality lacking for putative class action against Delaware Department of Correction for over-detention of inmates where class-wide resolution in "one-stroke" was not possible due to the fact that some of the over-detentions were caused by court-errors and not allegedly unconstitutional practices).

have unpaid court costs which would bar their voting eligibility, no weight at all in the *Mathews* analysis.

These are just the individual plaintiffs. To effect relief, the Court would have to look at each individual putative plaintiff, ascertain whether they are a class member, ascertain what bars their restoration of voting rights, weigh the risk of erroneous deprivation for each distinct circumstance, and then consider whether the existing remedies of mandamus for issuance of the COR or the statutorily-created appeal of denial of their voter registration pursuant to Tenn. Code Ann. § 2-2-125 (which itself is appealable by the common-law writ of certiorari, Tenn. Code Ann. § 27-8-101) would provide sufficient process at that stage of the voter restoration process or whether they would be entitled to a court-ordered remedy. That is not commonality, and certainly is not appropriate for class-wide relief.

3.  <u>Plaintiffs cannot satisfy the typicality requirement.</u>

Plaintiffs also cannot demonstrate typicality. Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998). The two concepts of commonality and typicality "tend to merge" in practice. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). "[T]ypicality cannot be established when a named plaintiff who proves his own claim would not necessarily have proved anyone else's claim." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 79 (M.D. Tenn. 2004).

Similarly, in the present case, even if the individual Plaintiffs prove that their constitutional rights were violated, they will not necessarily prove any other individual's entitlement to relief due to the different risk of erroneous deprivation for each person's individual circumstances and the sufficiency of remedies already available, such as mandamus, statutory appeal, or the common law

writ of certiorari. As discussed *supra*, that will necessarily require a constitutional balance between the opposing interests, which are not uniform from case to case. Accordingly, typicality is not satisfied. *Sprague*, 133 F.3d at 399.

        4.      <u>Plaintiffs cannot satisfy the requirements of Rule 23(b)(2).</u>

Class certification should also fail because Plaintiffs cannot satisfy at least one of the subsections of Rule 23(b). *See, e.g., Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013). Plaintiffs here rely solely upon Rule 23(b)(2). (DE 104).

Rule 23(b)(2) provides that a class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to [a Rule 23(b)(2)] class is . . . the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted). Moreover, "[d]eclaratory or injunctive relief under 23(b)(2) is appropriate where it 'is a separable and distinct type of relief that will *resolve an issue common to all class members.*'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (emphasis added). To certify a class under Rule 23(b)(2), it is generally sufficient "that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Robinson v. Gen. Elec. Co.*, No. 09-cv-11912, 2016 WL 1464983, at *15 (E.D. Mich. 2016).

As described above, the unique factual circumstances that each individual Plaintiff alleges illuminate the potential differing risks of erroneous deprivation and whether they can be remediated by this Court in the case of out-of-state actors. Likewise, for each putative class member's individual circumstances and position in the voter restoration process, the Court will be

required to weigh the possibility of existing remedies such as mandamus, appeal of the denial of voter registration, or the common law writ of certiorari to determine if they are sufficient. Procedural due process requires this balancing, and it is not one-size-fits-all. There is no risk of erroneous deprivation to a Plaintiff who admits he has unpaid court costs. Or child-support. Or restitution. *See* Tenn. Code Ann. § 40-29-202(b). Or for those who also have permanently disqualifying convictions. *See* Tenn. Code Ann. § 40-29-204. Likewise, Plaintiffs' preferred process wouldn't help plaintiffs with out-of-state paperwork issues. Thus a single injunction will not be able to globally address these equal-protection and due-process claims. And worse, the sought-after injunction risks overbroad relief to putative class members who would not individually merit it. An appeal where a plaintiff is otherwise barred from voting restoration serves no purpose.

Accordingly, individual determinations must be made in each case to determine eligibility for injunctive relief. The injunction suggested by Plaintiffs would result in overbroad relief; certain members of the suggested class would not merit it. Rule 23(b)(2) certification based upon class-wide injunctive liability is therefore inappropriate. *See, e.g., Timoneri v. Speedway, LLC*, 186 F. Supp. 3d 756, 764 (N.D. Ohio 2016) (Rule 23(b)(2) certification not available in class action for alleged violations of the Americans with Disabilities Act (ADA) because the differences in the alleged ADA violations would require the Court to conduct an individualized analysis of each location's compliance or non-compliance, making a class-wide finding of injunctive liability inappropriate). Plaintiffs thus cannot satisfy Rule 23(b)(2).

12
Case 3:20-cv-01039   Document 108   Filed 11/22/22   Page 12 of 14 PageID #: 769

## CONCLUSION

For the aforementioned reasons, Plaintiffs cannot satisfy all of the requirements for class certification, and therefore their Motion should be denied.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter


 s/Alexander S. Rieger
ALEXANDER S. RIEGER
(BPR No. 029362)
Senior Assistant Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408

## CERTIFICATE OF SERVICE

       I hereby certify that a true and exact copy of the foregoing document has been forwarded electronically via email to the parties named below.

Danielle Lang
Mark Graber
Aseem Mulji
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

Phil Telfeyan
Natasha Baker
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004

Nick C. Christiansen
16 Public Square North
P.O. Box 884
Murfreesboro, TN 37133

Charles K. Grant
Denmark J. Grant
Baker, Donelson, Bearman
Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203

Keeda Haynes
Free Hearts
2013 25th Ave. N.
Nashville, TN 37208


Date: November 22, 2022

                                                    /s/Alexander S. Rieger
                                                    ALEXANDER S. RIEGER