**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, and LAMAR PERRY, CURTIS GRAY, Jr, JOHN WEARE, BENJAMIN TOURNIER, LEOLA SCOTT, and REGINALD HENDRIX, for themselves and those similarly situated,

Plaintiffs,

v.

WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, LISA HELTON, in her official capacity as Interim Commissioner of the Department of Correction of the State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, and TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, , as a class, all Tennessee county clerks of criminal court, and, as a class, all directors of local offices of probation,

Defendants.

Civil No. 3:20-cv-01039

JUDGE WILLIAM L. CAMPBELL
Magistrate Judge Jeffrey S. Frensley

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**CLASS ACTION**

Plaintiffs respectfully submit this reply to Defendant's response in opposition to Plaintiffs' motion for class certification. The Court should certify the class because it meets all the requirements of Rule 23(a) and satisfies Rule 23(b). Defendants' arguments to the contrary fail.

## I. Plaintiffs' Proposed Class Satisfies the Numerosity Requirement.

Plaintiffs have demonstrated that the class size consists of somewhere between 1,774 and roughly 290,000 people. Mem. Supp. Mot. for Class Cert., ECF No. 105 at 5. The exact number cannot be known because of the very systemic failures that Plaintiffs challenge—there is no application for a COR and thus no records of how many people have requested or attempted to request CORs. And the exact number need not be known for the same reason that the class members need not be ascertainable—the requested injunctive relief will benefit the class regardless of whether they are identified and notified. Based Defendants' records, it is certain that there are *at least* 1,774 people in the class. Dr. Burch Decl., ECF No. 105-1 at 6. This is well beyond the threshold to meet Rule 23(a)(1)'s numerosity requirement. *Allard v. SCI Direct, Inc.,* 2017 WL 3236448, at *3 (M.D. Tenn. July 31, 2017) ("The modern trend for meeting the numerosity factor is to require at a minimum 'between 21 and 40' class members.") (internal citation omitted).

Defendants make two arguments against the class's numerosity. First, they argue that Plaintiffs' numbers are too speculative, comparing the putative class with the proposed class in *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). Resp. to Mot. for Class Cert., ECF No. 108 ("Resp.") at 6. However, the plaintiffs in *Golden* relied on only one number: the maximum size of the class. They did not provide an estimate of the lower bound of the class. Here, Plaintiffs have provided upper and lower bounds for the class size, and it is the lower bound that matters. The lower bound is decidedly not speculative—it is based on Defendants' own record-keeping—

and it easily surpasses the threshold beyond which joinder is impracticable.[1]

Next, Defendants complain that Plaintiffs have provided "no explanation as to the circumstances of each of those [1,774] persons as to whether the ungranted applications were explainable and benign or otherwise." Resp. at 6. But the nature of the denial is of no consequence to Plaintiffs' class definition. A person is a member of the class if they have been disenfranchised, requested or attempted to request a COR, and not received a COR sufficient to restore their right to vote.[2] The 1,774 people identified by Plaintiffs undeniably fit this bill. *See* ECF No. 105-1 at 8-9. Defendants' argument seems to be against a class of Tennesseans who have *erroneously* been denied CORs, but Plaintiffs have not asked the Court to certify such a class. This is because the class claims hinge not on members' ultimate entitlement to CORs but rather their right to constitutionally sufficient procedures and equal treatment in the administration and distribution of CORs. In cases like this one, classes are defined by the individuals subject to the challenged procedures, not the individuals ultimately entitled to the substantive benefit regulated by the procedures. *See, e.g.*, *Barry v. Corrigan*, 79 F. Supp. 3d 712, 730 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) (certifying class of "all past, present, and future applicants for, or recipients of, benefits administered by [defendants] who have suffered or will suffer . . . denial, termination, or reduction of . . . benefits based on [challenged procedures]").[3]

---

[1] In response to Defendants' discovery since filing the motion to certify, Plaintiff Tennessee NAACP disclosed to Defendants a list of an additional 462 people that it has individually identified as members of the class.

[2] Plaintiff Hendrix has received his COR and had his voting rights restored since the filing of the amended complaint. Defendants' response does not argue that his claim is moot, likely because the "picking off" exception may apply. *See Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016) (applying an exception to mootness when Tennessee officials suddenly remedied named plaintiffs' injuries on the eve of certification).

[3] To define the class as those who were *erroneously* denied a COR could also turn it into an impermissible "fail-safe class," or one "that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).

## II. Plaintiffs' Proposed Class Satisfies the Commonality Requirement.

Plaintiffs have presented three common questions for the procedural due process claim and one common question for the equal protection claim. Fed. R. Civ. P. 23(a)(2); *see* ECF No. 105 at 6-7. Defendants suggest that "the balancing required for equal protection and due-process analyses (which is critical for the claims) must take place for each individual, and not the class as a whole." ECF No. 108 at 7. Not so. In fact, procedural due process and equal protection claims necessarily require balancing system-wide concerns, rather than individual interests, which is why these types of claims are regularly resolved at the class level. *See, e.g.*, ECF 105 at 3 (citing Sixth Circuit examples of procedural due process class actions).[4]

The procedural due process claims first raise the questions of whether the Plaintiffs have been deprived of statutorily and constitutionally protected interest in restoration of their right to vote. ECF No. 105 at 3. By definition, class members have been denied CORs; the question is whether there are protected interests in CORs and restoration of the right to vote. *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 389 (6th Cir. 2020) ("When considering whether a challenged state action violates procedural due process, we first consider whether there is a protected liberty interest."). The answer is a matter of law and will be the same for all class members. Next, the Court will need to decide whether the existing procedures for seeking a COR are sufficient. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976) (determining what process is due by balancing (1) the interest affected; (2) the risk of erroneous deprivation under the current procedures and the "probable value . . . of additional or substitute procedural safeguards;" and (3)

[4] Defendants also argue that the Court's procedural due process inquiry should proceed on an individualized basis, leading to different constitutionally required processes for COR applicants depending on their individual circumstances. Resp. at 10. Such an approach is both impractical and improper, raising its own constitutional equal protection concerns. Constitutional due process protections must apply neutrally to all applicants.

the "fiscal and administrative burdens" of additional procedures). Individual class members have either been erroneously deprived of a COR or not, but the *risk* of erroneous deprivation created by the lack of safeguards is a systemic inquiry with a common answer for all COR applicants. Similarly, proposed improvements and their potential value and costs are balanced regarding the system as a whole, not individual plaintiffs. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 800 (6th Cir. 2018) ("[W]here the … interest is significant and the cost to the government of providing additional, valuable process is low, then greater procedures must be implemented.").[5]

The equal protection questions also require generalized, rather than individualized, inquiries and answers. Plaintiffs allege that similarly situated Tennesseans—those convicted of the same crime and who have met the same requirements—may be granted or denied access to the right to vote based solely on the county of their felony conviction. First Am. Compl., ECF No. 102 ¶ 147. Plaintiffs allege an absence of statewide rules, guidance, and training, resulting disparate and unequal policies, practices, and application occurring across the state. ECF No. 105 at 1-2. Plaintiffs' claims raise common questions which will generate an answer as a matter of law.

**III. Plaintiffs' Proposed Class Satisfies the Typicality Requirement.**

For similar reasons, Plaintiffs satisfy the typicality standard. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'") (internal citation omitted). Defendants argue that "even if

[5] Defendants argue they could not implement a process that would help Plaintiffs Tournier and Weare obtain CORs for their out of state convictions. However, the statutes create a right to a COR for any eligible Tennessean, explicitly including those convicted in jurisdictions outside of Tennessee state court. T.C.A. § 40-29-202(a) ("A person rendered infamous and deprived of the right of suffrage by the judgment of *any state or federal court* is eligible to apply for a voter registration card and have the right of suffrage restored upon [meeting the eligibility criteria].").

the individual Plaintiffs prove that their constitutional rights were violated, they will not necessarily prove any other individual's entitlement to relief." Resp. at 10. This is incorrect. Unacceptable risk of erroneous deprivation is a feature of the system itself, and the existing procedures that create it necessarily injure any person who has been deprived of a COR. Thus, a victory for named plaintiffs advances the interests of the entire class by proving that the system needs additional safeguards.

## IV. Class Certification is Appropriate Under Rule 23(b)(2).

Finally, Defendants argue that the certification is not appropriate under Rule 23(b)(2) because the requested relief—a process with adequate safeguards to limit the risk of erroneous deprivation—would be overbroad, as some members of the class are not eligible for CORs. Resp. at 12. But *all* COR seekers are entitled to a constitutionally adequate *process* and equal treatment, not just those who will ultimately be deemed eligible through the challenged process. And "even if some class members have not been injured by the challenged practice," a class is appropriate under 23(b)(2) where, as here, plaintiffs seek declaratory or injunctive relief applicable to the entire class. *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 428 (6th Cir. 2012) (internal citation omitted). Plaintiffs' requested relief requires no individualized determinations: a single injunction ordering Defendants to administer necessary procedures will remedy the deficiencies that injure *all* COR seekers. Plaintiffs' claims are thus well suited to class treatment under 23(b)(2).

## CONCLUSION

Plaintiffs respectfully request that the Court certify their proposed class pursuant to Rule 23(b)(2) for Counts One, Two, and Three and appoint the undersigned as class counsel.

Dated: December 6, 2022

Respectfully submitted,

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Danielle Lang*
Blair Bowie*
Alice Huling*
Aseem Mulji*
Valencia Richardson*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
dlang@campaignlegal.org
bbowie@campaignlegal.org
ahuling@campaignlegal.org
amulji@campaignlegal.org
vrichardson@campaignlegal.org

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

nbaker@equaljusticeunderlaw.org

*Counsel for Petitioners-Plaintiffs and the Putative Classes*
* Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on December 6, 2022 via the Court's electronic filing system on the following:

Janet M. Kleinfelter
Andrew B. Campbell
Matthew D. Cloutier
Alexander S. Rieger
Office of the Tennessee Attorney General
Public Interest Division
PO Box 20207
Nashville, TN 37202

*/s/ Charles K. Grant*
Charles. K. Grant