**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

TENNESSEE CONFERENCE of the NATIONAL
ASSOCIATION for the ADVANCEMENT of
COLORED PEOPLE, et al.,

Plaintiffs,

v.

WILLIAM LEE, in his official capacity as Governor of
the State of Tennessee, et al.,

Defendants.

Civil No. 3:20-cv-01039

JUDGE CAMPBELL
MAGISTRATE JUDGE
FRENSLEY

[Class Action]

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEIR MOTION FOR SUMMARY JUDGMENT ON COUNTS FOUR AND SIX

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................ 6

I.    Plaintiff TN NAACP Has Standing ................................................................................ 6

II.   Plaintiff is Entitled to Summary Judgment on Count Four Because Tennessee's Voter
      Registration Form Fails to Inform Applicants of Voter Eligibility Requirements in
      Violation of the NVRA. ................................................................................................... 9

      A.   The NVRA Requires that States Specify Each and Every Eligibility
           Requirement on the Voter Registration Form to Enable Registrants to
           Determine Their Eligibility Easily and Privately. ................................................. 9

      B.   Tennessee's Voter Registration Forms Violate the NVRA by Failing to Specify
           Eligibility Criteria and Provide Sufficient Information on Registration Forms to
           Enable Individuals with Felony Convictions to Determine Whether They Are
           Eligible to Vote. ................................................................................................... 11

III.  Plaintiff is Entitled to Summary Judgment on Count Six Because Defendants' Blanket
      Rejection of Valid State Forms and Demand for Documentary Proof of Eligibility
      Violates the NVRA. ....................................................................................................... 15

      A.   Defendants' Blanket Rejection Policy Violates the NVRA's Requirement that
           States "Ensure" the Registration of "Eligible" Voters Upon Timely Receipt of
           Valid Registration Forms. ................................................................................... 16

      B.   The Documentation Requirement Violates the NVRA's Limit on States
           Requiring Documentation to Register to Vote in Federal Elections Beyond a
           Facially Valid Registration Form. ....................................................................... 20

      C.   Defendants' Blanket Rejection Policy and Documentation Requirement
           Violates the NVRA's Requirement that a State Maintain Voter Rolls in a
           "Uniform" and "Nondiscriminatory" Manner. ..................................................... 26

IV.   Defendants' Recent Actions Do Not Moot Plaintiff's NVRA Claims ........................... 27

      A. Defendants' New Policies Still Violate the NVRA .......................................... 28

      B. Defendants Cannot Show that Their Violations Cannot Reasonably Be
         Expected to Recur. ........................................................................................... 28

V.    Plaintiff TN NAACP Provided Adequate Notice Under the NVRA .............................. 31

CONCLUSION ...................................................................................................................... 33

# INTRODUCTION

Despite the fact that many Tennesseans convicted of felonies have never lost the right to vote, Defendants Mark Goins' and Tre Hargett's ("Defendants")[1] voter registration forms and policies make it almost impossible for those people to actually register and vote, in violation of the National Voter Registration Act ("NVRA").

Tennessee's registration forms are deficient because they fail to "inform" applicants of voter eligibility requirements as required by the NVRA. Despite the NVRA's mandate that each registration form "specif[y] . . . each eligibility requirement," neither Tennessee's state voter registration form ("State Form") nor the Tennessee-specific instructions on the National Mail Voter Registration Form ("Federal Form") describe in detail when applicants with felony convictions are or are not disqualified from voting in Tennessee. In fact, election officials in the state continue to use an old version of the State Form that misinforms applicants by providing patently *incorrect* information regarding eligibility to register after a felony conviction.

Moreover, even if a person with a non-disqualifying felony conviction is able to understand that they *do* have the right to vote and timely submits a valid voter registration form, Tennessee's voter registration policies make it all but certain that their registration will still be denied. The State's policies instruct elections officials to reject *all* applications on which the applicant indicates they have a prior felony conviction, even those applicants whose prior felony convictions do not disqualify them. And, instead of accepting valid forms timely submitted by eligible applicants with felony convictions, Defendants force these fully eligible applicants to provide documentary proof

---

[1] Because Plaintiff TN NAACP seeks summary judgment only on Counts Four and Six, which allege violations only against Defendants Goins and Hargett, this Memorandum and the accompanying Statement of Undisputed Material Facts will use "Defendants" to refer only to Defendants Goins and Hargett.

1

of their eligibility. Both the blanket rejection policy and the additional paperwork requirement violate the NVRA.

While Defendants recently issued new policies regarding voter registration, these new directives do not strip the court of its jurisdiction as they do not fully resolve Claims Four and Six and even if they did, Defendants cannot show that their violations are not reasonably likely to recur.

The undisputed material facts show that Plaintiff is entitled to summary judgment on Claims Four and Six because Defendants' registration forms and policies create nearly insurmountable registration and voting burdens for eligible voters in Tennessee.

## BACKGROUND

Many Tennesseans convicted of felonies maintain the right to vote. If a person was convicted before January 15, 1973, they are only disenfranchised if that conviction is one of 21 specifically enumerated crimes *and* the judgment of conviction included a statement that rendered their crime "infamous." *Crutchfield v. Collins*, 607 S.W.2d 478, 480 (Tenn. Ct. App. 1980). No felony convictions that occurred between January 15, 1973 and May 17, 1981 are disenfranchising, meaning that individuals whose convictions occurred during that "grace period" have never lost the right to vote. *Crutchfield*, 607 S.W.2d at 482; *Gaskin v. Collins*, 661 S.W.2d 865, 868 (Tenn. 1983); *see also Restoration of Voting Rights*, Tenn. Sec'y of State, https://sos.tn.gov/elections/guides/restoration-of-voting-rights. Lastly, individuals who have lost their right to vote because of a felony conviction can restore their voting rights pursuant to Tennessee law. *See* T.C.A. §§ 40-29-101 *et seq.*, 40-29-201, *et seq.* Counts Four and Six of this case challenge the sufficiency of Tennessee's voter registration policies for individuals who fall into the above categories.

The State Forms do not specify these eligibility criteria. *See infra*, Arg., Section II. The latest iteration of the State form merely states that "If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction." Ex. 1 (Current State Form). The Federal Form includes substantially similar instructions. Ex. 2 (Federal Form, Lim. Dep. Ex. 11). Moreover, older forms which are still in use, *falsely* state that the registrant "must not have been convicted of a felony, or if you have, your voting rights must have been restored." Ex. 3 (Previous State Form, Lim Dep. Ex. 7). That form also requires applicants to swear as to whether they have "ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court." *Id.*

Moreover, even if a person with a non-disqualifying felony conviction is able to understand that they *do* have the right to vote and submits a voter registration form, they will be subject to Defendants' policy instructing election officials to reject all applications on which the applicant indicates they have a prior felony conviction, even those applicants whose prior felony convictions do not disqualify them. *See infra*, Arg., Section III. Moreover, instead of accepting valid forms timely submitted by eligible applicants with felony convictions, Defendants force these fully eligible applicants to provide documentary proof of their eligibility. *Id.*

Plaintiff Tennessee National Association for the Advancement of Colored People ("TN NAACP") first alerted Defendants Hargett and Goins to the state's failure to inform applicants of voter eligibility requirements in violation of the NVRA through its First NVRA Notice Letter on August 22, 2018. Ex. 6 (First Notice Letter). This was followed by a phone conversation with Defendants in December 2019 discussing these deficiencies, during which the Election Division confirmed its policy of rejecting all voter registration applicants who indicate on the application that they have been convicted of a felony. Ex. 7 (Second Notice Letter). Plaintiff TN NAACP and

3

Defendants continued to correspond in an attempt to resolve these and other related issues, but in spring 2020, Defendants ceased engaging in those talks. Ex. 8 (Correspondence on Follow-Up - Redacted).

On December 3, 2020, Plaintiffs TN NAACP, Lamar Perry, Curtis Gray Jr., John Weare, Benjamin Tournier, and Amanda Lee Martin filed suit, challenging, in part, the State's failure to properly inform voter registration applicants of eligibility and its policies automatically rejecting all applicants who indicate they have a felony conviction and requiring additional documentation in violation of NVRA. ECF No. 1. Plaintiff TN NAACP then sent a second NVRA notice letter further outlining these violations, including the rejection and documentary proof policies. Ex. 7 (Second Notice Letter). Throughout this period, Plaintiff TN NAACP attempted to work with Defendants to resolve these violations. On May 24, 2021, Plaintiff sent Defendants a Third Notice letter with feedback regarding proposals from Defendants for new policies and form. Ex. 9 (Third Notice Letter). Despite these negotiation efforts, shortly thereafter, Defendants, again, stopped engaging in negotiations and the proposals were never implemented. Ex. 10 (Aug 2021 Response Email, Lim Dep. Ex. 29)

On March 30, 2022, this Court denied all parts of Defendants' Motion to Dismiss with the exception of Count Five, which it dismissed without prejudice, holding that Plaintiff TN NAACP's First Notice Letter did not satisfy the NVRA's pre-suit notice requirement. ECF No. 083 at 16. On October 20, 2022, Plaintiffs filed a First Amended Complaint, asserting that the Second and Third Notice Letters cured this technical defect. ECF No. 102, at ¶ 117-18.

After the close of discovery in summer 2023, Plaintiff again attempted to negotiate a resolution with Defendants Hargett and Goins on these matters. On June 12, 2023, shortly after the close of discovery, the parties filed and were granted a joint motion to amend the scheduling

order, having "made significant progress towards a resolution" on Claims 1-3 regarding the due process and equal protection disputes and remaining open to settling on Claims 4-6 regarding the NVRA disputes. ECF No. 140. The parties continued progress toward a possible resolution until mid-July, when it became clear that a settlement would not be reached. Parties again filed a joint motion to amend the scheduling order to allow for additional time to file dispositive motions, *see* ECF No. 144, at 2, which was granted on July 21, 2023. That same day, Defendant Goins issued a memorandum outlining a new policy for processing voter registrations from individuals with pre-1981 felony convictions. Ex. 11 (Processing Older Felonies Memo).

The new directives, if properly implemented, would make progress towards resolving violations in the processing of voter registrations from eligible applicants (Claim 6), but do not provide a complete remedy, nor do they do anything to resolve the deficiency in the instructions on the registration forms (Claim 4). Plaintiff TN NAACP now moves for summary judgment on Claims 4 and 6.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (quoting Fed. R. Civ. P. 56(a)). The party seeking summary judgment must show the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 317. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading,

but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)). Facts are only material when their resolution will affect the outcome of the lawsuit. *Id.* at 248. As explained herein, there are no genuine disputes of material fact with respect to Plaintiff's NVRA claims. Plaintiff is entitled to summary judgment as a matter of law.

## ARGUMENT

### I. Plaintiff TN NAACP Has Standing.

As an initial matter, Plaintiff TN NAACP has Article III standing to bring its NVRA claims. An organizational plaintiff, like any individual, has standing when it can show an injury in fact, causation, and redressability. *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). An organizational plaintiff can establish standing either based on injury to the organization itself or by asserting standing on behalf of its members. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). In this case, the TN NAACP suffers organizational injuries sufficient to establish standing on its own behalf.

The evidence shows that the TN NAACP has endured both a "drain on the organization's resources" and a "concrete and demonstrable injury to [its] activities," each of which is independently sufficient to prove injury in fact. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see Miami Valley*, 725 F.3d at 576. The TN NAACP is a nonpartisan, multi-racial, all-volunteer non-profit organization whose mission is to "advocate for the rights of individuals who have been discriminated against." Deposition of Loretta Morris at 17:5-10, 27:23-25; *see also* Decl. of Gloria Jean Sweet-Love, President of TN NAACP at ¶¶ 3-6. The organization's focus is voting rights, and its primary activity in furtherance of that goal is helping individuals register and

turnout to vote. Sweet-Love Decl. at ¶¶ 7-8; Morris Dep. at 17:19-18:15, 20:25-21:9. The TN NAACP marshals limited volunteer and monetary resources to assist individuals with voter registration alongside other outreach tactics to register and turn out as many people as possible. Sweet-Love Decl. at ¶ 9; Morris Dep. at 27:12-22. As part of its registration work, the TN NAACP has assisted individuals with felony convictions who are eligible to vote. Sweet-Love Decl. at ¶¶ 11-12.

Defendants' failure to issue informative registration forms useable by voters with felonies convictions and their policy of rejecting and demanding documentation from all applicants who attest to having a felony conviction puts a drain on the TN NAACP's scarce volunteer resources. Sweet-Love Decl. at ¶ 13 Their unlawful forms and erroneous rejections require TN NAACP volunteers to help applicants correct the error by, for example, locating and printing records found online, taxiing individuals to government offices, and even paying out of pocket to get documents from court clerks. *Id.* ¶¶ at 13-16. The volunteer time spent on these corrective activities diverts resources, which are limited overall, from other mission-furthering activities, like registering more voters through door-to-door canvassing, tabling, texting, and canvassing, and phone banking, or transporting people to the polls on Election Day. *Id.* at ¶¶ 8-9, 17-18.

The TN NAACP's injury is also akin to the cognizable injury found in *Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008). In that case, plaintiffs suffered concrete and demonstrable injury where they anticipated "divert[ing] personnel and time" to counteract the effects of a Florida statute imposing certain verification procedures for first-time voters, which would raise the average amount the organization had to spend to register each voter, draining limited resources. *Id.* at 1165-66. The testimony of TN NAACP establishes a similarly concrete injury to its activities here.

Defendants' failure to lawfully administer voter registration thus "perceptibly impair[s]" the TN NAACP's activities because it increases the cost of voter registration assistance overall and requires the organization to spend "time and resources in a way that they would not have been spent absent [Defendants' unlawful policies]." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). While an injury-in-fact need not be quantitatively large or even readily quantifiable to confer Article III standing, *see id.*, the harm to TN NAACP's activities is significant because its all-volunteer capacity is limited compared to the substantial needs of the predominantly Black and brown members and constituents it aims to engage in the political process. *See* Sweet-Love Decl. at ¶ 5; Uggen, et al., "Locked Out: Estimates of People Denied Voting Rights Due to a Felony Conviction," The Sentencing Project (Oct. 30, 2020) available at https://www.sentencingproject.org/reports/locked-out-2020-estimates-of-people-denied-voting-rights-due-to-a-felony-conviction/ (finding that one in five Black voting-age citizens are disenfranchised due to a felony conviction in Tennessee). The TN NAACP has established injury in fact.

The TN NAACP has also established causation and redressability. Defendants Goins, under the supervision of Defendant Hargett, is the head of the Election Division and the "chief administrative election officer of the state." T.C.A. § 2-11-201(b). Defendant Goins creates and issues the state voter registration form as part his duties to, *inter alia*, "prepare instructions for the conduct of registration" and "authoritatively interpret the election laws for all persons administering them." T.C.A. § 2-11-202; *see also* § 2- 2-115. Were Defendants to conform the State's voter registration forms and policies to the requirements of the NVRA and fully abandon their unlawful policies, the TN NAACP would not have to spend time or money helping individuals track down decades old paperwork to prove their eligibility. *See* Sweet-Love Decl. at

¶¶ 12-16. The TN NAACP's injuries are directly traceable to Defendants and can be remedied by them. The TN NAACP has therefore established Article III standing to challenge Defendants' voter registration forms and policies under the NVRA.

## II. Plaintiff is Entitled to Summary Judgment on Count Four Because Tennessee's Voter Registration Form Fails to Inform Applicants of Voter Eligibility Requirements in Violation of the NVRA.

The NVRA requires each state to "inform applicants . . . of voter eligibility requirements" no matter whether applicants seek to register with a state or federal voter registration form or though the department of motor vehicles or any other voter registration agency. 52 U.S.C. § 20507(a)(5). The NVRA also requires that both the federal voter registration form (the "Federal Form") and any state-issued mail-in voter registration form used to register voters for federal elections "specif[y] each eligibility requirement" for applicants. 52 U.S.C § 20508(b)(2)(A); *see also* § 20505(a)(2) (providing that a state voter registration form should meet "all of the criteria stated in section 20508(b)").

Tennessee's state voter registration form and the Tennessee-specific instructions on the Federal Form do not "specify" the state's eligibility requirements for voters with past convictions and therefore fail to accurately "inform" applicants about what impact a past conviction does and does not have on their eligibility to vote. In particular, neither form provides enough information to convey to eligible applicants with non-disenfranchising pre-1973 or grace-period felony convictions that their felonies do not impact their right to vote.

### A. The NVRA Requires that States Specify Each and Every Eligibility Requirement on the Voter Registration Form to Enable Registrants to Determine Their Eligibility Easily and Privately.

The mandate that states provide accurate and specific information to prospective voters about voter eligibility requirements runs throughout the NVRA. This fundamental prerequisite to

9

a functional voter registration system is included in every provision related to the various avenues of registration established by the Act as well as in the general provision governing the responsibilities of states under the Act. Like mail registration forms, which must "specif[y] each eligibility requirement," *see* 52 U.S.C. § 20508(b)(2)(A), applications completed through motor vehicle agencies must also "include a statement that . . . states each eligibility requirement." 52 U.S.C. § 20504(c)(2)(C). Similarly, applications completed through other designated agencies must "specif[y] each eligibility requirement (including citizenship)." *Id.* § 20506(a)(6)(A)(i)(I); *see also id.* § 20506(a)(6)(A)(ii) (allowing use of an agency-created form so long as it meets the requirements of § 20508(b)). Finally, the Act's provisions outlining the general duties of states in administering registration for federal elections include a duty to "inform" applicants that apply through any means of registration of the "voter eligibility requirements." *Id.* § 20507(a)(5)(A).

The reason for these exhaustive provisions is obvious on its face. In order to create a functional voter registration system that "promote[s] the exercise of [the fundamental] right [to vote]," *id.* § 20501(a)(2), potential voters need to be able to easily assess their eligibility when using the various avenues for registration required by the NVRA. The NVRA's express purpose of "increasing the number of eligible citizens who register to vote" in federal elections would be dead letter if states could withhold from prospective voters the information they need to determine whether they are eligible to register to vote. *Id.* § 20501(b)(1).

The legislative history of the Act confirms the importance of meaningful notice to the overall statutory scheme. Both the House and Senate reports for the NVRA noted the importance that every applicant "be advised of the voting requirements and the need to decline to register if he or she does not meet the requirements" and explained that "[t]he bill provides that *all* registration requirements should be set forth in the application to register to vote so that they will

10

be readily available for each applicant to review during the application process." S. Rep. 103-6 at 24 (emphasis added); H.R. Rep. 103-9 at 7-8 (same). The reports also emphasized the importance of the voter eligibility specifications for maintaining accurate lists of only eligible voters and preventing fraud. S. Rep. 103-6 at 11 ("Under the provisions of this bill, every application for voter registration must include a statement that sets forth *all* the requirements for eligibility, including citizenship, and requires that the applicant sign an attestation clause, under penalty of perjury, that the applicant meets those requirements." (emphasis added)).

Finally, both the House and Senate reports note that the requirement to specify eligibility requirements on all registration forms is crucial for enabling potential voters to determine privately their eligibility to vote, without needing to discuss sensitive personal information, such as past criminal convictions, with state officials. H.R. Rep. 103-9 at 8 ("Since some of the reasons for declining to register to vote may involve matters of personal privacy, such as ineligibility under State law due to mental incompetence or a criminal conviction, an individual who declines to register to vote shall not be questioned as to the reasons for such action."); S. Rep. 103-6 at 24 (same).

### B. Tennessee's Voter Registration Forms Violate the NVRA by Failing to Specify Eligibility Criteria and Provide Sufficient Information on Registration Forms to Enable Individuals with Felony Convictions to Determine Whether They Are Eligible to Vote.

In light of the NVRA's statutory structure, the Act's general requirement that Tennessee "inform applicants . . . of voter eligibility requirements" plainly means to supply potential voters with enough accurate information to understand their own eligibility to register and vote. 52 U.S.C. § 20507(a)(5). The Act's requirement that Tennessee's mail-in registration form and the state instructions on the Federal Form "include a statement that . . . *specifies* each eligibility requirement" is also plain and unambiguous. 52 U.S.C. § 20508(b)(2)(A) (emphasis added); *see*

11

*also Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("It is well established that, when the statutory language is plain, [federal courts] must enforce it according to its terms."). When Congress uses the word "specify," it means "to name or state explicitly or in detail." *Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010) (quoting Websters New Collegiate Dictionary 1116 (1974)). Thus, the NVRA requires the State to not only reference the existence of eligibility requirements concerning voters with past convictions but to state *in detail* each and every one on the registration forms. And it must do so in a manner that enables applicants with past convictions to determine their eligibility.

Neither the State Form nor the Tennessee-specific instructions on the Federal Form fulfill these mandates. As explained above, a prior felony conviction does not always render an individual ineligible to vote. Citizens with felony convictions only in the "grace period" (January 15, 1973 to May 17, 1981) fully retain their right to vote, as do citizens with only pre-1973 convictions for crimes that could not be deemed "infamous" or were not actually deemed infamous by a court on the judgment document. Citizens who lost the right to vote because of a felony conviction are also eligible to vote if they have had their rights restored.

The latest iteration of the State Form specifies *none* of these eligibility criteria regarding past convictions and instead states generally: "If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call 1-877-850-4959 or visit sos.tn.gov/restoration." Ex. 1 (Current State Form). This language does not, by any definition, "specify" the eligibility criteria related to felony convictions. The Federal Form includes

12

substantially similar instructions. Ex. 2 (Federal Form, Lim. Dep. Ex. 11). [2] As the Supreme Court has explained, this sort of "marginally ambiguous" language *alluding* to specific information (i.e., the eligibility requirements concerning past convictions) does not suffice to "specify" that information. *Kucana*, 558 U.S. at 243 n.10 (internal quotation omitted). Furthermore, these instructions do not provide any of the information necessary for a prospective voter with a grace-period or non-infamous pre-1973 conviction to understand their eligibility to vote. Providing a phone number and website link, while potentially helpful to voters with ready online access, does not satisfy the NVRA's clear statutory requirement that the registration form itself be sufficiently detailed to enable prospective registrants to determine their eligibility to vote at the point of registration—which is, in the case of mail-in registration, the form itself.

Moreover, the latest iteration of the State Form is not the only version currently in use in Tennessee. The Election Division posted the latest iteration of the State Form on some pages of its website after (and likely in response to) the filing of this lawsuit in December 2020. *See* ECF No. 29-2, § V. However, county administrators of elections continued to be authorized to accept and process older versions of the registration form even after the new form was released. Deposition of Jessica Lim at 93:6-21. Some still have the old form posted on their websites. *See e.g*., Knox County Elections Commission, *Copy of Tennessee Mail-In Application for Voter* Registration, https://perma.cc/J66L-CS5J (last visited Aug. 2, 2023); Hamilton County Elections Commission,

---

[2] The Tennessee-specific instructions on the federal form states that to be eligible to vote applicants must "not have been convicted of a felony, but if convicted, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction." Ex. 2 (Federal Form). These instructions are even more confusingly worded than the State Form in that they both state that eligibility requires an individual "not [to] have been convicted of a felony" and that "eligibility . . . depends" on unspecified circumstances. At best, this language is confusing, and at worst, it leaves voters with past convictions who never lost the right to vote or are eligible to vote with the inaccurate impression that they may not be eligible.

13

*Copy of Tennessee Mail-In Application for Voter Registration*, https://perma.cc/7YDX-45MD (last visited July 31, 2023); DeKalb County Elections Commission, *Requirements For Voter Registration*, https://perma.cc/DH7Q-NL2V (last visited July 31, 2023) (linking to an older version of the voter registration form at bottom of page).

This old registration form in use at the time Plaintiffs filed their complaint (and still in use now) not only fails to specify eligibility criteria related to past convictions but feeds voters patently *inaccurate* eligibility information. That form instructed voters that to register, "you must not have been convicted of a felony, or if you have, your voting rights must have been restored." ECF No. 1-2, Comp., "TN Mail-In App for Voter Registration." The form also requires applicants to swear as to whether they have "ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court." *Id.* These same instructions were found on versions of the form as of October 2015 and October 2011. Ex. 4 (State Form Rev. 2015); Ex. 5 (State Form Rev. 2011). These longstanding instructions as to eligibility to vote with past convictions are false and risk leaving eligible individuals with past convictions with an incorrect belief that they are ineligible to register and vote. The old form does not meet the NVRA's mandate that states accurately specify eligibility criteria and the Secretary's failure to rescind the old form results in its continued usage in violation of the NVRA.

Under the NVRA, the State's registration forms, and its instructions on the Federal Form, must on their face provide registrants with a statement that is sufficiently specific as to all qualifications for voting such that an individual may assess their eligibility. The undisputed materials facts show the State's registration forms fail to do so.[3]

---

[3] The violation of the NVRA's mandate to specify eligibility criteria is compounded by the fact that people with grace period and pre-1973 convictions are likely to be senior citizens with lower

14

**III. Plaintiff is Entitled to Summary Judgment on Count Six Because Defendants' Blanket Rejection of Valid State Forms and Demand for Documentary Proof of Eligibility Violates the NVRA.**

Even though the state and federal forms fail to inform citizens with felony convictions of relevant voter eligibility criteria, Defendants Goins and Hargett still see fit to ask applicants on the State Form (under penalty of perjury) whether they have ever been convicted of a felony conviction. Ex. 1 (Current State Form). Defendants then instruct administrators of elections to use responses to this question to reject *all* forms where an applicant indicated that they have a felony conviction—even those applicants who never lost the right to vote or have had their right restored. Instead of accepting valid federal and state forms timely submitted by eligible applicants with felony convictions, Defendants' policies force these applicants to provide additional paperwork as further proof of their eligibility. This longstanding blanket rejection policy and documentation requirement imposes a discriminatory barrier to registration in Federal elections and violates multiple provisions of the NVRA.

**A. Defendants' Blanket Rejection Policy Violates the NVRA's Requirement that States "Ensure" the Registration of "Eligible" Voters Upon Timely Receipt of Valid Registration Forms.**

The NVRA requires each state to "ensure that any eligible applicant is registered to vote" in Federal elections if their "valid voter registration form" is received "not later than the lesser of

---

levels of technological literacy. Except in the rare instance that they were convicted of a felony as a juvenile, individuals with grace period and earlier convictions are now at least sixty years old. Providing a long link to a webpage, which has sporadically been down during the pendency of this case, *see, e.g.,* Ex. 12 (Archive of TN SOS Webpage), is not sufficient to inform potential registrants of the eligibility requirements and certainly wouldn't qualify as "specifying" those requirements on the form itself. Additionally, some eligible individuals may be in prison serving decades-long or life sentences for felony convictions during the grace period. *See* Tennessee Dep't of Correction, "Statistics and Information" https://www.tn.gov/correction/statistics-and-information/frequently-asked-questions.html (reporting that as of May 6, 2023, there were 1,789 offenders serving life sentences). Those individuals would have extremely limited, if any, ability to utilize the Secretary of State's website or phone number.

30 days, or the period provided by State law, before the date of the election." 52 U.S.C. § 20507(a)(1). The Supreme Court has interpreted "valid" in this context to mean "a completed copy of the form." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 12 (2013) ("*ITCA*"). In Tennessee, applicants with felony convictions who never lost the right to vote or who have had their rights restored are "eligible" to vote. *See supra*, Background. Thus, the required procedure in Tennessee is not ambiguous: if an applicant with felony conviction timely submits a completed voter registration application indicating they are eligible to vote, Tennessee election officials must "ensure" the eligible applicant is registered.

There is no genuine dispute that election officials in Tennessee reject every voter registration application where the felony question is answered in the affirmative absent additional documentation. Lim Dep. at 101:5-11; Deposition of Donald Hall at 98:14-100:14, 121:3-16; Deposition of Sherri Sivley (Hamilton AOE) at 76:1-15; Deposition of Linda Phillips (Shelby AOE) at 28:03-12; Deposition of Judy McAllister (Meigs AOE) at 83:10-19. This is done pursuant to Election Division policy, training, and guidance. *See* Hall Dep. at 98:14-99:13; Ex. 13 (Elections Div. Int. Pol., Hall Dep. Ex. 3) at 2, 7 ("If a person marks 'yes' to the felony question on their voter registration application (and there is no restoration documentation), the county election commission rejects the application."); Ex. 14 (Rest. of Voting Rights Tr. Doc., Hall Dep. Ex. 4) at DEF000036 ("If a person marks that they have been convicted of a felony . . . the application is rejected."); Ex. 15 (Felons Process Training) at DEF000402-409; Ex. 16 (Felony Q & A) at DEF000387. Upon rejecting an application because of a felony conviction, county election officials are directed to send the applicant a notice of the rejection accompanied by a Voter Registration Appeal Request Form, a Certificate of Restoration form, and a blank voter registration

form. Lim Dep. at 151:23-152:6; Deposition of Vicki Collins at 28:7-29:19. This policy was in effect as far back as 2014. *See* Ex. 17 (2014 Training) at DEF000080-81.[4]

The State's blanket rejection policy violates the NVRA's mandate to "ensure" registration of eligible voters because it necessarily sweeps multiple categories of facially eligible voters with past convictions into the rejection pool. For instance, when a county election official receives an application indicating only a pre-1973 felony conviction for a non-infamous crime, the application must be rejected unless it is accompanied by a copy of the judgment. Ex. 16 (Felony Q & A) at DEF000389; Lim Dep. at 179:23-180:22, 131:25-132:8; Hall Dep. at 82:22-83:1, 120:3-6. That is the case even though the State agrees that those individuals with pre-1973 non-infamous convictions *never* lost their right to vote. Ex. 11 (Processing Older Felonies Memo) at 1-2. Similarly, when a county election official receives an application indicating only a grace-period conviction on the face of the registration form, the application must be rejected unless it is accompanied by "a copy of their conviction papers showing the date of the conviction and the type of crime." Ex. 16 (Felony Q & A) at DEF000389; *see also* Lim Dep. at 107:15-108:22, 131:25-132:8; Hall Dep. at 117:18-118:12; Sivley Dep. at 40:20-25; Ex. 18 (Felony Conviction Search-Redacted) at DEF0000513. Once again, such individuals indisputably never lost their right to vote. Ex. 11 (Processing Older Felonies Memo) at 1-2.

Nothing on the state voter registration forms instructs eligible voters with grace-period or pre-1973 non-infamous convictions that their applications will be rejected absent supporting

---

[4] As discussed below, *infra* Section IV, the Election Division very recently issued revised guidance on processing voter registration applications that indicate only grace-period or pre-1973 non-infamous felony convictions. The guidance improves the State's processing of applications that facially indicate only grace-period or pre-1973 non-infamous convictions. The revisions do not, however, resolve all of Plaintiff's claims, and nothing prevents Defendants from resurrecting its longstanding blanket rejection and documentation policy.

17

documentation. Ex. 1 (Current State Form); Ex. 2 (Federal Form, Lim. Dep. Ex. 11). Nothing on the forms specify what kind of documentation such applicants must provide. *Id*. And, until very recently,[5] nothing on the Voter Registration Appeal Request Form enabled rejected applicants to appeal a rejection for reason of a grace-period or non-infamous pre-1973 conviction. Lim Dep. at 154:5-20; Ex. 19 (Voter Reg. Appeal Form, Lim Dep. Ex. 21).

The Election Division acknowledges that individuals with grace-period convictions have faced difficulties obtaining the requisite documents. Hall. Dep. at 118:13-16, 194:18-25. Indeed, obtaining the conviction records for both grace-period and non-infamous pre-1973 convictions can be difficult because "many times the conviction will be so old that [they will] be in archives." Lim Dep. at 157:16-158:2; *see also* Collins Dep. at 57:10-58:6. Retrieving documents from archives can take up to a week. Collins Dep. at 100:4-11. The necessary documentation can also involve a financial burden when criminal court clerks charge for copies of grace-period or pre-1973 judgment sheets. *See* Hall Dep. at 195:12-197:15; Ex. 20 (Sept. Shelby Cty. Email, Hall Dep. Ex. 21). Sometimes the required paperwork does not exist or cannot be found. Lim Dep. at 158:6-11; Ex. 21 (Sept. 2020 email, Lim Dep. Ex. 24) at DEF000569-70. When pressed about these challenges, the Election Division 30(b)(6) representative suggested that voters facing difficulties finding the required documentation for grace-period convictions could register by committing perjury by marking "no" to the felony question. Hall Dep. at 201:21-202:4.

In addition to guaranteeing the denial of eligible voters with grace-period and pre-1973 convictions, the Election Division's blanket rejection policy also results in the erroneous rejection of eligible applicants who have had their voting rights restored after a disenfranchising felony

---

[5] As part of its recent revision to voter registration procedures, the Election Division also issued a new Voter Registration Appeal Request Form that enables a rejected applicant with a grace period or non-disqualifying pre-1973 felony conviction to appeal their rejection.

18

conviction. Ex. 22 (Agency Tr. Doc, Lim Dep. Ex. 3) at 2. The State Form asks applicants to mark under oath whether they have "received a pardon or had [their] voting rights restored" and are therefore eligible to vote. Ex. 1 (Current State Form). The form then vaguely instructs such applicants—who are eligible to vote—to "provide copy of document [sic]." *Id.* Under Defendants' policy, an application attesting to a felony conviction and voting rights restoration will be rejected without further documentation. Ex. 22 (Agency Tr. Doc, Lim Dep. Ex. 3) at 2. When processing such an application, county election offices are under no obligation to check whether their office or the Election Division already has a record of the applicant's restoration of voting rights. Hall Dep. at 101:19-102:10.[6]

In short, applicants with felony convictions who never lost the right to vote or who have had their rights restored are "eligible" to vote, and the NVRA requires the Division of Elections to "ensure" these voters are registered if they timely submit a valid registration form. But Defendants' wholesale rejection of valid timely submitted forms by all voters with felony convictions ensures that eligible applicants will be rejected. Defendants' policy and practice therefore violates the NVRA's requirement to ensure the registration of eligible voters upon timely receipt of their valid registration forms.

---

[6] the Election Division's blanket rejection policy also results in erroneous rejection of applicants with expunged convictions or judicial diversions who mistakenly mark "yes" to the felony question. A Tennessean with an expunged conviction or a judicial diversion has not lost the right to vote and can mark "no" in response to the felony question. Ex. 15 (Felons Process Training) at DEF000404, 409; Lim Dep. at 56:1-4; Hall Dep. at 232:2-25. While the State Form instructs voters with expunged convictions as much, it offers no instruction to voters with judicial diversions. Ex. 1 (Current State Form). If an applicant with an expungement or judicial diversion marks "yes" to the felony question, the Election Division's blanket rejection policy guarantees that the eligible voter is rejected, Ex. 15 (Felon Process Training) at DEF000409, and at least for those with expungements, the applicants must provide documentation proving that their conviction was expunged. Hall Dep. at 232:14; Ex. 23 (Expungement Tr. Doc, Hall Dep. Ex. 35) at DEF000101-103.

**B. The Documentation Requirement Violates the NVRA's Limit on States Requiring Documentation to Register to Vote in Federal Elections Beyond a Facially Valid Registration Form.**

Defendants' documentation policy also runs afoul of the NVRA because it requires additional documentation to register to vote in federal elections from applicants who submit valid registration forms that provide attested information sufficient to establish eligibility to vote.

The NVRA requires states to "accept and use" the Federal Form for voter registration. 52 U.S.C. § 20505(a)(1). As such, the Federal Form "is to be accepted as sufficient" for voter registration. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 2 (2013) ("*ITCA*"). The Federal Form requires applicants to attest under penalty of perjury that they meet their state's requirements for registration, does not require additional documents, and thus establishes an applicant's facial eligibility. Ex. 2 (Federal Form, Lim Dep. Ex. 11). In *ITCA*, the Supreme Court held that the NVRA preempted an Arizona law requiring documentary proof of citizenship because "the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form" without reliable evidence that the applicant is ineligible. 570 U.S. at 15 (noting the NVRA "acts as both a ceiling and floor" for registering to vote in federal elections).

States may develop and use their own mail-in voter registration forms for federal elections. 52 U.S.C. § 20505(a)(2). But those forms must meet the requirements of § 20508(b), which sharply restricts the additional information states can require from those seeking to vote in federal elections. A state mail-in voter registration form "may require only such identifying information .

. . and other information . . . as is necessary to enable the appropriate State election to assess the eligibility of the applicant and to administer voter registration." 52. U.S.C. § 20508(b)(1).

In other words, the NVRA "limits [a state's] discretion to request information . . . to the minimum amount of information necessary" to establish eligibility. *Fish v. Kobach*, 840 F.3d 710, 737 (10th Cir. 2016); *see also ITCA*, 570 U.S. at 14. "[I]n order for a state advocating for a [documentary proof] regime to rebut the presumption that the attestation requirement is the minimum information necessary for it to carry out its eligibility assessment and registration duties, it must make a factual showing that the attestation requirement is insufficient for these purposes." *Fish*, 840 F.3d at 738. In *Fish*, the Tenth Circuit held that Kansas failed to establish that documentary proof of citizenship was required to verify the citizenship of individuals who registered at the department of motor vehicles office. *See id.*

Here, the undisputed material facts prove that the Election Division's policy of requiring facially eligible voters to provide additional documentation beyond an attested federal or state registration form exceeds the amount of information Tennessee may require for registration in federal elections under the NVRA.

*First*, Defendants' longstanding documentation requirement violates the NVRA's requirement that Tennessee "accept and use" the Federal Form to register voters in federal elections. 52 U.S.C. § 20505(a)(1). Though the Federal Form does not allow an individual to attest to whether or not they have been convicted of a felony, only to their eligibility generally, there is no genuine dispute that election officials require documentation when they learn about an applicant's felony conviction from a source beyond the registration form itself, Lim Dep. at 59:13-60:2, including verbally from the applicant, or by way of Tennessee statute requiring the clerks of court in every county to send notices of felony convictions to election officials, or when counties

21

share this information with one another, *id.* at 56:6-57:8. Applicants who submit a Federal Form are also flagged as having a felony conviction (and required to submit documentation) based on check of their name and social security number against the county's "felony files." Hall Dep. at 123:5-15; Lim. Dep. at 110:7-14. In these circumstances, the only trigger for requiring an applicant with a felony conviction to provide paperwork beyond a valid Federal Form is the fact that the applicant has a felony conviction. But the mere fact that a person has a felony conviction is not reliable evidence of ineligibility because felony convictions do not always result in a loss of voting rights in Tennessee, and voters who have had their rights restored are eligible to vote despite a prior felony conviction. Thus, under the NVRA, the mere indication that an applicant in Tennessee has a felony conviction cannot justify a demand for documentation beyond an attested Federal Form indicating facial eligibility.

*Second*, for similar reasons, Defendants' documentation policy also violates the NVRA's prohibition on requiring needless documentation beyond the State Form. For applicants who submit a State Form, election officials require documentation based on the voter's mere affirmation on the form that they have a felony conviction. Lim Dep. at 55:16-56:4; 101:5-11. This is the case whether applicants submit an earlier version of the form, which asks only whether the applicant has a felony conviction, or the latest iteration of the State Form. *Id.*; *see also* 93:19-21. The latest iteration of the State Form now asks applicants to state, if known, their crime(s) and date and place of conviction, and whether they have received a pardon or had their voting rights restored. Ex. 1 (Current State Form). This attested information can supply all the state needs (and more) to verify whether the applicant has a grace-period conviction or a pre-1973 conviction of a crime that could not have rendered them ineligible to vote. As noted above, the current State Form also asks applicants to state under oath whether their voting rights have been restored from a

pardon or otherwise, which is also sufficient to verify whether a person previously disqualified from voting is now eligible. Tennessee's voter registration form thus provides more specific attested information than the general attestation found sufficient in *Fish* "for state officials to carry out their eligibility assessment and registration duties—more specifically, their duties to register qualified applicants to vote." *See Fish*, 840 F.3d at 710. Defendants' demand for documentation in these circumstances is unjustified and therefore prohibited by the NVRA.

Even if it were necessary to look beyond the registration form to verify whether an applicant with a felony conviction is eligible to vote (it is not), Tennessee election officials already have access to information sufficient to confirm eligibility, obviating the burden placed on applicants to provide documentation. The Election Division already instructs county election officials to "check every application against their felon files" when an applicant has marked "yes" to the felony question, and some counties check every application regardless of whether the applicant indicates they have a felony conviction. Lim Dep. at 112:12-114:2. "Felon files" refer to the information counties receive or find from various county, state, and federal agencies regarding individuals who have been convicted of felonies. Lim Dep. at 110:7-14. Felon files include information regarding individuals' felony conviction history, including court orders and emails, from U.S. Attorneys, the Tennessee Department of Corrections (TDOC), the Election Division, the state felon list, other county election officials, and their own clerks of court and jury coordinators. Lim Dep. at 110:15-112:2, 124:1-7, 28:5-10.

The Election Division also disseminates "felon reports" to counties every 1-3 months that include the data on registrants' state felony convictions from TDOC, federal convictions from the U.S. attorneys, and out-of-state convictions from the Interstate Compact. Lim Dep. at 117:21-24, 120:6-12, 121:7-9. For each applicant, felon reports would include all convictions for a person

23

going back in time and include the date of judgment, conviction, or sentence. Lim Dep. at 119:11-120:5, 120:20-21. The information in felon reports can be sufficient to verify whether an applicant has only non-disqualifying convictions. *See* Lim Dep. at 103:6-15.

County election officials, as part of their regular voter-roll maintenance duties, routinely use information in felon files and felon reports to purge voters with felony convictions from the voter rolls. Sivley Dep. at 22:25-24:20; *see also* Tenn. Code § 2-2-106(a)(4).[7] The list maintenance programs in some counties automatically flag new applicants (whether or not they marked yes or no to the felony question) who may match a record in databases listing individuals with felony convictions and individuals previously purged due to a felony conviction. Sivley Dep. at 118:5-121:2. County election officials must manually review these potential matches to determine whether the new registrant does indeed have a felony conviction. *Id.* at 121:4-122:1.

The Election Division also keeps a "restoration database" of individuals who have had the right to vote restored. Deposition of Steven Griffey at 59:8-12. Yet, when processing voter registration applications indicating restoration of voting rights, county election offices are not required by any policy to confirm whether the Election Division already has a record of the applicant's restoration of voting rights. Hall Dep. at 101:19-102:10. County election offices *can* ask the Election Division to search for confirmation of an applicant's restoration of voting rights, and the Election Division can look through its "restored and denied databases" to see "if there [is]

---

[7] The Help America Vote Act ("HAVA") requires states to maintain a centralized statewide list of every legally registered voter in the state. 52 U.S.C. § 21083(a)(1)(A). HAVA further requires states to "coordinate the[ir] computerized list[s] with State agency records on felony status." *Id.* § 21083(a)(2)(A)(ii).

a restoration there." *Id.* This is a feasible alternative to rejecting every application that indicates voting rights restoration and requiring unnecessary documentation.

Elections officials have also demonstrated that they are capable of obtaining additional information or documentation to verify the eligibility of voters with grace-period and non-infamous pre-1973 felony convictions if ever necessary. County election officials can reach out to other county election officials or the Election Division to confirm the applicant's eligibility, although Election Division policy does not currently instruct or require them to do so. *See* Hall Dep. at 101:19-102:10; McAllister Dep. at 85:5-12. County election officials can search or request public records or contact courts and other relevant agencies to verify eligibility of voters, though there is "no definitive set-on practice" of doing so under Election Division policy. *See* Hall Dep. at 199:4-23; Phillips Dep. at 46:10-22, 47:23-48:1. And the Election Division itself is capable of verifying convictions without requiring documentation from the applicant by searching or requesting public records or contacting courts and other relevant agencies. *See* Ex. 24 (Grace Period Email, Lim Dep. Ex. 26) at 2.

Tennessee's existing practices and procedures for sharing conviction data among agencies and for verifying non-disenfranchising felony convictions and rights restoration indicate that the information the State seeks is already within its reach. Yet Defendants insist on burdening facially eligible voters with navigating a complex, confusing, time-consuming process of requesting government records to deliver the state information which it already has or could as easily obtain. The State only imposes such requirements on facially eligible voters with felony convictions. For these reasons, Defendants' blanket rejections and demands for documentation from voters who

attest to having a felony conviction require information beyond what is "necessary to enable the appropriate State official to assess the eligibility of the applicant." 52 U.S.C. § 20508(b).

### C. Defendants' Blanket Rejection Policy and Documentation Requirement Violates the NVRA's Requirement that a State Maintain Voter Rolls in a "Uniform" and "Nondiscriminatory" Manner.

Congress enacted the NVRA because, among other reasons, it determined that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). Accordingly, the NVRA also requires that "any State program or activity" for maintaining the voter rolls "shall be uniform" and "nondiscriminatory." 52 U.S.C. § 20507(b)(1).

Defendants' blanket rejection and documentation policy is plainly non-uniform and discriminatory because it imposes unjustified burdens and barriers to registration on a class of applicants (i.e., those with prior felony convictions) that do not apply to other classes of applicants. *See* Ex. 19 (Voter Reg. Appeal Form, Lim Dep. Ex. 21) (requiring documentation only for registration rejection due to felony conviction). Defendants do not, for example, require documentation of proof of residency, age, or citizenship to vote. For those criteria, Defendants take applicants at the word of their attestations. But Defendants do not do the same for the felony conviction criteria. Defendants' voter registration form also targets eligible voters with past convictions by requiring them to check a box that is not targeted to identify specific eligibility criteria and, in practice, ensures their registration will be rejected. And, in order to fight the erroneous denial, the state forces eligible Tennesseans to provide additional information proving their eligibility—information which the state already has or can readily obtain. The blanket rejection and documentation policy impedes registration even when an applicant with a past

conviction has attested to sufficient information on the face of the registration form to establish eligibility.

The discriminatory burden is all the more invidious given that the class of eligible voters subject to these policies is disproportionately Black and elderly. *See* Uggen, et al., *supra* p. 8; Phillips Dep. at 39:11-21. Defendants' policy and practice targeting these voters contributes to inequities the NVRA was designed in part to address. As a congressional House Report noted, the Voting Rights Act of 1965 "left a complicated maze of local laws and procedures . . . through which eligible citizens had to navigate in order to exercise their right to vote." H.R. No. 103-9, 103rd Cong., 1st Sess., 1993 WL 27395 (Feb. 2, 1993), at *2. The NVRA addressed this "unfinished business of registration reform" by "reduc[ing] these obstacles to voting to the absolute minimum while maintaining the integrity of the electoral process." *Id.* Because Defendants' registration policies erect unjustifiable obstacles to registration for a single class of disadvantaged voters, they are non-uniform and discriminatory in violation of the NVRA Plaintiff is thus entitled to summary judgment on its NVRA claims.

## IV. Defendants' Recent Actions Do Not Moot Plaintiff's NVRA Claims

After being on notice of the alleged NVRA violations for nearly five years, with less than two weeks before the filing of dispositive motions, Defendants Hargett and Goins updated their policies to move closer to compliance with the NVRA. Ex. 11 (Processing Older Felonies Memo). However, they still have not fully corrected the violations for individuals with pre-1973 convictions, or for individuals who have already had their voting rights restored. However, even if they had issued guidance that voluntarily corrected their violations in full, these claims would

not be moot because Defendants cannot show that the violations, which have persisted for several years, cannot be reasonably expected to recur.

### A. Defendants' New Policies Still Violate the NVRA.

While Defendants' memorandum announces a step toward alleviating the NVRA violations, they still violate the NVRA. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Pursuant to the Defendant Goins' memo, certain eligible applicants who submit a voter registration form will still be rejected and required to provide documentary proof of eligibility. Individuals who indicate they were convicted of one of the pre-1973 potentially infamous convictions will be denied registration regardless of whether they were *actually* rendered infamous. Ex. 11 (Processing Older Felonies Memo). The registration form does not allow registrants to indicate that they were not rendered infamous, and the memo does not require administrators of elections to seek that information before rejecting the applicant. *Id.* Additionally, the new memo does not address processing voter registrations for individuals who indicate they have already had their voting rights restored, meaning that there is still no policy requiring administrators of elections to check the restoration database before rejecting those applications. *Supra* Section III.B.

### B. Defendants Cannot Show That Their Violations Cannot Reasonably Be Expected to Recur.

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) (citing *City of Mesquite v. Aladdin's Castle, Inc,* 455 U.S. 283, 289 (1982)). "[I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Id.* (internal citations and quotations

28

omitted). Thus, the standard for mootness based on voluntary conduct is stringent: "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). That "heavy burden" of proof lies with the party asserting mootness. *Id.* (internal citations omitted).

Defendants cannot meet that heavy burden. Even giving Defendants the benefit of the doubt—assuming they have recognized that their previous policies violated the NVRA and moved to correct them, albeit, without wholly hitting the mark—there is nothing binding or lasting about the Election Division's guidance. A new administrator could easily reverse course, requiring another multi-year, expensive court battle, disenfranchising fully eligible people along the way. *See Friends of the Earth,* 528 U.S. at 191–92 ("To abandon the case at an advanced stage may prove more wasteful than frugal."). Moreover, *this* Elections Coordinator could reverse, as he has done in the past on other related policies. For example, in 2019, the Elections Coordinator sent a letter establishing a position on the voting rights of people with out-of-state felony convictions, Ex. 25 (Letter to B. Bowie) at DEF 000421-423; Ex. 26 (119_Follow-up) at DEF 000611-2—and then, less than four months later, reversed that position, Ex. 14 (Rest. of Voting Rights Tr. Doc, Hall Dep. Exhibit 4) at DEF 000048.

This is not the first time that these Defendants have reversed their position at the last minute before a major milestone in a lawsuit. For example, in 2020, after arguing at the state chancery and appellate court level that certain vulnerable individuals did not have the right to cast absentee ballots during the COVID-19 epidemic, Defendants made an "eleventh-hour concession" at oral argument before the Supreme Court, adopting plaintiffs' position in a "complete reversal of what they had previously told voters." *Demster v. Hargett*, No. 20-435-I(III), Mem. & Order

(Tenn. Ch. Ct. Aug. 25, 2020). With that concession, the Tennessee Supreme Court took Defendants at their word, finding "no reason to doubt that the State will faithfully discharge its duty to implement the absentee voting statutes," and lifted an injunction requiring Defendants to comply with their newfound position. *Fisher v. Hargett*, No. M2020-00831-SC-RDM-CV at 15 (Tenn. Aug. 5, 2020). But less than a month later, Defendants had to be hauled back into chancery court because they had indeed *not* complied with and *not* implemented their ostensible legal position. *Demster*, Mem & Order, at 3-5. It took another court order, including a requirement that Defendant Goins file a declaration attesting to compliance, for Defendants to implement the promises they had made to the Tennessee Supreme Court in their efforts to have the injunction lifted. *Id.* at 5-6.

Here, Defendants Goins and Hargett have been on notice about these specific violations since 2018 and have engaged in, and subsequently backed out of, negotiations with Plaintiff NAACP to correct the problem. *See* Ex. 6 (First Notice Letter); Ex. 26 (119_Follow-up) at DEF 000610-12 (stating that a new voter registration form would be tested prior to the 2020 presidential primary election then implemented and confirming that Defendants had agreed to end the paperwork requirement for people with felonies who are not disenfranchised); Ex. 27 (Apr. 2021 NVRA Response Letter, Lim Dep. Ex. 28) (2021 letter promising to make revisions to the voter registration form and online voter registration system that were never implemented). Yet they are only now, on the precipice of dispositive motions, adopting new policies. No relevant facts or law have changed in that time. In the past, Defendants have shown a willingness to drag their feet on

implementation or to reverse their policies and procedures on a dime, so it is reasonable to believe that they would do so again if this claim were dismissed as moot.

While the new policies do not fully or finally correct the violations of law, they do demonstrate that the Election Division *can* comply with the NVRA (or very nearly comply, as is now the case). Because these violations are reasonably likely to recur, an order of summary judgment is necessary to ensure that this Elections Coordinator and all future Elections Coordinators will fully come into and stay in compliance with the NVRA. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.") (internal citations omitted).

## V. Plaintiff TN NAACP Provided Adequate Notice Under the NVRA.

Plaintiff TN NAACP provided adequate notice under the NVRA. Someone aggrieved by an NVRA violation can bring a civil action for declaratory or injunctive relief if (1) they provide written notice of the violation to a state's chief election official and (2) the violation is not corrected within 90 days of receipt of the notice. 52 U.S.C.§ 20510 (b)(1)-(2). The purpose of the NVRA's notice requirement is to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833, 838 (6th Cir. 1997).

Various "[d]istrict courts have found notice sufficient 'when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA and intends to commence litigation if the violation

is not timely addressed.'" ECF No. 83 (quoting *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019) (collecting cases)).

Plaintiff has given Defendants ample opportunity to comply with the NVRA before it brought litigation, sending three separate litigation notices with the first provided over *two years* before it filed suit. Throughout its correspondence with Defendants, Plaintiff has also set forth the specific reasons that Defendants are not in compliance with provisions of the NVRA and clearly communicated its intent to commence litigation if the NVRA violations were not remedied.

On August 22, 2018, Plaintiff TN NAACP sent Defendants Hargett and Goins a letter ("First Notice Letter"), notifying them that Tennessee's registration forms and procedures were out of compliance with various provisions of the NVRA. *See* Ex. 6 (First Notice Letter) (citing violations of 52 U.S.C. §§ 20507(a)(5), 20508(b)(2)(A)). After giving Defendants two years to resolve the violations, Plaintiff filed its original Complaint on December 3, 2020. ECF No. 1. On March 30, 2022, this Court granted in part and denied in part Defendants' Motion to Dismiss alleging, among other things, deficient notice under the NVRA. ECF No. 83; ECF No. 84. The Court dismissed Count Five of the original complaint without prejudice and denied Defendants' Motion to Dismiss on all other counts. ECF No. 83 at 15-16, 18. The Court held that Plaintiff's First Notice Letter did not provide sufficient notice for Count Five, which challenged Tennessee's blanket rejection policy and documentation requirement under the NVRA. ECF No. 1 at 40-41.

Plaintiff cured this technical defect in two additional notice letters. On January 27, 2021, Plaintiff sent a second notice letter to Defendants Goins and Hargett explaining that the state's registration policies and procedures for applicants with prior felony convictions remained non-compliant with the NVRA. *See* Ex. 7 (Second Notice Letter); *see also* 52 U.S.C. §§ 20507(a)(1), 20507(a)(5), 20508(b)(2)(A). It further notified Defendants that placing the burden of proving

eligibility onto the eligible prospective voter with a prior felony conviction—and requiring them to fight the erroneous rejection with additional paperwork not required of other eligible applicants without a prior felony conviction—created a non-uniform registration process in violation of the NVRA. *See* Ex. 7 (Second Notice Letter); *see also* 52 U.S.C. § 20508(b)(3); *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013) ("*ITCA*").

On May 24, 2021, Plaintiff's counsel sent a final notice letter ("Third Notice Letter") to Defendant Goins on behalf of Plaintiff TN NAACP responding to the steps detailed in Defendant Goins' letter and reiterating that the continued requirement of additional paperwork for certain eligible applicants was improper under the NVRA. *See* Ex. 9 (Third Notice Letter); *see also* 52 U.S.C. § 20508(b)(3); *ITCA*, 570 U.S. at 9. Additionally, Plaintiff put Defendant Goins on notice that his proposed policies in his April 27, 2021 letter regarding registrants with pre-1973 convictions failed to comply with Tennessee law and the NVRA. *See* Ex. 9 (Third Notice Letter); *see also* 52 U.S.C.A. § 20507(a)(1).

Well over 90 days after sending the third and final notice letter, Plaintiff filed its First Amended Complaint on October 3, 2022. ECF No. 99-1. The First Amended Complaint re-alleged the allegations in Count Four of the initial complaint (again, as Count Four) and Count Five of the initial complaint (this time, as Count Six). *See* ECF Nos. 1, 99-1. Therefore, Plaintiff TN NAACP provided Defendants with adequate notice under the NVRA. *See* 52 U.S.C.§ 20510 (b)(1)-(2).

## CONCLUSION

Plaintiff respectfully requests that this Court grant summary judgment to Plaintiff TN NAACP on Counts Four and Six and grant all such permanent relief that this Court deems just and proper.

Dated: August 2, 2023

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org


* Admitted pro hac vice

Respectfully submitted,

Blair Bowie*
Danielle Lang*
Alice C. Huling*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org

VRichardson@campaignlegal.org
Amulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

*Counsel for the Petitioners-Plaintiffs and the Class*

34

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 2, 2023, a copy of the foregoing Notice of Filing in Support of Plaintiff's Motion for Summary Judgment was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

    DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

    ALEXANDER S. RIEGER (BPR #29362)
Assistant Attorney General
Alex.rieger@ag.tn.gov

    ZACHARY BARKER (BPR #035933)
Assistant Attorney General
Zachary.barker@ag.tn.gov

    PABLO A. VARELA (BPR #29436)
Assistant Attorney General
Pablo.varela@ag.tn.gov

    DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov

    Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

                                    /s/ Charles K. Grant
                                    Charles K. Grant