**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al.,<br><br>                      Plaintiffs,<br><br>   v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al.,<br><br>                      Defendants. | Civil No. 3:20-cv-01039<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE FRENSLEY<br><br>[Class Action] |

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.**    **Statutory Disenfranchisement and Voting Rights Restoration in Tennessee**

1.    The provision of the Tennessee Constitution permitting the state legislature to disenfranchise citizens upon "conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction" is not self-executing, and disenfranchisement cannot apply retroactively. Tenn. Const. art. I, § 5; *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983). Thus, persons convicted of crimes are not disenfranchised unless prior to their conviction the legislature has by law "ascertained" that those crimes are "infamous" and "declared" that conviction of those crimes results in loss of the right to vote. *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980). Because of this constitutional structure, a felony conviction does not always result in the loss of voting rights in Tennessee.

**Response:**

Case 3:20-cv-01039   Document 155   Filed 08/02/23   Page 1 of 32 PageID #: 2315

2. A felony conviction before January 15, 1973 (a "pre-1973 conviction") does not disqualify a person from voting unless the conviction is for one of 21 specific potentially infamous crimes listed in state law *and* the judgment of conviction included a statement rendering the crime "infamous." *Crutchfield*, 607 S.W.2d at 482 ("Although one of the plaintiffs was convicted prior to 1972 the record of his convictions contains no adjudication of infamy and disfranchisement as required by Section 40-2712 prior to 1972."); *see also* Restoration of Voting Rights, Tenn. Sec'y of State, https://sos.tn.gov/elections/guides/restoration-of-voting-rights.

**Response:**

3. A felony conviction between January 15, 1973 and May 17, 1981 (the "grace period") *never* disqualifies a Tennessean from voting. *Crutchfield*, 607 S.W.2d at 482); *Gaskin*, 661 S.W.2d at 868 (finding unconstitutional a law attempting to retroactively disenfranchise people with grace period convictions); *see also* Restoration of Voting Rights, Tenn. Sec'y of State, https://sos.tn.gov/elections/guides/restoration-of-voting-rights. An otherwise qualified person with convictions only from this period has never lost the right to vote and is eligible to register and vote. *Id.*

**Response:**

2

4.      Felony convictions after May 18, 1981—whether by a Tennessee court, a court in another state, or a federal court—result in loss of the right to vote, until that right has been restored pursuant to state law. *See* T.C.A. §§ 40-29-101, *et seq.*; §§ 40-29-201, *et seq.*

**Response:**

## II.      Parties Relevant to NVRA Claims

5.      Plaintiff the Tennessee State Conference of the National Association for the Advancement of Colored People ("TN NAACP") is a nonpartisan, multi-racial, non-profit membership organization headquartered in Jackson, Tennessee. Declaration of Gloria Jean Sweet-Love at ¶ 3 ("Sweet-Love Decl.").

**Response:**

6.      TN NAACP was founded in 1946 to serve as the Tennessee arm of the NAACP. Its mission is to eliminate race-based discrimination through securing political, educational, social, and economic equality rights and ensuring the health and well-being of all persons. Sweet-Love Decl. at ¶ 3, 6; Deposition of Loretta Morris at 18:5-19:15 ("Morris Dep.").

**Response:**

7.      TN NAACP has three regional divisions—Eastern, Middle, and Western Tennessee—as well as the 33 local branch units and 22 college chapters and youth councils. TN

3

NAACP and most of its local branch units are primarily volunteer-run, and all officers are volunteers. Sweet-Love Decl. at ¶ 4, 5; Morris Dep. at 19:16-20:12.

**Response:**

8.     TN NAACP has more than 10,000 members across the state, more than 90% of whom are Black or brown. Sweet-Love Decl. at ¶ 5. Black people make up 16% of the state's total voting-age population, but account for more than 21% of individuals who are disenfranchised by a felony conviction in Tennessee. Christopher Uggen, Ryan Larson, Sarah Shannon, and Robert Stewart, The Sentencing Project, *Locked Out 2022: Estimates of People Denied Voting Rights* (Oct. 25, 2022), https://www.sentencingproject.org/reports/locked-out-2022-estimates-of-people-denied-voting-rights/.

**Response:**

9.     Promoting voter registration and turnout are the primary activities through which the TN NAACP furthers its mission. The organization expends significant resources helping individuals, including those with past felony convictions, register to vote. Its staff and volunteers conduct public education workshops to help its constituents and other members of the community navigate the voter registration process. Sweet-Love Decl. at ¶ 4; Morris Dep. at 18:5-19:15.

**Response:**

4

10.     The primary resource that the TN NAACP has available to expend in support of its mission is volunteer time. The state conference and local branches also have limited monetary resources to put toward mission-furthering activities. Sweet-Love Decl. at ¶ 7; Morris Dep. at 65:10-67:23.

**Response:**


11.     The TN NAACP prefers to use the online voter registration form when assisting individuals with voter registration at events or otherwise because it is a more efficient means of registration, but individuals who have been convicted of felonies cannot use the online form, regardless of their eligibility to vote. Sweet-Love Decl. at ¶ 11; Morris Dep. at 28:15-29:3.

**Response:**


12.     The TN NAACP's typical assistance is rendered ineffective when the online registration portal excludes individuals with felony convictions from submitting a registration application and when election officials reject individuals with felony convictions who submit valid voter registration forms. The TN NAACP is aware, for example, of individuals who were convicted of felonies during the "grace period" between January 15, 1973, and May 17, 1981, but are nonetheless unable to register using the state voter registration form or the online registration form, despite never having lost the right to vote. Sweet-Love Decl. at ¶ 12; Morris Dep. at 28:15-29:3.

**Response:**

13.     When an eligible voter is incorrectly denied the ability to register to vote, the TN NAACP must divert significant resources from the other activities related to its mission by following up with the eligible voter and communicating with various governmental authorities (including, but not limited to, clerks of the court and probation officers) to rectify the situation. In conjunction with these efforts, the TN NAACP has accompanied persons and taxied them to and from various governmental offices to troubleshoot the issue and correct the erroneous rejection. This correction process may involve seeking old court records that are not easily accessible to the TN NAACP. These efforts are sometimes insufficient to remedy the erroneous rejection. Sweet-Love Decl. at ¶ 13-16; Morris Dep. at 28:15-30:1, 39:18-42:5.

**Response:**

14.     The TN NAACP would like to be able to dedicate greater resources to its voter turnout activities, rather than just voter registration. This would include providing stipends to volunteers to canvass or phonebank to encourage members and constituents to turn out on Election Day. The TN NAACP also provides transportation to the polls. Sweet-Love Decl. at ¶ 17.

**Response:**

15.     The TN NAACP is injured when a person they help register to vote is rejected despite being eligible to register. The extra time and money spent assisting voters that the state has erroneously rejected depletes resources that could be spent on other mission-furthering activities.

The TN NAACP's political power and its ability to carry out its mission are directly diminished by the inability of its members and constituents to register to vote. Sweet-Love Decl. at ¶ 18.

**Response:**

16.     Defendant Mark Goins, under the supervision of Defendant Hargett, is the Coordinator of Elections for Tennessee. Mr. Goins is the head of the Tennessee Secretary of State's Election Division ("Election Division"), the "chief election officer of the state," and is charged with "obtain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of the election code." T.C.A. § 2-11-201(b).

**Response:**

17.     The Coordinator of Elections must, *inter alia*, "prepare instructions for the conduct of registration" and "authoritatively interpret the election laws for all persons administering them." T.C.A. § 2-11-202; *see also* § 2- 2-115. Defendants Goins and Hargett are therefore responsible for the state's compliance with the National Voter Registration Act (NVRA).

**Response:**

**III.    State Voter Registration Form**

18.    Tennessee has made and tested changes to its mail-in voter registration form (the "State Form") resulting in various versions of the form having been used over the years. Deposition of Jessica Lim at 77:19-24.

**Response:**

19.    The latest version of the State Form available on the Secretary of State's website provides the following instruction about eligibility based on a felony conviction: "If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call 1-877-850-4959 or visit sos.tn.gov/restoration." Ex. 1 (Current State Form).

**Response:**

20.    The latest version of the State Form does not state that grace period felony convictions are non-disqualifying. *Id.*

**Response:**

21.    The latest version of the State Form does not state that convictions before January 15, 1973 are only disqualifying in certain circumstances, does not list the pre-January 15, 1973

8

infamous crimes that are disqualifying (or those that are not), and does not include a way for an applicant to mark under penalty of perjury that they were not convicted of an infamous crime or not declared infamous in their judgment. *Id.*; Lim Dep. at 178:10-23.

**Response:**

22.  The latest version of the State Form directs applicants with any prior felony conviction to visit sos.tn.gov/restoration. Ex. 1 (Current State Form). Presently, that link routes to the Secretary of State's website to information on loss of voting rights. However, as of early July 2023, that link resulted in a Secretary of State website page with an error message reading "Page Not Found." *See* Ex. 12 (Archive of TN SOS Webpage).

**Response:**

23.  The latest version of the State Form instructs applicants to fill out the required information in Box 4 of the form and to provide "any responsive documents you have," without defining what "responsive documents" are and without informing applicants that their applications will be denied if they disclose a felony conviction and do not provide documentation. Ex. 1 (Current State Form).

**Response:**

24.     Box 4 in the latest version of the State Form asks applicants to check a box "yes" or "no" in response to the question: "Have you ever been convicted of a felony? (If expunged, answer 'no')." It then directs applicants to provide certain information "if known", including "Crime(s)" and "Date (mo./yr.)". *Id.*

**Response:**

25.     Box 4 also asks for "Place (city/state)," presumably of conviction, though that is not relevant to an eligibility determination. Ex. 1 (Current State Form); Lim Dep. at 157:2-13.

**Response:**

26.     Box 4 also asks, "Have you received a pardon or had your voting rights restored?" and has boxes to indicate "yes" or "no." It instructs "If yes, provide copy of document," but does not specify what "copy of document" means or that an application may be rejected if such documentation is not provided. Ex. 1(Current State Form).

**Response:**

27.     The latest iteration of the State Form was "put into use" sometime between December 2020 and March 2021. Lim Dep. at 92:16-93:5; *see also* Ex. 7 (Second Notice Letter) at 4.

**Response:**

28. The Election Division did not issue any specific new processing instructions to county election commissions when it rolled out the latest iteration of the State Form, beyond the instructions on the form itself and answering "calls and e-mails when [the counties] have questions" about processing the new form. Lim Dep. at 95:10-25.

**Response:**

29. The counties continued to be authorized to accept and process prior versions of the registration form even after the latest iteration of the State Form was released. Lim Dep. at 93:6-21.

**Response:**

30. Prior versions of the State Form, including the version used in the November 2020 general election, provide only the following instruction regarding eligibility to vote for individuals with felony convictions: "To register to vote: . . . you must not have been convicted of a felony, or if you have, your voting rights must have been restored." Ex. 3 (Previous State Form, Lim Dep. Ex. 7); Lim Dep. at 77:6-24; *see also* Ex. 4 (State Form Rev. 2015) (older form providing the same instruction); Ex. 5 (State Form Rev. 2011) (same).

**Response:**

31.     Prior versions of the State Form ask applicants a single question concerning prior felony convictions, "Have you ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court?" and provide a checkbox to mark "Yes" and a checkbox to mark "No." Ex. 3 (Previous State Form); Lim Dep. at 78:22-79:3; *see also* Ex. 4 (State Form Rev. 2015); Ex. 5 (State Form Rev. 2011) (same).

**Response:**

32.     Some counties continue to use prior versions of the State Form and provide the older versions of the form on their county websites. *See e.g.*, Knox County Elections Commission, *Copy of Tennessee Mail-In Application for Voter* Registration, https://perma.cc/J66L-CS5J (last visited Aug. 2, 2023); Hamilton County Elections Commission, *Copy of Tennessee Mail-In Application for Voter Registration*, https://perma.cc/7YDX-45MD (last visited July 31, 2023); DeKalb County Elections Commission, *Requirements For Voter Registration* (https://perma.cc/DH7Q-NL2V) (last visited July 31, 2023) (linking to older version of the voter registration form at bottom of page).

**Response:**

IV.     **Federal Voter Registration Form**

33.     United States citizens living in Tennessee may register to vote using the Federal Voter Registration Application ("Federal Form"). *See* Ex. 2 (Federal Form, Lim. Dep. Ex. 11).

**Response:**

12

34.     The Federal Form does not include any space for an applicant to list any information regarding a prior felony conviction. *See id.*

**Response:**

35.     The Tennessee-specific instructions on the Federal Form indicate that to be eligible to register to vote in Tennessee, the applicant must "not have been convicted of a felony" and further state that if convicted, the applicant's "eligibility to register and vote depends upon the crime [] convicted of and the date or [] conviction," directing applicants "[f]or more information about this process, call 877-850-4959 or visit https://sos.tn.gov/gov/restoration." *See id.*

**Response:**

36.     If a voter submits a Federal Form, the county processing the form would not know whether the individual has a conviction, nor the date or type of conviction, from the face of the form itself. *See* Ex. 2 (Federal Form, Lim. Dep. Ex. 11); Lim Dep. at 103:6-15.

**Response:**

13

**V.      Voter Registration Application Blanket Rejection and Documentation Policy**

37.      Election officials in Tennessee reject voter registration applications submitted with the felony conviction question answered in the affirmative absent additional documentation. Lim Dep. at 101:5-11 (former Election Division attorney and 30(b)(6) representative testifying in October 2021 that a registration form with the felony question marked yes "is rejected, if they don't have anything else, or any other documentation"); Deposition of Donald Hall at 98:14-100:14, 121:3-16 (current Election Division 30(b)(6) representative testifying confirming the policy remained the same as of March 2023); Deposition of Sherri Sivley (Hamilton AOE) at 76:1-15 ("When your office receives a voter registration application from someone who's marked they have a prior felony conviction, what happens? . . . A rejection letter is sent to the individual . . . And is all that sent regardless of the year of an individual's conviction? . . . Yes."); Deposition of Linda Phillips (Shelby County) at 28:03-12 ("If an application comes in where a felony conviction -- where an individual marks that they have a felony conviction, what would your colleagues do with that? . . . They would automatically reject them. . . ."); Deposition of Judy McAllister (Meigs County) at 83:10-19.

**Response:**

38.      Election officials do so pursuant to Election Division policy, training, and guidance. *See* Hall Dep. at 98:14-99:13; Ex. 21 (Elections Div. Int. Pol., Hall Dep. Ex. 3) at 2, 7 ("If a person marks 'yes' to the felony question on their voter registration application (and there is no restoration documentation), the county election commission rejects the application."); Ex. 14 (Rest. of Voting Rights Tr. Doc, Hall Dep. Ex. 4) at DEF000036 ("If a person marks that they have been convicted

14

of a felony . . . the application is rejected."); Ex. 15 (Felon Process Training) at DEF000402-409; Ex. 16 (Felony Q & A) at DEF000387 ("What creates a rejection is when the felony question is answered and the applicant marks yes to the felony question. If the applicant comes into the office and completes the blank felony question and responds they have a felony conviction –then the registration application is rejected because a felony conviction makes them ineligible to register to vote (assuming it not in the appropriate time period as detailed in question #18 in this document).").

**Response:**



39.    This policy was in effect as far back as 2014. *See* Ex. 17 (2014 Training) at DEF000080-81 (training last updated in 2014 produced by Defendants with the document name "015_Deficient_Rejection_Process_Updated_2014_ID215__4_").

**Response:**



40.     According to that policy, in order for a State Form with the felony conviction question answered in the affirmative to be accepted, the elections office must have additional documentation of the applicant's eligibility. Lim Dep. at 101:5-11.

**Response:**



41.    Although the Federal Form has no space for voters to attest to having or not having a felony conviction, election officials in Tennessee require documentation from applicants when

they learn about an applicant's felony conviction(s) from a source beyond the registration form itself, Lim Dep. at 59:13-60:2, including verbally from an applicant, or by way of Tennessee statute requiring clerks of court in every county to send notices of felony convictions to election officials, or when counties share this information with one another, *id.* at 56:6-57:8.

**Response:**

42.     Election officials also learn about a Federal Form applicants' felony conviction when checking to see if they appear in a county's "felony files." Hall Dep. at 123:5-15; Lim Dep. at 110:7-14.

**Response:**

### A. Applications Indicating a Pre-January 15, 1973 Conviction

43.     Under the State's blanket rejection policy, when a county election official receives a voter registration application indicating a pre-January 15, 1973 non-infamous conviction, they are directed to reject the application, "file documents with the state election office showing the date of conviction and crime committed" and "[w]ait for [the] state to send [back an] eligibility letter," despite the applicant never having lost their right to vote. Ex. 16 (Felony Q & A) at DEF000389; *see also* Hall Dep. at 82:22-83:1, 120:3-6; Lim Dep. at 179:23-180:22, 184:7-25.

**Response:**

44.     Sufficient documentation requires "a copy of basically the judgment or convicting document that shows, A, what the person was convicted of; and then B, if they were convicted, if they were, I guess, judged infamous." Lim Dep. at 109; 131:25-132:8; *see also* Hall Dep. at 82:22-83:1, 120:3-6.

**Response:**

## B.  Applications Indicating a Grace Period Conviction

45.     Under the State's blanket rejection policy, when a county official receives a voter registration application indicating a grace period conviction, they are directed to reject the application unless they have documentation confirming the individual's conviction was during the grace period, such as "a copy of their conviction papers showing the date of the conviction and the type of crime." Ex. 16 (Felony Q & A) at DEF000389; *see also* Lim Dep. at 107:15-108:22, 131:25-132:8 ("So for the grace period, as we've trained the counties, it's any official documentation confirming their conviction date was in the grace period."); Hall Dep. at 117:18-118:12 ("My understanding is that it is the [duty of the] individual with the [grace period] felony conviction or that has indicated that they have a felony conviction to supply that documentation."); Sivley Dep. at 40:20-25 (discussing how an individual with a grace period conviction must "present a copy of the judgment or any kind of documentation from the Court that the conviction occurred during that period"); Ex. 18 (Felony Conviction Search-Redacted) at DEF000513 (Jan. 2020 email from Ms. Lim to Andy Farrar) ("[W]e also always require people to submit their paperwork for grace period convictions.").

**Response:**

17

46.     While some election officials may at times try to work with the voter to find and obtain the required documentation, there is no official policy requiring election officials to do so, and the burden is ultimately on the applicant. Lim Dep. at 156:11-25, 176:3-10, 187:5-21; Ex. 24 (Grace Period Email, Lim Dep. Ex. 26) at 2; Hall Dep. at 199:4-23.

**Response:**

47.     The Election Division has acknowledged that individuals with grace-period convictions have faced difficulties obtaining the necessary documentation. Hall Dep. at 118:13-16, 194:18-25.

**Response:**

48.     Obtaining the necessary documentation for grace-period or non-infamous pre-1973 convictions can be difficult because "many times the conviction will be so old that [the documentation will] be in archives." Lim Dep. at 157:16-158:2; *see also* Deposition of Vicki Collins at 57:10-58:6 (testifying that the older the conviction, the "more likely . . . it has to be pulled out of archives"), 100:4-11 (testifying that pulling records from criminal archives in Shelby County can take up to one week).

**Response:**

49. Obtaining the necessary documentation for grace-period or non-infamous pre-1973 convictions can also cost money. The Shelby County Criminal Court Clerk's office charged a prospective voter $10 for a copy of his grace-period judgment that he was required to submit in order to register to vote, even though he never lost the right to vote. Hall Dep. at 195:12-197:15; Ex. 20 (Sept. Shelby Cty. Email, Hall Dep. Ex. 21).

**Response:**

50. The required paperwork for grace-period or non-infamous pre-1973 convictions sometimes does not exist or cannot be found. *See* Lim Dep. at 158:6-11; Ex. 21 (Sept. 2020 Email, Lim Dep. Ex. 24) at DEF000569-70 (Sept. 2020 email from Ms. Lim refusing to issue an eligibility letter for an individual with a grace-period conviction where neither the applicant nor Ms. Lim herself could find the required documentation).

**Response:**

### C. Applications Indicating a Post-May 17, 1981 Conviction

51. Under the State's blanket rejection policy, when a county official receives a voter registration application indicating that the voter has a disenfranchising felony conviction but had their voting rights restored, they are directed to reject the application unless the applicant also provides documentation proving their restoration of voting rights. Ex. 22 (Agency Tr. Doc, Lim Dep. Ex. 3) at 2.

19

**Response:**

52.     The State Form instructs voters who mark "yes" to the question asking if they have "received a pardon or had [their] voting rights restored" to "provide copy of document." Ex. 1 (Current State Form). The form provides no further information about what kind of document(s) must be provided. *Id.*

**Response:**

53.     When processing voter registration applications indicating restoration of voting rights, county election offices are not required by any policy to confirm whether the Election Division already has a record of the applicant's restoration of voting rights. Hall Dep. at 101:19-102:10. However, county election offices *can* ask the Election Division to search for confirmation of an applicant's restoration of voting rights, and the Election Division can look through its "restored and denied databases" to see "if there [is] a restoration there." *Id.*

**Response:**

**D. Applications from Voters with Expungements and Judicial Diversions**

54.     The State Form instructs an individual with only expunged felony convictions to mark "no" in response to the felony question. Ex. 1 (Current State Form); Lim Dep. at 56:1-4; Hall Dep. at 232:2-6.

**Response:**

20

55.     If a person with an expunged felony conviction marks "yes" to the felony question, the Election Division policy is to reject the application and require the applicant to present documentation proving their felony was expunged. Hall Dep. 232:14-233:21; Ex. 23 (Expungement Tr. Doc, Hall Dep. Ex. 35) at DEF000101-103.

**Response:**



56.     A conviction subject to judicial diversion "acts the same as expungement" for the purposes of voting rights in that it does not result in the loss of the right to vote. Hall Dep. at 232:15-20; *see also* Ex. 15 (Felons Process Training) at DEF000404. Voters with only convictions subject to judicial diversion can mark "no" to the felony question on the State Form. Hall Dep. at 232:21-25.

**Response:**



57.     The State Form does not include an instruction to individuals with convictions subject to judicial diversion to mark "no" in response to the felony question. Ex. 1 (Current State Form).

**Response:**

58. If an applicant with a conviction subject to judicial diversion marks "yes" to the felony question, Election Division policy is to reject the application and require documentation. Ex. 15 (Felons Process Training) at DEF000409.

**Response:**

### E. Existing Practices and Procedures for Verifying Non-Disenfranchising Felonies and Voting Rights Restoration

59. The Election Division's current policy is for county election commissions to "check every application against their felon files" when the person marked they had a felony conviction, and some counties check every application, regardless of whether the applicant indicates they have a felony conviction. Lim Dep. at 112:12-114:2.

**Response:**

60. "Felon files" include "any information from the various sources, as required by statute or anywhere else, that the counties receive for people notifying them of a felony conviction or a previous voter registration application that the own person marked 'Yes' under penalty of perjury to the felony question. So any information from the person, the Court, any – anywhere" including court orders and emails from U.S. Attorneys, the Tennessee Department of Corrections (TDOC), the Election Division, the state felon list, other county election officials, and their own clerks of court and jury coordinators. Lim Dep. at 110:7-14; 110:15-112:2, 124:1-7, 28:5-10.

**Response:**

61.     The Election Division also disseminates "felon reports" to counties every 1-3 months that include the data on registrants' state felony convictions from TDOC, federal convictions from the U.S. attorneys, and out-of-state convictions from the Interstate Compact. Lim Dep. at 117:21-24, 120:6-12, 121:7-9.

**Response:**

62.     For each applicant, felon reports would include all convictions for a person going back in time and include the date of judgment, conviction or sentence. Lim Dep. at 119:11-120:5, 120:20-21.

**Response:**

63.     The information in felon reports can be sufficient to verify whether an applicant has only grace-period convictions. *See* Lim Dep. at 103:6-15 (testifying that if a voter in the grace period fills out the Federal Form, the county processing the form would not know that the person has a grace-period conviction from the form itself, but "but they could have information from other sources").

**Response:**

64.     County election officials, as part of their regular voter-roll maintenance duties, routinely use information in felon files and felon reports to purge voters with felony convictions from the voter rolls. Sivley Dep. at 22:25-24:20; *see also* T.C.A. § 2-2-106(a)(4).

**Response:**

65.     In Hamilton County, the list maintenance program automatically flags new applicants who may match a record in databases listing individuals with felony convictions and individuals previously purged due to a felony conviction. Sivley Dep. at 118:5-121:2. Hamilton County election officials must manually review these potential matches to determine whether the new registrant does indeed have a felony conviction. *Id.* at 121:4-122:1.

**Response:**

66.     Upon receipt of a facially valid application indicating a felony conviction, county election officials are capable of reaching out to other county election officials or the Election Division to confirm the applicant's eligibility, although Election Division policy does not currently instruct or require them to do so. *See* Hall Dep. at 101:19-102:10; McAllister Dep. at 85:5-12.

**Response:**

67.     County election officials are capable of searching or requesting public records or contacting courts and other relevant agencies to verify eligibility of voters with grace-period or

non-infamous pre-1973 convictions, though there is "no definitive set-on practice" of doing so under Election Division policy. *See* Hall Dep. at 199:4-23; Phillips Dep. at 46:10-22, 47:23-48:1; Collins Dep. at 58:14-17.

**Response:**

68. The Election Division itself is likewise capable of verifying grace-period convictions without requiring documentation from the applicant by searching or requesting public records or contacting courts and other relevant agencies. *See* Ex. 24 (Grace Period Email, Lim Dep. Ex. 26) at 2.

**Response:**

F.   **Rejected Applications**

69. Upon rejecting an application due to a felony conviction, county election officials are directed to send the applicant a notice of the rejection accompanied by a Voter Registration Appeal Request Form, a Certificate of Restoration form, and a blank voter registration form. Lim Dep. at 151:23-152:6; Collins Dep. at 28:7-29:19; Ex. 19 (Voter Reg. Appeal Form, Lim Dep. Ex. 21).

**Response:**

70. The Voter Registration Appeal Request Form allows an applicant to affirm that they "have not been convicted of a felony or if convicted [they] have had [their] rights properly

restored" and include a place for the applicant to check whether they "have not been convicted of a felony" or the "have been convicted of a felony but have had [their] rights properly restored or [their] record expunged." Ex. 19 (Voter Reg. Appeal Form, Lim Dep. Ex. 21); Lim Dep. at 153:7-154:4.

**Response:**


71.    A person with a grace period conviction cannot use the Voter Registration Appeal Request Form to appeal their rejection. Lim Dep. at 154:5-12.

**Response:**


72.    Nor can a person with a pre-January 15, 1973 conviction that did not render them infamous use the Voter Registration Appeal Request Form to appeal their rejection. Lim Dep. at 154:13-20.

**Response:**


VI.    **New Policy**

73.    On July 21, 2023, Defendant Goins issued a memorandum outlining a new policy for processing voter registrations from individuals with pre-1981 felony convictions. Ex. 11 (Processing Older Felonies Memo).

**Response:**

26

74. The memo states that the purpose of the new process is "to avoid rejecting individuals for a felony conviction who did not lose their voting rights as a result of that conviction." *Id.*

**Response:**

75. The memo instructs that when processing voter registrations of people who indicate that their felony convictions were prior to January 15, 1973, if the applicant indicates they were convicted of a felony that is not on the list of potentially infamous crimes, their registration form is to be processed. *Id.*

**Response:**

76. The memo states that if "an individual indicates on the face of their registration that they were convicted of one of the above felonies . . . and declared infamous, the form must be rejected unless the applicant has had their rights restored." *Id.* at 2. The memo does not explain how an individual convicted of one of the *potentially* infamous crimes would indicate on their registration whether they were actually declared infamous. *Id.*

**Response:**

77.     The memo also instructs the county administrators of elections to process voter registration forms from individuals with grace period convictions. *Id.*

**Response:**



VII.    **Notice Under the NVRA**

78.     On August 22, 2018, Plaintiff TN NAACP sent Defendants Hargett and Goins a letter ("First Notice Letter"), notifying them that Tennessee's registration forms and procedures were out of compliance with the NVRA, including 52 U.S.C. § 20507(a)(5) and § 20508(b)(2)(A). Ex. 6 (First Notice Letter).

**Response:**



79.     On December 3, 2020, Plaintiff filed its original Complaint. ECF No. 1.

**Response:**



80.     On March 30, 2022, this Court granted in part and denied in part Defendants' Motion to Dismiss alleging, among other things, deficient notice under the NVRA. ECF No. 83; ECF No. 84. The Court dismissed Count 5 of the original complaint without prejudice and denied Defendants' Motion to Dismiss on all other counts. ECF No. 83 at 15-16, 18. The Court held that Plaintiff's First Notice Letter did not provide sufficient notice for Count 5, which challenged

28

Tennessee's blanket rejection policy and documentation requirement under the NVRA. ECF No. 1 at 40-41.

**Response:**

81.     On January 27, 2021, Plaintiff sent a second notice letter to Defendants Goins and Hargett explaining that the state's registration policies and procedures for applicants with prior felony convictions remained non-compliant with the NVRA. *See* Ex. 7 (Second Notice Letter) (citing, *inter alia*, 52 U.S.C. §§ 20507(a)(1), 20507(a)(5), 20508(b)(2)(A)). It further notified Defendants that placing the burden of proving eligibility onto the eligible prospective voter with a prior felony conviction—and requiring them to fight erroneous rejections with additional paperwork not required of other eligible applicants without a prior felony conviction—created a non-uniform registration process in violation of the NVRA. *See* Ex. 7 (Second Notice Letter) (citing 52 U.S.C. § 20508(b)(3); *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013)).

**Response:**

82.     On May 24, 2021, Plaintiffs' counsel sent a final notice letter ("Third Notice Letter") to Defendant Goins on behalf of Plaintiff TN NAACP responding to the steps detailed in Defendant Goins' letter and reiterating that the continued requirement of additional paperwork for certain eligible applicants was improper under the NVRA. *See* Ex. 9 (Third Notice Letter) (citing 52 U.S.C. § 20508(b)(3) and *ITCA*, 570 U.S. at 9). Additionally, the Third Notice Letter put Defendant Goins on notice that his proposed policies in his April 27, 2021 letter regarding

registrants with pre-1973 convictions failed to comply with Tennessee law and the NVRA. *See* Ex.

9 (Third Notice Letter) (citing, *inter alia*, 52 U.S.C.A. § 20507(a)(1)).

**Response:**

83. Plaintiff filed its First Amended Complaint on October 3, 2022. ECF No. 99-1.

**Response:**

Dated: August 2, 2023

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org


* Admitted pro hac vice

Respectfully submitted,

Blair Bowie*
Danielle Lang*
Alice C. Huling*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org

VRichardson@campaignlegal.org
Amulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com


*Counsel for the Petitioners-Plaintiffs and the Class*

31

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2023, a copy of the foregoing Notice of Filing in Support of Plaintiffs' Motion for Summary Judgment was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

ALEXANDER S. RIEGER (BPR #29362)
Assistant Attorney General
Alex.rieger@ag.tn.gov

ZACHARY BARKER (BPR #035933)
Assistant Attorney General
Zachary.barker@ag.tn.gov

PABLO A. VARELA (BPR #29436)
Assistant Attorney General
Pablo.varela@ag.tn.gov

DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov


Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

                                        /s/ Charles K. Grant
                                        Charles Grant