**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al., | **Civil No. 3:20-cv-01039** |
| Plaintiffs, | **JUDGE CAMPBELL** |
| v. | **MAGISTRATE JUDGE FRENSLEY** |
| WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al., | [Class Action] |
| Defendants. | |

**PLAINTIFF TN NAACP'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION**
**FOR SUMMARY JUDGEMENT AS TO COUNTS FOUR, FIVE, AND SIX**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD ...........................................................................................................6

ARGUMENT .......................................................................................................................6

   I.  Plaintiff TN NAACP Has Standing to Challenge Tennessee's Voter Registration Forms and Policies ....................................................................................................................6

  II.  Defendants Goins and Hargett Are Not Entitled to Summary Judgment on TN NAACP's NVRA Claims (Counts 4 and 6) ...............................................................10

        A.  Tennessee's Voter Registration Forms Violate the NVRA (Count 4) ..............11

        B.  Tennessee's Voter Registration Policies Violate the NVRA (Count 6)............14

 III.  Defendants Are Not Entitled to Summary Judgment on Plaintiff TN NAACP's Right to Vote Claim (Count 5) ....................................................................................................18

        A.  Defendants' Blanket Rejection Policy and Documentation Requirement Imposes a Severe and Discriminatory Burden on the Right to Vote................19

        B.  No State Interest Justifies the Burdens Imposed by Defendants' Blanket Rejection Policy and Documentation Requirement.........................................21

CONCLUSION ..................................................................................................................22

# TABLE OF AUTHORITIES

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)........................................................................19

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ("*ITCA*")..............................17

*Celotex Corporation v. Catrett*, 477 U.S. 317 (1986).....................................................................6

*Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998)........................................20

*Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513 (6th Cir. 2001)................9, 10

*Cox v. Kentucky Department of Transportation*, 53 F.3d 146 (6th Cir. 1995)..............................6

*Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) ..............................................21

*Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980).....................................................3

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016).............................................................................18

*Ferro Corporation v. Cookson Group, PLC,* 585 F.3d 946 (6th Cir. 2009)....................................6

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
 528 U.S. 167 (2000)...............................................................................................................16

*Gaskin v. Collins*, 661 S.W.2d 865 (Tenn. 1983).........................................................................3

*Gill v. Scholz*, 962 F.3d 360 (7th Cir. 2020)................................................................................19

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021).......................................................................9

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982)......................................................7

*Kucana v. Holder*, 558 U.S. 233 (2010) .....................................................................................11

*League of Women Voters of Florida, Inc. v. Byrd*, No. 23-cv-165 (N.D. Fla. July 10, 2023)........13

*Libertarian Party of NM v. Herrera*, 506 F.3d 1303 (10th Cir. 2007) .........................................19

*Lockhart v. Napolitano*, 573 F.3d 251 (6th Cir. 2009) .................................................................13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .....................................................................6

*Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020)......................................................................18, 20

*Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548 (6th Cir. 2021)..........................8, 9

*Miami Valley Fair Housing Center, Inc. v. Connor Group*, 725 F.3d 571 (6th Cir. 2013)..............7

*Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012).................18, 21

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012).......................................8

*Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435 (6th Cir. 2021) ...............................................6

iii

*Online Merchants Guild v. Cameron*, 995 F.3d 540 (6th Cir. 2021)..................................7

*Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir.) ........................8

*Thompson v. Alabama*, 65 F.4th 1288 (11th Cir. 2023) ...............................................13

*Warth v. Seldin*, 422 U.S. 490 (1975)................................................................7

**Statutes, Rules & Regulations**

52 U.S.C. § 20507(a)(1)........................................................................15, 17

52 U.S.C. § 20507(a)(5)........................................................................11, 12

52. U.S.C. § 20508(b) ...............................................................................17

52. U.S.C. § 20508(b)(1) ............................................................................18

52 U.S.C § 20508(b)(2)(A) ..........................................................................11

T.C.A. § 40-29-101 ...................................................................................3

**Other Authorities**

Black's Law Dictionary (6th ed. 1990)..............................................................11

*Restoration of Voting Rights*, Tenn. Sec'y of State,
    https://sos.tn.gov/elections/guides/restoration-of-voting-rights (last visited Oct. 6, 2023).......3

iv

## INTRODUCTION

Many Tennesseans with decades-old felony convictions never lost the right to vote. But because of unlawful voter registration forms and procedures, many of these eligible citizens have never been able to exercise their fundamental right to cast a ballot. For years, Tennessee's voter registration forms flatly misinformed potential voters that all felony convictions disqualified a person from voting until their voting rights were restored. In the last few years, the form was updated to vaguely state that whether a person lost the right to vote depends on the year and type of conviction, but the form still does not provide specific information sufficient for a person to determine if they have the right to vote or not. Worse still, even if a Tennessean with a decades-old conviction were able to discern that they are eligible, there is no dispute that their voter registration form must be denied pursuant to the State's longstanding policy directing election officials to reject any and all forms on which a person indicates they were convicted of any felony—even if the conviction was never disqualifying. To overcome such denials, the State requires these plainly eligible voters to track down and submit decades-old records, which are often found only deep in archives and sometimes no longer exist.

After being on notice for nearly five years that their forms and procedures violate federal law (and years of arguing that they do not), Defendants Goins and Hargett[1] have suddenly changed their position, weeks before filing a summary judgment motion arguing that the problem has supposedly been fixed. But their new guidance does not offer a complete solution as a matter of law, nor have Defendants taken action to ensure that unlawful denials will not continue. On the contrary, the record shows that elections officials remain confused about how and when to apply

---

[1] Pursuant to the Court's Sept. 25 Order, ECF No. 179, this brief responds only to Defendants' Motion for Summary Judgment as to Counts 4-6 brought against Defendants Goins and Hargett. As such, references to "Defendants" in this brief mean Defendants Goins and Hargett.

1

the new guidance, and Defendants provide no evidence that they have done any training or education to ensure its implementation. Defendants have certainly not met their heavy burden to show that their voluntary about-face means the federal law violations will not recur.

Plaintiff Tennessee Conference of the NAACP ("TN NAACP") works tirelessly to register and turn out Tennesseans who have historically faced difficulty accessing the franchise, including those with prior convictions. Defendants' voter registration forms and procedures thwart this effort. Many of the Tennesseans affected by these forms and procedures were convicted more than 42 years ago of crimes that have no bearing whatsoever on their eligibility to vote, but Defendants' voter registration forms and policies are still, decades later, preventing these voters from participating in our democracy.

The undisputed materials facts show that these forms and policies result in multiple clear-cut violations of the National Voter Registration Act (NVRA), entitling Plaintiff TN NAACP judgment as a matter of law on Counts 4 and 6. Defendants' voter registration policies also unduly burden the fundamental right to vote of eligible citizens with felony convictions in violation of the First and Fourteenth Amendments, as alleged in Count 5. Defendants offer no evidence to dispute the essential facts establishing these violations, instead maintaining in essence that their new guidance (which does not fully remedy any violation) somehow moots Plaintiff's claims. Failing to carry their heavy burden to prove mootness, Defendants' request for summary judgment as to Counts 4, 5, and 6 must be denied and judgment on Counts 4 and 6 entered in Plaintiff's favor. Plaintiff TN NAACP respectfully requests that this Court order long-awaited relief to bring Tennessee's voter registration forms and policies into full compliance with federal law and to ensure that any promised remedies are more than just words on paper.

2

## BACKGROUND

Many Tennesseans convicted of felonies maintain the right to vote. If a person was convicted before January 15, 1973, they are only disenfranchised if that conviction is one of 21 specifically enumerated crimes *and* the judgment of conviction included a statement that rendered their crime "infamous." *Crutchfield v. Collins*, 607 S.W.2d 478, 480 (Tenn. Ct. App. 1980). No felony convictions that occurred between January 15, 1973 and May 17, 1981 are disenfranchising, meaning that individuals whose convictions occurred during that "grace period" have never lost the right to vote. *Crutchfield*, 607 S.W.2d at 482; *Gaskin v. Collins*, 661 S.W.2d 865, 868 (Tenn. 1983); *see also Restoration of Voting Rights*, Tenn. Sec'y of State, https://sos.tn.gov/elections/guides/restoration-of-voting-rights. Individuals who have lost their right to vote because of a felony conviction can restore their voting rights pursuant to Tennessee law. *See* Tenn. Code Ann. §§ 40-29-101 *et seq.*, 40-29-201, *et seq.*

None of Tennessee's voter registration forms specify these eligibility criteria. The latest iteration of the state form merely says: "If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction." Pl. Mot. for Summ. J. ("Pl. MSJ") Ex. 1, ECF No. 156-10. The Federal Form includes substantially similar instructions. Pl. MSJ Ex. 2, ECF No. 156-11. Older state voter registration forms, which are still in use, *falsely* state that the registrant "must not have been convicted of a felony, or if you have, your voting rights must have been restored." Pl. MSJ Ex. 3, ECF No. 156-12. That form also requires applicants to swear as to whether they have "ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court." *Id.* Moreover, even if a person with a non-disqualifying felony conviction is able to understand that they *do* have the right to vote and submits a voter registration form, they will be subject to Defendants'

3

longstanding policy instructing election officials to reject all applications on which the applicant indicates they have a prior felony conviction, even those applicants whose prior felony convictions do not disqualify them. ECF No. 156-4, Lim Dep. at 101:5-11; ECF No. 156-5, Hall Dep. at 98:14-100:14, 121:3-16; ECF No. 156-6, Sivley Dep. at 76:1-15; ECF No. 156-8, McAllister Dep. at 83:10-19; ECF No. 156-9, Collins Dep. at 28:3-12.

On August 22, 2018, Plaintiff TN NAACP sent its First NVRA Notice Letter to Defendants Hargett and Goins detailing the State's failure to inform applicants of voter eligibility requirements in violation of the NVRA. ECF No. 156-15. This was followed by a phone conversation with Defendants in December 2019 discussing these deficiencies, during which the Election Division confirmed its policy of rejecting all voter registration applicants who indicate on the application that they have been convicted of a felony. *See* ECF No. 156-16 (Second Notice Letter). Plaintiff TN NAACP and Defendants continued to correspond in an attempt to resolve these and other related issues, but in spring 2020, Defendants ceased engaging in those talks. ECF 156-17 (Correspondence on Follow-Up - Redacted).

On December 3, 2020, Plaintiff TN NAACP filed suit, challenging, in part, the State's failure to properly inform voter registration applicants of eligibility and its policies automatically rejecting all applicants who indicate they have a felony conviction and requiring additional documentation in violation of the NVRA. ECF No. 1. Plaintiff TN NAACP then sent a Second Notice Letter further outlining these violations, including the rejection and documentary proof policies. ECF No. 156-16. Throughout this period, Plaintiff TN NAACP attempted to work with Defendants to resolve these violations. On May 24, 2021, Plaintiff sent Defendants a Third Notice Letter with feedback regarding proposals from Defendants for new forms and procedures. ECF No. 156-18. Despite these efforts, shortly thereafter, Defendants, again, stopped engaging in

4

negotiations and the proposals were never implemented. ECF No. 156-19 (Aug. 2021 Response Email).

On March 30, 2022, this Court denied all parts of Defendants' Motion to Dismiss with the exception of Count 5, which it dismissed without prejudice, holding that Plaintiff TN NAACP's First Notice Letter did not satisfy the NVRA's pre-suit notice requirement. ECF No. 83 at 16. On October 20, 2022, Plaintiffs filed a First Amended Complaint, asserting that the Second and Third Notice Letters cured this technical defect. ECF No. 102 ¶ 117-18. In Counts 4 and 6 of Plaintiffs' First Amended Complaint, Plaintiff TN NAACP challenges the sufficiency of Tennessee's voter registration policies under the NVRA. In Count 5, Plaintiff TN NAACP challenges Defendants' policies of rejecting all registration forms that indicate a felony conviction and demanding documentary proof of eligibility under the First and Fourteenth Amendments.

After the close of discovery in summer 2023, Plaintiff again attempted to negotiate a resolution with Defendants Hargett and Goins on all the matters at issue in this case. The parties continued progress toward a possible resolution until mid-July, when Defendants withdrew their settlement offers. Shortly thereafter, on July 21, 2023, Defendant Goins issued a memorandum outlining new guidance for processing voter registrations from individuals with pre-1981 felony convictions ("July 2023 Memo"). Pl. MSJ Ex. 11, ECF No. 156-20. That same day Defendants also issued a second memorandum outlining new requirements for individuals attempting to restore their voting rights. ECF No. 157-6. Relying in large part on those memoranda, on August 2, 2023 Defendants moved for summary judgment on all of Plaintiffs' claims. Defs. Mot. for Summ. J. ("Defs. MSJ"), ECF No. 150. On September 25, 2023, the Court granted Plaintiffs' motion for relief under Federal Rule of Civil Procedure 56(d), denying as untimely Defendants'

Motion for Summary Judgment as to Counts 1-3. ECF No. 179. Thus, Plaintiff TN NAACP responds in opposition solely to Defendants' Motion for Summary Judgment as to Counts 4-6.

If properly implemented, the procedures outlined in the July 2023 Memo would improve the processing of voter registration forms from some, but not all, eligible applicants and would not provide a complete remedy to Counts 5 or 6. Nor would they do anything to resolve the deficiency in the instructions on the registration forms identified in Count 4. Thus, Defendants are not entitled to summary judgment on any of these claims.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (quoting Fed. R. Civ. P. 56(a)). The party seeking summary judgment must proffer evidence indicating an absence of a genuine issue of material fact on each issue for which it ultimately bears the burden of persuasion. *See Celotex*, 477 U.S. at 317. "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Ferro Corp. v. Cookson Grp., PLC,* 585 F.3d 946, 949 (6th Cir. 2009); *see also Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) ("[A] case involving cross-motions for summary judgment requires evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration")(quotations omitted).

**ARGUMENT**

**I.** **Plaintiff TN NAACP Has Standing to Challenge Tennessee's Voter Registration Forms and Policies**.

A plaintiff has standing when it suffers an "injury in fact" with a "causal connection" to the defendants' actions that is likely to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). An organization can have Article III standing based on injuries to its members or to itself. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To establish standing to sue in its own right, an organization must show either a perceptible impairment to "the organization's activities" or a "drain on [its] resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013). It is enough to show that "the purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action." *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021) (internal citation omitted).

Here, Plaintiff TN NAACP has standing in its own right because the organization itself suffers cognizable injuries arising from Defendants' unlawful voter registration forms and policies. Defendants' failure to issue informative registration forms useable by voters with felonies convictions and their policy of rejecting and demanding documentation from all applicants who attest to having a felony conviction puts a drain on Plaintiff's scarce volunteer resources. ECF No. 156-2, Sweet-Love Decl. ¶ 13. Defendants' unlawful forms and policies requiring eligible voters with felony convictions to produce documentary proof of eligibility beyond a valid registration form require TN NAACP volunteers to help eligible applicants locate and print records found online, taxi individuals to government offices, and even pay out of pocket to get documents from court clerks. *Id.* ¶¶ 13-16. The volunteer time spent on these corrective activities diverts scarce

resources from other mission-furthering activities, like registering more voters and increasing voter turnout. *Id.* ¶¶ 8-9, 17-18.

Ignoring this evidence, Defendants assert that Plaintiff TN NAACP's injuries are premised only on "past harm." Def. MSJ, ECF No. 151 at 17-21. Not so. Plaintiff expends resources directly in response to *current and ongoing* issues that it confronts in its role as a regular provider of registration assistance to its members and constituents with past felony convictions. ECF No. 156-2, Sweet-Love Decl. ¶¶ 8-10. Defendants' ongoing use of uninformative and inaccurate voter registration forms will continue to impede those efforts so long as the forms remain in use. *See id.* ¶ 13; Pl. SOF, ECF No. 155 ¶ 32 (noting continued use of old inaccurate registration form in at least Knox, Hamilton, and DeKalb Counties); *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County). Defendants' policy requiring facially eligible voters with felony convictions to needlessly hunt down documentary proof of eligibility likewise continues to impede Plaintiff TN NAACP's efforts to assist such voters. *See supra* Part II.B; Pl. MSJ, ECF 154 at 15-27; ECF No. 156-2, Sweet-Love Decl. ¶ 13. None of these injuries share the "imminence problem" affecting plaintiffs in *Shelby Advocates for Valid Elections v. Hargett* because Plaintiff's injuries are ongoing and will continue so long as Defendants' unlawful registration forms and policies are not enjoined. 947 F.3d 977, 981 (6th Cir.), *cert. denied*, 141 S. Ct. 257 (2020).

Defendants are also wrong to attribute Plaintiff's injuries to "human error." Def. MSJ, ECF No. 151 at 19. A wealth of evidence indisputably confirms that election officials in Tennessee have long rejected voter registration applications indicating a felony conviction absent additional documentation not inadvertently but *pursuant to Election Division policy and direction. See* Plaintiff's Statement of Material Facts ("Pl. SOF"), ECF No. 155 ¶¶ 37-58 (citing evidence).

8

Defendants have maintained this policy for years, and at least since 2014. *Id.* ¶ 39. The policy was also in effect at the time TN NAACP filed its initial and amended complaints for injunctive relief. *See Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012) ("Standing is determined at the time the complaint is filed.").[2]

Defendants contend that Plaintiff TN NAACP now lacks standing to challenge this policy because they have issued "policy revisions." Def. MSJ, ECF No. 151 at 20. But this argument conflates standing with mootness. *Memphis A. Philip Randolph Inst. V. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021) ("Standing and mootness, albeit related, are distinct doctrines with separate tests to evaluate their existence at different times of the litigation."). As the Sixth Circuit has explained, "standing concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring at the time the complaint was filed,' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation." *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 525 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 184 (2000)). Whereas standing ensures that scarce judicial resources are initially allocated only to those disputes in which the parties have a concrete interest, mootness often only becomes an issue when "the case has been brought and litigated, often (as

---

[2] For this and aforementioned reasons, *Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378 (6th Cir. 2020) ("*MAPRI*") is wholly inapposite. Plaintiffs' injuries are, as discussed, not due to "human error," and there is no need to "speculate" about what election officials *may* do, *id.* at 387-88, because Plaintiff challenges Defendants' *policy*, which directs election officials to reject voter registration applications from eligible voters with felony convictions absent documentary proof of eligibility. Plaintiff has also presented evidence that it assists, has assisted, and will continue to seek to assist voters subject to this policy. Pl. SOF, ECF No. 155 ¶¶ 5-15. Unlike the organizational plaintiff in *MAPRI*, TN NAACP's resource diversions are not "based on fear of future harm," Mem., ECF No. 83 at 9, but rather a direct and ongoing response to Defendants' continued application of the challenged policy. *See* 978 F.3d at 389.

here) for years." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 191); *see also Graveline v. Benson*, 992 F.3d 524, 532 (6th Cir. 2021).

Thus, the impact, if any, of Defendants' new guidance is properly analyzed not as a question of standing but of mootness. As Plaintiff has explained in its motion for summary judgment, Pl. MSJ, ECF No. 154 at 29-31, Defendants fail to meet their "heavy burden" of proving the new guidance renders this case moot. *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531. While in the July 2023 Memo Defendants no longer direct election officials to employ a blanket rejection and documentation policy with respect to voters with grace-period convictions and some pre-1973 convictions who use the latest version of the state's voter registration form, other eligible voters with felony convictions remain subject to Defendants' burdensome documentary proof requirement. Pl. MSJ, ECF No. 154 at 28.

Further, Defendants fail to demonstrate that use of the challenged forms and policies "ha[s] ceased at all." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531. The July 2023 Memo includes no instruction clearly directing election officials to stop requiring eligible voters with felony convictions to produce documentary proof of eligibility. Pl. MSJ Ex. 11, ECF No. 156-20. Beyond distributing the July 2023 Memo, Defendants produce no evidence that they are training election officials on how to understand the guidance or conducting oversight of county-level implementation. Instead, Defendants state that the Coordinator Goins "sent that guidance to Tennessee's 95 County Election Administrators" and nothing more. Def. MSJ, ECF No. 151 at 20. Given the undisturbed policy of Defendants for many years to instruct officials to reject all applications from individuals with convictions, a single email with a memorandum is flatly insufficient to establish and implement a new practice in Tennessee's 95 counties. Moreover, Defendants provide no reason to believe they would maintain their new guidance if Counts 4-6 are

dismissed. *See* Pl. MSJ, ECF No. 154 at 31-32 (discussing Defendants' history of reversing their position at the last minute before a major milestone in a lawsuit and then failing to comply with that unenforceable promise). Defendants' blatant attempt to moot Plaintiff's claims does not divest this Court of jurisdiction to adjudicate Counts 4-6.

## II. Defendants Goins and Hargett Are Not Entitled to Summary Judgment on TN NAACP's NVRA Claims (Counts 4 and 6).

Defendants have long maintained voter registration forms that fail to inform eligible Tennesseans with felony convictions of relevant eligibility requirements and policies that deny them registration absent documentary proof of eligibility. *See* Pl. SOF, ECF No. 155 ¶¶ 18-36 (citing evidence of instructions and information provided on registration forms), ¶¶ 37-58 (citing evidence of Elections Division blanket rejection policy). Not only should Defendants' motion for summary judgment be denied as to Counts 4 and 6, as Plaintiff TN NAACP has explained in support of its cross-motion, the undisputed material facts instead warrant granting summary judgment to Plaintiff on both counts. *See* Pl. MSJ, ECF No. 154.

### A. Tennessee's Voter Registration Forms Violate the NVRA (Count 4).

The NVRA requires that all forms used to register individuals to vote in federal elections "inform applicants . . . of voter eligibility requirements," 52 U.S.C. § 20507(a)(5), and "specif[y] each eligibility requirement." 52 U.S.C § 20508(b)(2)(A). As Plaintiff TN NAACP explained in its cross-motion, Tennessee's voter registration forms fail to satisfy these requirements in two ways: (i) they do not "specif[y]" the state's eligibility requirements for voters with prior felony convictions, and (ii) they do not sufficiently "inform" applicants of the impact, if any, that a past conviction has on their eligibility to vote. *See* Pl. MSJ, ECF No. 154 at 11-16.

Presumably because these failures doom Defendants' motion for summary judgment as to Count 4, Defendants attempt to recast the NVRA's specification requirement as merely requiring

11

a reference to the existence of Tennessee's voter eligibility requirements. Def. MSJ, ECF No. 151 at 34. But Defendants cannot rewrite the NVRA to their liking. When Congress uses the word "specify," it means "to name or state explicitly or in detail." *Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010) (quoting Webster's New Collegiate Dictionary 1116 (1974)). And at the time of the NVRA's enactment, Black's Law Dictionary defined the term to mean "to state in full and explicit terms; to point out; to tell or state precisely in detail; to particularize; or to distinguish by words one thing from another." Black's Law Dictionary (6th ed. 1990). Further, the NVRA's mandate to "specify" rather than simply refer to information regarding voter eligibility requirements pervades the Act's regulation of registration methods. *See* Pl. MSJ, ECF No. 154 at 11-12 (analyzing the NVRA's regulation of several registration methods). This mandate guarantees that eligible voters receive sufficient notice of their eligibility, conveyed easily and privately, to serve the NVRA's broader goals of promoting voting and increasing the number of eligible citizens who ultimately register to vote. *Id.* at 12-13.

The record makes clear that none of Tennessee's voter registration forms—not the current version of the state form, not any prior state form still in circulation and use, and not the Tennessee-specific instructions on the Federal Form—satisfy this simple requirement. None specifies that citizens with felony convictions in the grace period fully retain their right to vote. Pl. MSJ Exs. 1-5, ECF Nos. 156-10 – 156-14 (State and Federal Forms). None specifies that citizens with non-infamous pre-1973 convictions are likewise eligible. *Id.* And the latest version of the state form does not even specify that felony convictions are no longer disqualifying upon restoration of the right to vote. Pl. MSJ Ex. 1, ECF No. 156-10. In addition, earlier iterations of the state form that are still in use, and even still distributed to voters by state election officials, provide only a patently false instruction that to be eligible "you must not have been convicted of a felony, or if you have,

12

your voting rights must have been restored." Compl. Ex. B, ECF No. 1-2; Pl. MSJ Exs. 4-5, ECF Nos. 156-13, 156-14. This failure by Tennessee to specify, in detail, on its voter registration forms when voters with felony convictions are *eligible* to vote, and its provision of inaccurate information, contravene the NVRA's requirement to "inform applicants . . . of voter eligibility requirements." 52 U.S.C. § 20507(a)(5).

Defendants additionally claim that the NVRA does not require their forms to specify these eligibility criteria because doing so would be "unworkable . . . unwieldy and unnecessarily complicated." Def. MSJ, ECF No. 151 at 35. Defendants do not, and indeed could not, point to anything in the NVRA to support their assertion that its specification requirement need not be satisfied where compliance would be tricky. Rather, Defendants rely solely on non-binding and inapplicable authority. In *Thompson v. Alabama*, the Eleventh Circuit held that the NVRA did not require Alabama to "list every state, federal, and foreign felony involving moral turpitude" on its forms because the full list of disqualifying felonies was potentially unidentifiable and would change as frequently as state, federal, and foreign codes were updated. 65 F.4th 1288, 1308 (11th Cir. 2023). By contrast, the additional eligibility requirements that must be specified here are both limited and static. They include enumerating only three circumstances when felony convictions are *not* disqualifying: (i) all grace-period convictions, (ii) pre-1973 convictions that are not adjudged infamous, and (iii) restoration of the right to vote.

Defendants' other cited cases are no more helpful. In *League of Women Voters of Florida, Inc. v. Byrd* the Northern District of Florida found compliance with the NVRA where Florida's registration form, like that of many other states, specified Florida's only circumstance when a felony conviction is not disqualifying (i.e., rights restoration). *See* Order Granting Mot. to Dismiss at 4-5, 10, *League of Women Voters of Fla., Inc. v. Byrd*, No. 23-cv-165 (N.D. Fla. July 10, 2023),

ECF No. 36. Tennessee's latest registration form fails to specify even this. Pl. MSJ Ex. 1, ECF 156-10. Defendants also cite *Lockhart v. Napolitano*—a case concerning interpretation of the Immigration and Nationality Act—for the rule that "absurdity [is] to be avoided in the construction of statutes." 573 F.3d 251, 261 (6th Cir. 2009). Far from helping Defendants' argument, however, applying the absurdity doctrine here weighs against Defendants' logic. It cannot be that Congress intended the NVRA's specification requirement to apply only if a state has straightforward eligibility requirements, but not when a state has more complicated requirements. Indeed, as the Sixth Circuit held in *Lockhart*, "[w]e cannot ignore the plain meaning of the statute which results in a consistent and rational statutory scheme in favor of a reading that is arbitrary and unjust." *Id.*

Further, Defendants provide *no evidence* to support their contention that specifying these eligibility requirements on Tennessee's voter registration forms would be "unworkable," "unwieldy," or "complicated." Def. MSJ, ECF No. 151 at 35. And while they assert the state's interest in forms that are accessible, readable, and usable, *id.* at 34, they again offer *no evidence* to show how complying with the NVRA to specify and inform voters of the eligibility criteria concerning felony convictions would undermine rather than serve these goals. The record is, however, replete with evidence of eligible Tennesseans who have sought and submitted legally unnecessary Certificates of Voting Rights Restoration (CORs) despite never having lost their right to vote. *See, e.g.*, Ex. 1 (confirming applicant's eligibility in response to COR submitted for a grace period conviction); Ex. 2 (same); Ex. 3 (same). That individuals unnecessarily undertake the arduous COR process before being registered indicates that the current state forms are far from accessible, understandable, and usable for many eligible applicants. Whatever the state purports as its interests in designing its forms, their felony conviction eligibility information fails to inform applicants that they are already eligible to vote. Thus, not only have Defendants failed to

14

demonstrate they are entitled to summary judgment on Count 4, both the law and the undisputed material facts support granting Plaintiff's motion for summary judgment on the same.

**B. Tennessee's Voter Registration Policies Violate the NVRA (Count 6).**

Pointing solely to their July 2023 Memo providing new guidance on the treatment of voter registration applications from individuals with convictions prior to May 17, 1981, Defendants state "the undisputed evidence confirms that no such policy [of summarily rejecting all applications indicating a felony conviction] currently exists." Def. MSJ, ECF No. 151 at 36. But Defendants' bald assertion is not a full accounting of the record, which instead makes clear that Defendants Goins and Hargett have long maintained a blanket policy rejecting all applications indicating a felony conviction absent additional documentation that is, at best, only partially ameliorated by the recent guidance. *See* Pl. MSJ, ECF No. 154 at 18. This rejection policy contravenes the NVRA's requirement that states "ensure that any eligible applicant is registered to vote" in federal elections if they timely submit a "valid registration form." 52 U.S.C. § 20507(a)(1).[3] Defendants do not contend otherwise.

Plaintiff does not dispute that Defendants Hargett and Goins recently changed their voter registration procedures (after the close of discovery) and that the new guidance, if followed, moves closer to compliance with the NVRA. *See* Pl. MSJ, ECF No. 154 at 29. Their July 2023 Memo instructs election officials to accept voter registration forms where an applicant indicates on the face of the registration form that they have grace-period felony convictions. Pl. MSJ Ex. 11, ECF

---

[3] Defendants' reliance on figures from Dr. Burch's report as proof that no blanket rejection policy has ever existed is nonsensical and disingenuous. Def. MSJ, ECF No. 151 at 37. The "number of individuals who have had their voting rights restored in Tennessee since 2006" has nothing to do with the number of individuals whose *voter registration applications* were rejected or delayed pending documentary proof of eligibility. That some subset of eligible applicants are ultimately able to register despite Defendant Goins and Hargett's practice of blanket rejections absent documentary proof of eligibility does not negate that the policy violates the NVRA.

15

No. 156-20 at 2. However, even under this new guidance, applications from certain groups of eligible voters with felony convictions are still summarily rejected absent documentation. For example, registration forms indicating pre-1973 convictions are *not* "processed just like someone without a felony conviction" as Defendants contend. Def. MSJ, ECF No. 151 at 36. According to the July 2023 Memo, those applications indicating pre-1973 convictions are to be accepted *only* where they indicate a conviction for crimes that could not render them infamous. ECF No. 156-20 at 1. An application from an individual with a pre-1973 conviction for a *potentially* infamous felony, but who was not *actually* rendered infamous—and who therefore was never rendered ineligible—will nevertheless be rejected absent documentary proof pursuant to the new guidance. *Id*. Further, the July 2023 Memo includes no explicit recission of Defendants' longstanding rule that eligible voters with grace-period convictions and pre-1973 convictions must produce documentary proof of eligibility. *See id.* Finally, Defendants concede that their policy of rejecting individuals whose voting rights have been restored unless they submit documentary proof of restoration along with their voter registration application is unchanged. Def. MSJ, ECF No. 151 at 36.

While Defendants Goins and Hargett have now voluntarily revised the voter registration procedures to avoid some unlawful conduct (after nearly five years of both denying the existence of and defending the challenged procedures), nothing in the record makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" such as could warrant the belated guidance mooting Plaintiff TN NAACP's claim. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (discussing the "heavy burden" of proof necessary for subsequent events to render a claim moot); *see also* Pl. MSJ, ECF No. 154 at 30-

33.[4] In fact, Defendants' assertion that "no such practice [of summarily rejecting all applications indicating a felony conviction] *currently* exists" is telling. *See* Def. MSJ, ECF No. 151 at 36. Even if Defendants' July 2023 Memo attempted to move their voting registration procedures closer to compliance with the NVRA, there is nothing binding or lasting about the Election Division's guidance. The current Elections Coordinator—or a future official—could just as easily reverse course, as Defendant Goins has previously done regarding related procedures. *See* Pl. MSJ, ECF No. 154 at 31. Thus, Defendants Goins and Hargett's recent guidance "does not deprive [this C]ourt of its power to determine the legality" of their blanket rejection policy. *Friends of the Earth, Inc.*, 528 U.S. at 189 (holding that to find otherwise would compel courts to leave defendants "free to return to [their] old ways"). The Court retains jurisdiction to rule on Count 6 and the record demonstrates that Defendants' motion for summary judgment on this claim is unwarranted.

Defendants' policies also run afoul of the NVRA by requiring additional documentation to register to vote in federal elections from applicants who submit valid registration forms that provide attested information sufficient to establish their eligibility. Defendants do not deny that it is their general practice to require eligible applicants with felony convictions to submit documentary proof of eligibility with their submission of both federal and state voter registration forms. Instead, Defendants cite *Arizona v. Inter Tribal Council of Arizona*, *Inc.*, 570 U.S. 1 (2013) ("*ITCA*"), to assert that the NVRA only prevents them from doing so for applicants using the federal form. Def. MSJ, ECF No. 151 at 37. But the case is no escape hatch from NVRA requirements, and Defendants' discussion of *ITCA* as such confuses Plaintiffs' claims. Defendant

---

[4] While Defendants do not explicitly state that the recent guidance moots Count 6, and certainly make no effort to demonstrate their having met the stringent mootness standard, *supra* Part I, they argue that its issuance effectively negates the relevant violations sufficient to warrant summary judgment. Def. MSJ, ECF No. 151 at 36.

Goins and Hargett's application of the documentation requirement to those who submit federal forms certainly violates the NVRA's requirement to "accept and use" that form, 52 U.S.C. § 20505(a)(1), which requires applicants to attest under penalty of perjury that they meet their state's registration requirements but does not require additional documents. Pl. MSJ, ECF No. 154 at 23-24; Pl. SOF, ECF No. 155 ¶¶ 33-36; *ITCA*, 570 U.S. at 15.

And while Tennessee is permitted to design and use its own registration forms and has some flexibility in doing so, the scope of that flexibility was not at issue in *ITCA*. *See* 570 U.S. at 5 (examining a documentary proof requirement only as applied to Federal Form applicants). Rather, Defendants' flexibility to design Tennessee's registration forms is limited by a different set of NVRA provisions not examined in *ITCA*—specifically, § 20508(b) states that any state-created registration forms "may require only such identifying information . . . and other information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration." 52. U.S.C. § 20508(b)(1). Thus, the NVRA "limits [a state's] discretion to request information . . . to the minimum amount of information necessary" to establish eligibility, *Fish v. Kobach*, 840 F.3d 710, 737 (10th Cir. 2016), and as Plaintiff TN NAACP detailed in support of its cross-motion, this is a standard that Defendants' document requirement far exceeds. *See* Pl. MSJ, ECF 154 at 23-26. The undisputed evidence shows that Tennessee's demand for documentation is not necessary to verify eligibility of applicants with felony convictions, *see*, *e.g.*, ECF 156-4, Lim Dep. at 103:6-15, 112:12-114:2; ECF 156-5, Griffey Dep. at 59:8-12, and is therefore prohibited. Defendants neither contend with this claim nor offer any evidence to contradict it. Their request for summary judgment as to Count 6 must be denied.

18

## III. Defendants Are Not Entitled to Summary Judgment on Plaintiff TN NAACP's Right to Vote Claim (Count 5).

In addition to violating the NVRA, Defendants' policy of rejecting all registration forms that indicate a felony conviction and demanding documentary proof of eligibility imposes undue burdens on the fundamental right to vote in violation of the First and Fourteenth Amendments.

In assessing constitutional right to vote claims, a court must apply the *Anderson-Burdick* test to "weigh the character and magnitude of the asserted injury . . . against the precise interests put forward by the State as justifications for the burdens imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiffs' rights." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 592-93 (6th Cir. 2012) (quoting *Burdick v. Takushi*, 504 U.S.428, 434 (1992)) (internal quotation marks omitted). A higher level of scrutiny applies when the burden on the right is severe or discriminatory. *Id.* at 592; *Mays v. LaRose*, 951 F.3d 775, 786 (6th Cir. 2020) ("We reserve rational basis review for 'reasonable, nondiscriminatory restrictions.'") (citation omitted). This inquiry is necessarily fact-intensive and thus rarely ripe for disposition by summary judgment. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (rejecting any "litmus-paper test" for electoral regulations, in favor of a fact-specific analysis); *Gill v. Scholz*, 962 F.3d 360, 364-65 (7th Cir. 2020) ("These cases reject cursory or perfunctory analyses; precedent requires courts to conduct fact-intensive analyses when evaluating state electoral regulations."); *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007) (noting the "highly fact specific inquiry" demanded by the *Anderson-Burdick* test).

Because Tennessee's blanket rejection policy and documentation requirement imposes severe burdens on eligible voters with felony convictions, it can only survive if it is narrowly tailored to address a compelling state interest. Defendants do not and cannot meet this burden.

### A. Defendants' Blanket Rejection Policy and Documentation Requirement Imposes a Severe and Discriminatory Burden on the Right to Vote.

Defendants do not deny that rejecting all applications from facially eligible voters with felony convictions and demanding paperwork to prove their eligibility imposes severe burdens on the right to vote. Indeed, the Elections Division has admitted that obtaining the required documents upon rejection can be onerous. *See* ECF No. 156-5, Hall Dep. at 118:13-16, 194:18-25. For people with pre-1973 convictions who never lost their right to vote, tracking down decades-old court records stuck in archives can require repeated visits or inquiries to multiple government offices. ECF No. 156-4, Lim Dep. at 157:16-158:2; ECF No. 156-9, Collins Dep. at 57:10-58:6; ECF No. 156-2, Sweet-Love Decl. ¶¶ 14-16; Ex. 4 at DEF001927-28 (July 27, 2023 Election Div. Email). Sometimes the necessary documents no longer exist or cannot be found. ECF No. 156-4, Lim Dep. at 158:6-11; Pl. MSJ Ex. 21, ECF No. 156-30 (Sept. 2020 email); Ex. 5 at DEF002687 (June 5, 2023 Montgomery Cty. Email) ("She called probation and was told that they no longer have those records because of it being 50+ years ago."). Obtaining documentation also imposes financial hardship when criminal court clerks charge for copies. *See* ECF No. 156-5, Hall Dep. at 195:12-197:15, 197:21-25; Pl. MSJ Ex. 20, ECF No. 156-29 (Sept. Shelby Cty. Email, Hall Dep. Ex. 21).

A voter's quest to obtain documentary proof to the satisfaction of the election officials can hold up registration for weeks, months, and even years, precluding the applicant's exercise of the fundamental right to vote in any elections held in the interim. *See* Ex. 6 (Report of Dr. Traci Burch 02-12-2023) at 35-36; Ex. 7 ("I have been working with [applicant] for about a month and know they have tried unsuccessfully to get the documentation."); Ex. 8 at 1, 4 (eligibility of applicant with grace-period conviction not recognized for at least three months after rejection); Ex. 9 at 1, 12 (applicant with grace-period conviction rejected on December 2015 and not recognized as eligible until April 2018). When a procedure not only makes it harder to vote but leaves voters

20

with no means of voting in elections, as shown here, it imposes a severe burden and is subject to strict scrutiny. *See Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) ("[A] law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot."). Heightened scrutiny also applies because the challenged policy is discriminatory on its face. *Mays*, 951 F.3d at 786. It mandates denying registration and demanding documentation of voters with felony convictions and no one else. No paperwork beyond a sworn registration form is needed to establish residency, age, or citizenship qualifications to vote.

Defendants do not dispute that their longstanding blanket rejection policy and documentation requirement is discriminatory and burdensome. They instead claim that they have abandoned the practice, citing only the July 2023 Memo. *See* Def. MSJ, ECF No. 151 at 36, 38. But that memo still requires election officials to reject forms and demand documentation from certain classes of eligible applicants with felony convictions. *See* Pl. MSJ, ECF 154 at 30; *see also supra* Part II.B. The July 2023 Memo also retains a blanket rejection policy for applicants with felony convictions who submit a version of the state registration form that does not allow them to disclose their date and crime of conviction. Pl. MSJ Ex. 11, ECF No. 156-20. Such forms remain in use and circulation. *See, e.g.*, Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County). Furthermore, recent evidence indicates that some county election offices have expressed confusion about when and how to apply the new guidance. *See* Ex. 11 at DEF002428-31 (July 27 and 21, 2023 Warren Cty. Emails); Ex. 12 at DEF002327-28 (July 28, 2023 Sumner Cty. Email). Yet Defendants offer no evidence of steps taken to train or educate election officials on the new guidance. To whatever extent election officials in Tennessee have ceased some blanket rejections, the record makes clear that Defendants Goins and Hargett's voter

registration procedures continue to unduly burden several categories of eligible voters with document requirements.

### B. No State Interest Justifies the Burdens Imposed by Defendants' Blanket Rejection Policy and Documentation Requirement.

The *Anderson-Burdick* standard requires courts to "weigh the burden on voters against the state's asserted justifications and make the hard judgment that our adversary system demands." *Ne. Ohio Coal. for Homeless*, 696 F.3d at 593. In doing so, the court must "tak[e] into consideration the extent to which those interests make it necessary to burden the plaintiffs' rights." *Id.* (quoting *Burdick*, 504 U.S. at 434) (emphasis added). This "hard judgment" requires more from the State than bare assertions of interests in the abstract; it requires *evidence* that those interests outweigh the substantial burdens imposed exclusively on eligible voters with felony convictions. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191, 128 S. Ct. 1610, 1616 (2008) (Scalia, J., concurring) (noting even slight burdens be "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation'") (citation omitted).

Defendants fail to carry that burden. They offer no evidence that rejecting applications from facially eligible voters with felony convictions and demanding documentation is necessary to further any precise interest. Def. MSJ, ECF No. 151 at 38. The only fact Defendants offer to support their request for summary judgment is an assertion that they have *abandoned* the challenged practice, effectively conceding that it is indeed *not* necessary to further any important interest. *Id.* Defendants have also failed to show that affirmation of eligibility on the voter registration form itself is insufficient to verify eligibility. And, as Plaintiff TN NAACP has explained, the State's insistence on forcing facially eligible voters to navigate the time- and resource-intensive process of obtaining government records to prove their eligibility is pointless because the State already has, or can as easily access, information and records sufficient to verify

22

eligibility beyond the sworn registration form. *See* Pl. MSJ, ECF No. 154 at 25-28. In sum, Defendants are not entitled to summary judgment on Count 5.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment as to Counts 4, 5, and 6 should be denied.

Dated: October 10, 2023

Keeda Haynes, BPR No. 031518 Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Natasha Baker*
Equal Justice Under Law 400
7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org

Respectfully submitted,

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com


Blair Bowie*
Danielle Lang*
Alice C. Huling*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center 1101 14th St. NW,
Suite 400
Washington, DC 20005
(202)-736-2200
BBowie@campaignlegal.org
DLang@campaignlegal.org
AHuling@campaignlegal.org
VRichardson@campaignlegal.org
AMulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org

*Counsel for the Petitioners-Plaintiffs and the Class*
* Admitted pro hac vice

23

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on October 10, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

ANDREW C. COULAM (BPR #030731)
Deputy Attorney General
andrew.coulam@ag.tn.gov

DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov

ZACHARY BARKER (BPR #035933)
Assistant Attorney General
zachary.barker@ag.tn.gov

PABLO A. VARELA (BPR #29436)
Assistant Attorney General
pablo.varela@ag.tn.gov

ROBERT W. WILSON (BPR #034492)
Assistant Attorney General
robert.wilson@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

         /s/ Charles K. Grant
         Charles K. Grant

24

Case 3:20-cv-01039   Document 182   Filed 10/10/23   Page 28 of 28 PageID #: 2963