# EXHIBIT 16

# In the Matter of:

TENNESSEE CONFERENCE of the NATIONAL COLORED PEOPLE

vs

WILLIAM LEE

# ANTHONY MAXEY

*March 22, 2023*



www.beresandassociates.com
615.742.2550 | info@beresandassociates.com

IN THE UNITED STATES DISTRICT COURT FOR MIDDLE
DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

TENNESSEE CONFERENCE of the NATIONAL
ASSOCIATION for the ADVANCEMENT of
COLORED PEOPLE, on behalf of itself
and its members, et al.,

        Plaintiffs,

vs.                   Case No. 3:20-CV-01039

WILLIAM LEE, in his official capacity
as Governor of the State of Tennessee,
et al.,

        Defendants.

_____




ROUGH DRAFT

Videoconference 30(b)(6) Deposition of:

ANTHONY W. MAXEY

Taken on behalf of the Plaintiffs
March 22, 2023
Commencing at 9:31 a.m.




_____

Reported by:  Georgette K. Arena, RPR, LCR
BERES & ASSOCIATES
Licensed Stenographic Court Reporters
Post Office Box 190461
Nashville, Tennessee 37219-0461
(615)742-2550

```
1

2                   A   P   P   E   A   R   A   N   C   E   S

3

4    For the Plaintiffs:

5              MS. ALICE C. HULING
               MS. VALENCIA RICHARDSON
6              Attorneys at Law
               Campaign Legal Center
7              1101 14th St. NW
               Suite 400
8              Washington, DC 20005
               (202)736-2200
9              AHuling@campaignlegal.org
               VRichardson@campaignlegal.org
10

11

12   For the Defendants:

13             MR. ZACHARY L. BARKER
               MS. DAWN JORDAN
14             Assistant Attorneys General
               Office of the Tennessee Attorney General
15             P.O. Box 20207
               Nashville, TN 37202-0207
16             (615)741-3491
               Zachary.Barker@ag.tn.gov
17             Dawn.Jordan@ag.tn.gov

18

19

20

21

22

23

24

25
```

```
 1

 2          S  T  I  P  U  L  A  T  I  O  N  S

 3

 4

 5          The videoconference deposition of ANTHONY

 6  W. MAXEY was taken by counsel for the Plaintiffs,

 7  by Notice, with the witness located in Knoxville,

 8  Tennessee, on March 22, 2023, for all purposes

 9  under the Federal Rules of Civil Procedure.

10          The formalities as to notice, caption,

11  certificate, transmission, et cetera, are expressly

12  waived.

13          It is agreed that GEORGETTE K. ARENA,

14  RPR, Notary Public and Licensed Court Reporter for

15  the State of Tennessee, may swear the witness.

16

17

18          *  *  *      *  *  *      *  *  *

19

20

21

22

23

24

25
```

```
 1                    *   *   *

 2                 ANTHONY W. MAXEY,

 3    was called as a witness, and after having been duly

 4    sworn, testified as follows:

 5

 6                    EXAMINATION

 7    QUESTIONS BY MS. HULING:

 8    Q.     All right.  Good morning, Mr. Maxey.  My name

 9    is Alice Huling.  I work as a senior legal counsel

10    at Campaign Legal Center, and I am here today with

11    my colleague Valencia Richardson.  We represent the

12    plaintiffs in this case, Tennessee NAACP versus

13    State.

14                    MR. BARKER:  Before we begin the

15    questioning, I do want to go ahead and note the same

16    three objections that we've noted in previous

17    depositions and put those on the record.

18                    First, defendants object to the 30(b)(6)

19    notices as overbroad and unduly burdensome to the

20    extent that they require the deponent to review

21    individual case files on individual circumstances

22    contained in those case files.

23                    Defendants further object to anything in

24    the notices that require the deponent to go outside

25    their district to obtain information about the
```

1  topics contained in the notice.

2          And, third, defendants object to the

3  timeframe of June 5th, 2006, to present as overly

4  broad and not reasonably calculated to lead to the

5  discovery of relevant information.  But to the

6  extent that the deponent knows his or her district

7  has information available, they have been instructed

8  to do the best they can concerning the timeframe

9  required.  Those are our three initial objections.

10  We would like to note those on the record at this

11  time.

12          MS. HULING:  The plaintiffs will note

13  that, and as we have in prior depositions, note

14  again that this notice and these topics were first

15  served on February 28th, almost a month ago.  Since

16  then the parties have had to meet and confer in

17  other discovery issues and would have been happy to

18  discuss those objections and try and reach a

19  consensus on the deposition topics, but they have

20  not been raised.  The objections have only been

21  raised in deposition, as opposed to outside when the

22  parties conferred.  With that said, objections are

23  noted.

24  Q    (BY MS. HULING)  Director Maxey, will you

25  please state your full name for the record.

1   A.      Anthony W. Maxey.

2   Q.      Thank you.  And do you understand that though

3   we are not in a courtroom today, you are sworn under

4   oath to tell the truth?

5   A.      Yes.

6   Q.      Great.  Have you ever been deposed before?

7   A.      No, ma'am, I have not.

8   Q.      Okay.  Hopefully, this won't be too bad of an

9   introductory experience to it.

10  A.      No.

11  Q.      I'm going to want to start by clarifying that

12  we are having this deposition today fundamentally as

13  an opportunity for myself and my colleague to learn

14  more about your office and your work.  So we will be

15  asking questions.  They're truly meant to just

16  understand better the work that you do, and your

17  office does, on a daily basis.

18          With that said, I'm going to go over a few

19  general sort of procedures for a deposition.  And

20  I'm just going to ask to make sure you understand

21  those, as I'm laying them out.

22          The first is regarding the fact that we have

23  Georgette with us today, our court reporter.  She's

24  going to be transcribing everything that's said

25  today.  I'll be asking questions, and you'll be

1  Q.     Okay.  And are there any felony convictions
2  that don't result at all in the -- let me try that
3  again.
4        Are you aware of any felony convictions that
5  do not result in the loss of the right to vote at
6  any time?
7  A.     That do not result in the loss of right to
8  vote?  No, I'm not aware of any.
9  Q.     And are you familiar -- I think you said you
10 were.  But are you familiar with the certificate of
11 voter rights restoration, or the COR form?
12 A.     I am.
13 Q.     And are you familiar with the criteria for
14 determining whether someone is eligible to have a
15 COR form filled out for them?
16 A.     I'm familiar, but if I had to issue one, I
17 would have to refer back to the policy to make sure
18 because, again, I'm -- I'm kind of removed from the
19 direct issuance of that.  So I would always refer
20 back to policy to ensure I wasn't missing anything.
21 Q.     Okay.  To the extent that you supervise or
22 manage your office's completion of COR forms, what
23 is your sort of daily or weekly -- do you have any
24 daily or weekly responsibilities or -- or tasks that
25 you are doing in that supervision on a regular

```
1   A.      Well, I'm not sure of their policies, but I
2   would assume the U.S. probation officer.
3   Q.      Okay.  But it wouldn't be somebody in your
4   office at any rate?
5   A.      I mean, we won't generally be responsible.
6   But if we were able to assist, we would in some way.
7   Q.      Understood.  Okay.  I am done with that
8   document.  I'm don't want to jinx anything, but this
9   might be our last one.
10          I'm going to pull up Document P, and I would
11  like to introduce that as Exhibit 15.
12                (WHEREUPON, the above-mentioned
13  document was marked as Exhibit Number 15.)
14  Q   (BY MS. HULING)  Okay.  Director Maxey, do you
15  see another denial letter?  This one is dated
16  September 2, 2016.
17  A.      Yes.
18  Q.      And this is in Knox County so that's
19  definitely one of the counties in District 20,
20  correct?
21  A.      Yes.
22  Q.      Okay.  And the reason for denial of
23  restoration here says, Court order needed to restore
24  person's voting rights?
25  A.      Yes.
```

1  Q.     Do you have an understanding of what that

2  means?

3  A.     No, I don't.  I would -- I would assume that

4  is an individual circumstance.  I have no idea why

5  the court order would be needed.

6  Q.     Okay.

7  A.     Without -- I would have to review the case.

8  Q.     Can you think of any times in your experience

9  where there's been a situation where a court order

10  has been needed in addition to the completed COR

11  form?

12  A.     Nothing is coming to mind.  Can you scroll

13  down and let me see the actual --

14  Q.     Yes.  Absolutely.  I'm sorry.

15  A.     It appears that conviction is from out of

16  Oklahoma.  So that may be why they are asking for

17  some type of court order.

18  Q.     Because it is an out-of-state conviction?

19  A.     Yes.

20  Q.     So in that case they might need the court

21  order?

22  A.     That's just my assumption.

23  Q.     Okay.  Fair enough.  And this appears to be

24  signed by a -- it's a little hard to read, but James

25  Krippler -- or Kriplean.  I believe that may have

1  been the individual who we talked about earlier in

2  Knox County?

3  A.     It was, yes.

4  Q.     Okay.  I also noticed that the conviction

5  date here is circled, July 11, 1972.  Do you have

6  any reason to believe that that 1972 conviction --

7  like the fact that it's from 1972, could be related

8  to why there would or wouldn't need to be a court

9  order?

10  A.     Scroll.  Can you scroll up just a little?

11  Q.     Uh-huh (affirmative).

12  A.     I'm bad with dates.  So according to the

13  certificate of restoration of voting rights for

14  persons convicted of a felony on or after May 18,

15  1981.

16        So I'm not sure what is required if the

17  conviction was prior to that date.  That may be why

18  that they require a court order.  I don't know.

19  I've never -- I've never saw one like this before,

20  so...

21  Q.     Okay.  If you had an individual who came in

22  who had a conviction from prior to 1981, what would

23  you -- what would be -- how would you handle that?

24  A.     I would consult my chain of command.

25  Q.     Okay.  Are you familiar with any period of

1    time during which a felony conviction would not

2    require a COR to be submitted?

3    A.      Not a felony conviction.  I mean, again, we

4    have offenders that serve felony probation.  But if

5    they received a diversion, then they are not

6    actually serving a conviction.

7    Q.      Okay.  So if they are on a diversion, they

8    wouldn't have the requirement to get their rights

9    restored because their rights wouldn't have been

10   stripped?

11   A.      Correct.

12   Q.      If they didn't get the conviction, it's your

13   understanding that they wouldn't need to call --

14   fill in -- have COR forms filled out for them?

15   A.      Correct.

16   Q.      Okay.  And in your understanding, do all 1972

17   felony convictions require a COR form to be filled

18   out for rights restoration?

19   A.      Again, I don't know that I've ever filled one

20   out.  That was the year I was born.  So that was 51

21   years ago.  So I don't know that I've ever filled

22   one out for a conviction that old.  So I -- I can't

23   say what the requirements are.  I don't know.

24   Q.      Okay.  Okay.  Fair enough.  I'm done with

25   that document.

BERES & ASSOCIATES COURT REPORTERS