IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al.,<br><br>Defendants. | Civil No. 3:20-cv-01039<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE FRENSLEY<br><br>[Class Action] |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REVIEW OF
<u>NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE</u>**

Pursuant to Local Rule 72.01 and Fed. R. Civ. P. 72(a), Plaintiffs Tennessee Conference of the National Association for the Advancement of Colored People, Lamar Perry, Curtis Gray, Jr., John Weare, Benjamin Tournier, Leola Scott, and Reginald Hendrix ("Plaintiffs") respectfully move for the review of the nondispositive decision of Magistrate Judge Frensley on the parties' Joint Discovery Dispute Statement regarding whether certain email communications and attachments on Defendants' privilege log are privileged. *See* ECF No. 208.

**I.     BACKGROUND**

On September 25, 2023, this Court granted Plaintiffs' Motion for Relief Under Rule 56(d) in this case to allow Plaintiffs to probe Defendants' eleventh-hour overhauling of the voting rights restoration procedures which have been in dispute in this lawsuit for nearly four years. *See* ECF No. 179. At the heart of that discovery lie internal documents and communications that illuminate the development of these new procedures and Defendants' motivations for overhauling the voting

1

rights restoration system on July 21, 2023, during the narrow window between the close of discovery and the deadline for motions for summary judgment. Since discovery reopened, Defendants have sought to shield these important documents from disclosure by producing inadequate privilege logs, improperly withholding non-privileged documents, and eventually refusing to produce privilege logs entirely, leading to a handful of meet and confers and two formal discovery disputes, including this one. *See* ECF No. 200; ECF No. 207.

On September 5, 2023, Defendants made a supplemental production of documents and sent an accompanying privilege log. *See* Exhibit A; Exhibit B. Plaintiffs reviewed the materials produced by Defendants, and on October 4, 2023, Plaintiffs sent Defendants an email with an attached letter detailing several questions and concerns with the production and privilege log, and requesting a meet and confer with Defendants, pursuant to Local Rule 37.01(a). *See* Exhibit C; Exhibit D. The parties participated in a meet and confer on October 6, 2023. *See* Exhibit E. The parties discussed a number of privilege log entries that Defendants appeared to have improperly withheld as privileged, as Plaintiffs outlined in their October 4th letter. *See* Exhibit D at 2; Exhibit E. Defendants agreed on the October 6th meet and confer and confirmed in a follow-up email that they would "produce at least some of the emails that were marked privileged." Exhibit E at 1. While Defendants stated that they would not concede that the emails "should have been produced," they should not have later produced them, which they did, if they were, in fact, privileged. *See id.*

On October 20, 2023, Defendants sent Plaintiffs an email with a revised supplemental privilege log attached. *See* Exhibit F; Exhibit G. Plaintiffs reviewed the revised privilege log produced by Defendants, and on October 27, 2023, Plaintiffs sent Defendants an email detailing several questions and concerns with the privilege log and requesting a meet and confer with Defendants, pursuant to Local Rule 37.01(a). *See* Exhibit H. Specifically, Plaintiffs objected to

2

Case 3:20-cv-01039     Document 211-1     Filed 01/25/24     Page 2 of 16 PageID #: 3445

Defendants' withholding of dozens of emails and documents sent to or from Assistant Coordinators of Elections Beth Henry-Robertson and Andrew Dodd. Plaintiffs noted that while Ms. Henry-Robertson and Mr. Dodd are attorneys in the Elections Division, they serve in a primarily business or policy capacity and their communications with Mr. Goins are not privileged simply because they happen to be attorneys. *Id.* Plaintiffs further noted that the descriptions of the withheld documents on Defendants' privilege log indicated a purpose other than providing legal advice. *Id.* The parties held a meet and confer on November 2, 2023, at which they were unable to resolve their dispute regarding whether the Assistant Coordinators' emails and attachments on the privilege log were, in fact, privileged. The parties agreed to submit a Joint Discovery Dispute Statement pursuant to Local Rule 37.01(b).

On November 16, 2023, the parties filed the instant Joint Discovery Dispute Statement and filed accompanying exhibits. ECF No. 200; ECF No. 200-1—200-9. On December 15, 2023, the parties participated in a telephonic conference with Magistrate Judge Frensley. At this conference, Magistrate Judge Frensley ordered Defendants to provide the disputed documents to the Court for the purpose of conducting an in camera review. *See* ECF No. 203.

On January 11, 2024, Magistrate Judge Frensley issued an order holding that many of the documents at issue were protected from disclosure with a limited number of exceptions. Doc. No. 208. Specifically, the January 11 Order held that most of the disputed documents "do not meet the Sixth Circuit's standard for protection" without specifically reasoning why each of the documents do not meet this test. ECF No. 208 at 5. Additionally, the Order incorrectly determined that Plaintiffs argued "that attorneys who have both legal duties and non-legal ones cannot be party to privileged communications on the basis that some of their work is not comprised of providing legal

advice." *See id.* at 4. The Magistrate ordered the production of Doc ## 9-17, 40, 50-59,[1] but determined that the remaining documents could be withheld. *Id.* at 5. Defendants produced these documents to Plaintiffs on January 12, 2024.

After careful review of the produced documents and of Magistrate Judge Frensley's Order, Plaintiffs believe that the Order did not apply the relevant legal standard. Specifically, Plaintiffs object to the Magistrate Judge's Order with respect to the following categories of documents:

- Emails attaching drafts of the publicly distributed memoranda outlining the new voting rights restoration procedures (Doc. ## 18-20, 61-67);

- Emails attaching draft COR forms and procedures (Doc. ## 4-5, 22-25, 28, 31, 35, 43, 49);

- Emails attaching drafts of the new voter registration appeal request form (Doc. # 70);

- Emails attaching drafts of the publicly distributed Memorandum on Older Felonies outlining new voter registration procedures (Doc. ## 26-27);

- Emails attaching draft voter registration forms (Doc. ## 45, 47-48, 60, 68-69, 73-74);

- Emails attaching drafts of the publicly distributed Felon FAQ document (Doc. ## 3, 30, 32-34);

- Emails attaching draft SOS website documents (Doc ## 36-37, 75-78).

Plaintiffs, therefore, respectfully request that this Court overrule the Magistrate Judge's Order and compel the disclosure of the above-listed documents.

## II. LEGAL STANDARD

When reviewing a magistrate judge's resolution of a non-dispositive pretrial matter, this Court is limited to determining whether the order is "contrary to law" or "clearly erroneous." *Grae*

---

[1] The disputed documents are numbered according to the numbering system in Defendants' Exhibit List of Disputed Items, ECF No. 202-1.

*v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2020 WL 3035915, *3 (M.D. Tenn. June 5, 2020). "A legal conclusion is contrary to law if it contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id.* (internal citations and quotations omitted). "A finding [of fact] is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal citations and quotations omitted).

### III. ARGUMENT

Plaintiffs object to the Magistrate Judge's January 11 Order for several reasons. First, the Magistrate Judge failed to apply the appropriate standard for attorney-client and work product privilege, such that the Order is contrary to law. Second, the Magistrate Judge failed to make any findings of fact as to the privileged nature of the documents at issue, such that the Order constitutes clear error. Finally, Defendants' attempt to prevent disclosure of relevant, nonprivileged information is contrary to the public interest. For the following reasons, Plaintiffs object to the Magistrate Judge's Order as applied to Docs. # 3-5, 18-20, 22-24, 26, 28, 30-37, 43, 45, 47-49, 60, 61-69, 73-79.

**A. The January 11 Order is Contrary to Law.**

i. <u>The Magistrate Judge Failed to Apply the Appropriate Test for Attorney-Client Privilege.</u>

Magistrate Judge Frensley's Order deciding the parties' joint discovery dispute, ECF No. 208, is contrary to law because it "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Grae*, 2020 WL 3035915, at *3 (internal citations and quotations omitted). The Order stated that:

> Plaintiffs concede that Ms. Henry-Robertson and Mr. Dodd each have a "legal advising role," and Plaintiffs have provided no authority (and the Court is aware of none) for the proposition that attorneys who have both legal duties and non-legal ones cannot be

5

party to privileged communications on the basis that some of their work is not comprised of providing legal advice.

Plaintiffs did not argue that attorneys who have both legal duties and non-legal ones cannot ever be party to privileged communications. *See* ECF. No. 200. Rather, Plaintiffs argued, based on relevant case law in this Circuit, that documents and communications authored by attorneys who serve in a dual policy and legal role are not privileged when the *primary purpose* of the communication was technical, procedural, political, policy, or strategic advice. *See* ECF. No. 200, PageID# 3294. Plaintiffs further argued that when a particular communication or document serves a mixed legal and non-legal purpose, the application of privilege depends on which purpose *predominates*, and documents containing privileged and non-privileged material must accordingly be redacted rather than withheld entirely. *Id.* The Magistrate Judge's Order failed to consider the "primary" and "predominant" purpose doctrine, and as such, is contrary to law.

According to the Sixth Circuit, attorney-client privilege applies only "(1) [w]here **legal advice** of any kind is sought (2) from a professional legal adviser **in his capacity as such**, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (emphasis added).

Important especially in the context of government defendants, "[a] communication is not automatically privileged by virtue of the fact that it is made or received by a lawyer." *Burke v. Cumulus Media, Inc.*, No. 1:16-CV-11220, 2017 WL 2628192, at *1 (E.D. Mich. Mar. 16, 2017). Documents and communications authored by attorneys who serve in a dual legislative or policy role and an attorney advisor role are not privileged when the primary purpose of the communication was technical, procedural, political, policy, or strategic advice. *See, e.g.*, *John B. v. Goetz*, 879 F. Supp. 2d 787, 895 (M.D. Tenn. 2010); *Appalachian Cmty. Fed. Credit Union v.*

6

*Cumis Ins. Soc'y, Inc.*, No. 320CV0553DCLCDCP, 2022 WL 20636278, at *10 (E.D. Tenn. Apr. 25, 2022); *League of United Latin Am. Citizens v. Abbott*, No. EP21CV00259DCGJESJVB, 2022 WL 3233406, at *5 (W.D. Tex. Aug. 10, 2022); *Petteway v. Galveston Cnty.*, No. 3:22-CV-00057, 2023 WL 3452065, at *3 (S.D. Tex. May 15, 2023).

Where the facts show that a particular communication may serve a mixed legal and non-legal purpose, courts look to which purpose predominates. *See, e.g.*, *Leazure v. Apria Healthcare Inc.*, No. 1:09-CV-224, 2010 WL 3397685, at *2 (E.D. Tenn. Aug. 26, 2010) ("The possession of a law degree and admission to the bar is not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies. For the privilege to exist, the lawyer must not only be functioning as an advisor, but the advice must be predominately legal, as opposed to business, in nature."). Only when the *predominant* purpose of a communication is to render or solicit legal advice is the communication privileged. *Leazure*, 2010 WL 3397685, at *2; *Cohn v. W. & S. Fin. Grp. Long Term Incentive & Retention Plan I*, No. 1:19-CV-943, 2021 WL 3662465, at *2 (S.D. Ohio Aug. 18, 2021). And a mixed-purpose communication that does include some legal advice must be produced with necessary redaction rather than wholly withheld, and each document withheld or redacted based on privilege must be listed in a sufficiently detailed privilege log. Fed. R. Civ. P. 26(b)(5)(A). The attorney-client privilege is interpreted narrowly, and the party asserting privilege bears the burden of establishing each element of the privilege met. *John B. v. Goetz*, 879 F. Supp. 2d 787, 892 (M.D. Tenn. 2010). If a privilege log fails to offer enough detail to support each element of a claim of privilege, the blanket application of privilege will be rejected. *In re Search Warrant Executed at L. Offs. of Stephen Garea*, 173 F.3d 429, at *2 (6th Cir. 1999) (holding that "those seeking to invoke the privilege must provide the reviewing court with enough

information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice").

The January 11 Order did not apply, let alone acknowledge, these standards in assessing whether the various categories of emails and attachments sent to and from the Assistant Coordinators referenced above were in fact for the purpose of providing legal advice as opposed to assistance in developing policy. Nor did the January 11 Order consider the sufficiency of Defendants' privilege log, which indicates that the withheld documents—particularly attachments of draft policies, procedures, and forms—had a predominantly policymaking rather than legal advisory purpose.

The January 11 Order should have applied the primary or predominant purpose test to each of the contested emails involving the Assistant Coordinators because there is no dispute that both Ms. Henry-Robertson and Mr. Dodd, though attorneys, frequently work in a policy-making capacity. Ms. Henry-Robertson serves as number-two to Defendant Coordinator Goins. According to her job description, she provides "comprehensive support to the Coordinator of Elections in generally supervising and coordinating elections in the state." Exhibit J. Her duties include a slew of non-legal government administrative duties, *see id.*, including drafting policies and procedures and training local election officials on those procedures, including those relating to voting rights restoration and voter registration. *See* Deposition of Beth Henry Robertson, Day 1 Transcript, at 63:14-65:1; 82:6-7. Though an attorney, her duties indicate that she is, like Coordinator Goins, a government administrator and policymaker. That is, she assists Coordinator Goins in doing the work of the Elections Division, such as drafting policies, procedures, forms and guidance for election officials, including those at issue in this case and the renewed discovery period. *Id.* at 56:16-19; 62:19-68:8; 70:8-10; 98:24-99:18. Mr. Dodd's duties similarly include numerous

8

administrative and policy functions beyond responding to legal questions. *Id.* at 82:1-83:4; *see also* Exhibit K.

Furthermore, nothing in Defendants' privilege log descriptions indicate that the communication or documents predominantly legal advice. The vast majority of the lines in the privilege log that Plaintiffs have identified as likely not privileged are emails that attach drafts of the five public documents Tennessee Division of Elections released on July 21, 2023. *See* Exhibit I. Those attachments, drafts of forms and policies for public consumption, are certainly not themselves confidential legal advice. Had Defendant Mark Goins himself created the draft forms and policies, they would not be privileged for the obvious reason that crafting forms and policy is a policy-making task, not the provision of legal advice. And advice regarding the content of a draft form or procedure is *policy* or *technical* advice, and this is true even if the policy advice offered is *informed by* background knowledge of a court decision or a source of law guiding the design of a policy. Applying the appropriate standard, then, would have produced a different result—namely, documents (or portions of documents)[2] deemed policy in nature could not have been considered privileged. Defendant Goins cannot shield drafts of the public forms and policies that prompted the reopening of discovery by delegating a policy-making task to a deputy who also happens to be an attorney. As such, the Magistrate Judge's order, which deems privileged a broad swath of policy documents, specifically Doc ## 3-5, 18-20, 22-24, 26, 28, 30-37, 43, 45, 47-49, 60, 61-69, 73-79, is contrary to law.

---

[2] Because the attorney-client privilege is to be construed "narrowly," *see John B. v. Goetz*, 879 F. Supp. 2d 787, 892, redaction of documents is appropriate when only certain portions of the document fall within the ambit of privilege. *See, e.g., Farley v. Farley*, 952 F. Supp. 1232, 1240 (M.D. Tenn. 1997) (ordering the production of a document with redaction of privileged information).

ii. <u>The Work Product Privilege Does Not Apply to the Documents in Question.</u>

Plaintiffs assert that the emails identified in Exhibit I are not protected by the attorney-client or work product privilege. According to their privilege log, Defendants withheld communications between Mr. Goins, Ms. Henry-Robertson, and Mr. Dodd regarding drafts of "felon restoration FAQs for policy revisions," the "COR form and process," and the voter registration form and process—all related to the Coordinator's core policy and administrative functions. These are communications among policymakers, not a client and his attorney, and should be produced. Other entries cryptically reference court decisions, court filings, and media inquiries and fail to offer sufficient facts to determine that they were made for the predominant purpose of providing legal advice. For any such documents that include both privileged and non-privileged communications, redaction is the most appropriate form of production.

Second, Plaintiffs assert that documents created in the ordinary course of business of the Elections Division are not protected by the work product privilege. *See, e.g., Appalachian Cmty. Fed. Credit Union*, 2022 WL 20636278, at *9 (quoting *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *4 (S.D. Ohio Nov. 13, 2012)) (internal quotations omitted) ("If the document was created as part of the ordinary business of a party and the ordinary business purpose was the driving force or impetus for creation of the document, then it is not protected by the work product doctrine."). Numerous entries on Defendants' updated privilege log on their face indicate having been made for the purpose of developing forms, procedures, and policies, which is the business of the Elections Division. Plaintiffs assert that these documents are not protected by the attorney-client privilege or by the work product privilege.

iii. <u>The Sword and Shield Doctrine Compels Disclosure.</u>

Even if the Court determines privilege applied to some documents here, Defendants would have waived that privilege by using it as both a sword and shield in this matter. Under the sword

and shield doctrine, a party cannot use privileged communications as a sword to prove a material element of their claim or defense and also as a shield to protect it from disclosure to the other side where the communication is necessary to respond to the argument. *See, e.g.*, *Ross v. City of Memphis*, 423 F.3d 596, 604-05 (6th Cir. 2005). The sword and shield "image is meant to convey that the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Id.* (internal quotations omitted).

Here, Defendants have used the "internal discussions" surrounding the voting rights restoration procedure changes in July 2023 as a sword to advance their claims, and have shielded those discussions from disclosure by asserting privilege, preventing Plaintiffs from probing those claims. In their summary judgment briefing, Defendants used the fact of the July 2023 changes to advance their argument that the procedures resulted from due deliberation and therefore render Plaintiffs' NVRA claims moot. In Coordinator Goins' declaration in support of Defendants' Motion for Summary Judgment, he stated that "[b]ased on [the *Falls v. Goins*] decision, the Division of Elections determined that it was necessary to revise its policies and procedures for the restoration of voting rights for individuals with felony convictions and used the logic and analysis from *Falls v. Goins* to inform these revised policies and procedures." ECF No. 151-1, PageID# 1092. Additionally, in Coordinator Goins' supplemental declaration used in support of Defendants' response to Plaintiffs' Motion for Summary Judgment, he stated that "internal discussions with Secretary Hargett, staff and legal counsel continued and as noted above, these discussions in conjunction with the [*Falls* decision] ultimately resulted in the new policies and procedures." ECF No. 180-1, PageID# 2892. In her deposition, Ms. Henry Robertson confirmed that internal discussions informed their decision to implement the July 2023 changes. Deposition of Beth Henry Robertson, Day 1 Transcript, 232:1-25. Defendants now attempt to prevent the

disclosure of the documents that support or undermine these assertions, which would aid Plaintiffs in understanding when and how the July 2023 changes were made. Because Defendants are seeking to support their defenses with evidence over which they claim privilege, the sword and shield doctrine applies here.

### B. The Magistrate Judge's Order Is Clearly Erroneous.

Plaintiffs also object to the Magistrate Judge's conclusions as to Doc ## 3-5, 18-20, 22-24, 26, 28, 30-37, 43, 45, 47-49, 60, 61-69, 73-79, insofar that the Magistrate's failure to make factual findings as to the privileged nature of the documents constitutes clear error.

Attorney-client and work-product privileges are highly fact specific, and the privilege must be applied to each individual document. *See Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998); *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) ("the attorney-client privilege 'does not envelope everything arising from the existence of an attorney-client relationship . . . the attorney-client privilege is an exception carved from the rule requiring full disclosure, and as an exception, should not be extended to accomplish more than its purpose"); *accord John B. v. Goetz,* 879 F. Supp. 2d 787, 896 (M.D. Tenn. 2010) (finding that defendants had not met their burden that a privilege applied "absent specific factual context" about the privileged nature of the documents at issue). *See also, e.g., Petteway v. Galveston Cnty.,* No. 3:22-CV-00057, 2023 WL 3452065, at *5 (S.D. Tex. May 15, 2023) (making specific factual findings as to the privileged nature of challenged documents); *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (internal quotation marks omitted) ("Assuming that the privilege applies, it is appropriate to recognize a privilege only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for

ascertaining truth."); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983) ("As a derogation of the search for truth, the privilege is to be narrowly construed").

Accordingly, it is appropriate to assess the validity of the privilege asserted to each document or categories of documents, rather than making a general holding as to the privilege of all the documents in question. Indeed, the Magistrate determined that "without examining the documents, the Court cannot issue a general holding finding that all of Defendants' withheld documents are, or are not, privileged or protected by the work-product doctrine." ECF No. 208 at PageID #3430. But instead of making specific factual findings about the privileged nature of the documents, the Magistrate made a blanket finding that "the documents . . . are protected from disclosure in discovery by the attorney-client privilege, the work-product doctrine, or both." ECF No. 208 at PageID #3431. The Magistrate's Order does not indicate which documents are covered by which privilege, nor why those documents are privileged. The absence of factual findings as to the privileged nature of the documents constitutes clear error. *E.g., Vanderhoff v. Pacheco*, 344 F. App'x 22, 27 (5th Cir. 2009) (reversing order where "there are no findings of fact by the magistrate judge or the district court to give deference under clear error review"); *Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 262 (N.D.N.Y. 2009) (same).

The Magistrate Judge clearly erred because he failed to provide factual findings to the documents at issue. Absent findings of fact, the January 11 Order made no indication as to how the Magistrate applied the relevant legal standard to the specific documents at issue.

**C. Defendants' Sweeping Assertion of Privilege Is an Attempt to Evade Public Scrutiny and Meaningful Discovery on the July 2023 Changes.**

Defendants' sweeping invocation of privilege "stands squarely in conflict with the strong public interest in open and honest government" and evinces an effort to avoid scrutiny over policy decisions that overhauled Tennessee's voting rights restoration scheme in the summer of 2023.

*Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (noting that "courts and commentators have cautioned against broadly applying the [attorney-client] privilege to governmental entities" because "[t]he privilege excludes relevant evidence and stands 'in derogation of the search for truth'" (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)). This new procedure has made it nearly impossible for Tennesseans with past convictions to access the franchise. In fact, only *one* Tennessean has successfully restored his voting rights under this new procedure.[3] Just recently, the Elections Division continued its shifting sands approach to administering rights restoration by beginning to require that individuals with past felony convictions restore their gun rights in order to restore their voting rights.[4] These events are relevant to the instant suit. Plaintiffs expect supplemental production regarding this new change imminently and believe it is likely that Defendants will also improperly withhold recently created relevant, non-privileged documents.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court GRANT Plaintiffs' Motion for Review, overrule the Magistrate's January 11, 2024 Order and compel the production of Doc. ## 3-5, 18-20, 22-24, 26, 28, 30-37, 43, 45, 47-49, 60, 61-69, 73-79.

Dated: January 25, 2024

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Respectfully submitted,

/s/ Ellen Boettcher
Ellen Boettcher*
Blair Bowie*
Danielle Lang*
Alice Huling*
Valencia Richardson*

---

[3] Jonathan Mattise, *Felons must get gun rights back if they want voting rights restored, Tennessee officials say*, ASSOCIATED PRESS, Jan. 23, 2024, https://apnews.com/article/tennessee-felon-voting-rights-restoration-a50000a97f73c2767eaa8b9b1a2eee52.
[4] *Id.*

<div style="column-count:2">

Phil Telfeyan
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org


* Admitted pro hac vice

Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
Eboettcher@campaignlegal.org
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org
VRichardson@campaignlegal.org
Amulji@campaignlegal.org
KUyeda@campaignlegal.org

Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

*Counsel for the Plaintiffs*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on January 25, 2024 by operation of the Court's electronic filing system on the following:

>Zachary Barker
>Dawn Jordan
>Andrew C. Coulam
>David M. Rudolph
>Robert W. Wilson
>
>Office of the Tennessee Attorney General
>Public Interest Division
>P.O. Box 20207
>Nashville, TN 37202

/s/ Ellen Boettcher
Ellen Boettcher