IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TENNESSEE CONFERENCE of the )
NATIONAL ASSOCIATION for the )
ADVANCEMENT of COLORED )
PEOPLE, et al., )
                                               )      **NO. 3:20-cv-01039**

    **Plaintiffs,** )

                                               )      **JUDGE CAMPBELL**
**v.** )      **MAGISTRATE JUDGE FRENSLEY**

                                               )
**WILLIAM LEE, et al.,** )

    **Defendants.** )

## MEMORANDUM

Pending before the Court is a motion for summary judgment on Counts Four, Five, and Six filed by Defendants Trey Hargett and Mark Goins (Doc. No. 150), and a cross motion for summary judgment on Counts Four and Six filed by Plaintiff Tennessee National Association for the Advancement of Colored People ("TN NAACP") (Doc. No. 154). The motions are fully briefed as to Counts Four, Five, and Six, and ripe for consideration. (Doc. Nos. 182, 190, 180, 192). For the reasons set forth more fully below, the motion filed by Hargett and Goins will be denied and TN NAACP's motion will be granted in part and denied in part.

## I.    INTRODUCTION

A felony conviction does not always result in the loss of voting rights in Tennessee because of the structure of Tennessee's constitution and discrepancies in Tennessee's disenfranchisement statute. Counts Four, Five, and Six of the present case arise from Tennessee's voter registration form for elections for Federal office and policies for processing those forms from applicants who have been convicted of a felony.

In Count Four, TN NAACP claims that Tennessee's form to register to vote in elections for Federal office (hereinafter referred to as the "State Form") fails to inform applicants of Tennessee's voter eligibility requirements, in violation of the National Voter Registration Act of 1993 ("NVRA"). (*See* First Amended Complaint, Doc. No. 102 ¶¶ 153-57). In Count Six, TN NAACP claims that, since 2014, Tennessee has implemented a policy of rejecting forms to register to vote in elections for Federal office on which applicants indicate they have a prior felony conviction and requiring those applicants with a prior felony conviction to provide documentary proof of their eligibility to vote, in violation of multiple sections of the NVRA. (*See id* ¶¶ 162-68). Count Five is brought under 42 U.S.C. 1983. In that Count, TN NAACP claims that Tennessee's policy of rejecting all voter registration forms on which the applicant affirmed they have a felony conviction violates eligible voters' fundamental right to vote in violation of the First and Fourteenth Amendments. (*See id*. ¶¶ 158-61).

In Counts Four through Six, TN NAACP seeks a preliminary and permanent injunction enjoining Hargett and Goins, in their official capacities, from rejecting valid voter registration applications from eligible voters and requiring Hargett and Goins, in their official capacities, to create registration forms and policies that comply with the NVRA and do not impose an undue burden on the right of eligible citizens to register to vote, including:

    i.    specifying the eligibility requirements on all registration forms,

    ii.    modifying the state voter registration form such that it can be used by all eligible citizens even if they have been convicted of a felony,

    iii.    modifying the online voter registration portal such that it can be used by all eligible citizens even if they have been convicted of a felony, and

iv.    issuing statewide guidance prohibiting the requirement that people with convictions provide documentary proof of their eligibility and proscribing the rejection of valid voter registration applications from eligible voters because the applicant has a felony conviction.

(*See* First Amended Complaint, Doc. No. 102 at PageID # 658-59).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Article 1, Section 5 of the Tennessee Constitution provides that "[t]he elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." Tenn. Const. art. I, § 5. This provision is not self-executing, and disenfranchisement cannot be applied retroactively. *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983). Thus, persons convicted of crimes are not disenfranchised unless prior to their conviction the legislature has by law "ascertained" that those crimes are "infamous" and "declared" that conviction of those crimes results in loss of the right to vote. *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980).[2]

Because of this constitutional structure, a felony conviction does not always result in the loss of voting rights in Tennessee. (Doc. No. 181 ¶ 1). A felony conviction before January 15, 1973 (a "pre-1973 conviction") does not disqualify a person from voting unless the conviction is for one

---

[1]    This Memorandum is limited to facts and procedural history concerning Counts Four through Six of the First Amended Complaint, Doc. No. 102.

[2]    Such laws, which "designate a particular civil disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure," are known as "specific disability statutes." *Cole v. Campbell*, 968 S.W.2d 274, 276 (Tenn. 1998) (citing *Special Project*, *The Collateral Consequences of a Criminal Conviction*, 23 Vand. L.Rev. 929, 951 (1970)).

of 21 specific potentially infamous crimes listed in state law and the judgment of conviction included a statement rendering the crime "infamous." (*Id*. ¶ 2; Defendants' answer to First Amended Complaint, Doc. No. 199 ¶ 110). A felony conviction between January 15, 1973, and May 17, 1981, (the "grace period") never disqualifies a Tennessean from voting. (Doc. No. 181 ¶ 3; *see also* Doc. No. 199 ¶¶ 107, 109).[3] An otherwise qualified person with convictions only from this period did not lose the right to vote as a result of those convictions. (*Id*.).

---

[3]       Prior to 1972, Tennessee Code Annotated Section 40-2712 provided:

> Upon conviction of the crimes of abusing a female child, arson and felonious burning, bigamy, burglary, felonious breaking and entering a dwelling house, felonious breaking into a business house, outhouse other than a dwelling house, bribery, buggery, counterfeiting, violating any of the laws to suppress the same, forgery, incest, larceny, horse-stealing, perjury, robbery, receiving stolen property, rape, sodomy, stealing bills of exchange or other valuable papers, subornation of perjury, and destroying a will, *it shall be part of the judgment of the court that the defendant be infamous, and be disqualified to exercise the elective franchise* …

*Crutchfield*, 607 S.W.2d at 480 (emphasis added). In 1972, Section 40-2712 was amended to provide:

> Upon conviction of the crimes of abusing a female child, arson and felonious burning, bigamy, burglary, felonious breaking and entering a dwelling house, felonious breaking into a business house, outhouse other than a dwelling house, bribery, buggery, counterfeiting, violating any of the laws to suppress the same, forgery, incest, larceny, horse-stealing, perjury, robbery, receiving stolen property, rape, sodomy, stealing bills of exchange or other valuable papers, subornation of perjury, and destroying a will, *it shall be part of the judgment of the court that the defendant be infamous*…

*Id*. at 480–81 (emphasis added). As explained by the Tennessee Court of Criminal Appeals:

> Notice that the words "and be disqualified to exercise the elective franchise" are left out of the act as amended in 1972. This change does not change the crimes listed in any way. It simply does not require that persons convicted of the listed crimes lose the right to exercise the elective franchise. In 1981 the legislature again amended this code section and included the words "and be immediately disqualified from exercising the right of suffrage."

*Wilson v. State*, No. 03C01-9604-CC-00142, 1997 WL 459728, at *3 (Tenn. Crim. App. Aug. 12, 1997).

"In 1981, the Tennessee legislature expanded the relevant statutory section to provide that *any* felony conviction would result in a declaration of infamy." *May v. Carlton*, 245 S.W.3d 340, 345 (Tenn. 2008) (emphasis in original).  Accordingly, felony convictions after May 18, 1981—whether by a Tennessee court, a court in another state, or a federal court—result in loss of the right to vote in Tennessee, until that right has been restored pursuant to state law. (Doc. No. 181 ¶ 4).

## A.  The National Voting Rights Act of 1993

The NVRA, Pub. L. No. 103–31, 107 Stat. 77 (codified as amended at 52 U.S.C. §§ 20501–20511), "requires States to provide simplified systems for registering to vote in *federal* elections, *i.e.*, elections for federal officials, such as the President, congressional Representatives, and United States Senators." *Young v. Fordice*, 520 U.S. 273, 275 (1997) (emphasis in original). It was enacted under Article I, Section 4 of the Constitution, more commonly known as the Elections Clause, in response to congressional findings that discriminatory and unfair voter registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionality harm voter participation by various groups, including racial minorities. 52 U.S.C. § 20501(a)(3).

In crafting the NVRA, the 103rd Congress had four overriding purposes:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained.

*Id*. at § 20501(b). To achieve these purposes, the NVRA "requires each State to permit prospective voters to 'register to vote in elections for Federal office' by any of three methods: simultaneously with a driver's license application, in person, or by mail." *Arizona v. Inter Tribal Council of Arizona, Inc.*("*ITCA*"), 570 U.S. 1, 5 (2013); 52 U.S.C. § 20503(a). The NVRA further requires each State to "inform applicants under sections 20504, 20505, and 20506 of this title of voter eligibility requirements." 52 U.S.C. § 20507(a)(5)(A). The NVRA also requires "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" to "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id*. § 20507(b)(1).

The NVRA requires states to "accept and use" a uniform Federal form ("the Federal Form") for registering to vote in federal elections. *Id*. § 20505(a)(1). The contents of the Federal Form are prescribed by a federal agency, the Election Assistance Committee. *Id*.[4] The Federal Form contains state-specific instructions, which must be approved by the Election Assistance Committee before being included on the Federal Form. *ITCA*, 570 U.S. at 6. The Federal Form does not require documentary evidence of eligibility to register to vote; rather, it requires only that an applicant aver, under penalty of perjury, that he is eligible to register to vote. And the NVRA precludes states "from requiring a Federal Form applicant to submit information beyond that required by the form itself." *ITCA*, 570 U.S. at 20; 52 U.S.C. § 20505(a)(1).

The NVRA also permits each state to develop and use its own mail voter registration form to vote in federal elections ("State Form") so long as the State Form meets the criteria stated in

---

[4]        "The Help America Vote Act of 2002 ["HAVA"] transferred this function from the Federal Election Commission to the EAC." *ITCA*, 570 U.S. 1, 6 n.1 (2013); *see* 52 U.S.C. § 21131. Under HAVA, the EAC directs funding to states for improving the administration of federal elections and access to voters with disabilities, research grants for new technologies, and pilot programs for testing new equipment and technologies. 52 U.S.C.A. § 21001.

Section 20508(b). 52 U.S.C. § 20505(a)(2), 20508(b).[5] The NVRA establishes a private cause of action for those aggrieved by a violation to seek declaratory or injunctive relief. 52 U.S.C. § 20510(b); *Harkless v. Brunner*, 545 F.3d 445, 450 (6th Cir. 2008) ("NVRA authorizes judicial intervention if a state fails to comply with its terms.").

## B. *Arizona v. Inter Tribal Council of Arizona, Inc.*

In 2013, the Supreme Court took up the question of whether an Arizona state law which required state officials to "reject" a Federal Form unaccompanied by documentary evidence of citizenship conflicted with the NVRA's mandate that Arizona "accept and use" the Federal Form. *ITCA*, 570 U.S. at 9 ("If so, the state law, so far as the conflict extends, ceases to be operative.") (internal quotations omitted). With Justice Scalia writing for the majority, the Court began its analysis with consideration of the Elections Clause, which "empowers Congress to pre-empt state regulations governing the 'Times, Places and Manner' of holding congressional elections." *ITCA*, 570 at 8. The Court explained that the these "comprehensive words" in the Elections Clause "'embrace authority to provide a complete code for congressional elections,' including, as relevant here…, regulations relating to 'registration.'" *Id.* at 8-9 (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)); *Moore v. Harper*, 600 U.S. 1, 10 (2023) (The Elections Clause guards against the possibility that a State would refuse to provide for the election of representatives in federal elections, by authorizing Congress to prescribe its own rules). It expressly rejected the argument that the presumption against preemption applies in Election Clause cases, holding that the plain

---

[5]     Throughout their briefing, the parties refer to Tennessee's mail voter registration form to vote in elections for Federal office developed pursuant to Section 20505(a)(2) in a variety of ways, including as "voter registration forms," "Tennessee's voter registration form," "state-issued mail-in voter registration form," "the State's registration form(s)," "voter registration application(s)," and "application(s)." As a general matter, any unspecified reference to forms or applications in this Memorandum means Tennessee's mail voter registration form to vote in elections for Federal office developed pursuant to Section 20505(a)(2), *i.e.* the "State Form." The Federal Form is exclusively referred to the Federal Form.

text of the NVRA "accurately communicates the scope of Congress's preemptive intent." *Id*. at 13-14. Thus, "the States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'" *Id*. at 15 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

The Supreme Court was not persuaded by Arizona's argument that Section 20505(a)(1) "require[d] merely that a State receive the Federal Form willingly and use that form as one element in its (perhaps lengthy) transaction with a prospective voter;" rejecting Arizona's reading of the statute as "out of place in the context of an official mandate to accept and use something for a given purpose" because "[t]he implication of such a mandate is that its object is to be accepted *as sufficient* for the requirement it is meant to satisfy." *ITCA*, 570 at 9. (emphasis in original). The Supreme Court determined that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." *Id*. at 15.

Nor was the Supreme Court persuaded by Arizona's contention "that its construction of the phrase "accept and use" was necessary to avoid a conflict between the NVRA and Arizona's constitutional authority to establish qualifications (such as citizenship) for voting." *Id*. at 15-16. The Court explained:

> …Arizona is correct that it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications. If, but for Arizona's interpretation of the "accept and use" provision, the State would be precluded from obtaining information necessary for enforcement, we would have to determine whether Arizona's interpretation, though plainly not the best reading, is at least a possible one. Happily, we are spared that necessity, since the statute provides

8

another means by which Arizona may obtain information needed for enforcement.

Section [20508](b)(1) of the Act provides that the Federal Form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." … That is to say, § [20508] (b)(1) acts as both a ceiling and a floor with respect to the contents of the Federal Form….

Since…a State may request that the EAC alter the Federal Form to include information the State deems necessary to determine eligibility and may challenge the EAC's rejection of that request in a suit under the Administrative Procedure Act, no constitutional doubt is raised by giving the "accept and use" provision of the NVRA its fairest reading.

*ITCA*, 570 U.S. at 17-20. Accordingly, the Supreme Court held that Section 20505(a)(1)'s mandate that States "accept and use" the Federal Form to register voters for federal elections pre-empted Arizona law's requirement that voters present proof of citizenship when they registered to vote, as applied to federal form applicants. *See id.*

## C.  Tennessee Election Officials Defendants

Defendant Trey Hargett is the Secretary of State of Tennessee ("the Secretary"), and Defendant Mark Goins, under the supervision of Secretary Hargett, is the Coordinator of Elections for Tennessee ("the Coordinator") (collectively "Tennessee Election Officials"). (Doc. No. 181 ¶ 16). Coordinator Goins is the head of the Tennessee Secretary of State's Election Division ("Election Division"), the "chief election officer of the state," and is charged with obtaining and maintaining uniformity in the application, operation, and interpretation of the election code.  (Doc. No. 181 ¶ 16). Secretary Hargett first appointed Mark Goins as Coordinator of Elections for Tennessee in 2009. (Doc. No. 180-1 ¶ 1). As the Coordinator of Elections, Coordinator Goins is responsible for preparing instructions for voter registration and interpreting the election laws.

9

(Doc. No. 181 ¶ 17). Secretary Hargett and Coordinator Goins are responsible for the State of Tennessee's compliance with the National Voting Rights Act. (*Id*.).

**D. Tennessee's State Voter Registration Form for Elections for Federal Office**

Tennessee has made and tested changes to its State Form resulting in numerous versions of the form having been used over the years. (Doc. No. 181 ¶ 18). There are two specific versions of the State Form at issue in Count Four. The first version was used in the November 2020 general election and provides the following instruction regarding eligibility to vote for individuals with felony convictions: "To register to vote: … you must not have been convicted of a felony, or if you have, your voting rights must have been restored." (*Id*. ¶ 30; Doc. No. 156-12; *see also* Coordinator Goins April 2021 letter, Doc. No. 156-36 at PageID # ("several employees of [Election Division] worked to revise and replace the Tennessee mail-in voter registration application, Form SS-3010, prior to the November 2020 election").[6] The second version is the latest iteration of the State Form, which was "put into use" sometime between December 2020 and March 2021, provides the following instruction about eligibility based on a felony conviction:

> If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call 1-877-850-4959 or visit sos.tn.gov/restoration.

(Doc. No. 181 ¶¶ 19, 27; Doc. No. 156-10).

---

[6]     Coordinator Goins' office staff and the Tennessee Secretary of State's Election Division appear to be one and the same. *See e.g.*, *Green Party of Tennessee v. Hargett*, 953 F. Supp. 2d 816, 825 (M.D. Tenn. 2013), vacated and remanded, 767 F.3d 533 (6th Cir. 2014) ("[t]he State Coordinator's office has eight (8) full-time employees, whose duties include … implement[ing] various federal and state election regulations, including [HAVA] and the [NVRA].").

10

The latest version of the State Form does not state that grace period felony convictions are non-disqualifying or that convictions before January 15, 1973 are only disqualifying in certain circumstances. (Doc. No. 181 ¶¶ 20-21; Doc. No. 156-10). The latest version of the State Form does not list the pre-January 15, 1973 infamous crimes that are disqualifying (or those that are not), and does not include a way for an applicant to mark under penalty of perjury that they were not convicted of an infamous crime or not declared infamous in their judgment. (Doc. No. 181 ¶ 21). The latest version of the State Form directs applicants with any prior felony conviction to visit sos.tn.gov/restoration. (*Id.* ¶ 22). Presently, that link routes to the Secretary of State's website to information on loss of voting rights. (*Id.*).[7] The latest version of the State Form instructs applicants to fill out the required information in Box 4 of the form and to provide "any responsive documents you have," without defining what "responsive documents" are and without informing applicants that their applications will be denied if they disclose a felony conviction and do not provide documentation. (*Id.* ¶ 23).

Box 4 in the latest version of the State Form asks applicants to check a box "yes" or "no" in response to the question: "Have you ever been convicted of a felony? (If expunged, answer 'no')." (*Id.* ¶ 24). It then directs applicants to provide certain information "if known", including "Crime(s)" and "Date (mo./yr.)". (*Id.*). Box 4 also asks for "Place (city/state)," presumably of conviction, and "Have you received a pardon or had your voting rights restored?" and has boxes to indicate "yes" or "no." (*Id.* ¶¶ 25, 26). It instructs "If yes, provide copy of document," but does not state what "copy of document" means or that an application may be rejected if such documentation is not provided. (*Id.*).

_____

[7]     In early July 2023, that link resulted in a Secretary of State website page with an error message reading "Page Not Found." (*Id.*).

When the Election Division implemented the latest iteration of the State Form, Tennessee Election Officials did not issue any specific new processing instructions to county election commissions, beyond the instructions on the form itself and answering "calls and e-mails when [the counties] have questions" about processing the new form. (*Id*. ¶ 28). The counties continued to be authorized to accept and process prior versions of the registration form even after the latest iteration of the State Form was released. (*Id*. ¶ 29). Prior versions of the State Form ask applicants a single question concerning prior felony convictions, "Have you ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court?" and provide a checkbox to mark "Yes" and a checkbox to mark "No." (*Id*. ¶ 31). Some counties continue to use prior versions of the State Form and provided the older versions of the form on their county websites well into July 2023. (*Id*. ¶ 32).

**E. Federal Voter Registration Form and Tennessee-specific instructions**

United States citizens living in Tennessee may register to vote using the Federal Form, which does not include any space for an applicant to list any information regarding a prior felony conviction. (Doc. No. 181 ¶¶ 33-34). However, the Tennessee-specific instructions on the Federal Form indicate that to be eligible to register to vote in Tennessee, the applicant must "not have been convicted of a felony" and further state that if convicted, the applicant's "eligibility to register and vote depends upon the crime [] convicted of and the date of [] conviction," directing applicants to call 877-850-4959 or visit https://sos.tn.gov/gov/restoration" "[f]or more information about this process. (*Id*. ¶ 35; Doc. No. 156-11). If a voter submits a Federal Form, the county processing the form would not know whether the individual has a conviction, nor the date or type of conviction, from the face of the form itself. (Doc. No. 181 ¶ 36).

## F. Tennessee's Registration Application Blanket Rejection and Documentation Policy

From at least 2014 until July 21, 2023, election officials in Tennessee have rejected voter registration forms submitted with the felony conviction question answered in the affirmative absent additional documentation, pursuant to Election Division policy, training, and guidance. (Doc. No. 181 ¶¶ 37-39). According to that policy, in order for a State Form with the felony conviction question answered in the affirmative to be accepted, the elections office must have additional documentation of the applicant's eligibility. (*Id.* ¶ 40).

Although the Federal Form has no space for voters to attest to having or not having a felony conviction, election officials in Tennessee require documentation from applicants when they learn about an applicant's felony conviction(s) from a source beyond the registration form itself, including verbally from an applicant, or by way of Tennessee statute requiring clerks of court in every county to send notices of felony convictions to election officials, or when counties share this information with one another. (*Id.* ¶ 41). Election officials also learn about a Federal Form applicants' felony conviction when checking a county's "felony files." (*Id.* ¶ 42).

*Applications Indicating a Pre-January 15, 1973 Conviction*

Under the State's blanket rejection policy, when a county election official received a voter registration application indicating a pre-January 15, 1973 non-infamous conviction, they were directed to reject the application, file documents with the state election office showing the date of conviction and crime committed and wait for the state to send back an eligibility letter, despite the applicant never having lost their right to vote. (*Id.* ¶ 43). Sufficient documentation required a copy of the judgment or convicting document that showed what the person was convicted of and if they were judged infamous. (*Id.* ¶ 44).

13

*Applications Indicating a Grace Period Conviction*

Under the State's blanket rejection policy, when a county official received a voter registration application indicating a grace period conviction, they were directed to reject the application unless they had documentation confirming the individual's conviction was during the grace period, such as a copy of their conviction papers showing the date of the conviction and the type of crime. (*Id*. ¶ 45). While some election officials may have at times tried to work with the voter to find and obtain the required documentation, there is no official policy requiring election officials to do so, and the burden was ultimately on the applicant. (*Id*. ¶ 46).

The Election Division has acknowledged that individuals with grace-period convictions have faced difficulties obtaining the necessary documentation. (*Id*. ¶ 47). Obtaining the necessary documentation for grace-period or non-infamous pre-1973 convictions can be difficult because many times the conviction will be so old that the documentation will be in archives. (*Id*. ¶ 48). Sometimes, the required paperwork for grace-period or non-infamous pre-1973 convictions does not exist or cannot be found. (*Id*. ¶ 50). Obtaining the necessary documentation for grace-period or non-infamous pre-1973 convictions can also cost money. (*Id*. ¶ 49). For example, the Shelby County Criminal Court Clerk's office charged a prospective voter $10 for a copy of his grace-period judgment that he was required to submit in order to register to vote, even though he never lost the right to vote. (*Id*.).

*Applications Indicating a Post-May 17, 1981 Conviction*

Under Tennessee's blanket rejection policy, when a county official received a voter registration application indicating that the voter has a disenfranchising felony conviction but had their voting rights restored, they were directed to reject the application unless the applicant also provided documentation proving their restoration of voting rights. (*Id*. ¶ 51). The State Form

14

instructs voters who mark "yes" to the question asking if they have "received a pardon or had [their] voting rights restored" to "provide copy of document." (*Id.* ¶ 52). The form provides no information about what kind of document(s) must be provided. (*Id.*).

When processing voter registration applications indicating restoration of voting rights, county election offices are not required to confirm whether the Election Division already has a record of the applicant's restoration of voting rights. (*Id.* ¶ 53). However, county election offices can ask the Election Division to search for confirmation of an applicant's restoration of voting rights, and the Election Division can look through its "restored and denied databases" to see "if there [is] a restoration there." (*Id.*).

*Rejected Applications*

Upon rejecting a State or Federal Form due to a felony conviction, county election officials are directed to send the applicant a notice of the rejection accompanied by a Voter Registration Appeal Request Form, a Certificate of Restoration form, and a blank voter registration form. (*Id.* ¶ 69). The Voter Registration Appeal Request Form allows an applicant to affirm that they "have not been convicted of a felony or if convicted [they] have had [their] rights properly restored" and include a place for the applicant to check whether they "have not been convicted of a felony" or they "have been convicted of a felony but have had [their] rights properly restored or [their] record expunged." (*Id.* ¶ 70). As of December 2020, persons with a grace period conviction or a pre-January 15, 1973 conviction that did not render them infamous could not use the Voter Registration Appeal Request Form to appeal their rejection. (*Id.* ¶¶ 71-72; Doc. No. 156-28; Doc. No. 157-8).

*Applications from Voters with Expungements and Judicial Diversions*

The State Form instructs an individual with only expunged felony convictions to mark "no" in response to the felony question. (Doc. No. 181 ¶ 54). If a person with an expunged felony

15

conviction marks "yes" to the felony question, the Election Division policy is to reject the application and require the applicant to present documentation proving their felony was expunged. (*Id*. ¶ 55). A conviction subject to judicial diversion "acts the same as expungement" for the purposes of voting rights in that it does not result in the loss of the right to vote. (*Id*. ¶ 56). Voters with only convictions subject to judicial diversion can mark "no" to the felony question on the State Form, but the State Form does not provide this instruction. (*Id*. ¶¶ 56-57). If an applicant with a conviction subject to judicial diversion marks "yes" to the felony question, Election Division policy is to reject the application and require documentation. (*Id*. ¶ 58).

*Tennessee's Practices and Procedures*
*for Verifying Non-Disenfranchising Felonies and Voting Rights Restoration*

Since at least 2014, the Election Division's policy has been for county election commissions to "check every application against their felon files" when the person marked they had a felony conviction, and some counties check every application, regardless of whether the applicant indicates they have a felony conviction. (*Id*. ¶ 59). "Felon files" include information from various sources – the person, the courts, emails from U.S. Attorneys, the Tennessee Department of Corrections (TDOC), the Election Division, the state felon list, other county election officials, and their own clerks of court and jury coordinators – that the counties receive for people notifying them of a felony conviction or a previous voter registration application that the own person marked "Yes" under penalty of perjury to the felony question. (*Id*. ¶ 60).

The Election Division also disseminates "felon reports" to counties every 1-3 months that include the data on registrants' state felony convictions from TDOC, federal convictions from the U.S. attorneys, and out-of-state convictions from the Interstate Compact. (*Id*. ¶ 61). For each applicant, felon reports would include all convictions for a person going back in time and include

16

the date of judgment, conviction or sentence. (*Id*. ¶ 62). The information in felon reports can be sufficient to verify whether an applicant has only grace-period convictions. (*Id*. ¶ 63).[8]

County election officials, as part of their regular voter-roll maintenance duties, routinely use information in felon files and felon reports to purge voters with felony convictions from the voter rolls. (*Id*. ¶ 64). In Hamilton County, the list maintenance program automatically flags new applicants who may match a record in databases listing individuals with felony convictions and individuals previously purged due to a felony conviction. (*Id*. ¶ 65). Hamilton County election officials must manually review these potential matches to determine whether the new registrant does indeed have a felony conviction. (*Id*.).

Upon receipt of a facially valid application indicating a felony conviction, county election officials are capable of reaching out to other county election officials or the Election Division to confirm the applicant's eligibility, although Election Division policy does not currently instruct or require them to do so. (*Id*. ¶ 66). County election officials are capable of searching or requesting public records or contacting courts and other relevant agencies to verify eligibility of voters with grace-period or non-infamous pre-1973 convictions, though there is "no definitive set-on practice" of doing so under Election Division policy. (*Id*. ¶ 67). The Election Division itself is also capable of verifying grace-period convictions without requiring documentation from the applicant by searching or requesting public records or contacting courts and other relevant agencies. (*Id*. ¶ 68).

---

[8] Secretary Hargett and Coordinator Goins dispute this fact based on testimony noting that the felon reports are created from data from the TDOC. (*See* Doc. No. 181 at PageID# 2920). As it is already undisputed that the felon reports include data on registrants' state felony convictions from TDOC, (Doc. No. 181 ¶ 61), this does not create a genuine dispute of fact. Secretary Hargett and Coordinator Goins also appear to dispute this fact based on their contention that "because a county 'could' have information from other sources does not mean that the information will always be sufficient for verification." (Doc. No. 181 at PageID# 2920). As the statement of fact at issue does not suggest that the information will always be sufficient for verification, Secretary Hargett and Coordinator Goins have failed to create a genuine dispute of fact as to whether the information in the felon reports can be sufficient to verify whether an applicant has only grace-period convictions.

### G. Plaintiff TN NAACP

Plaintiff TN NAACP is a nonpartisan, multi-racial, non-profit membership organization headquartered in Jackson, Tennessee. (Doc. No. 181 ¶ 5). TN NAACP was founded in 1946 to serve as the Tennessee arm of the NAACP. (*Id*. ¶ 6). Its mission is to eliminate race-based discrimination through securing political, educational, social, and economic equality rights and ensuring the health and well-being of all persons. (*Id*.). TN NAACP has three regional divisions—Eastern, Middle, and Western Tennessee—as well as 33 local branch units and 22 college chapters and youth councils. (*Id*. ¶ 7). TN NAACP and most of its local branch units are primarily volunteer-run, and all officers are volunteers. (*Id*.).

TN NAACP has more than 10,000 members across the state, more than 90% of whom are Black or brown. (*Id*. ¶ 8). Black people make up 16% of the state's total voting-age population, but account for more than 21% of individuals who are disenfranchised by a felony conviction in Tennessee. (*Id*.). Promoting voter registration and turnout are the primary activities through which the TN NAACP furthers its mission. (*Id*. ¶ 9). The organization expends resources helping individuals, including those with past felony convictions, register to vote. (*Id*.).[9] Its staff and volunteers conduct public education workshops to help its constituents and other members of the community navigate the voter registration process. (*Id*.).

Volunteer time is the primary resource the TN NAACP uses in support of its mission. (*Id*. ¶ 10). The state conference and local branches also have limited monetary resources to put toward mission-furthering activities. (*Id*.). The TN NAACP prefers to use the online voter registration form when assisting individuals with voter registration at events or otherwise because it is a more

---

[9] Secretary Hargett and Coordinator Goins do not dispute, for summary judgment purposes, that TN NAACP expends resources helping individuals register to vote. (Doc. No. 181 ¶ 9, PageID# 2897; Doc. No. 183 ¶¶ 5-6).

efficient means of registration, but individuals who have been convicted of felonies cannot use the online form, regardless of their eligibility to vote. (*Id*. ¶ 11).

The TN NAACP's typical assistance is rendered ineffective when the online registration portal excludes individuals with felony convictions from submitting a registration application and when election officials reject individuals with felony convictions who submit valid voter registration forms. (*Id*. ¶¶ 12, 13).[10] The TN NAACP is aware, for example, of individuals who were convicted of felonies during the "grace period" between January 15, 1973, and May 17, 1981, but are nonetheless unable to register using the state voter registration form or the online registration form, despite never having lost the right to vote. (*Id*. ¶ 12).

When an eligible voter is incorrectly denied the ability to register to vote, the TN NAACP must divert resources from the other activities related to its mission by following up with the eligible voter and communicating with various governmental authorities (including, but not limited to, clerks of the court and probation officers) to rectify the situation. (*Id*. ¶ 13). In conjunction with these efforts, the TN NAACP has accompanied persons and taxied them to and from various governmental offices to troubleshoot the issue and correct the erroneous rejection. (*Id*.). This correction process may involve seeking old court records that are not easily accessible to the TN NAACP. These efforts are sometimes insufficient to remedy the erroneous rejection. (*Id*.). The TN NAACP would like to be able to dedicate greater resources to its voter turnout activities, rather

---

[10]     Secretary Hargett and Coordinator Goins provided a non-responsive answer to these statement of undisputed material facts. (Doc. No. 181 at PageID# 2899). Specifically, Secretary Hargett and Coordinator Goins dispute whether any citizen was erroneously denied the right to vote in response to TN NAACP's statement concerning eligible voters being incorrectly denied the *ability to register to vote*. (*See id*.). Accordingly, the Court considers these facts undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2). Although, the Tennessee Election Officials attempt to dispute the fact that TN NAACP's assistance to eligible persons registering to vote is rendered ineffective when the State rejects those persons' registration forms, they fail to cite to any evidence in support of their dispute, as required under the applicable rules.

than just voter registration. (*Id*. ¶ 14). This would include providing stipends to volunteers to canvass or phonebank to encourage members and constituents to turn out on Election Day. The TN NAACP also provides transportation to the polls. (*Id*.).

When a person TN NAACP helps register to vote is rejected despite being eligible to register, the extra time and money spent assisting voters that the state has erroneously rejected depletes resources that could be spent on other mission-furthering activities. (*Id*. ¶ 15).[11] TN NAACP's political power and ability to carry out its mission are directly diminished by the inability of its members and constituents to register to vote. (*Id*.).

## H. First Notice to Tennessee Election Officials of Noncompliance with NVRA

On August 22, 2018, TN NAACP sent Secretary Hargett and Coordinator Goins a letter ("First Notice Letter"), informing them that Tennessee's State Form and state specific instructions on the Federal Form, failed to accurately advise people with felony convictions of the eligibility requirements for voting in Tennessee, in violation of Sections 20507(a)(5) and 20508(b)(2)(A). (Doc. No. 181 ¶ 78; Doc. No. 156-15). TN NAACP further notified the Tennessee Election Officials that the State Form "plainly misinforms voters of the eligibility requirements by stating

---

[11]     Secretary Hargett and Coordinator Goins provided a non-responsive answer to paragraph fifteen of TN NAACP's statement of undisputed material facts, including their citation to over 75 pages across four sets of documents without pin cites, which is not particularly helpful to the Court. (Doc. No. 181 at PageID# 2900). Even viewing the facts in the light most favorable to the Tennessee Election Officials and drawing all reasonable inferences in their favor, none of the cited documents appear to contradict the fact specifically averred by TN NAACP in this statement of fact.  Accordingly, the Court considers this fact undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."); *see e.g.*, *Lujan*, 497 U.S. at 888 ("In ruling upon a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied.") (internal quotations omitted).

that *no* individual with a felony conviction may register to vote unless she has undergone the restoration of rights process." (Doc. No. 156-15 at PageID # 2517).

That year, 2018, Coordinator Goins, his staff, and legal counsel, "began discussions" with TN NAACP's counsel about the State Form. (Doc. No. 180-1 ¶ 7 at PageID # 2891). The Election Division placed those discussions on hold during the 2019 legislative session, summer, and early fall. (Doc. No. 193 ¶¶ 7). In December 2019, Coordinator Goins agreed to make unspecified changes to the State Form and requested that the Election Assistance Commission make unspecified changes to the Tennessee instructions the Federal Form. (Doc. No. 180-1 ¶ 7 at PageID # 2891). In March 2020, Coordinator Goins discontinued discussions about the State Form. (Doc. No. 180-1 ¶¶ 8-9).

## I. TN NAACP files present suit

On December 3, 2020, TN NAACP filed its original Complaint. (Doc. No. 181 ¶ 79). On December 30, 2020, Secretary Hargett, Coordinator Goins, and their co-defendants, moved to dismiss this case in its entirety for lack of standing and failure to state a claim. (Doc. No. 24).

## J. Second Notice to Tennessee Election Officials of Noncompliance with NVRA

On January 27, 2021, TN NAACP sent a second notice letter to Secretary Hargett and Coordinator Goins explaining that the state's registration policies and procedures for applicants with prior felony convictions remained non-compliant with the NVRA, specifically Sections 20507(a)(1), (5), (b)(1), 20508(b)(2)(A),(3), 20510(b)(2). (Doc. No. 181 ¶ 81; Doc. No. 156-16). It further notified Secretary Hargett and Coordinator Goins that placing the burden of proving eligibility onto the eligible prospective voter with a prior felony conviction—and requiring them to fight erroneous rejections with additional paperwork not required of other eligible applicants without a prior felony conviction—created a non-uniform registration process in violation of the

NVRA. (*Id*.). In addition to placing an unlawful burden on potential voters, TN NAACP explained to Coordinator Goins that the additional paperwork requirement is unnecessary in light of the Help America Vote Act's requirement that every state maintain databases and information flow sufficient to allow registrars to verify eligibility without it. (Doc. No. 156-16 at PageID # 2554).

Three months later, on April 27, 2021, Coordinator Goins responded by letter outlining the Election Division's planned revisions to the State Form and "its policy and guidance to the counties for processing voter registration applications from individuals with felony convictions." (Doc. No. 156-36 at PageID # 2699).

## K. Third Notice to Tennessee Election Officials of Noncompliance with NVRA

On May 24, 2021, TN NAACP's counsel sent a final notice letter ("Third Notice Letter") to Coordinator Goins reiterating that the continued requirement of additional paperwork for certain eligible applicants was improper under the NVRA. (*Id*. ¶ 82; Doc. No. 156-18). Additionally, the Third Notice Letter put Coordinator Goins on notice that his proposed policies in his April 27, 2021 letter regarding registrants with pre-1973 convictions failed to comply with Tennessee law and the NVRA. (*Id*.).

## L. Litigation Continues

On March 30, 2022, this Court granted in part and denied in part Defendants' Motion to Dismiss alleging, among other things, deficient notice under the NVRA. *See Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, No. 3:20-CV-01039, 2022 WL 982667 (M.D. Tenn. Mar. 30, 2022). The Court dismissed Count 5 of the original complaint without prejudice and denied Defendants' Motion to Dismiss on all other counts. (Doc. No. 83 at

15-16, 18). On October 3, 2022, TN NAACP filed its First Amended Complaint. (Doc. No. 181 ¶ 83). On May 28, 2023, fact discovery closed. (Doc. No. 128).

On July 21, 2023, less than two months *after* the conclusion of fact discovery in this matter and less than two weeks *before* the extended deadline for filing dispositive motions, Coordinator Goins "established new policies and procedures for [county election] officials with respect to the registration of individuals .... convicted of a felony prior to January 15, 1973, and ... convicted of a felony between January 15, 1973, and May 17, 1981." (Supplemental Declaration of Coordinator Goins, Doc. No. 180-1 ¶¶ 3, 4; Doc. No. 181 ¶¶ 73, 74; Doc. No. 151-2 (stating the new policies were "to avoid rejecting" voter registration applications from individuals "who did not lose their voting rights[.]").

On September 19, 2023, Coordinator Goins declared under penalty of perjury that he established these new policies for processing voter registration forms "in response to ongoing discussions and deliberation with [his] staff and with legal counsel" and "pursuant to [his] statutory duties" set forth in Tennessee Code Annotated Section 2-11-202. (Supplemental Declaration of Coordinator Goins, Doc. No. 180-1 ¶¶ 4, 2). Coordinator Goins' new policy instructs county administrators of elections to process voter registration forms from individuals with grace period convictions and from individuals who indicate that their felony convictions were prior to January 15, 1973, if the applicant indicates they were convicted of a felony that is not on the list of potentially infamous crimes. (Doc. No. 181 ¶¶ 77, 75; Doc. No. 151-2 at PageID # 1095-96). For State Forms on which an individual indicates they were convicted of one of the above felonies and declared infamous, Coordinator Goins' new policy instructs county administrators of elections to

23

reject those voter registration forms unless the applicant has had their rights restored. (Doc. No. 181 ¶ 76; Doc. No. 151-2 at PageID # 1096).[12]

On August 2, 2023, the Tennessee Election Officials and TN NAACP filed cross motions for summary judgment as to Counts Four and Six. Secretary Hargett and Coordinator Goins also seek summary judgment as to Count Five.

## III.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case.  *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party.  *Bible Believers v. Wayne Cty., Mich*., 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).  The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question.  *Id*. The mere scintilla of

---

[12]     Coordinator Goins' new policy does not address how an individual convicted of one of the potentially infamous crimes would indicate on their registration whether they were declared infamous. (Doc. No. 181 ¶ 76; Doc. No. 151-2).

24

evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The standards for summary judgment do not change when, as here, the parties file cross-motions for summary judgment. *See Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1147 (6th Cir. 2022).

## IV.    LAW AND ANALYSIS

Before turning to the merits, the Court must "determine as a threshold matter that [it] ha[s] jurisdiction." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 178 (1988).

## A. Subject Matter Jurisdiction

Federal courts only have jurisdiction to consider live cases and controversies. "Although the case-or-controversy requirement of Article III, § 2 of the Constitution 'underpins both our standing and our mootness jurisprudence,' *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000), standing and mootness inquiries diverge in several important respects, one of which is timing." *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019).[13] Whether a plaintiff has standing to sue is determined as of the time the complaint is filed. *See Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 390 (6th Cir. 2022) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) ("When assessing standing, courts look only to 'the facts existing when the complaint is filed.'")). "If a plaintiff overcomes the standing hurdle at the time of filing, the doctrine of mootness then 'requires that there be a live case or controversy at the time that a federal court decides the case.'" *Sullivan*, 920 F.3d at 407

---

[13]    Standing and mootness also diverge with respect to who shoulders the burden; the burden to establish jurisdiction rests on party invoking jurisdiction, while burden to defeat jurisdiction with mootness objection rests on party asserting mootness. *See Kentucky v. Yellen*, 54 F.4th 325, 340 (6th Cir. 2022).

(quoting *Burke v. Barnes*, 479 U.S. 361, 363 (1987)); *see, e.g.*, *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) ("It is the doctrine of mootness, not standing, that addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'") (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)); *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 294–95 (6th Cir. 2023) ("… if a plaintiff possesses standing from the start, later factual changes cannot deprive the plaintiff of standing. Those changes instead will create "mootness" issues[.]") (internal citations omitted).[14] The Court addresses the standing and mootness doctrines in turn.

1. Article III Standing

The Court begins with standing, which "is a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 750 (6th Cir. 2023). To have Article III standing, a plaintiff must have suffered "(1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992)). "To obtain declaratory or injunctive relief, a [plaintiff] must show a present ongoing harm or imminent future harm." *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020). As the party invoking federal jurisdiction, TN NAACP bears the burden of demonstrating that it has standing. *See Lujan*, 504 U.S. at 561. And it "must demonstrate standing separately for each form of relief sought." *Friends of the Earth*, 528 U.S. at 185; *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "While the proof required to establish standing increases as the suit proceeds, the standing

---

[14] The foregoing authority dispenses with Secretary Hargett and Coordinator Goins' argument that the policy changes in July 2023 deprive TN NAACP of standing. (Doc. No. 190 at PageID # 3195-97).

26

inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal citations omitted). "This means that, 'in response to a summary judgment motion,' a plaintiff cannot rely on 'mere allegations' with respect to each standing element, 'but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'" *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Lujan*, 504 U.S. at 561).

TN NAACP readily satisfies the second and third prong of the standing inquiry. "As to traceability, a defendant's actions must have a 'causal connection' to the plaintiff's injury." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). Here, it is undisputed that Secretary Hargett and Coordinator Goins are responsible for coordinating implementation of the NVRA and for the Election Division's policies and procedures for processing voter registration applications. (Doc. No. 181 ¶¶ 16-17). This shows the requisite causal link. "As to redressability, it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Gerber*, 14 F.4th at 505 (quoting *Lujan*, 504 U.S. at 561). Here, TN NAACP's injury will redressed if the Court grants TN NAACP's requested injunctive relief. Indeed, the NVRA establishes a private cause of action and authorizes judicial intervention for the purpose of providing redress for those aggrieved by a violation of the Act. 52 U.S.C. § 20510(b).

TN NAACP also satisfies its burden as to the first prong of the standing inquiry: injury in fact. In the present case, TN NAACP claims organizational injuries to sue on its own behalf. Perceptible impairment to "the organization's activities" or a "drain on the organization's resources" qualify as concrete and demonstrable injuries for Article III standing purposes. *See*

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). TN NAACP's mission is "advocate for the rights of individuals who have been discriminated against." (Doc. No. 151-4 at PageID #1324, 1334; Doc. No. 156-2 ¶¶ 3-6).[15] Its focus is voting rights, and its primary activity in furtherance of that goal is helping individuals register and turnout to vote. (Doc. No. 156-2 ¶¶ 7-8; Doc. No. 151-4 at PageID #1324-25, 1327-28). As part of its mission-furthering registration work, the TN NAACP provides voter registration assistance to individuals with felony convictions, all of whom must apply to register to vote using the challenged forms and are subject to the challenged policies. (Doc. No. 156-2 ¶¶ 8, 11; Doc. No. 181 ¶¶ 37-42).[16] In a declaration, the TN NAACP states that the challenged forms and policies make it more time-consuming and costly for TN NAACP's volunteers to provide registration assistance to individuals with felony convictions, which causes the organization's scarce volunteer time and money to be diverted away from its other mission furthering activities. (Doc. No. 156-2 ¶¶ 8-10, 13-18).

This drain on its resources is sufficient to prove injury in fact to the organization itself at summary judgment. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see, e.g.*, *Online Merchants Guild v. Cameron*, 995 F.3d 540, 548 (6th Cir. 2021) (affirming "that within-mission organizational expenditures are enough to establish direct organizational standing."). Secretary Hargett and Coordinator Goins' argument that TN NAACP cannot establish standing

---

[15]     Secretary Hargett and Coordinator Goins argue Sweet-Love's declaration is deficient under Federal Rule of Civil Procedure 56(c)(4) because she does not explain how she has personal knowledge of the information she provides concerning her statement that "the TN NAACP has accompanied persons and taxied them to and from government offices to troubleshoot the issue and correct the rejection." (Doc. No. 190 at PageID # 3197 (quoting Sweet-Love Decl, Doc. No. 156-2 ¶ 14)). This argument fails because, as President of TN NAACP, Sweet-Love is charged with knowledge of its activities. *See Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 805 F. Supp. 2d 396, 406 (S.D. Ohio 2011) (citing *AGI Realty Serv. Grp., Inc. v. Red Robin Intern., Inc.*, No. 94-3911, 81 F.3d 160, 1996 WL 143465, at *4 (6th Cir. Mar. 28, 1996) ("Corporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment.")); *see also Fambrough v. Wal-Mart*, 611 Fed. Appx. 322, 330 (6th Cir. 2015) (citing *AGI Realty Serv.*, 1996 WL 143465, at *4).

[16]     The Court has already overruled the Tennessee Election Officials' objections to these facts. *See supra*.

because it cannot show immediate threat of harm fails to recognize that TN NAACP presents evidence of *ongoing* harm. Because TN NAACP has shown a present ongoing harm, it does not need to also show imminent future harm to obtain declaratory or injunctive relief. *See Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020).

2. <u>Mootness</u>

Secretary Hargett and Coordinator Goins argue the part of Count Six challenging the State's blanket policy rejecting all voter-registration applications that indicated the applicant has a felony conviction is partially moot because on July 21, 2023, Coordinator Goins issued a memorandum outlining a new policy for processing voter registration applications from individuals with grace period convictions and non-infamous felonies predating January 15, 1973. (Doc. No. 180 at PageID 2869-73; Doc. No. 181 ¶¶ 73, 77; Doc. No. 157-7; Doc. No. 151-2; Doc. No. 151 at PageID # 1083-84).

Mootness addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit, so that the case-or-controversy requirement, in Article III, for federal jurisdiction is not satisfied. *Moore v. Harper*, 600 U.S. 1, 14 (2023); *Kentucky v. Yellen*, 54 F.4th 325, 340 (6th Cir. 2022) ("Whether an 'intervening circumstance' arising after a suit has been filed causes a plaintiff's asserted injury to dissipate is really a question of mootness."). The standard "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted); *Fed. Bureau of Investigation v. Fikre*, 144 S. Ct. 771 (2024) (same). The "heavy burden" of persuading the court that the challenged conduct cannot reasonably be expected to resume lies with the party

asserting mootness. *See id.* However, because it is the government that has voluntarily ceased its allegedly illegal conduct, the burden of showing of mootness is lower. *See Doe v. Univ. of Michigan*, 78 F.4th 929, 946 (6th Cir. 2023) (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)).

When considering whether challenged conduct can reasonably be expected to reoccur in evaluating defendant's assertion that case is moot, court takes into account totality of circumstances surrounding voluntary cessation. *Univ. of Michigan*, 78 F.4th at 946 (6th Cir. 2023) (citing *Speech First*, 939 F.3d at 767–68). Although courts treat cessation of the allegedly illegal conduct by government officials with more solicitude than similar action by private parties, not all government action "enjoys the same degree of solicitude[.]" *Id.* Accordingly, courts consider "the manner in which the cessation was executed" as part of the totality-of-the-circumstances analysis. *Id.*

Government action in the form of the passage of new legislation or the repeal of challenged legislation enjoys the most solicitude; this type of government action "presumptively moot[s] the case unless there are clear contraindications that the change is not genuine." *Id.* When regulatory changes are implemented with "legislative-like procedures" or "formal processes," the government "need not do much more than simply represent that it would not return to the challenged policies." *Id.* On the other hand, when government action brings about change that is "ad hoc, discretionary, and easily reversible" or requires little in the way of formal process, "significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

Additionally, courts should give the government "the same amount of solicitude when it makes a change to comply with binding precedent (even if it has done so in an ad hoc manner) as the courts give the government when it makes a change with legislative-like procedures[.]" *Univ. of Michigan*, 78 F.4th at 947–48 (citing *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at

*4 (6th Cir. Jan. 19, 2022) (litigation was moot when state supreme court declared challenged actions illegal and therefore, for the behavior to recur, the government would have to disregard the Michigan Supreme Court's interpretation of state law, which a court would not reasonably expect); *Midwest Inst. of Health, PLLC v. Whitmer*, Nos. 20-1611/1650, 2022 WL 304954, at *2 (6th Cir. Feb. 2, 2022) (same); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 843 F. App'x 707, 709–10 (6th Cir. 2021) (same)). Accordingly, "[w]hen the government has made a regulatory change in order to comply with binding precedent, the government need only represent that it does not intend to return to the previous policy." *Univ. of Michigan*, 78 F.4th at 948).

Here, Secretary Hargett and Coordinator Goins approved the new policy. (*See* Doc. No. 180-1 ¶ 4). Secretary Hargett and Coordinator Goins do not direct the court to any evidence suggesting that the Election Division would have to go through some formal process to change the policy again. *See Speech First*, 939 F.3d at 769. Nor have Secretary Hargett and Coordinator Goins produced evidence showing that the change in the Election Division's policy for processing voter registration applications from individuals with pre-1981 felony convictions was legislative, involved a legislative-like process, or that it was made in order to comply with binding precedent. Instead, Coordinator Goins declared under penalty of perjury that this policy change was "in response to ongoing discussions and deliberation with [his] staff and with legal counsel." (Doc. No. 180-1 ¶ 4). Therefore, "solicitude toward the government's cessation alone is insufficient to establish that the case is moot." *Univ. of Michigan*, 78 F.4th at 947.

The timing of Election Division's policy change also raises suspicions that its cessation is not genuine. Here, Secretary Hargett and Coordinator Goins changed the Election Division's relevant policy well after the complaint and first amended complaint were filed. "If anything, this increases the [government]'s burden to prove that its change is genuine." *Speech First*, 939 F.3d at

31

769. Moreover, Coordinator Goins "has not affirmatively stated" that he does not intend to revert back to the challenged policies. *See id*. Instead, Coordinator Goins points to his declaration that "absent a change in the applicable law or a court order, I have no intention of changing course." (Doc. No. 180-1 ¶ 10). However, "[courts] do not assume that words mean more than what they say." *See Speech First*, 939 F.3d at 769 (rejecting statement about what policy the government intended to use "presently" as "not a meaningful guarantee" that a new policy will remain the same). Finally, Secretary Hargett and Coordinator Goins' continued defense of the constitutionality of the challenged conduct informs the inquiry regarding whether the government's voluntary cessation of the conduct moots Count Six. *See id*. at 770 (citing *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). Here, Secretary Hargett and Coordinator Goins maintain that the challenged policies were lawful. (*See* Doc. No. 180 at 13 n.1 ("To be clear, Defendants in no way are conceding that the policies in place before July 21, 2023, were illegal.")).

In sum, considering the totality of the circumstances, Secretary Hargett and Coordinator Goins have not met their burden of showing that the Election Division's voluntary cessation make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. Therefore, TN NAACP's claims in Count Six will not be dismissed as moot. Nor will the Tennessee Election Officials' motion for summary judgment be granted as to Counts Five and Six on the basis that the State's challenged policy no longer exists. (*See* Tennessee Election Officials' memorandum supporting their motion for judgment, Doc. No. 151 at PageID # 1085, 1083). Because this was the sole basis for the Tennessee Election Officials' motion for summary judgment as to Count Five, (*see id*. at PageID # 1085), their motion will be denied as to that Count.

## B. Merits

As noted above, in Counts Four and Six of the First Amended Complaint, TN NAACP seeks injunctive relieve under the NVRA from Tennessee's challenged voter application registration forms and policies for processing the same. Counts Four and Six counts concern the following sections of the NVRA:

Section 20505 provides:

**(a) Form**

> (1) Each State shall accept and use the mail voter registration application form prescribed by the Federal Election Commission pursuant to section 20508(a)(2) of this title for the registration of voters in elections for Federal office.

> (2) In addition to accepting and using the form described in paragraph (1), a State may develop and use a mail voter registration form that meets all of the criteria stated in section 20508(b) of this title for the registration of voters in elections for Federal office.

> (3) A form described in paragraph (1) or (2) shall be accepted and used for notification of a registrant's change of address.

52 U.S.C.A. § 20505(a).

Section 20507(a)(1), (5) provides:

**(a) In general**

In the administration of voter registration for elections for Federal office, each State shall—

> (1) ensure that any eligible applicant is registered to vote in an election —

>> (A) in the case of registration with a motor vehicle application under section 20504 of this title, if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

33

(B) in the case of registration by mail under section 20505 of this title, if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and

(D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

\*\*\*

(5) inform applicants under sections 20504, 20505, and 20506 of this title of –

(A) voter eligibility requirements; and

(B) penalties provided by law for submission of a false voter registration applications

52 U.S.C.A. § 20507(a)(1), (5).

Section 20507(b)(1) provides:

**(b) Confirmation of voter registration**

Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office—

(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965

52 U.S.C.A. § 20507(b)(1).

Section 20508(a) specifies the role of the Election Assistance Commission:

**(a) In general**

The Election Assistance Commission –

34

(1) in consultation with the chief election officers of the States, shall prescribe such regulations as are necessary to carry out paragraphs (2) and (3);

(2) in consultation with the chief election officers of the States, shall develop a mail voter registration application form for elections for Federal office;

(3) not later than June 30 of each odd-numbered year, shall submit to the Congress a report assessing the impact of this chapter on the administration of elections for Federal office during the preceding 2-year period and including recommendations for improvements in Federal and State procedures, forms, and other matters affected by this chapter; and

(4) shall provide information to the States with respect to the responsibilities of the States under this chapter.

52 U.S.C.A. § 20508(a)

Section 20508(b) specifies the content of mail voter registration forms:

**(b) Contents of mail voter registration form**

The mail voter registration form developed under subsection (a)(2) –

(1) May require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;

(2) Shall include a statement that –

    a. Specifies each eligibility requirement (including citizenship);

    b. Contains an attestation that the applicant meets each such requirement; and

    c. Requires the signature of the applicant, under penalty of perjury;

(3) May not include any requirement for notarization or other formal authentication; and

(4) Shall include, in print that is identical to that used in the attestation portion of the application –

      i.   The information required in section 20507(a)(5)(A) and (B) of this title;

      ii.   A statement that, if an applicant declines to register to vote, the fact that the applicant has declined to register will remain confidential and will be used only for voter registration purposes; and

      iii.   A statement that if an applicant does register to vote, the office at which the applicant submits a voter registration application will remain confidential and will be used only for voter registration purposes.

52 U.S.C. § 20508(b).

    1.  <u>Count Four</u>

At issue in Count Four is whether Tennessee's State Forms comply with the NVRA's requirements to "inform … applicants of voter eligibility requirements" and to "specif[y] each eligibility requirement" on the form. 52 U.S.C. §§ 20505(a)(2), 20508(b)(2). TN NAACP argues the State Forms, (Doc. Nos. 156-12, 156-10), do not meet these requirements because they do not provide enough information to convey to eligible applicants with non-disenfranchising pre-1973 or grace-period felony convictions that their felonies do not impact their right to vote. The Tennessee Election Officials contend the State Forms "adequately notify applications about state voting eligibility requirements." The parties agree that Tennessee's State Forms do not inform all eligible applicants of whether they are in fact eligible to register to vote. They disagree as to whether the NVRA requires State Forms to include information such that all eligible applicants – even eligible applicants with felony convictions – can discern from the State Form itself whether they are eligible to register to vote.

TN NAACP, Secretary Hargett, and Coordinator Goins agree that there are no genuine disputes as to any material fact with regard to Count Four. As such, the parties agree that the following felony convictions have never disqualified a person from being eligible to vote in

36

Tennessee: (1) a felony conviction before January 15, 1973, that does not include a statement in the judgment rendering the crime "infamous;" (2) a felony conviction between January 15, 1973, and May 17, 1981; (3) a felony conviction that has been expunged; and (4) a felony conviction that is subject to judicial diversion. (Doc. No. 181 ¶¶ 2-3, 56). The parties further agree that an otherwise qualified person with a disenfranchising felony conviction who has received a pardon or has their voting rights restored, is eligible to vote in Tennessee. (*Id*. ¶ 4). Accordingly, the Tennessee Election Officials and TN NAACP agree that applicants with felony convictions who never lost the right to vote and/or who have had their rights restored are "eligible" to vote. [17]

The Court must determine, as a matter of law, whether Tennessee's State Forms and state-specific instructions on the Federal Form comply with the requirements of the NVRA. Under well-established rules of statutory interpretation, the Court begins with the language of the statute itself. *Consumer Prod. Safety Comm'n*, 447 U.S. 102, 108 (1980). Departure from the plain language of a statute is disfavored and "appropriate only in rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafter … or when the statutory language is ambiguous." *Hoge v. Honda of Am. Mfg., Inc*. 384 F.3d 238, 246 (6th Cir. 2004) (quoting *Kelley v. E.I. Dupont de Nemours & Co*., 17 F.3d 836, 842 (6th Cir. 1994)). Secretary Hargett and Coordinator Goins do not address statutory construction whatsoever and make no arguments that the statutory text at issue has a plain meaning or is ambiguous. (*See* Doc. Nos. 151, 180, 190 (making no reference to either plain meaning or ambiguity)).  TN NAACP

---

[17]    This reveals the factual inaccuracies in the Tennessee Election Officials' contentions that "the absence of a conviction for an infamous felony is a voter eligibility requirement" and that "the conviction crime and date … are underlying preconditions for eligibility[.]" (Doc. No. 180 at PageID # 2873).

37

contends the language of the statute is not ambiguous and the Court must therefore give the statute its plain meaning.[18]

The NVRA does not define the terms "inform" or "specifies," so the Court must look to the ordinary meaning of these terms at the time Congress enacted the statute. *Perrin v. United States*, 444 U.S. 37, 42 (1979); *see, e.g.*, *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) ("When called on to resolve a dispute over a statute's meaning, [courts] normally seek[] to afford the law's terms their ordinary meaning at the time Congress adopted them."). In 1993, the term "inform" was defined as "to make known: give instruction in" and "to give information: impart knowledge." Webster's Third New International Dictionary 1160 (1993). "Specify" was defined as "to mention or name in a specific or explicit manner: to tell or state precisely or in detail." *Id*. at 2187.

As noted above, the Tennessee Election Officials do not identify a plain meaning of the of terms "inform" or "specifies," argue these terms are ambiguous, or otherwise engage in the requisite legal analysis to determine the meaning of statutory language. (*See* Doc. No. 151 at PageID #1080-82; Doc. No. 180 at PageID # 2873-79). Instead, Secretary Hargett and Coordinator Goins rely on an Eleventh Circuit case for the proposition that the NVRA is a "notice statute" and submit that "[b]y specifying the eligibility requirement – namely, the absence of a disqualifying felony – and by linking to a website describing what constitutes a disqualifying felony,[19]

---

[18]    *See* Doc. No. 154 at 11 (Arguing that the NVRA "plainly means to supply potential voters with enough accurate information to understand their own eligibility to register and vote"); Doc. No. 192 at 5 (arguing the Court should not follow *Thompson v. Sec. of State for the State of Alabama*, 65 F.4th 1288 (11 Cir. 2023), because of its "unpersuasive" approach to statutory interpretation and because "when the terms of a statute are plain and unambiguous, as here, the 'inquiry begins with the statutory text, and ends there as well.'").

[19]    The website contains a list of crimes that permanently disqualify an individual from voting. See Tennessee Secretary of State, https://sos.tn.gov/restoration. It contains an explanation of the procedure for restoring an individual's voting rights when lost due to a felony conviction after May 18, 1981. *Id*. It states that individuals with felony convictions between January 15, 1973, and May 17, 1981, are eligible to vote, but that the Election Division must verify that the individual's conviction occurred during that period. *Id*.

Tennessee's current State Form puts applicants on notice about who qualifies to successfully register to vote," and nothing more is required. (Doc. No. 151 at PageID# 1082 (citing *Thompson v. Sec. of State for the State of Ala*. 65 F.4th 1288, 1309 (11th Cir. 2023); *see also* Doc. No. 180 at PageID # 2879 ("Tennessee's voter registration application complies with the NVRA because it sufficiently notifies applicants that the absence of a conviction for an infamous felony is a voter eligibility.").[20] Thus, the Tennessee Election Officials appear to assert that the current State Form satisfies the NVRA because it includes a link to the Tennessee Secretary of State's website "where the reader can find information necessary to evaluate one's eligibility." (Doc. No. 180 at PageID # 2874-78; Doc. No. 151 at PageID # 1081). Stated another way, the Tennessee Election Officials argue the information and instructions provided on the Tennessee Secretary of State's website "specify the eligibility requirement related to felony convictions and inform applicants that certain felons are ineligible to vote …in compliance with the NVRA." (Doc. No. 180 at PageID # 2874; *see e.g.*, *id*. at PageID # 2879 ("But including all the information listed on the Secretary of State's website [on the State Form] would result in an application of unwieldly length and unusable format.")).

And while Secretary Hargett and Coordinator Goins fail to argue a plain meaning of the statutory terms at issue in Count Four – "inform" or "specifies" – they rely on out of circuit authority to argue what these terms do *not* mean. First, the Tennessee Election Officials argue that "Section 20508(b)'s 'specif[ication]' requirement does not mandate that states list *every*

---

It also provides a list of crimes that resulted in the loss of the right to vote prior to January 15, 1973, but includes a disclaimer stating, "Even if you were convicted of a crime listed above, you still have the right to vote if you can show that at the time of your conviction the judge did not render you 'infamous,' if your conviction was reversed on appeal or expunged, if you received a full pardon, or if you have your voting rights restored." *Id*.

[20]     The Tennessee Election Officials state that "functionally similar language is provided as a state-specific instruction on the Federal Form." (Doc. No. 180 at PageID# 2874).

39

disqualifying felony or exhaustively describe the rules underlying each eligibility of Tennessee's four eligibility requirements." (Doc. No. 151 at PageID # 1082 (citing *Thompson*. 65 F.4th at 1308-09)). Second, Secretary Hargett and Coordinator Goins assert that "every disqualifying felony" and "describing the rules underlying each of Tennessee's four eligibility requirements" would make the forms "unworkable," "unwieldy and unnecessarily complicated." (*Id*. (citing *League of Women Voters of Florida, Inc. v. Byrd*, No. 23-cv-165 (N.D. Fla. Jul. 10, 2023); *see also* Doc. No. 180 at PageID# 2879 ("The NVRA does not prescribe a voter-registration application composed of a comprehensive list of every felony conviction that results in the loss of the right to vote, nor does it require that the application contain a primer on voting rights restoration."")).[21]

TN NAACP submits that the plain meaning of "inform applicants … of voter eligibility requirements" in Section 20507(a)(5)(A) is "to supply potential voters with enough accurate information to understand their own eligibility to register and vote." (Doc. No. 154 at PageID # 2290). It argues that the requirement that the forms "specif[y] each eligibility requirement" means that the eligibility requirements must be named or stated "explicitly or in detail." (Doc. No. 154 at PageID # 2291 (quoting *Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010) (quoting Websters New Collegiate Dictionary 1116 (1974)). In sum, TN NAACP submits that the plain meaning of "specifies" as used in Section 20508(b)(2)(A) is to state each eligibility requirement on the registration forms in a manner that enables applicants with past convictions to determine their eligibility. (Doc. No. 154 at PageID # 2291).

TN NAACP argues that Tennessee's voter registration forms do not comply with the NVRA requirement to "inform applicants … of voter eligibility requirements" and to "specif[y] each eligibility requirement" because the forms do not state that citizens with felony convictions

---

[21] This is an argument against a straw man because TN NAACP does not argue the State Form should list any disqualifying felonies or explain the process for restoration of voting rights.

in the grace period fully retain their right to vote or that citizens with non-infamous pre-1973 convictions are likewise eligible.[22] (Doc. No. 182 at PageID # 2951 (citing Doc. Nos. 156-10, 156-11, 156-12, 156-13, 156-14)). TN NAACP also notes that the current version of the State Form does not specify that felony convictions are no longer disqualifying upon the restoration of the right to vote and that earlier iterations of the state form that are still in use provide only an incorrect instruction that to be eligible "you must not have been convicted of a felony, or if you have, your voting rights must have been restored." (*Id*. at PageID # 2951-52 (citing Doc. Nos. 1-2, 156-10, 156-13, 156-14)). TN NAACP contends "[t]his failure by Tennessee to specify, in detail, on its voter registration forms when voters with felony convictions are eligible to vote, and its provision of inaccurate information, contravene the NVRA's requirement to 'inform applicants … of voter eligibility requirements.'" (Doc. No. 182 at PageID # 2952).

As it must, the Court begins its consideration of this issue with statutory construction, which, as the Court noted above, was not thoroughly briefed by TN NAACP and was not briefed whatsoever by the Tennessee Election Officials. The Court is not persuaded that the statute's use of the term "specify" is unambiguous. TN NAACP asserted the dictionary definition, which is to "name or state explicitly or in detail." *See Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010) (quoting Websters New Collegiate Dictionary 1116 (1974)). But this definition, which contains more than one "or," does not resolve the question presented here. Secretary Hargett and Coordinator Goins appear to argue that the state complies with the NVRA if it names the voter eligibility requirements, while TN NAACP focuses on the part of the definition that requires detail.

---

[22] TN NAACP asserts these deficiencies apply to the current version of the State Form and the Tennessee-specific instructions on the Federal Form, and except for the omission regarding restoration of voting rights, to prior versions of the State Form that are still in circulation and use. (Doc. No. 182 at PageID # 2951). TN NAACP agrees that certain prior versions of the State Form specified that citizens with felony convictions are not ineligible to vote if their voting rights had been restored. (*Id*.).

In this sense the statute is ambiguous concerning what is means to "specif[y] each eligibility requirement." Is it sufficient, as Secretary Hargett and Coordinator Goins appear to contend, to merely list or provide notice of the voter eligibility requirements, or, as TN NAACP argues, is a greater level of detail required? The parties have not provided adequate briefing for the Court to resolve the plain meaning of the word "specify."

As stated above, Secretary Hargett and Coordinator Goins provide no briefing on the issue of statutory construction, and the two cases cited by the Tennessee Election Officials do not aid the Court on this issue. In *Thompson v. Sec. of State for the State of Ala*., the court merely notes that the verb "specifies" is not defined by the NVRA, and then finds that the plaintiff's argument that the NVRA requires the state to list every disqualifying state, federal, and foreign felony on its voter registration forms is an "absurd, unworkable, and internally inconsistent interpretation of §20508(b)(2)(A)." 65 F.4th 1288, 1308 (11th Cir. 2023). That court's brief consideration of the claim does not engage in any analysis of statutory construction, let alone consider whether the statute has a plain meaning or is ambiguous. *Id*. at 1308-09. Moreover, the relief requested by the *Thompson* plaintiff, which apparently would have included a lengthy list of every federal, state, and foreign felony deemed to involve moral turpitude, is not comparable to the limited information TN NAACP seeks to have included on the State Form.

The second case cited by the Tennessee election officials, *League of Women Voters of Florida, Inc. v. Byrd*, Case No. 4:23-cv-165-AW-MAF (N.D. Fla. Jul. 10, 2023) (Westlaw cite not available), is also not helpful on the issue of statutory construction. In that case, the court considered whether the NVRA required the voter registration form, which provided that convicted felons could not register to vote until their right to vote is restored, was required to specify the various means by which a felon may have his or her voting rights restored. The court concluded

42

that NVRA did not require such specificity because the eligibility requirement was simply that voting rights had been restored. The level of specificity on this requirement is not at issue in this case.[23] The Florida District Court did not consider the level of specificity required for the eligibility requirement regarding felony convictions or engage in meaningful statutory construction on that issue.

TN NAACP has largely assumed the terms of the statute are plain and unambiguous, with the caveat that "to the extent th[e] Court perceives any ambiguity in the NVRA's mandate to specify and inform or seeks guidance about what level of specificity is required, it must look to the statutory context. The NVRA's express purposes, surrounding provisions, and legislative history all indicate that 'to specify' means to include information on the face of the form sufficient to enable applicants (including those with past convictions) to easily and privately determine their eligibility." (Pl. Reply to Def. Motion for Summary Judgment, Doc. No. 192 (citing Pl. Mem. in Support of Pl. Motion for Summary Judgment, Doc. No. 154 at 10-11)). TN NAACP points to House and Senate reports noting the importance that applicants "be advised of the voting requirements," that "*all* registration requirements should be set forth in the application," and "the importance of the voter eligibility specifications for maintaining accurate lists of only eligible voters and preventing fraud." (Doc. No. 154 at 10-11 (emphasis provided by TN NAACP) (citing S. Rep. 103-6 at 24; H.R. Rep. 103-9 at 7-8). But the cited legislative history, while perhaps instructive of individual legislators' intentions, does not allow the Court to determine that TN NAACP's requested level of specificity is required by the terms of the NVRA.

---

[23] The Court notes, however, that *League of Women Voters of Florida* appears to support TN NAACP's argument that the form must state that felons whose voting rights have been restored are eligible to register to vote.

Nevertheless, the Court is not deciding between two competing proposals for the language on Tennessee's State Forms. Rather, the Court must determine whether Tennessee's State Forms, (Doc. Nos. 156-12, 156-10), comply with the NVRA's requirements to "inform … applicants of voter eligibility requirements" and to "specif[y] each eligibility requirement." Whatever level of specificity the NVRA requires, there is no question in the Court's mind that voter applicants are not "informed" of the voter eligibility requirements unless the information presented on the form is accurate and not misleading. TN NAACP has identified two statements / omissions in this regard. First, the prior version of the form states, "you must not have been convicted of a felony, of if you have, your voting rights must have been restored." (*See* Doc. No. 156-12). As TN NAACP points out, this statement is overly inclusive, as not all felons who have not had their voting rights restored are ineligible to vote. As a result, prospective voters who have been convicted of a non-disqualifying felony would be deterred from registering to vote.

The revised State Form attempts to correct this over-inclusiveness by stating that an applicant's eligibility to register and vote "depends upon the crime you were convicted of and the date of your conviction." (Doc. No. 156-10). The form then provides a website that has additional information, including information about voting rights restoration. (*Id*. (referring applicants to Tennessee Secretary of State, https://sos.tn.gov/restoration)). But the form itself does not inform applicants that felons who have had their voting rights restored, irrespective of the crime and date of conviction, are not disqualified. Like the misleading statement in the first form, this omission could deter eligible voters.

For the foregoing reasons, the Court finds that Tennessee's State Forms, (Doc. Nos. 156-12, 156-10), do not comply with the NVRA's requirement under Section 20507(a)(5)(A) to "inform … applicants of voter eligibility requirements." Accordingly, TN NAACP's motion for

summary judgment will be GRANTED as to this part of Count Four. The Court further finds that the parties have not provided sufficient briefing for the Court to determine what level of specificity is required under Section 20508(b)(2)(A). Accordingly, both sides' motions for summary judgment will be DENIED without prejudice as to this part of Count Four.

2. Count Six

At issue in Count Six is Tennessee's policy of rejecting valid Federal Forms and State Forms timely submitted by eligible applicants with felony convictions and requiring these eligible applicants to provide additional documents as further proof of their eligibility. TN NAACP, Secretary Hargett, and Coordinator Goins agree that there are no genuine disputes as to any material fact with regard to Count Six. (*See* Doc. No. 181 ¶¶ 2-4, 37-68). As such, the parties agree to the foregoing facts:

An otherwise qualified person with a grace period felony conviction and/or pre-1973 non-infamous felony conviction never lost their right to vote as a result of such a conviction. (*Id*. ¶¶ 2-3). Expunged felony convictions and felony convictions subject to judicial diversion also do not result in the loss of the right to vote in Tennessee. (*Id*. ¶ 56). Additionally, an otherwise qualified person with a disenfranchising felony who has received a pardon or has their voting rights restored, is eligible to vote in Tennessee. (*Id*. ¶ 4).

Counties in Tennessee receive and retain "Felon files" from various sources, including court orders, U.S. Attorneys, the Tennessee Department of Corrections, the Election Division, the state felon list, other county election officials, clerks of court, and jury coordinators, notifying them of new state, out-of-state, and federal felony convictions as well as all convictions for a person going back in time, including the date of judgment, conviction, or sentence. (*Id*. ¶¶ 60-62). Under the Election Division's policy, county election commissions check every registration

45

applicant indicating a felony conviction against their Felon files. (*Id*. ¶ 59). County election officials routinely rely on information in Felon files to purge voters with felony convictions from the voter roles as part of their regular voter-roll maintenance. (*Id*. ¶ 64). Additionally, county election officials can confirm an applicant's eligibility to vote by contacting the Election Division and/or other county election officials. (*Id*. ¶ 66).

Tennessee's policy from 2014 to at least July 21, 2023, directed county election officials to reject registration applications indicating an otherwise qualified person has: (1) a grace period felony conviction, (2) a pre-1973 non-infamous felony conviction, (3) only expunged felony convictions, (4) only convictions subject to judicial diversion, (5) received a pardon for any disenfranchising conviction, and/or (6) has had their voting rights restored, and to require such applicants to file a copy of their respective judgement, conviction papers, court documentation of expungement, judicial diversion, receipt of a pardon, and/or restoration of voting rights. (*Id*. ¶¶ 43-45, 51-52, 54-58).[24]

In Count Six, TN NAACP claims Tennessee's challenged policy violates the NVRA because it imposes an unnecessary requirement in a non-uniform and discriminatory manner and does not ensure that any eligible applicant is registered if their valid registration form is timely received or "accept and use" the Federal Form. (Doc. No. 154 at PageID # 2294-98 (citing 52 U.S.C. §§ 20507(a)(1), (b)(1), 20505(a)(1), 20508(b)(1)). Secretary Hargett and Coordinator

---

[24]     As previously noted, on July 21, 2023, Tennessee changed its policy to direct county election officials to process registration applications indicating an otherwise qualified person has a grace period felony conviction or a pre-1973 non-infamous felony conviction. (Doc. No. 181 ¶¶ 75,77).

Goins deny that Tennessee's challenged policy, with respect to State Forms, violates the NVRA. (Doc. No. 151 at PageID # 1084).[25]

TN NAACP points to the Supreme Court's interpretation of "valid" in this context to mean "a completed copy of the form." *See ITCA*, 570 U.S. 1, 12 (2013). It argues that Tennessee's challenged policy does not "ensure" registration of eligible voters because it necessarily sweeps multiple categories of facially eligible voters with past felony convictions into the rejection pool. TN NAACP argues the additional documentation required of some applicants under Tennessee's challenged policy is unnecessary because the attested information on the State Form – crime(s) and date and place of conviction and whether they have received pardon or had voting rights restored – is plainly sufficient for the State to assess whether the applicant has a grace-period conviction or a pre-1973 conviction of a crime that could not have rendered them ineligible to vote and/or whether the applicant's voting rights have been restored from a pardon or otherwise. (Doc. No. 154 at PageID # 2301-02).[26]

TN NAACP further argues that, even if it were necessary for state election officials to look beyond the attested information in the voter registration form, the undisputed material facts establish that county and state election officials already have access to information sufficient to assess eligibility, which therefore obviates the claimed need for applicants to provide

---

[25]    Tennessee Election Officials do not respond to TN NAACP's argument for summary judgment that Tennessee's policy of requiring applicants using the Federal Form to submit documentation proof of voting rights restoration violates Section 20505(a)(1) of the NVRA. (Doc. No. 154 at PageID # 2300-01; Doc. No. 180 at PageID # 2882)). Accordingly, this part of TN NAACP's motion will be granted as unopposed.

[26]    TN NAACP also cites to *Fish v. Kobach* where the Tenth Circuit interpreted the necessity provision under Section 20504(c)(2) "as establishing the attestation requirement in every case as the presumptive minimum amount of information necessary for a state to carry out its eligibility-assessment and registration duties." 840 F.3d 710, 738 (10th Cir. 2016). The Tennessee Election Officials respond that *Fish* is distinguishable because it addressed Section 20504(c)(2), which is not at issue in this case. (*See* Doc. No. 180 at PageID # 2883-84).

documentation. (Doc. No. 154 at PageID # 2302-05 (citing Doc. No. 181 ¶¶ 59-68)). Finally, TN NAACP argues Tennessee's challenged policy imposes unjustified burdens and barriers to registration on a class of applicants – those with prior felony convictions – that do not apply to other classes of applicants. (Doc. No. 154 at PageID # 2305-06).

Secretary Hargett and Coordinator Goins do not dispute that applicants with felony convictions who never lost the right to vote or who have had their rights restored are "eligible" to vote. The Tennessee Election Officials do not respond to TN NAACP's argument that "valid" in this context means "a completed copy of the form." Secretary Hargett and Coordinator Goins do not dispute that Tennessee's challenged policy ensures that eligible applicants will be rejected. Nor do the Tennessee Election Officials rebut TN NAACP's contentions that: (1) the information attested to on the State Form is sufficient for the State to verify whether the applicant has a grace-period conviction or a pre-1973 conviction of a crime that could not have rendered them ineligible to vote and/or whether the applicant's voting rights have been restored from a pardon or otherwise, and (2) that, even if it were necessary for county and state election officials to look beyond the attested information, they already have access to information sufficient to confirm an applicant's eligibility. Additionally, Secretary Hargett and Coordinator Goins do not dispute that Tennessee's challenged documentation policy imposes a barrier to registration to vote in elections for Federal office on a class of applicants – those with felony convictions – that does not apply to other classes of applicants.

Instead, Tennessee Election Officials submit that Tennessee's policy of rejecting State Forms from certain applicants until they submit certain documentation does not violate the NVRA because (1) in *ITCA*, 570 U.S. at 12, the Supreme Court said that State Forms "may require information the Federal Form does not," and (2) Tennessee "determined that it needs

48

documentation from [certain] applicants … so that the State may assess the eligibility of the applicant and administer voter registration and other parts of the election process." (Doc. No. 151 at PageID # 1084; Doc. No. 180 at PageID # 2881-82; Doc. No. 190 at PageID # 3200-01).

While Secretary Hargett and Coordinator Goins are correct that in *ITCA* the Supreme Court stated that State Forms "may require information the Federal Form does not," this statement does not stand for the proposition that states may require information on their State Forms *carte blanche*, as the Tennessee Election Officials appear to suggest.[27] Section 20505(a)(2) authorizes states to develop and use a mail in voter registration form so long as it "meets all the criteria stated in section 20508(b) of this title for the registration of voters in elections for federal office." The Federal Form must also meet all the criteria stated in Section 20508(b). *See* §§ 20505(a)(1), 20508(a)(2), 20508(b). The criteria stated in Section 20508(b) are as follows:

> (1) May require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;
>
> (2) Shall include a statement that –
>
>   a.  Specifies each eligibility requirement (including citizenship);
>
>   b.  Contains an attestation that the applicant meets each such requirement; and
>
>   c.  Requires the signature of the applicant, under penalty of perjury;

---

[27]     In *ITCA*, the Supreme Court answered the sole question of whether Arizona's law requiring Federal Form applicants to produce documentation proving their citizenship conflicted with Section 20505(a)(1)'s mandate that States "accept and use" the Federal Form. *ITCA*, 570 U.S. at 15. Neither Arizona's State Form nor its policies for processing its State Form were at issue in *ITCA*. As a result, *ITCA* did not involve any rulings as to whether Arizona's State Form or policy for processing the same were in conflict with any provision of the NVRA.

49

    (3) May not include any requirement for notarization or other formal authentication; and

    (4) Shall include, in print that is identical to that used in the attestation portion of the application –

        i.  The information required in section 20507(a)(5)(A) and (B) of this title;

        ii.  A statement that, if an applicant declines to register to vote, the fact that the applicant has declined to register will remain confidential and will be used only for voter registration purposes; and

        iii.  A statement that if an applicant does register to vote, the office at which the applicant submits a voter registration application will remain confidential and will be used only for voter registration purposes.

Because State Forms must meet all of the criteria stated in Section 20508(b), *see* Section 20505(a)(2), and one of the criteria stated in Section 20508(b) is that the form "may require only" information "as is necessary to enable the appropriate State election official to assess the eligibility of the applicant," *see* Section 20508(b)(1), it follows that a State Form "may require only" information "as is necessary to enable the appropriate State election official to assess the eligibility of the applicant.'" As states do not have uniform requirements for persons to register to vote, this necessarily means that State Forms "may require information the Federal Form does not."

Thus, Secretary Hargett and Coordinator Goins are correct that State Forms may require information the Federal Form does not. *see ITCA*, 570 U.S. at 12; *see also McKay v. Thompson*, 226 F.3d 752, 755-56 (6th Cir. 2000) (Tennessee could require applicants to provide social security number on registration form); *Young v. Fordice*, 520 U.S. 273, 286 (1997) (State has discretion to decide whether State Form tells applicants that registration counts only for federal elections).[28]

---

[28]     Neither *Young* nor *McKay* concerned or contemplated a requirement for applicants to provide documentation beyond a voter registration form itself.

However, the Tennessee Election Officials are incorrect in suggesting that this concept – of being able to require information the Federal Form does not – means Tennessee's challenged policy is compliant with compliant with Sections 20507(a)(1), (b)(1), 20508(b)(1) of the NVRA.

The Tennessee Election Officials' argument that Tennessee determined it needs documentation to assess the eligibility of applicants with felony convictions appears to advance Justice Alito's position in his dissent in *ITCA* – that the NVRA "lets the States decide for themselves what information 'is necessary.'" 570 U.S. at 46-47 (Alito, J., dissenting) (quoting statutory text currently found at 52 U.S.C. § 20508). The majority in *ITCA* rejected such an understanding of federal election regulation. 570 U.S. at 12-15. The Court need not reach the legal merits of this argument in the present case because Secretary Hargett and Coordinator Goins fail to direct the Court to any evidence in the record of Tennessee making such a determination.

As it is undisputed that county and state election officials have the information the State says it needs to assess an applicant's eligibility, Tennessee's challenged documentation policy does not comply with the NVRA's prohibition against requiring unnecessary information. 52 U.S.C. § 20508(b)(1). Tennessee's challenged policy also fails to comply with Sections 20507(a)(1) and (b)(1) given that it is undisputed Tennessee's challenged documentation policy imposes an unnecessary requirement in a non-uniform manner that does not ensure eligible applicants are registered if their valid registration form is timely received. Accordingly, for the foregoing reasons, TN NAACP's motion for summary judgment will be granted as to Count Six and the Tennessee Election Officials' motion for summary judgment will be denied as to Count Six.

An appropriate Order shall enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

51