**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

<table>
<tr>
<td>

TENNESSEE CONFERENCE of the NATIONAL
ASSOCIATION for the ADVANCEMENT of
COLORED PEOPLE, et al.,

Plaintiffs,

   v.

WILLIAM LEE, in his official capacity as Governor of
the State of Tennessee, et al.,

Defendants.

</td>
<td>

Civil No. 3:20-cv-01039

JUDGE CAMPBELL
MAGISTRATE JUDGE
FRENSLEY

</td>
</tr>
</table>

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY
MOTION FOR A STAY OF PERMANENT INJUNCTION PENDING APPEAL**</u>

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

BACKGROUND ......................................................................................................1

LEGAL STANDARD.................................................................................................4

LEGAL ARGUMENT ...............................................................................................5

  **I.**   Defendants Suffer No Injury.........................................................................6

  **II.**  Defendants Are Unlikely to Succeed on the Merits of their Appeal. ................9

      a.  Tennessee NAACP Has Direct Organizational Standing. .............................9

      b.  This Court Did Not Err in Its Voluntary Cessation Analysis, and This Claim Is Not Moot. ...........................................................................................11

      c.  Defendants' Documentation Policy Does Not Comply with the NVRA....................12

  **III.** A Stay Would Cause Substantial Harm to Others and Would Not Serve the Public Interest. .........................................................................................13

  **IV.** *Purcell v. Gonzalez* Supports Denial of a Stay and Does Not Alter the Basic Analytical Framework as to a Stay. .................................................................15

  **V.**  In Denying a Stay, Plaintiffs Respectfully Request This Court Confirm for Defendants the Court's Order Permanently Enjoining Defendants as to Claim VI. .........16

CONCLUSION.........................................................................................................18

CERTIFICATE OF SERVICE ..................................................................................20

# INTRODUCTION

Plaintiff Tennessee NAACP respectfully submits this response in opposition to Defendants Secretary of State Tre Hargett and Coordinator of Elections Mark Goins' Emergency Motion for a Stay of Permanent Injunction Pending Appeal ("Motion"). Because this extraordinary request is not warranted in this case, Defendants' Motion should fail. Defendants have alleged *no* irreparable harm—claiming only burden due to a "requirement" that is in fact *not* part of the injunctive relief ordered by this Court. Nor have Defendants shown a likelihood that they will succeed on the merits on appeal, as none of their rehashed arguments cast doubt on this Court's well-reasoned opinion. In contrast to the lack of harm to Defendants from the nonexistent injunctive burden they cite, Plaintiff Tennessee NAACP and disenfranchised voters will be harmed if Defendants are permitted to continue violating the law through the 2024 election. Defendants misapprehend the *Purcell* doctrine, which counsels against conflicting court orders that will result in voter confusion: *Purcell* in fact countenances *in favor of* maintenance of the Court's injunction here.

Defendants' Motion displays a misunderstanding of this Court's injunctive relief order issued on June 5, 2024. Plaintiff respectfully requests that this Court deny Defendants' Motion and, in doing so, clarify for Defendants the requirements of this Court's June 5 order—confirming that the Order does not require Defendants to distribute updated voter registration forms but rather merely to process existing voter registration forms and register individuals to vote in accordance with the National Voter Registration Act.

# BACKGROUND

Plaintiffs filed their complaint against Defendants in this case on December 3, 2020. *See* Doc. 1. In their Complaint, Plaintiffs alleged that Defendants' failure to administer a functional rights restoration system denies Plaintiffs, and those similarly situated, their statutory right to a

1

certificate of restoration ("COR") and their constitutional right to vote without procedural due process in violation of the Fourteenth Amendment (Counts 1-2); that Defendants' application of the COR statutes has created a system where similarly situated Tennesseans —convicted of the same crime and who have served the same sentence and met their relevant legal financial obligations— may be granted or denied access to the right to vote based solely on the county of their felony conviction violated the Equal Protection Clause of the Fourteenth Amendment (Count 3); that Tennessee's paper and online voter registration forms violate the National Voter Registration Act's (NVRA) requirement to notify applicants with prior felony convictions of the eligibility requirements (Count 4); and that Tennessee's practice of rejecting all registration forms on which the applicant affirmed that they have a felony conviction—even for an applicant who never lost their right to vote or had the right restored—violates the NVRA and the First and Fourteenth Amendments (Count 5-6).

On December 20, 2020, Defendants moved to dismiss Plaintiffs' Complaint. Doc. 24. On March 30, 2022, this Court granted in part and denied in part Defendants' Motion to Dismiss. granting Defendants' Motion as to Count 5 without prejudice. Docs. 83-84. On October 20, 2022, Plaintiffs filed their Amended Complaint. Doc. 102. Discovery was conducted in this case and closed on May 28, 2023. Docs. 125, 128.

On Friday, July 21, 2023, Plaintiffs learned from public reporting that Defendant Goins had that day issued guidance to county election officials, U.S. Probation and Paroles offices for Tennessee-based offices, the Tennessee Department of Corrections, the Governor's office, and county court clerks changing his interpretation of the State's requirements for individuals with felony convictions to restore their voting rights, purportedly based on his reading of the Tennessee Supreme Court's June 29, 2023 decision in *Falls v. Goins*, 673 S.W.3d 173 (Tenn. June 29, 2023).

Defendant Goins's memorandum also announced changes to the procedure for issuing CORs and to the COR form itself. *See* Doc. 151-5. Under the new procedures, Defendants refuse to issue CORs to otherwise eligible applicants unless they also "[h]ave been pardoned by a Governor, U.S. President, or other appropriate authority of a state or have had full rights of citizenship restored as prescribed by law." Doc. 151-5 at 1.

On August 2, 2023, the Parties filed cross motions for summary judgment as to Counts 4 and 6. Docs. 150, 153. Defendants also moved for summary judgment as to Counts 1, 2, 3, and 5. *Id.* As a result of the July 2023 changes, on August 12, 2023, Plaintiffs sought relief under Fed. R. Civ. P. 56(d) to reopen discovery on Counts 1-3 and suspend their deadline for responding to Defendants' Motion for Summary Judgment as to Counts 1-3. Doc. 172. The Court granted Plaintiffs' Motion, Doc. 179, and the parties are still briefing Defendants' Motion for Summary Judgment on Counts 1-3. On April 18, 2024, this Court granted Plaintiff Tennessee NAACP's Motion for Summary Judgment on Count 4 in part and Count 6 in full, and denied Defendants' Motion for Summary Judgment on Count 6. Doc. 222.

After granting summary judgment in favor of Plaintiff, this Court ordered the Parties to propose an injunction which would comply with the Court's summary judgment order on Count 6. Doc. 222. Because the Parties could not agree on a proposed injunction, the Court requested proposals from each Party and objections to each Party's proposals. Doc. 229. On June 5, 2024, this Court entered a permanent injunction against Defendants on Count 6. The injunction requires that Defendants:

> a. Shall process valid, timely mail in voter registration forms developed pursuant to Sections 20505(a)(2) or 20508(a)(2) of the NVRA submitted by individuals with prior felony convictions who are otherwise eligible to vote; and
>
> b. Shall register individuals with prior felony convictions who submit valid, timely mail in voter registration forms developed pursuant to Sections 20505(a)(2) or

20508(a)(2) of the NVRA absent credible information establishing that they are ineligible to vote.

Doc. 237 at 2-3. The Court further required Defendants to issue guidance explaining the above, and to provide at least one live training regarding the acceptance of facially eligible voter registration forms for people with prior felony convictions. Doc. 237 at 3. On June 7, 2024, Defendants filed a Motion to Stay pending appeal of this Court's order on Count 6. Doc. 243 (Mot.). This Response follows.

## LEGAL STANDARD

As this Court has previously explained in this litigation, "[a] stay is not a matter of right, but rather is an exercise of judicial discretion," Doc. 141 at 2 (quoting *Ohio State Conf. of NAACP v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014)), and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Doc. 141 at 2 (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). In evaluating a motion to stay pending appeal, the Court "balance[s] four factors":

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

Doc. 141 at 2 (quoting *Mich. State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 661 (6th Cir. 2016)).

Indeed, "[a] stay is an intrusion into the ordinary processes of administration and judicial review," and a "stay is not a matter of right, even if irreparable injury might otherwise result." *Hosp. Authority of Metropolitan Gov't of Nashville & Davidson Cty., Tenn. v. Momenta Pharms., Inc.,* No. 3:15-CV-01100, 2019 WL 5305506 at *1 (M.D. Tenn. Oct. 21, 2019) (internal citations and quotation marks omitted). *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam), does not alter

this basic analysis. As the Sixth Circuit has explained, under *Purcell* courts "consider the potential for confusion coming from a change in election rules on the eve of an election," but "this consideration . . . is neither dispositive nor establishes a presumption against enjoining election rules close to election day." *Priorities USA v. Nessel*, 978 F.3d 976, 985 n.3 (6th Cir. 2020).

## LEGAL ARGUMENT

Defendants have not met, and cannot meet, the burden of demonstrating that a stay is warranted. At the outset, Defendants have manufactured urgency in their request to this Court, despite prior representations that their current practices already align with the Court's relief. Doc. 150 at ¶¶ 4-6; Doc. 151 at PAGEID# 1058-59, 1067; Doc. 180 at PAGEID# 2869-70. The sole irreparable injury that Defendants allege is not even required by the terms of the injunction. Defendants have not introduced even serious questions going to the merits, much less the higher degree of likelihood of success on the merits required where—as here—a much lesser degree of irreparable injury is alleged. In contrast to Defendants' lack of irreparable harm and lack of likelihood of success on the merits, staying the injunction would cause irreparable harm and contravene the public interest by leaving in place Defendants' procedures that fail to register eligible voters who seek such registration, in violation of federal law.

Relatedly, *Purcell* supports denial of Defendants' motion as a conflicting court order, and is certainly not *carte blanche* for election administrators to leave in place unlawful policies. Plaintiffs filed this case one month after the last presidential election and now, after years of Defendants' delays, Defendants seek to justify leaving in place their unlawful procedures disenfranchising Tennessee voters by claiming that it is too close to *this* election to comply with the law. Defendants' Motion should be denied.

## I.    Defendants Suffer No Injury.

Defendants fail to show that they would suffer *any* injury without a stay, much less an irreparable injury. In considering this prong of the stay inquiry, "courts 'generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided.'" *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, No. 1:19-cv-133, 2023 WL 3004148 at *3 (S.D. Ohio Apr. 18, 2023) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). Here, Defendants have failed to establish each factor.

In fact, Defendants' sole claim to irreparable harm justifying a stay of a permanent injunction pending appeal is plainly no harm whatsoever. Defendants argue that "[a]t minimum, a stay is warranted to the extent that the permanent injunction requires the State to implement changes in the middle of the 2024 election cycle." Mot. at 1. Despite speaking generally of "changes," however, Defendants in fact allege only a single purported change to 2024 election administration: Defendants claim that the permanent injunction "will require the State to revise, print, and distribute updated state voter-registration forms." *Id.* at 2.

This is simply not true. This Court enjoined Defendant Tennessee Election Officials "from enforcing, applying, or implementing" their practice of "rejecting valid, timely submitted mail in voter registration forms developed pursuant to Sections 20505(a)(2) or 20508(a)(2) of the National Voter Registration Act" and "requiring the applicant to provide additional documentary proof of eligibility before being placed on the voter rolls." Doc. 237 at 2. Accordingly, Tennessee Election Officials "[s]hall process valid, timely mail in voter registration forms developed pursuant to Sections 20505(a)(2) or 20508(a)(2) of the NVRA submitted by individuals with prior felony convictions who are otherwise eligible to vote" and "[s]hall register individuals with prior felony

6

convictions who submit" such "valid, timely" forms "absent credible information establishing that they are ineligible to vote." Order at 2-3. The injunction, by its plain terms, does not require Tennessee election officials to revise, print, and distribute updated state voter-registration forms. Instead, state officials must process and register individuals who submit such forms "absent credible information establishing that they are ineligible to vote." *Id.* at 3. This Court's Order directing a response to Defendants' Motion further affirms "that the injunction does not require the State to make any changes to its voter registration forms." Doc. 245 at 1. Because Defendants are only *required* under the injunction to process existing forms and register individuals to vote after they have filled out those forms, the sole irreparable harm that they allege under the injunction—revising, printing, and distributing updated forms—is fiction.[1]

Defendants' position that a new voter registration form would be required is further belied by their prior representations. In their summary judgment opposition, Defendants argued that Plaintiff's claim as to Count 6 was moot because Defendants' July 2023 memo clarified that county election officials should not reject the applications of individuals (1) "whose only felony convictions occurred between January 15, 1973, and May 17, 1981," or (2) whose "only felony convictions occurred before January 15, 1973, and which could not have rendered the felon infamous." *See* Doc. 180 at 12-13. In other words, Defendants previously claimed they were *already doing* the bulk of what this Court's order on Count 6 now requires of them. *See* Doc. 237 at 3.

Despite these prior assertions to the Court, Defendants now claim that the Court's order "saddles [the state] with an untold amount of work." Mot. at 3. But Defendants cannot have it both

_____

[1] As Defendants acknowledge, a future injunction upon resolution of Count 4 may require changes to the voter registration form to facilitate registration of voters with prior convictions, but this injunction does not.

ways. The Court should decline to countenance Defendants' about-face and take them at their previous word: directing county election officials to not reject all applications indicating a felony conviction is not an untenably burdensome departure from current practice.

Further, to the extent that Tennessee Election Officials do not wish to use current state voter registration forms in the upcoming 2024 election, there is an easily administrable solution: Tennessee residents may register to vote using the federal voter registration form. 52 U.S.C. §§ 20505(a)(1), 20508(a)(2); *see* Doc. 221 (Mem. Op.) at 6, Doc. 237 at 2-3.

Notably, in all Defendants' complaints about the costs of complying with the Court's order, they have not offered a single reason why compliance with the Court's order would require creating a new voter registration form. Moreover, Defendants have not identified in their motion *any* evidence or made *any* specific claims in their motion as to the amount of time, expense, or other administrative burden involved in accomplishing this task.[2] In any event, money does not form a basis for irreparable injury. *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019) ("[M]oney damages are not irreparable."). And Defendant Goins' declaration provides no specifics or description of any *irreparable* harm that would result from the devotion of staff time to the project, or anything else related to compliance with the Court's order.

Defendants have plainly not carried their burden to demonstrate a likely substantial injury absent a stay. In fact, on closer inspection they allege no discernable injury. This factor thus weighs

---

[2] The declaration of Defendant Goins accompanying the motion states an estimated cost for printing new paper state forms at "roughly $4,000" for the Tennessee Department of General Services, as well as a shipping cost of "roughly $1,900," and a cost of "about and around $8,528" for the Tennessee Division of Elections printing of the modified form. Doc. 243-1 ¶¶ 12-13. The total cost proffered by Defendant Goines, then, is $14,428. To put that cost into perspective, in FY 2022-23 the Tennessee Secretary of State's Office had $21,737,700 in total expenditures, $209,800 on printing and duplication, while the Tennessee Department of General Services spent $1,214,700 on printing and duplication alone. Ex. A (State of Tennessee Recommended Budget, Expenditures by Object and Funding by Source, Jan. 2024).

heavily against a stay.

## II.     Defendants Are Unlikely to Succeed on the Merits of their Appeal.

As a threshold matter, Defendants carry an especially high burden in establishing likelihood of success on the merits because—as described above—their sole (inaccurate) meaningful assertion of irreparable injury is not required by the Court's injunction. "[E]ven if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted"—which is *not* the case here, as demonstrated below—the movant "is still required to show, at a minimum, 'serious questions going to the merits.'" *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991) (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). The inquiry is a sliding scale: "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay," and thus if the movant demonstrates a lesser degree of irreparable injury—as here—the burden in showing likelihood of success on the merits is higher than that minimum. *Mich. Coal. of Radioactive Material Users*, 945 F.2d at 153-54. Defendants have not demonstrated even serious questions going to the merits on any point, and they certainly have not met their greater burden in showing likelihood of success.

### A.     Tennessee NAACP Has Direct Organizational Standing.

As this Court correctly held, Plaintiff Tennessee NAACP has organizational standing. Mem. Op. at 27-28. Tennessee NAACP's mission is to "advocate for the rights of individuals who have been discriminated against," with a focus on voting rights. *Id.* at 28 (citing Doc. 151-4 at PageID 1324, 1334 and Doc. 156-2 ¶¶ 3-6). Tennessee NAACP advances voting rights via voter registration assistance, including to individuals with felony convictions subject to Defendants' procedures. Mem. Op. at 28 (citing Doc. 156-2 ¶¶ 8, 11 and Doc. 181 ¶¶ 37-42). Tennessee

NAACP adduced evidence that Defendants' procedures increase the time and monetary burden on the organization's provision of registration assistance for individuals with felony convictions. Mem. Op. at 28 (citing Doc. 156-2 ¶¶ 8-10, 13-18). Sixth Circuit precedent affirms that "within-mission organizational expenditures" and the diversion of organizational resources are sufficient injury-in-fact for direct organizational standing. Mem. Op. at 28 (quoting *Online Merchants Guild v. Cameron*, 995 F.3d 540, 548 (6th Cir. 2021)).

Defendants' belated objections to Tennessee NAACP's organizational standing are in any event unavailing. It is true that *Fair Elections Ohio v. Husted*, states that an individual or organization does not have Article III standing "merely by virtue of its efforts and expense to advise others how to comport with the law." 770 F.3d 456, 460 (6th Cir. 2014). But the Sixth Circuit has since reaffirmed that, in contrast to the "armchair observer" of *Fair Elections Ohio*, *id.*, direct organizational standing requires a showing "that the purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action." *Online Merchants Guild*, 995 F.3d at 547 (internal quotations omitted). Diversion of time and "resources that could have been expended elsewhere" to address allegedly unlawful activity suffices for direct organizational standing. *Id.* at 548. An organizational president's uncontroverted declaration describing diversion of resources—as here—is sufficient for standing. *Id.* (also citing *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013)) (for the proposition that "diverting staff time and resources to address [a] purportedly discriminatory housing advertisement" is sufficient for organizational standing).[3]

_____

[3] Contrary to Defendants' assertions, Tennessee NAACP does use the federal voter registration form. Doc. 192-1, ¶¶ 7-8. In any event, Tennessee NAACP's use of voter registration forms suffices to provide standing for Count 6.

**B.      This Court Did Not Err in Its Voluntary Cessation Analysis, and This Claim Is Not Moot.**

This Court correctly determined that the Defendants' July 2023 memorandum affecting voter registration did not moot Plaintiffs' claims. *See* Mem. Op. at 29. As this Court noted, mootness only occurs where "allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); Mem. Op. at 29. Contrary to Defendants' cursory assertion, *see* Mot. at 5, this Court's analysis accorded with Sixth Circuit precedent regarding voluntary cessation when the government changes its conduct. Mem. Op. at 29-32. As this Court explained and as Sixth Circuit precedent makes plain, for "ad hoc, discretionary, and easily reversible" changes to wrongful governmental actions or for changes implemented absent significant formal processes, "significantly more than . . . bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.* at 30 (quoting *Doe v. Univ. of Mich.*, 78 F.4th 929, 946 (6th Cir. 2023)). This Court correctly found that Defendants' July 2023 change in procedure fell in this category—a conclusion that Defendants do not challenge here. Mem. Op. at 31-32. The Court then analyzed the surrounding facts to determine that Defendants had not met their burden to prove that the change was genuine. Mem. Op. at 32. Defendants also do not take issue with the content of this analysis. The Court's voluntary cessation analysis was consistent with precedent and did not ignore presumptions applicable to the government. The Court's voluntary cessation analysis was consistent with precedent and did not ignore presumptions applicable to the government.

Nor did this Court err in its weighing of evidence in concluding that Defendants had not

met their voluntary cessation burden.[4] *See* Mem. Op. at 32. "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Friends of the Earth*, 528 U.S. at 170. Because Defendants seek to moot Plaintiff's claim, Defendants shoulder that burden. Nothing about the summary judgment context changes that. *See id.* at 177-180 (describing procedural posture of *Friends of the Earth*, post-summary judgment). What's more, although Defendants cast themselves as the non-moving party, Plaintiffs and Defendants submitted cross-motions for summary judgment. Docs. 150, 153. Defendants asserted other threshold jurisdictional issues such as standing in their initial motion rather than their response. It would reward litigation gamesmanship, and vitiate the *Friends of the Earth* framework, to shift any aspect of the mootness burden to the party *not* asserting mootness solely because the party asserting mootness waited, on cross-motions for summary judgment, to assert mootness in a responsive rather than an initial brief.

## C.     Defendants' Documentation Procedures Do Not Comply with the NVRA.

This Court's holding that Defendants' documentation procedures do not comply with the NVRA is correct. This Court already rejected Defendants' argument to the contrary, and its reasoning was sound: Defendants "are incorrect in suggesting that . . . being able to require information that the Federal Form does not [] means Tennessee's challenged policy is compliant

---

[4] Here, Defendants' pre-July 2023 procedures can be reasonably expected to recur. The procedural change is not binding on Defendants. Furthermore, as Plaintiff has argued, the July 2023 procedural change does not remedy the NVRA violation because the July 2023 memo would still require some eligible voters with felony convictions to remain subject to Defendants' burdensome documentary proof requirement. *See* Mem. Op. at 29. Defendants have never disputed that the July 2023 memo does not provide complete relief from the ongoing NVRA violation, such that the memo would not moot Plaintiffs' claims in any event. *See* Doc. 180 at 13 ("The Division of Elections seeks further documentation . . . from applicants when the pre-January 15, 1973, conviction could have rendered him infamous, but the convicting court may or may not have declared him so.").

with" the NVRA. *Compare* Mem. Op. at 50-51 *with* Mot. at 5. Sections 20507(b)(1) and 20508(b)(1) of the NVRA impose requirements on state and federal forms. Section 20507(b)(1) specifically requires that state voter registration programs and activities "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." Section 20507(a)(1) requires states to "ensure that any eligible applicant is registered to vote in an election" upon receipt of a timely and valid voter registration application. Tennessee cannot evade these federal legal requirements, which exist notwithstanding any differences between a state and federal voter registration form. *See* U.S. Const. art. VI, cl. 2.

## III. A Stay Would Cause Substantial Harm to Others and Would Not Serve the Public Interest.

In contrast to Defendants' lack of irreparable injury, the public interest in ensuring access to the ballot for all eligible voters, including Plaintiff Tennessee NAACP's members—an interest Defendants' analysis entirely ignores—significantly weighs against a stay of this Court's injunction. The denial of the right to vote in a single election is irreparable harm. *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury."). As the Sixth Circuit has explained, quoting *Purcell v. Gonzalez*, 549 U.S. 1 (2006), "the public has a 'strong interest in exercising the fundamental political right to vote.'" *Obama for America*, 697 F.3d at 436. Further, "[t]hat interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Id.* at 437 (quoting *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011)). As a result, "[t]he public interest therefore favors permitting as many qualified voters to vote as possible." *Obama for America*, 697 F.3d at 437.

This Court's injunction furthers that weighty interest. Defendants did not and do not dispute that their prior procedure "imposes an unnecessary requirement in a non-uniform manner

that does not ensure eligible applicants are registered if their valid registration form is timely received." Mem. Op. at 51.[5] This can result in eligible applicants encountering lengthy and burdensome barriers to acquiring the necessary paperwork and achieving successful registration— particularly so close to an election. *See* Doc. 155 ¶¶ 43-50 (discussing difficulties of obtaining documentation which is difficult or impossible to acquire, and differences between counties including costs charged to applicant for requested records); *see also* Doc. 156-30. And as Plaintiffs have repeatedly stated, the rejection of facially eligible applications diverts finite resources away from NAACP's voter registration because they must assist those voters in providing the required documentation. *See, e.g.,* Doc. 156-2 at ¶¶ 12-18. Absent the Court's injunction, members of the public would experience irreparable harm due to an unnecessary and in application arbitrary barrier to exercise of the right to vote. injunction, members of the public would experience irreparable harm due to an unnecessary and in application arbitrary barrier to exercise of the right to vote.

Defendants' asserted public interests in "preclud[ing] voting by those who are not entitled to vote" and efficient election administration, Mot. at 2, cannot justify Defendants' unlawful and therefore *not* legitimate registration procedures. Where, as here, Defendants' practices ultimately preclude voting by those who *are* entitled to vote, they plainly are *not* furthering effective administration of the voting laws. And Defendants' unsupported claim that requiring changes to the state voter registration forms—again, *not* required by this Court's injunction—will undermine confidence in Tennessee's elections and result in individuals who are not eligible to vote registering and voting is similarly unavailing. Mot. at 3. Defendants have provided no evidence

---

[5] *Compare* Exhibit C, DEF000569-70 (requiring applicant with grace period conviction to provide documentary proof of eligibility in September 2020) *with* Exhibit B, DEF000544-45 (not requiring applicant with grace period conviction to provide documentary proof of eligibility in September 2019).

that this will in fact occur with form changes specifically or compliance with the injunction, generally—nor have they provided any evidence that noneligible registration would occur.

More fundamentally, Defendants' ongoing denial of the right to vote to eligible voters—which Defendants do not dispute, and which nevertheless required years of litigation to obtain this injunction—undermines confidence in elections and compromises the integrity of the election process. Tennesseans are, on an ongoing basis, being shut out of "our participatory democracy." *Purcell*, 549 U.S. at 4. In light of the severe and concrete harms to eligible voters in denial of access to the ballot, the balance of equities and public interest lie with requiring Defendants to comply with federal law.

## IV. *Purcell v. Gonzalez* Supports Denial of a Stay and Does Not Alter the Basic Analytical Framework as to a Stay.

Defendants attempt to rely on the Supreme Court's decision in *Purcell* for support in carrying their heavy burden in obtaining an emergency stay—seeming to characterize *Purcell* as essentially dispositive in their favor. Mot. at 2-3. But in fact, *Purcell* countenances *against* a stay in this context. Moreover, the *Purcell* analysis is a part of, not independent from, the ordinary four-factor evaluation of a motion for stay.

*Purcell* found that "[c]ourt orders affecting elections, *especially conflicting orders*, can themselves result in voter confusion," and thus counsel against further judicial interference absent a compelling reason. 549 U.S. at 5-6 (emphasis added). Here, the Court issued its opinion holding that Defendants' procedure does not comply with the NVRA in April and has recently issued an order effectuating injunctive relief consistent with that opinion. Docs. 222, 237. A contradictory order vitiating the June 5 order and the reasoning of the Court's opinion in April, and imposing anew Defendants' unlawful past procedure of requiring additional documentation from eligible voter applicants with felony convictions would lead to significant confusion. It would directly

contravene the Supreme Court's admonition not to issue conflicting court orders that create eleventh-hour uncertainty.

Moreover, this is not a case where Plaintiffs delayed in any way in seeking relief. Plaintiffs filed their Complaint 3.5 years ago, one month after the last presidential election. It is Defendants' protracted delay throughout these proceedings that has created the current timing. This is not the "sluggish election-procedure challenge" that *Purcell* is meant to "deter[]." *Crookston v. Johnson*, 841 F.3d 396, 399 (6th Cir. 2016). To the contrary, Defendants have run out the clock and now seek to weaponize that delay against disenfranchised Tennessee voters. But "[a] manufactured emergency does not warrant emergency relief." *Id.*

Finally, as Justice Kavanaugh recently noted, "the *Purcell* principle is probably best understood as" not an "absolute" principle but instead a "refinement of ordinary stay principles for the election context." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). The Sixth Circuit has treated it as such. *E.g.*, *Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 569 (6th Cir. 2020) (determining under *Purcell* analysis that staying a district court's preliminary injunction "would substantially injure the plaintiffs and is not in the public's best interest"). Here, reversing course by staying this Court's order predicated on a months-old grant of summary judgment would generate confusion through a conflicting court order close to the election. *Purcell* thus provides another reason, under the facts of this case, that it is in the public interest to deny Defendants' motion.

## V. In Denying a Stay, Plaintiff Respectfully Requests This Court Confirm for Defendants the Court's Order Permanently Enjoining Defendants as to Count 6.

This Court's June 5, 2024 order permanently enjoining Defendants as to Count 6 is plain. The order permanently enjoins Defendants "from enforcing, applying, or implementing the Challenged Policy." Doc. 237 at 2. The order requires that Defendants "[s]hall process valid,

16

timely mail in voter registration forms developed pursuant to Sections 20505(a)(2) or 20508(a)(2) of the NVRA submitted by individuals with prior felony convictions who are otherwise eligible to vote." *Id.* at 3. It requires that Defendants "[s]hall register individuals with prior felony convictions who submit" such "valid, timely mail in voter registration forms" "absent credible information establishing that they are ineligible to vote." *Id.* It requires that Defendants issue guidance to election administrators as to compliance with the injunction and provide training. *Id.*

The Court's order does *not* require that Defendants revise, print, and distribute updated voter registration forms. Nor does it require that Defendants hire new staff for any purpose. All that the order requires is that Defendants not enforce the challenged procedures. Again, Defendants have previously represented that their current practices align with the Court's ordered relief—representations that do not square with their present claim of significant affirmative burden from the new injunction. But in any event, Defendants appear confused about the Court's order: they seek "[a]t minimum, a stay . . . to the extent that the permanent injunction requires the State *to implement changes*" at this time. Doc. 243 at 1 (emphasis added). Plaintiff therefore respectfully requests that this Court clarify for Defendants that the June 5, 2024 order does not impose any affirmative obligation on Defendants to revise, print, and distribute updated voter registration forms, to hire new staff, or to take any other action beyond (1) processing timely and valid voter registration forms, in accordance with the NVRA; (2) registering individuals who submit such forms absent credible information establishing ineligibility, in accordance with the NVRA; and (3) issuing guidance and providing training as to election officials' compliance with the NVRA under these circumstances. This clarification will ensure that Defendants understand the scope of their obligations to comply with the issued injunction prior to and during the 2024 election.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants'

Emergency Motion for a Stay of Injunction Pending Appeal.


Date: June 17, 2024

Respectfully submitted,

/s/ *Charles K. Grant*
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Danielle Lang*
Blair Bowie*
Alice Huling*
Aseem Mulji*
Valencia Richardson*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
dlang@campaignlegal.org
bbowie@campaignlegal.org
ahuling@campaignlegal.org
amulji@campaignlegal.org
vrichardson@campaignlegal.org
eboettcher@campaignlegal.org
kuyeda@campaignlegal.org

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave N,
Nashville, TN 37208
(615) 479-5530

18

keeda@freeheartsorg.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

*Counsel for the Petitioners-Plaintiffs and the Putative Classes*

\* Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on June 17, 2024

via the Court's electronic filing system to the following:

Zachary Barker
Dawn Jordan
Andrew C. Coulam
David M. Rudolph
Robert W. Wilson

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

/s/ *Charles K. Grant*

Charles K. Grant