# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, et al., | |
| Plaintiffs, | Civil No. 3:20-cv-01039 |
| v. | JUDGE CAMPBELL |
| WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al., | MAGISTRATE JUDGE FRENSLEY |
| Defendants. | |

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR A STAY OF PERMANENT INJUNCTION PENDING APPEAL

Plaintiffs respectfully file this sur-reply to address late-disclosed documents and facts that have come to light through Plaintiffs' June 18 Depositions of Defendant Goins and the Elections Division's Rule 30(b)(6) representative. The new documents show that Defendants had already made significant progress towards compliance with both the Court's order of injunctive relief on Count Six, Doc. 237 ("the Order") and with Defendants' erroneous understanding of that order, but then undid that progress. The new evidence also demonstrates that Defendants fundamentally misunderstand the Court's order and that Defendants' claims that new procedures would be unduly burdensome is false.

The timeline of Defendants' previously undisclosed activity is as follows:[1]

On June 5, Defendant Goins issued a memorandum to county election offices alerting them to the Order and stating, "In summary, Judge Campbell ordered the state to register an individual

---

[1] Because these documents were not timely disclosed, Plaintiffs were deprived of the opportunity to ask questions about them at the depositions. As a result, this timeline relies on the information on the documents themselves and the limited testimony at the depositions.

1

even if the person has answered 'Yes' to the felony question and provided no proof of eligibility, unless there is 'credible information establishing' that the person is ineligible to vote." Ex. 2. The memorandum further directed, "do not reject an application from an individual who has marked 'Yes' to the felon question. All forms with a 'Yes' should be sent to Lou Alsobrooks, [staff at the Elections Division], for review using secure email protocols." *Id.* On June 10, Defendant Goins held a roughly 35-minute training session on compliance with the order for all county administrators of elections (AOEs). Ex. 1. During the training, the Elections Division stated again that the Order requires the state to register any individual "even if" the person has answered yes to the felony question. Ex. 1 at 0:55-1:09. At no point in the training did the Elections Division address or even mention the significance of the question on the state registration form asking if a person with a felony conviction has "received a pardon or had [their] voting rights restored," making clear that Defendants do not understand that the Order only applies to facially eligible applicants. The Elections Division directed the AOEs to send all applications from people with felony convictions to the Elections Division, unless they indicate that they have a felony in the grace period or pre-1973. Ex. 1 at 18:02-18:15, 24:08-24:33. If the individual has a pre-1973 felony that is enumerated as potentially infamous, it should be sent to the Elections Division rather than rejected. Ex. 1 at 12:10–12:41. For individuals with these older felony convictions, the Elections Division directed the AOEs to continue to follow the policies outlined in the July 2023 memorandum on older felony convictions. Ex. 1 at 10:58-12:09. Additionally, regarding applicants who use the federal form, which does not include specific questions about felony convictions, Defendant Goins directed that where the AOE possesses information that the applicant has a felony conviction to send it to the Elections Division. Ex. 1 at 3:14-3:47. Coordinator Goins also stated during that meeting that the Elections Division had already updated the voter registration form to remove language about additional documentation. Ex. 1 at 14:46-15:04; 15:16-15:35. He directed the AOEs to link to the revised form and to print it out for

2

use in their office. Ex. 1 at 15:45-15:59; 26:08-26:25. On June 12, the Elections Division issued a memo stating much the same. Ex. 3. Two days later, on June 14, 2024, Coordinator Goins issued another memorandum regarding the Sixth Circuit's administrative stay of this court's Order following Defendants' premature motion for stay at the Sixth Circuit, instructing:

> [b]ecause of the stay, you do not need to send forms to the Division of Elections from individuals who have marked 'yes' to the felony question. You should continue to follow the prior process outlined in the July 21, 2023 memo.
>
> If you have already sent forms to this office, you do not have to wait for a response from us. You should continue to follow the prior process for these forms.
>
> You should also use the prior versions of the voter registration form and appeal form. The training site is being updated accordingly, and we have put a request into our IT to ensure our website is updated.

Ex. 4. Finally, at some point between this Court's injunction on June 5 and before the June 10 training, Defendants created and published a new voter registration form which omitted the language requiring that an applicant provide additional documentation if they marked "Yes" to the felony question. Ex. 2-3, 5; *see also* Ex. 1 at 14:40-15:35. On June 12, Defendants sent a formal memo with the updated voter registration forms. Ex. 3. At some point after the Sixth Circuit granted an administrative stay of this Court's injunction on June 14 (and while Defendants' Motion to Stay was pending before this Court), Defendants appear to have removed from the Secretary of State's website the voter registration form they created in response to this Court's injunction and replaced it with the previous version. Ex. 4. The revised registration form created after June 5 is attached as Exhibit 5 and the older form that is presently published on the Secretary of State's website is attached as Exhibit 6.

The new documents show that Defendants had already made substantial progress towards both compliance with the actual requirements of the Order and as well as towards implementing the voter changes that Defendants have erroneously claimed are necessary to comply with the Order, but then rolled back that progress and confusingly retracted the updated voter registration form while

arguing to this Court and the Sixth Circuit that compliance would create undue administrative burdens. The Order states that, "[u]nder the NVRA, applicants who timely submit a completed voter registration application developed pursuant to Sections 20505(a)(2) or 20508(a)(2) of the National Voter Registration Act *facially indicating they are eligible* to vote cannot be required to present documentary proof of eligibility beyond the voter registration form and must be registered absent credible information establishing that they are ineligible to vote." Doc. 237 at PageID # 3825 (emphasis added). It permanently enjoins Defendants and their agents from rejecting voter registrations "based *solely* on an indication that the applicant has a past felony conviction and requiring the applicant to provide additional documentary proof of eligibility before being placed on the voter rolls." *Id.* (emphasis added). The Court specifically ordered Defendants to process valid and timely voter registration forms from individuals with felony convictions "who are otherwise eligible to vote" and to register them "absent credible information establishing that they are ineligible to vote." *Id.* at PageID # 3826. To effectuate the injunction, the Court also ordered Defendants to issue written guidance to and hold at least one live, recorded training for county election staff and administrators on compliance with the order. *Id.* Despite their substantial misunderstanding of which voter registrations the Order impacts, described below, the new documents show that Defendants surreptitiously made substantial progress towards complying with the *actual* terms of the order – namely issuing a written memorandum on new procedures and holding a training – and publicly promulgated an updated voter registration form, as they claimed was required, all the while arguing that compliance was too burdensome.

More importantly, the newly disclosed documents and additional testimony also make clear that Defendants fundamentally misunderstand the meaning of and requirements of the Court's Order. This misreading forms the basis of Defendants' assertions that compliance would create significant administrative burdens, the core of their arguments for a stay. Defendants apparently believe that the

Court's order prevents them from rejecting *any* voter registration applicant who indicates that they had a felony conviction after May 18, 1981. Not so. Following the letter of the NVRA, the Court's order enjoins Defendants from rejecting applications "*facially indicating they are eligible*" absent credible information that they are ineligible. For registrants who indicate they have felony convictions after May 18, 1981, they are only *facially eligible* or "*otherwise eligible*" if they check the box indicating that they have already had their voting rights restored. Defendants' documents and training do not mention this part of the form at all, and the Rule 30(b)(6) testimony makes clear that they did not consider it. This makes clear that Defendants entirely missed that distinction and premise their arguments for a stay on the incorrect assumption that the Court's order requires the Elections Division to verify the eligibility of *every single voter registration applicant* with a felony conviction after May 18, 1981.

Additionally, testimony in the June 18 depositions reveal that compliance with the Court's order would not be burdensome. While the Court's order enjoins election officials from rejecting voter registrations from facially eligible, or otherwise eligible, registrants – i.e., registrants who indicate they have a non-disqualifying conviction or that their rights have been restored – absent evidence establishing ineligibility, it neither requires nor prevents Defendants from double-checking the registrants' assertions about their eligibility, as long as it does so within the required timeline for processing registrations. If that check reveals credible evidence that the individual is disqualified from voting and has not had their rights restored, election officials may, under the terms of the order and the NVRA, request additional documentation. Testimony shows that even if the Elections Division voluntarily brings back their very short-lived policy of requiring AOEs to refer all applicants who indicate they have a felony but are still facially eligible (because of non-disqualifying convictions or restorations) to the Elections Division, it would not in fact create a significant burden on Defendant or the AOEs. Ex. 7, Deposition of Beth Henry-Robertson at 55:15-22. In fact, the

5

testimony made clear that prior to short-lived policy, many AOEs already had a practice of referring these applications to the Elections Division to double check eligibility. Ex. 7 at 63:15-24. Moreover, the 30(b)(6) witness reported that there had not been a significant increase in these inquiries since the Defendant Goins issued the memo about processing older felonies. Ex. 7 at 55:23-56:13. They have not had to hire additional staff or shift resources to handle an increase in these inquiries. Ex. 7 at 56:14-18; 64:5-7. Additionally, the witness testified that it "doesn't take long" and is not burdensome for the Election Division's staff to check their database to see if an applicant has already been restored. Ex. 7 at 55:3-12; 56:17-18. She also testified that sometimes the AOEs will want the Elections Division to run a full database check to see if the person has had additional felony convictions since being restored, and that this process could take more time. Ex. 7 at 57:8-58:9. Crucially, she stated that whether or not the applicant had submitted documentary proof of their restoration would not make a difference to the decision to perform that additional inquiry. Ex. 7 at 58:13-59:9. In short, even if the Elections Division decides to implement additional checks on facially eligible registrants with felony convictions - a procedure neither prohibited nor compelled by the Order - it would not be burdensome and the enjoined proof of eligibility requirement would be immaterial to the amount of resources spent.

These intervening events display a lack of candor by Defendants in advancement of their Motion to Stay. Specifically, Defendants Goins testified in his declaration in support of Defendants' Motion that "[t]wenty-five (25) days is not sufficient time for us to make the necessary revisions to the State's paper voter registration form." Doc. 243-1 at ¶16. But Defendants had already made and published those changes to the website before filing their Motion to Stay. Ex. 5. Indeed, Defendant Goins testified at the June 18 deposition that he thought the last time his office updated the voter registration form was in 2020, when he had actually done so less than two weeks prior. Ex. 8, Deposition of Mark Goins at 127:2-7. He also testified that if he were required to change the form

6

under a court order he would still have to edit and vet the form. Ex. 8 at 131:4-11. Additionally, Defendant Goins' testimony in his declaration that "additional staff members," and "[e]stablishing a statewide database of persons with felony convictions" would be required is undercut by the later Rule 30(b)(6) testimony that *none* of these things are required to comply with the Court's order. *Compare* Doc. 243-1 at ¶¶ 18-20 *with* Ex. 7 at 55:3-12; 56:14-18; 64:5-7.

It is worth emphasizing that Defendants did not inform this Court nor Plaintiffs that a new registration form was created and that a training of the AOEs had already occurred despite having done so before seeking a stay at this Court and the Sixth Circuit. In neither stay motion did Defendants mention that a voter registration form had been published or that training and memoranda to the AOEs had already been provided. Then, Defendants retracted that voter registration form, apparently while they were arguing to this Court and the Sixth Circuit that "[t]here simply is not enough time for the Division of Elections to make the court-ordered changes while faithfully discharging their various other election-related duties." Doc. 243 at PageID # 3869; Appellants' Emergency Motion for a Stay Pending Appeal and an Immediate Administrative Stay at 18, *Tennessee NAACP v. Hargett*, No. 24-5546 (June 12, 2024) ("It simply is not feasible for that all to happen before the July 2, 2024 registration deadline.").

Defendants' lack of candor regarding their efforts to implement the Court's order, their misunderstanding of the Courts Order and its requirements, and indeed all the time and resources now spent briefing this issue at this Court and the Sixth Circuit, and the Court's and the Sixth Circuit's time spent judging this matter, could very likely have been avoided if Defendants had simply engaged in good faith discussions over the content of the Order, as they were mandated to do. Doc. 222 at  PageID # 3693. In addition to several rounds of discussions since 2019 when Plaintiffs first notified Defendants that the challenged policy violated the NVRA, Plaintiffs have recently provided Defendants with specific, straightforward recommendations for how to comply

7

with the Order on Count 6, orally at the meeting on May 1, 2024, *see* Doc. 226 at PageID # 3708, and in writing in their proposed order, Doc. 226-1. But Defendants had chosen to eschew those simpler, commonsense procedures and instead opted to jump through hoops which plainly go beyond the requirements or meaning of the Court's Order, then complain about those voluntary procedures, complaints which, additional evidence shows, are greatly exaggerated.

Defendants' unnecessary policy flip-flopping is likely to confuse county registrars and lead to *more* NVRA violations *and* more public confusion in the weeks before an election. It is appropriate then for the Court to deny the stay so that Defendants may implement the remedy they already began and to modify the order so that Defendants correctly understand the scope of registrations impacted. To clarify how the Court's injunction applies to eligible voters whose voting rights have been restored, Plaintiffs respectfully request that the Order be modified to include the following language adapted from language initially proposed in Plaintiff's proposed order, *see* Doc. 226-1 at ¶ 1.c:

> If a valid, timely submitted voter registration application indicates that the applicant has a prior felony conviction but had their voting rights restored and the rest of the form shows they are otherwise eligible to vote, the applicant cannot be rejected or required to provide documentary proof of eligibility unless the relevant county election office has solicited and received confirmation in writing from Tennessee Election Officials that the state does not possess a restoration letter or other proof that the applicants' voting rights were restored. Tennessee Election Officials may conduct a search for such records. Because Tennessee Election Officials' position regarding the requirements for voting rights restoration have shifted over time, a previous voter registration form submitted by the applicant that was accepted by the state and resulted in active voter registration in Tennessee on which the applicant correctly indicated that they had been convicted of a felony shall be considered sufficient proof that applicants' voting rights were restored, so long as there is not credible evidence establishing that they have been disqualified by another felony conviction since. If Tennessee Election Officials run this check and find no proof of restoration, then the Elections Division has credible information establishing that the applicant is not eligible to vote. At that point, they may deny the registration and request additional documentation. A person who is restoring their voting rights for the first time after their most recent felony conviction, by definition will not have a current restoration letter on file with the Elections Division. Thus, for such applicants, Tennessee Elections Officials may request the

restoration documents at the time of registration.

## CONCLUSION

Plaintiffs respectfully ask that the Court deny Defendants motion for a stay. Additionally, in the interest of judicial efficiency, Plaintiffs respectfully ask the Court to amend its Order to clarify what specifically is required of Defendants.

Dated: June 21, 2024

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org

*Counsel for Plaintiffs*

* Admitted pro hac vice

Respectfully submitted,

Blair Bowie*
Danielle Lang*
Alice C. Huling*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202)-736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org
VRichardson@campaignlegal.org
Amulji@campaignlegal.org
Eboettcher@campaignlegal.org
KUyeda@campaignlegal.org

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on June 21, 2024,

via the Court's electronic filing system to the following:

Dawn M. Jordan
Zachary L. Barker
Andrew C. Coulam
David M. Rudolph
Robert W. Wilson

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

/s/ *Charles K. Grant*
Charles K. Grant

# Exhibit 1

The link to the recording of the Training Call produced by Defendants is available at this link:

https://tn.webex.com/recordingservice/sites/tn/recording/99dde5de04454276b107f1d7c8934c19/playback

# Exhibit 2



Elections Division
312 Rosa L. Parks Avenue. 7th Floor
Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tn.gov

# MEMORANDUM

**To:**    All County Election Commissions

**From:**  Mark Goins *Mark Goins*
Coordinator of Elections

**Date:**    June 5, 2024

**Subject:**  Court Order on Voter Registration for Individuals with Prior Felony Convictions

---

This afternoon, U.S. District Judge William L. Campbell, Jr. issued an order in the ongoing litigation regarding voter registration for individuals with prior felony convictions. The order is attached to this memo.

In summary, Judge Campbell ordered the state to register an individual even if the person has answered "Yes" to the felony question and provided no proof of eligibility, unless there is "credible information establishing" that the person is ineligible to vote.

We are still in the process of reviewing the order and all its implications but wanted to get this information to you as soon as possible.

The court has also ordered that we schedule a training session, and more details will be provided at that training. In the meantime, do not reject an application from an individual who has marked "Yes" to the felon question. All forms with a "Yes" should be sent to Lou Alsobrooks for review using secure email protocols.

Thank you for your dedicated service to Tennessee voters.

# Exhibit 3



Elections Division
312 Rosa L. Parks Avenue, 7ᵗʰ Floor
Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tn.gov

# MEMORANDUM

**To:** All County Election Commissions

**From:** Mark Goins *Mark Goins*
Coordinator of Elections

**Date:** June 12, 2024

**Subject:** Processing Voter Registration Applications with Felony Question Marked "Yes"

---

On June 5, 2024, U.S. District Judge William L. Campbell, Jr. issued an order in the ongoing case *Tennessee Conf. of the NAACP v. William Lee* regarding voter registration for individuals with prior felony convictions. The order issued by Judge Campbell requires the state to register an individual even if the person has answered "Yes" to the felony question and provided no proof of eligibility, unless there is "credible information establishing" that the person is ineligible to vote. As the initial receiver of applications, it is incumbent upon county election commissions to follow the instructions outlined below to ensure that the state remains in compliance with the court order.

### Processing Applicants Using the State Mail-In Voter Registration Form

A county election commission that receives an application using a state mail-in voter registration form that meets the criteria below **must** be sent to the Division of Elections to confirm whether the Division of Elections has a record that the applicant's voting rights have been restored:

  a. The applicant marked **"Yes"** to the felony question; **or**
  b. County election commission has evidence of a prior felony conviction for the applicant.

If the Division of Elections informs the county election commission that there is a record showing that the applicant's voting rights **have been** restored for all known felonies, the county election commission will not reject the application, but **must process** the applicant's voter registration.

Case 3:20-cv-01039     Document 256-1     Filed 06/21/24     Page 17 of 62 PageID #: 4448

DEF017414

If the Division of Elections informs the county election commission that no record of the applicant's restoration of voting rights has been found for all known felonies, the county election commission will **reject** the applicant's voter registration and **provide** the applicant with the voter registration appeal form, and the Certificate of Restoration of Voting Rights, which contains a summary of the two-step process the applicant must complete to have their voting rights restored to become eligible to vote.

### Processing Applicants Using the Federal Voter Registration Form

Since the federal form does not contain a "yes" or "no" felon question, a county election commission that receives an application using the federal voter registration form will continue to process the application, unless the county election commission's records indicate that the applicant has a prior felony conviction.

If a county election commission has evidence that the applicant using the federal voter registration form has a felony conviction, the county election commission will not reject the application, but **must** send the application to the Division of Elections to confirm whether the Division of Elections has a record that the applicant's voting rights have been restored.

If the Division of Elections informs the county election commission that there is a record showing that the applicant's voting rights **has been restored** for all known felonies the county election commission must process the applicant's voter registration.

If the Division of Elections informs the county election commission that no record of the applicant's restoration of voting rights has been found, the county election commission will **reject** the applicant's voter registration and **provide** the applicant with the voter registration appeal form, and the Certificate of Restoration of Voting Rights, which contains a summary of the two-step process the applicant must complete to have their voting rights restored to become eligible to vote.

### Processing Applicants with Felony Convictions Prior to January 15, 1973

A county election commission that receives a voter registration application from an applicant who indicates that he/she was convicted of a felony prior to January 15, 1973, should be processed using the criteria below:

> Assuming all other information on the form is acceptable and eligibility requirements are met, an applicant that identifies on the face of their voter registration form that prior to January 15, 1973, they were not convicted of one of the possible disqualifying crimes for which the court did not find them **infamous**, is eligible to register to vote because the applicant did not lose their right to vote. Accordingly, the applicant's voter registration **must be processed**.

> If a county election commission receives a voter registration application from an applicant who indicates on the face of their registration that they were convicted of one of the disqualifying crimes and declared infamous, the applicant's voter registration application **must** be sent to the Division of Elections for review.

DEF017415

**Processing Applicant's with Felony Convictions between January 15, 1973, and May 17, 1981**

If a county election commission receives a voter registration application from an applicant that identifies on the face of their voter registration form that they were convicted of a felony between January 15, 1973, and May 17, 1981, and assuming all other information on the form is acceptable and eligibility requirements are met, the applicant's voter registration **must be processed** as the applicant never lost the right to vote.

**Processing Deficient Registration Forms**

For voters who do not answer "yes" or "no" to the felony question on the state form, continue to treat these forms as deficient registrations.

If an applicant comes in to correct the deficiency and they mark "yes" to the felony question, you will send the form to Lou.

**Instructions for Submitting to Division of Elections**

- For applications sent by secure email, send to vcheck@tn.gov and place the following information in the subject line: Applicant's **last name** and the word **registration** (Ex- Doe registration)
- For county election commissions using the state email system (tn.gov) a secure email must include [secure email] at the beginning of the subject line.
- For applications sent by fax, use **(615) 741-1278** and put the following on the fax cover sheet:
  **To:** Lou Alsobrooks
  **Subject:** Applicant's **last name** and the word **registration** (Ex- Doe registration)
- Lou Alsobrooks can be reached by calling **(615) 253-5778**

**Updated Forms**

The voter registration form posted on our website and the voter registration appeal form have been updated in light of the order. Both forms are included with this memo with a revision date of 06/24. The voter registration form is available online at https://sos.tn.gov/elections/services/register-to-vote-paper-form-mail-in-or-hand-deliver. *Please be sure your websites are updated to point to the updated form. The appeal form is available on the training website.*

DEF017416

# Exhibit 4



Elections Division

312 Rosa L. Parks Avenue, 7th Floor

Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tn.gov

# MEMORANDUM

**To:**      All County Election Commissions

**From:**    Mark Goins
            Coordinator of Elections

**Date:**    June 14, 2024

**Subject:** Administrative Stay of Court Order

---

This afternoon, the United States Court of Appeals for the Sixth Circuit issued an administrative stay of the order we discussed with you earlier this week. This means that the lower court decision is on hold until further notice.

Because of the stay, you do not need to send forms to the Division of Elections from individuals who have marked "yes" to the felony question. You should continue to follow the prior process outlined in the July 21, 2023 memo.

If you have already sent forms to this office, you do not have to wait for a response from us. You should continue to follow the prior process for these forms.

You should also use the prior versions of the voter registration form and appeal form. The training site is being updated accordingly, and we have put a request into our IT to ensure our website is updated.

Thank you for your patience as we work through the appellate process.

Case 3:20-cv-01039     Document 256-1     Filed 06/21/24     Page 21 of 62 PageID #: 4452

DEF017417

# Exhibit 5

# Tennessee Mail-In Application For Voter Registration

**You can use this form to:**
- register to vote in Tennessee or change your name and/or address.

**To register to vote:**
- you must be a U.S. citizen, AND
- you must be a resident of Tennessee, AND
- you must be at least 18 years old on or before the next election, AND
- If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4. For more information about this process, call **1-877-850-4959** or visit **sos.tn.gov/restoration**.

_____

Are you interested in working on Election Day?  ☐ YES ☐ NO

**Instructions/Checklist:**
- ☐ Please PRINT with a blue or black **INK** pen (not felt tip).
- ☐ Provide the information in boxes 1–4 below, read the VOTER DECLARATION in box 5, and sign by the **"X"** in box 5.
- ☐ You must mail or hand deliver this form to your county election commission at least 30 days before an election. Go to **sos.tn.gov/election-commission** to find your county election commission address.
- ☐ To ensure a more confidential mailing process for this form, you can place this application in an envelope addressed to the county election commission.

If you register by mail, you must vote **IN PERSON** the first time you vote after registering.

If you are qualified and the information on your form is complete, we will add your name to the county's voter rolls. We will then mail you a voter registration card. This card will tell you where to vote.

**Names of persons selected for jury service in state court are not chosen from permanent voter registration records.** Voter registration records are public records, open to inspection by any citizen of Tennessee, excluding social security numbers.

**Federal or Tennessee state government-issued photo ID is required to vote unless exception applies.**

**Warning:** Knowingly giving false information to register to vote or attempting to register when not qualified is a felony punishable by not less than two (2) years nor more than twelve (12) years imprisonment or a fine of $5,000 or both.

**FOR COUNTY ELECTION COMMISSION USE ONLY**
Mail _____ Reg # _____ Approved _____
Effective Date _____ P/A _____
District _____ Precinct _____ Ward _____

**1 VOTER ELIGIBILITY**

Are you a citizen of the United States? ☐ YES ☐ NO   Are you a resident of the State of Tennessee? ☐ YES ☐ NO   Will you be 18 or older on or before Election Day? ☐ YES ☐ NO

**If you answered "No" in response to any of the above, do not complete this form.**

**2 PERSONAL DETAILS**

Last Name: _____ First Name: _____ Middle Name: _____ Suffix: _____

SSN: __ __ __ /__ __ /__ __ __ __  Date of Birth: __ __ /__ __ /__ __ __ __  Sex: ☐ M ☐ F  Race (optional): _____

Place of Birth (city/state): _____ Phone: ( __ __ __ ) __ __ __ - __ __ __ __

Residential Address: _____ (no PO box) Apt #: _____ City: _____

State: _____ Zip Code: _____ County: _____ Email (optional): _____

Mailing Address (if different): _____

**3 LAST ADDRESS OF VOTER REGISTRATION (if any)**

Name: _____ Address: _____ Apt #: _____

City: _____ State: _____ Zip Code: _____ County: _____

**4 FELONY CONVICTION** Have you ever been convicted of a felony? (If expunged, answer "no") ☐ YES ☐ NO *If yes, provide the following information (if known).*

Crime(s): _____ Date (mo./yr.): _____

Place (city/state): _____ Have you received a pardon or had your voting rights restored? ☐ YES ☐ NO

**5 VOTER DECLARATION:** I, being duly sworn on oath (or affirmation), declare that the above address is my legal residence and that I plan to remain at such residence for an undetermined period of time and say that to the best of my knowledge and belief all of the statements made by me are true.

X _____

Signature of Applicant

____ / ____ / ____
Date

_____
Signature of Person Assisting Applicant

_____
Address of Person Assisting Applicant

ss-3010 (Rev. 06-24)

Case 3:20-cv-01039    Document 256-1    Filed 06/21/24    Page 23 of 62 PageID #: 4454    DEF017425

FROM:

_____

_____

_____

_____

PLACE
STAMP
HERE
The Post Office
will not deliver
without postage.



# Voter Registration Document - Please Do Not Delay

TO:

_____ **COUNTY ELECTION COMMISSION**

_____

_____

_____

## TRANSFERRED TO NEW ADDRESS

| New Address (and mailing address if different) | District/Ward/ Precinct | Clerk | Date | Additional Information |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DEF017426

# Exhibit 6

# Tennessee Mail-In Application For Voter Registration

**You can use this form to:**
- register to vote in Tennessee or change your name and/or address.

**To register to vote:**
- you must be a U.S. citizen, AND
- you must be a resident of Tennessee, AND
- you must be at least 18 years old on or before the next election, AND
- If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call **1-877-850-4959** or visit **sos.tn.gov/restoration**.

**Instructions/Checklist:**
- ☐ Please PRINT with a blue or black **INK** pen (not felt tip).
- ☐ Provide the information in boxes 1–4 below, read the VOTER DECLARATION in box 5, and sign by the **"X"** in box 5.
- ☐ You must mail or hand deliver this form to your county election commission at least 30 days before an election. Go to **sos.tn.gov/election-commission** to find your county election commission address.
- ☐ To ensure a more confidential mailing process for this form, you can place this application in an envelope addressed to the county election commission.

<span style="color:red">If you register by mail, you must vote **IN PERSON** the first time you vote after registering.</span>

If you are qualified and the information on your form is complete, we will add your name to the county's voter rolls. We will then mail you a voter registration card. This card will tell you where to vote.

**Names of persons selected for jury service in state court are not chosen from permanent voter registration records.**
Voter registration records are public records, open to inspection by any citizen of Tennessee, excluding social security numbers.

<span style="color:red">**Federal or Tennessee state government-issued photo ID is required to vote unless exception applies.**</span>

---

<span style="color:red">**Warning:** Knowingly giving false information to register to vote or attempting to register when not qualified is a felony punishable by not less than two (2) years nor more than twelve (12) years imprisonment or a fine of $5,000 or both.</span>

| FOR COUNTY ELECTION COMMISSION USE ONLY | | |
|---|---|---|
| Mail _____ Reg # _____ Approved _____ | | |
| Effective Date _____ P/A _____ | | |
| District _____ Precinct _____ Ward _____ | | |

**1 VOTER ELIGIBILITY**

Are you a citizen of the United States? ☐ YES ☐ NO

Are you a resident of the State of Tennessee? ☐ YES ☐ NO

Will you be 18 or older on or before Election Day? ☐ YES ☐ NO

**If you answered "No" in response to any of the above, do not complete this form.**

**2 PERSONAL DETAILS**

Last Name: _____ First Name: _____ Middle Name: _____ Suffix: _____

SSN: __ __ __ / __ __ / __ __ __ __ Date of Birth: __ __ / __ __ / __ __ __ __ Sex: ☐ M ☐ F Race (optional): _____

Place of Birth (city/state): _____ Phone: ( __ __ __ ) __ __ __ - __ __ __ __

Residential Address: _____ (no PO box) Apt #: _____ City: _____

State: _____ Zip Code: _____ County: _____ Email (optional): _____

Mailing Address (if different): _____

**3 LAST ADDRESS OF VOTER REGISTRATION (if any)**

Name: _____ Address: _____ Apt #: _____

City: _____ State: _____ Zip Code: _____ County: _____

**4 FELONY CONVICTION** Have you ever been convicted of a felony? (If expunged, answer "no") ☐ YES ☐ NO *If yes, provide the following information (if known).*

Crime(s): _____ Date (mo./yr.): _____

Place (city/state): _____ Have you received a pardon or had your voting rights restored? ☐ YES ☐ NO *If yes, provide copy of document.*

**5 VOTER DECLARATION:** I, being duly sworn on oath (or affirmation), declare that the above address is my legal residence and that I plan to remain at such residence for an undetermined period of time and say that to the best of my knowledge and belief all of the statements made by me are true.

**X** _____  ___ / ___ / ___
Signature of Applicant                Date

Signature of Person Assisting Applicant    Address of Person Assisting Applicant

ss-3010 (Rev. 09/20)

FROM:

_____

_____

_____

_____

PLACE
STAMP
HERE
The Post Office
will not deliver
without postage.



## Voter Registration Document - Please Do Not Delay

TO:

_____ **COUNTY ELECTION COMMISSION**

_____

_____

_____

TRANSFERRED TO NEW ADDRESS

| New Address (and mailing address if different) | District/Ward/ Precinct | Clerk | Date | Additional Information |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# Exhibit 7

**In the Matter of:**

NAACP, et al.

vs

LEE, et al.

ELIZABETH HENRY-ROBERTSON

*June 18, 2024*



www.beresandassociates.com
615.742.2550 | info@beresandassociates.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT TENNESSEE
NASHVILLE DIVISION

_____

TENNESSEE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
on behalf of itself and its
members, et al.,

        Plaintiffs     Civil Action No. 3:20-cv-01039
                         JUDGE CAMPBELL
vs.                    MAGISTRATE JUDGE FRENSLEY

WILLIAM LEE, in his official
capacity as Governor of the
State of Tennessee, et al.,

        Defendant

_____


DEPOSITION OF:

ELIZABETH HENRY-ROBERTSON

Taken on behalf of the Plaintiffs

Tuesday, June 18, 2024

3:59 p.m.


_____


BERES & ASSOCIATES COURT REPORTERS
Virginia Dodge, RDR, CRR, LCR
P.O. Box 190461
Nashville, Tennessee 37219-0461
(615) 742-2550
virginia@beresandassociates.com

```
1   APPEARANCES:

2

    For the Plaintiffs:
3
            Keeda J. Haynes, Esq.
4           Free Hearts
            2013 25th Avenue North
5           Nashville, TN 37208
            (615) 745-1117 Ext. 705
6           keeda@freeheartsorg.com

7           and

8           Blair Bowie, Esq.
            Aseem Mulji, Esq.
9           Gicola Lane, Restore Your Vote Advocate
            Valencia Richardson, Esq. (Via
10            Videoconference)
            Aimee Pruitt, Legal Assistant
11          Campaign Legal Center
            1101 14th Street NW
12          Suite 400
            Washington, DC 20005
13          (202) 736-2200
            bbowie@campaignlegal.org
14          amulji@campaignlegal.org
            glane@campaignlegal.org
15          vrichardson@campaignlegal.org

16          and

17          Charles K. Grant, Esq.
            Baker, Donelson, Bearman,
18          Caldwell & Berkowitz, P.C.
            1600 West End Avenue
19          Suite 2000
            Nashville, TN 37203
20          (615) 726-5767
            cgrant@bakerdonelson.com
21

22

23

24

25
```

1   APPEARANCES (continued):

2

3   For the Defendant:

4            Zachary L. Barker, Assistant Attorney General
             Dawn Jordan, Senior Counsel
5            Bradley Krause, Intern
             Assistant Attorney General of
6            the State of Tennessee
             P.O. Box 20207
7            Nashville, TN 37219
             (615) 532-4098
8            zachary.barker@ag.tn.gov
             dawn.jordan@ag.tn.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2


 3         EXAMINATION OF ELIZABETH HENRY-ROBERTSON

 4                                              PAGE
```

```
 5   By Attorney Bowie ...................................6

 6


 7


 8                      E X H I B I T S

 9                                              PAGE

10   Exhibit 1, Notice of Deposition Pursuant to .........7
                 Fed. R. Civ. P. 30(b)(6)
11
     Exhibit 2, T.C.A. 2-19-143 .........................34
12
     Exhibit 3, Tennessee Mail-In Application for .......41
13               Voter Registration (Rev. 09/20)

14   Exhibit 4, Tennessee Mail-In Application for .......45
                 Voter Registration (Rev. 06/24)
15
     Exhibit 5, Email dated Tue, 12 Dec 2023 ............50
16               22:40;21 +0000

17   Exhibit 6, Email dated Tue, 13 Feb 2024 ............59
                 14:59:01 +0000
18
     Exhibit 7, Letter dated Friday, March 1, 2024 ......62
19               (Cleveland Price)

20   Exhibit 8, Letter dated 6/3/24 (Dawn ...............65
                 Harrington)
21
     Exhibit 9, Letter dated Tuesday, February 18, ......66
22               2020 (Dawn Harrington)

23   Exhibit 10, Email dated Wed, 007 Feb 2024 ..........80
                  14:30:56 +0000
24
     Exhibit 11, Letter dated Monday, February 5, .......82
25                2024 (Andrea Danielle Isham)
```

1               E X H I B I T S

2                                                  PAGE

3   Exhibit 12, Letter dated Monday, February 5, ........86
                2024 (Billy Joe Johnson)
4
    Exhibit 13, Letter dated Monday, February 5, .......89
5               2024 (Lance Sterling Johnston)

6   Exhibit 14, Letter dated Wednesday, February 7, .....91
                2024 (Jason James Czaplewski)
7
    Exhibit 15, Letter dated Monday, February 12, .......96
8               2024 (Kathleen H. Baker)

9   Exhibit 16, Letter dated Wednesday, ................108
                February 21, 2024 (Thomas Henry
10              Banks)

11  Exhibit 17, Letter dated Monday, February 5, .......116
                2024 (Krystal Paige Brown)
12
    Exhibit 18, Letter dated Wednesday, ................119
13              February 21, 2024 (Stephen Quentin
                Brown)
14
    Exhibit 19, Letter dated Wednesday, ................124
15              February 21, 2024 (Kevin Eugene
                Shepard)

16

17

18

19

20      (Original exhibits returned to Attorney Bowie.)

21

22

23

24

25

1          The deposition of ELIZABETH HENRY-ROBERTSON was

2    taken by counsel for the Plaintiffs pursuant to notice,

3    at the offices of Baker, Donelson, Bearman, Caldwell &

4    Berkowitz, PC, 1600 West End Avenue, Suite 2000,

5    Nashville, Tennessee, commencing at 3:59 p.m. on

6    Tuesday, June 18, 2024, for all purposes under the

7    Federal Rules of Civil Procedure.

8          The formalities as to notice, caption,

9    certificate, et cetera, are waived.  It is agreed that

10   Virginia Dodge, being a licensed court reporter and

11   notary public for the State of Tennessee, may swear the

12   witness, and the reading and signing of the completed

13   deposition was not discussed.

14                    *  *  *    *  *  *    *  *  *

15                    ELIZABETH HENRY-ROBERTSON

16   was called as a witness, and after having been first

17   duly sworn or affirmed, testified as follows:

18                         EXAMINATION

19   BY ATTORNEY BOWIE:

20        Q.   Good afternoon, Ms. Henry-Robertson.

21        A.   Hello.

22        Q.   Thank you for coming back.

23        A.   Yes.

24        Q.   As you may remember, my name is Blair Bowie.

25   I am counsel for plaintiffs in the Tennessee NAACP vs.

1    they -- I know that some of the older letters have been

2    scanned.

3         Q.   How long do you think it took Lou to check to

4    see if this person was in the database?

5         A.   To see if he was in the restoration database?

6    It doesn't take long.

7         Q.   Right.  Quick search?

8         A.   As long as we have the Social Security

9    number, that makes it quicker.

10        Q.   Right.  And if somebody's registering to

11   vote, they would have provided that?

12        A.   Correct.

13        Q.   Right?

14        A.   Correct.

15        Q.   So somebody registers to vote.  They check on

16   the form that they have had their rights restored

17   before.  The AOEs can just email Lou and say, "Hey, can

18   you look this up?"

19        A.   For the restoration.

20        Q.   The whole thing shouldn't take very long,

21   right?

22        A.   Not too long.

23        Q.   Have you heard of the office getting a lot of

24   these requests?

25        A.   Not a lot.

1           Of individuals who said that they'd been

2     previously restored?

3           Q.    Mm-hmm.

4           A.    Not a lot.  I know we have had that issue

5     come up.  Yes.

6           Q.    How many would you say?

7           A.    I know one in particular.  But since it's not

8     a -- I mean it's something he can just look up.

9     There's not a reason for him to tell us that he's

10    searching to see if someone's restored.

11          Q.    Okay.  But he hasn't complained that this is

12    taking up a lot of his time?

13          A.    No.

14          Q.    You haven't had to hire additional staff to

15    deal with this?

16          A.    No.

17          Q.    So this is not a burdensome task?

18          A.    I wouldn't say so.

19          Q.    So would you anticipate that if the Elections

20    Division said to all registrars, "When somebody submits

21    a registration form and they check that they've already

22    had their rights restored, that it would be -- that you

23    should reach out to us and we will verify that," do you

24    think that that would add a lot of work?

25          A.    So that would be a little -- almost have to

1   know -- again, I don't know the percentage of those.

2   If it's a few a day, then no.  But you're talking about

3   from 95 counties, it would add up.

4           But that's something that wouldn't know

5   without knowing what percentage of that does he do

6   right now.

7           But the database is already there so --

8           Now, the other thing that he mentioned that

9   does take time is the felony search.  If you'll notice,

10  he says, "Based on my search, Mr. Malone has not

11  committed a felony since being restored."

12          That is what takes a lot of time.

13      Q.   How long does that take?

14      A.   That can be an issue with whether or not that

15  person was convicted here in Tennessee.  We can look at

16  our database that TDOC has provided.

17          If it's federal, you know, there is a website

18  or search -- I think it's Westlaw that we use.  And

19  that allows us to look nationally like all throughout

20  the United States for those states that participate in

21  that.

22          Not every state does is my understanding.

23  Alabama does not have their felony records, conviction

24  records, on that website.  So you have to contact

25  Alabama individually to try to get -- to find out if

 1  someone has been convicted of a felony.

 2      Q.   Which you would only do if they had indicated

 3  they had an Alabama conviction on their registration

 4  form?

 5      A.   No.  When he does a felony search, he's going

 6  to be looking broadly.  Just not everyone remembers

 7  exactly where it may have occurred.

 8           So no.  I wouldn't say that he's only going

 9  to limit it to one state.

10      Q.   So he looks in the database.  He sees that

11  this person has been restored in 2001?

12      A.   Yes.

13      Q.   And then he still does the felony search?

14      A.   Correct.  To see if there's been any other

15  felonies since that time.

16      Q.   And if Mr. Malone had provided a document

17  showing that he had his voting rights restored in 2001,

18  there would still be a possibility that he'd had a

19  conviction since then, right?

20      A.   Correct.

21      Q.   So would Lou still run the felony search?

22      A.   Probably.

23      Q.   So the document wouldn't make a difference

24  there?

25      A.   Well, it would make a difference if he

1   doesn't have any other felony.

2       Q.   Right.  But between looking in the database

3   and just seeing whether it says he's been restored or

4   having a document in hand that says he was restored,

5   the possibility is still open that he's been convicted

6   of a felony after that?

7       A.   That's correct.

8       Q.   Regardless?

9       A.   That's correct.

10               (Email dated Tue, 13 Feb 2024 14:59:01

11               +0000 marked Exhibit 6.)

12      Q.   (By Attorney Bowie)  Okay.  So this situation

13  appears to be a little bit different.  It looks like

14  Lou is looking into this because somebody is running

15  for office, if you start with the email at the bottom.

16      A.   Okay.

17               Yeah.  So this is an example of when our

18  database is not as comprehensive at least as we would

19  like it to be.

20      Q.   Because it doesn't show the document that

21  restored his voting rights?

22      A.   It doesn't have a copy.  Mm-hmm.

23      Q.   And just to get it on the record, this one

24  was in 2007?

25      A.   Yes.

```
 1        Q.    Okay.

 2        A.    And the distinction or the importance of the

 3   distinction where you see that D.J. says that he

 4   cannot -- the database does not indicate whether it was

 5   by court order or COR is because, as you know, under

 6   40-20-114, in order to run for public office, they have

 7   to have a court order restoring their rights.  It's not

 8   just the COR.

 9        Q.    Right.  Okay.

10        A.    So for registering to vote, the fact that he

11   was in our database for having been restored is

12   sufficient for registration of registering to vote, but

13   not necessarily to run for -- he was running for --

14   what was it?  State representative.

15        Q.    Okay.  So here again, this person -- or Lou

16   was able to find --

17        A.    It was D.J.

18        Q.    -- find this person in the database and

19   verify he had had his rights restored?

20        A.    It was D.J.  D.J. Hall.

21        Q.    Oh, I'm sorry.  D.J.  Thank you.

22              Here, D.J. was able to find this person in

23   the database presumably, right?

24        A.    Yes.

25        Q.    He didn't say that, but that's your
```

1    understanding?

2         A.   Well, we have a record of two felony

3    convictions.  Well, it starts out it appears he was

4    restored on October 29, 2007.  We have a record of a

5    conviction, but what he's saying is we don't have a

6    copy of the restoration and the database does not

7    indicate whether it was by court order.

8              I think the only reason he went to that

9    second step is because it was someone who tried to run

10   for public office.

11        Q.   Right.  He wanted to see if there was a court

12   order?

13        A.   Correct.

14        Q.   Yes.  Okay.

15             But this took D.J. one day to respond to; is

16   that right?

17        A.   I didn't look at the date.

18             Relatively.  Yes.

19        Q.   And you said earlier that you think that the

20   records are more complete in terms of actually having

21   copies of the restoration documents starting in the

22   late 2010s?

23        A.   I would have to --

24             So there was a point when we kept a copy of

25   the restoration letter in our physical files.  And so

 1  at a certain point, we scanned those.  And it was my

 2  understanding that those were kept, but I may be

 3  mistaken.

 4      Q.   But do you know what that point in time was

 5  when he started keeping them?

 6      A.   No, I don't.

 7      Q.   Here, he says, "As his restoration was from

 8  2007, we don't have a copy of his restoration."

 9      A.   Right.

10      Q.   So D.J. doesn't seem surprised --

11      A.   Right.

12      Q.   -- that it's not there in 2007?

13      A.   That's right.

14           ATTORNEY BOWIE:  Okay.  Here's one more.

15                (Letter dated Friday, March 1, 2024

16                (Cleveland Price) marked Exhibit 7.)

17      Q.   (By Attorney Bowie)  Here, we have a

18  situation where somebody had a grace period conviction.

19  Is that right?

20      A.   Yes.

21      Q.   And on this restoration letter, it says that

22  your office has verified that the individual has that

23  grace period conviction.  Is that correct?

24      A.   Yes.

25      Q.   How would that verification happen?

1      A.   I would presume that they found a copy --

2  well, not a copy.  But they probably found it in the

3  felony database with TDOC.

4      Q.   So in July 2023, your office adopted a

5  policy -- or you put out a memo, I should say, telling

6  the Administrative Office of Elections to not request

7  additional documentation from people who say that they

8  have grace period convictions on the form.  Is that

9  right?

10     A.   That's correct.

11     Q.   Have you seen a large increase in these kinds

12  of inquiries to your office?

13     A.   I do think we've seen an increase in the

14  felony search increase.

15          So a person who's applying to vote, the

16  counties are still wanting to see that there's no other

17  felony, given the time from when that felony may have

18  occurred.

19          So I think the felony searches are what's

20  taking up more time now.

21     Q.   About how many felony searches has your

22  office been asked to do?

23     A.   That's a routine thing for Lou.  That's a

24  daily task that he does.  I did not ask him to quantify

25  it.

 1          But that's something that he does daily.

 2      Q.   Okay.  Has he indicated to you that he's

 3  feeling the pressure of having too many of those?

 4      A.   No.  He doesn't complain.

 5      Q.   Okay.  Have you had to hire additional staff

 6  to handle all the additional demand here?

 7      A.   No.

 8      Q.   Okay.  So would you say that it's been a

 9  large increase or just an increase?

10      A.   I would say it's been steady.  I don't know

11  about an increase, but it's a steady task.  Like I

12  said, it's something he knows he'll have to do at some

13  point during the day.  He's going to get that request.

14      Q.   And that's an increase in requests to verify

15  that somebody had a grace period conviction?

16      A.   Not necessarily.  It's just from the point

17  where the counties no longer reject, but the person has

18  indicated they have a felony conviction, there's this

19  time period they look at.

20          I think there's been their increase in saying

21  is there any other felony.

22      Q.   And if somebody who had a grace conviction,

23  let's say Mr. Price here, had given the AOE the court

24  order showing that his conviction was during the grace

25  period, might the AOE still wonder, "Okay.  Well, have

 1  you had any felonies since?"

 2      A.   Some would.  Yes.

 3      Q.   And so they may still ask Lou to run that

 4  search?

 5      A.   Yes.

 6      Q.   Okay.  So the document doesn't actually

 7  really make much of a difference there?

 8      A.   Well, again, it does because if, as here, he

 9  had no other felonies, and so he didn't have to do

10  anything further.

11      Q.   Right.  So it takes away an additional step?

12  Or it takes away the first step of verifying that the

13  conviction was during the grace period but not Lou

14  having to run the full felony search?

15      A.   For any, yes, subsequent felonies.

16      Q.   So they may still ask for the full felony

17  search regardless of the document?

18      A.   They may.

19      Q.   And there's nothing requiring that they ask

20  for a full felony search; is that right?

21      A.   That is correct.

22           ATTORNEY BOWIE:  One more here.

23              (Letter dated 6/3/24 (Dawn Harrington)

24              marked Exhibit 8.)

25      Q.   (By Attorney Bowie)  I know this document

1                    C E R T I F I C A T E

2

3           I, Virginia Dodge, Registered Diplomate

4    Reporter and Tennessee Licensed Court Reporter and

5    Notary Public, do hereby certify that I recorded to the

6    best of my skill and ability by machine shorthand the

7    deposition contained herein, that same was reduced to

8    computer transcription by myself, without the use of

9    automatic speech recognition, and that the foregoing is

10   a true, accurate and complete transcript of the

11   deposition testimony heard in this cause.

12           I further certify that the witness was first

13   duly sworn by me and that I am not an attorney or

14   counsel of any of the parties, nor a relative or

15   employee of any attorney or counsel connected with the

16   action, nor financially interested in the action.

17           This 20th day of June, 2024.

18

19

20   _____
     Virginia Dodge

21   My Commission Expires:  8/23/2026
     Tennessee LCR No. 734, Exp:  6/30/26

22   Tennessee CCR No. 0499, Exp:  6/30/26
     RDR/CRR #835835

23

24

25

# Exhibit 8

**In the Matter of:**

NAACP, et al.

vs

LEE, et al.

MARK GOINS

*June 18, 2024*



www.beresandassociates.com
615.742.2550 | info@beresandassociates.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT TENNESSEE
NASHVILLE DIVISION

_____

TENNESSEE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
on behalf of itself and its
members, et al.,

        Plaintiffs     Civil Action No. 3:20-cv-01039
                         JUDGE CAMPBELL
vs.                    MAGISTRATE JUDGE FRENSLEY

WILLIAM LEE, in his official
capacity as Governor of the
State of Tennessee, et al.,

        Defendant

_____


VIDEO RECORDED DEPOSITION OF:

MARK GOINS

Taken on behalf of the Plaintiffs

Tuesday, June 18, 2024

9:37 a.m.


_____


BERES & ASSOCIATES COURT REPORTERS
Virginia Dodge, RDR, CRR, LCR
P.O. Box 190461
Nashville, Tennessee  37219-0461
(615) 742-2550
virginia@beresandassociates.com

1   APPEARANCES:

2

   For the Plaintiffs:

3
            Keeda J. Haynes, Esq.
4           Free Hearts
            2013 25th Avenue North
5           Nashville, TN 37208
            (615) 745-1117 Ext. 705
6           keeda@freeheartsorg.com

7           and

8           Blair Bowie, Esq.
            Aseem Mulji, Esq.
9           Gicola Lane, Restore Your Vote Advocate
            Valencia Richardson, Esq. (Via
10            Videoconference)
            Aimee Pruitt, Legal Assistant
11          Amanda Harrington Sargent, Intern
            Campaign Legal Center
12          1101 14th Street NW
            Suite 400
13          Washington, DC 20005
            (202) 736-2200
14          bbowie@campaignlegal.org
            amulji@campaignlegal.org
15          glane@campaignlegal.org
            vrichardson@campaignlegal.org
16
            and
17
            Charles K. Grant, Esq.
18          Baker, Donelson, Bearman,
            Caldwell & Berkowitz, P.C.
19          1600 West End Avenue
            Suite 2000
20          Nashville, TN 37203
            (615) 726-5767
21          cgrant@bakerdonelson.com

22

23

24

25

1   APPEARANCES (continued):

2

3   For the Defendant:

4           Zachary L. Barker, Assistant Attorney General
            Dawn Jordan, Senior Counsel
5           Bradley Krause, Intern
            Assistant Attorney General of
6           the State of Tennessee
            P.O. Box 20207
7           Nashville, TN 37219
            (615) 532-4098
8           zachary.barker@ag.tn.gov
            dawn.jordan@ag.tn.gov

9

10  Also Present:

11          Elizabeth Henry-Robertson

12          Todd Davis, Videographer
            Legal Tech Services
13          (615) 337-3494
            todd.legaltech@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

```
1                          I N D E X

2

3              EXAMINATION OF MARK GOINS

4                                              PAGE

5  By Attorney Haynes ..................................6
   By Attorney Bowie ..................................78
6  By Attorney Haynes ................................141

7

8  Telephonic Hearing Before .........................108
           Magistrate Judge Frensley

9

10                       E X H I B I T S

11                                             PAGE

12 Exhibit 1, Certificate of Restoration of Voting .....41
              Rights for Persons Convicted of a
13            Felony on or after May 18, 1981

14 Exhibit 2, T.C.A. 40-29-204 .........................51

15 Exhibit 3, T.C.A. 39-17-1307 ........................56

16 Exhibit 4, T.C.A. 39-12-301 .........................59

17 Exhibit 5, T.C.A 40-20-114 ..........................69

18 Exhibit 6, Letter dated Friday, February 9, .........79
              2024

19
   Exhibit 7, Letter dated March 14, 2024 ..............82
20
   Exhibit 8, Letter dated March 5, 2024 ..............101
21
   Exhibit 9, Third Supplemental Declaration of .......116
22            Mark Goins, Coordinator of
              Elections, Tennessee Secretary of
23            State, Division of Elections

24
        (Original exhibits returned to Attorney Bowie.)
25
```

BERES & ASSOCIATES COURT REPORTERS

1          The video recorded deposition of MARK GOINS was

2    taken by counsel for the Plaintiffs pursuant to notice,

3    at the offices of Baker, Donelson, Bearman, Caldwell &

4    Berkowitz, PC, 1600 West End Avenue, Suite 2000,

5    Nashville, Tennessee, commencing at 9:37 a.m. on

6    Tuesday, June 18, 2024, for all purposes under the

7    Federal Rules of Civil Procedure.

8          The formalities as to notice, caption,

9    certificate, et cetera, are waived.  It is agreed that

10   Virginia Dodge, being a licensed court reporter and

11   notary public for the State of Tennessee, may swear the

12   witness, and the reading and signing of the completed

13   deposition was not discussed.

14                    *  *  *   *  *  *   *  *  *

15         THE VIDEOGRAPHER:  This is the video

16   deposition taken of Mark Goins on 6/18/2024 at the time

17   indicated on the video screen, which is 9:37 a.m.  Full

18   introduction has been waived.

19         Would the court reporter please swear in the

20   witness and counsel introduce themselves.

21              (Witness sworn or affirmed.)

22         ATTORNEY HAYNES:  I am Keeda Haynes,

23   K-E-E-D-A  H-A-Y-N-E-S, counsel for the plaintiff.

24         ATTORNEY BARKER:  Zachary Barker of the

25   Tennessee Attorney General's office, counsel for the

1   defendants.

2             ATTORNEY JORDAN:  Dawn Jordan, also with the

3   Attorney General's office for the defendants.

4             ATTORNEY GRANT:  Charles Grant, counsel for

5   plaintiffs.

6             ATTORNEY MULJI:  Aseem Mulji, counsel for

7   plaintiffs.

8             MS. PRUITT:  Aimee Pruitt, legal assistant.

9             ATTORNEY BOWIE:  Blair Bowie, counsel for

10  plaintiffs.

11            ATTORNEY HAYNES:  Thank you.

12                      MARK GOINS

13  was called as a witness, and after having been first

14  duly sworn or affirmed, testified as follows:

15                      EXAMINATION

16  BY ATTORNEY HAYNES:

17      Q.   Good morning, Mr. Goins.

18      A.   Good morning.

19      Q.   How are you?

20      A.   I'm good.

21      Q.   Would you prefer I call you Mr. Goins or

22  Mark?

23      A.   You can call me Mark.  That's fine.

24      Q.   Okay.  All right.  I ask that because we know

25  each other already on a first-name basis so --

1      Q.   And implemented.  Okay.

2           And what does it mean when it's implemented?

3      A.   Implemented means that it's the form that's

4  being distributed by the counties, the different

5  agencies.  It's the form that when a voter registration

6  group shows up, that they're able to -- that that's the

7  form that --

8           So if a third party is doing a voter

9  registration group, many times they will get the forms

10  from the local county election commission.  This would

11  be the form that they would get from them.

12      Q.   But you've said you can't retract forms that

13  are already out there, right?

14      A.   I said -- I didn't say you can't.  I said it

15  would be -- it would be very difficult.

16           I mean absolutely.  If we've given forms to a

17  third party or even if some of these agencies have

18  them, it's very difficult to get those.

19           We changed the form many years ago, and I

20  learned this with TennCare.  For a long time, the

21  TennCare -- even though we told them, TennCare

22  continued to distribute the older form.  And this went

23  on for a long time.

24      Q.   Was that the last time you updated the form?

25      A.   No.  We've updated since then, but it took a

1    long time to get integrated.

2         Q.   When was the last time you updated the form?

3         A.   I'd have to look at the voter registration

4    form.  We've done it, I think talks with you all, if

5    I'm correct, but --

6         Q.   2020?

7         A.   I think so.  I think it took almost a year to

8    get it implemented.  And I think you all pointed out it

9    still -- we still had issues, that not everybody was

10   using that form.

11             I mean that's the problem you've got.

12   There's so many moving parts to getting something

13   distributed.

14        Q.   So you wouldn't have been able to edit and

15   create that new form within 25 days?

16        A.   We could edit the form, create the form.

17             Getting the form vetted with the different

18   agencies and implemented, no.

19        Q.   And so all of that would be costs that you

20   would still have to undertake if the stay is lifted?

21        A.   If a court orders us to do that, we will in

22   good faith do what we can.  I don't want to be held in

23   contempt of a court order.  I'm not saying we can get

24   it done.  It would be very doubtful if we could get it

25   done in election setting.

```
1              Because the problem is it all hits you at one

2    time.  You've got so much going on.  I mean we've got

3    early voting going on.

4              I mean it is -- and I'm under oath, and I'll

5    tell you.  10 p.m., 9:30, I don't know when the last

6    time I've gone home before -- you know, last couple

7    weeks, I've been working 10, 10:30, 9, 8.

8              And that's at night.  I mean I may have had

9    the luxury of going home at 7 one night or 6:30.  But

10   that's the nature of this.

11             And so anything that throws you off, then

12   suddenly, you're looking at 24 hours in a day, and

13   you're working 18 to 20, and that's when errors occur.

14             And you've got to look at the whole election

15   as a process.  It's not just distributing a form.  It's

16   everything going on.  This is our Super Bowl.

17        Q.   Yeah.

18        A.   We call it our Super Bowl.

19        Q.   I'm just asking about the form because that's

20   what you're talking about here, and then you're

21   pointing to particular expenses related to that.  So

22   I'm specifically --

23        A.   No, ma'am.

24        Q.   I'm sorry.  I'm specifically asking you --

25        A.   No, ma'am.
```

 1        Q.   -- you still have to incur the expenses to

 2   edit, print --

 3        A.   No, ma'am.  That's not what I said.

 4        Q.   No.  That's the question.

 5        A.   I understand your question, but you're not --

 6   you're trying to narrow it down.  And then I very

 7   specifically said -- and I'm referring to the things

 8   that rebut.

 9             I talk about the work-intensive Presidential

10   election cycle and such changes.

11             So I get an opportunity to answer my

12   question.  That's my understanding, and that's the

13   answer to my question.

14             You're taking one thing in a vacuum.  You're

15   putting it in a silo.

16        Q.   I'm trying to break apart the pieces to

17   understand what the cost of each of the pieces are.

18        A.   Well, the biggest thing is I want to have

19   human -- I don't want to have people walking out the

20   door because they're overworked and can't take it

21   anymore.

22        Q.   I understand that.  Now can I ask you a

23   question?

24             Do you still --

25        A.   Yes.

1      Q.   -- have to edit, vet, print and distribute a

2   form if the court stay was lifted?  You are saying that

3   those are all expenses you would still have to incur.

4      A.   Oh, well, so the most recent -- the most

5   recent --

6           My understanding is no, because the most

7   recent order that Judge Campbell put out said something

8   about alleviating our concern with the form.

9           So I think based on the most recent -- or

10  actually, he was -- I don't know if that's an order,

11  whatever it was, where he said you all will have an

12  opportunity to respond to the request for a stay.  He

13  put language in there about the form.

14     Q.   So you wouldn't have to change the form is

15  your understanding?

16     A.   I don't -- do you have the most recent order

17  from Judge Campbell?

18     Q.   No.  But I'm asking just about this

19  declaration.

20     A.   You're asking specifically if the stay was

21  lifted.  And I think there's been subsequent --

22  something to the last order that would change my

23  understanding, but I would need to see it to make sure.

24  I think there's language in there that says we wouldn't

25  have to change the form.

1      Q.   Okay.

2      A.   Am I -- am I incorrect on that?  I think

3  that's right.

4      Q.   Okay.  And if you were ordered to change the

5  form, everything you've said here about the process,

6  this is an accurate description of what you would still

7  have to do, going forward; is that right?

8      A.   If we had to change the form, yes.

9      Q.   Okay.  Editing, vetting, printing,

10  distributing, all of that, you would still have to do?

11     A.   Yes.

12          ATTORNEY BOWIE:  Okay.  All right.  I'll

13  pause there.  We can go off the record.

14          THE VIDEOGRAPHER:  Off the record.  Time is

15  2:48.  We're off the record.

16              (Off-record discussion.)

17          THE VIDEOGRAPHER:  Time is 2:49.  We're back

18  on the record.

19          ATTORNEY BARKER:  My understanding is at this

20  point, we are transitioning back to questions about the

21  conversations between Coordinator Goins and the

22  legislature, the Tennessee General Assembly.

23          At this point, the defendants and the State

24  of Tennessee would assert that the legislative

25  privilege applies to communications between Coordinator

1                    C E R T I F I C A T E

2

3          I, Virginia Dodge, Registered Diplomate

4    Reporter and Tennessee Licensed Court Reporter and

5    Notary Public, do hereby certify that I recorded to the

6    best of my skill and ability by machine shorthand the

7    deposition contained herein, that same was reduced to

8    computer transcription by myself, without the use of

9    automatic speech recognition, and that the foregoing is

10   a true, accurate and complete transcript of the

11   deposition testimony heard in this cause.

12          I further certify that the witness was first

13   duly sworn by me and that I am not an attorney or

14   counsel of any of the parties, nor a relative or

15   employee of any attorney or counsel connected with the

16   action, nor financially interested in the action.

17          This 20th day of June, 2024.

18

19

20   _____
     Virginia Dodge
21   My Commission Expires:  8/23/2026
     Tennessee LCR No. 734, Exp:  6/30/26
22   Tennessee CCR No. 0499, Exp:  6/30/26
     RDR/CRR #835835

23

24

25