**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al., <br><br> Defendants. | **Civil No. 3:20-cv-01039** <br><br> **JUDGE CAMPBELL** <br> **MAGISTRATE JUDGE FRENSLEY** <br><br> [Class Action] |

**PLAINTIFFS' RESPONSES TO DEFENDANTS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiffs provide the following responses to Defendants' Statement of Undisputed Material Facts:[1]

1.      Plaintiff, the Tennessee State Conference of the National Association for the Advancement of Colored People ("NAACP"), is a membership organization in Tennessee.  (Ex. 4, Morris Dep., R. 151-4, at PageID # 1325.)

**Response:** Undisputed.

---

[1] After this Court granted Plaintiffs' Rule 56(d) motion as to Defendants' Motion for Summary Judgment on Counts 1-3, *see* ECF No. 179, the Parties agreed that Defendants' assertions stated in paras. 26-36 herein were not material to Counts 4-6. *See* ECF No. 183 at 1 n.1. Plaintiffs reserved the right to dispute the sufficiency and materiality of these assertions at a later time. *Id.* Plaintiffs now respond to the assertions in paras. 26-36, which were not responded to prior.

Case 3:20-cv-01039    Document 277    Filed 08/01/24    Page 1 of 26 PageID #: 6131

2.     The NAACP advocates for political, education, health, and social rights.  (Ex. 4, Morris Dep., R. 151-4, at PageID # 1325.)

**Response:** Undisputed.


3.     The NAACP does not keep track of whether any of its members have a felony conviction. (Ex. 4, Morris Dep., R. 151-4, at PageID# 1331.)

**Response:** Disputed. While Plaintiff does not have a formal tracking system for members with felony convictions, Plaintiff Tennessee Conference of the NAACP ("TN NAACP") is aware of members who have felony convictions. Class Representative and Plaintiff, Leola Scott, for example, has past felony convictions and is a member of and the Civic Engagement Chair for the Dyersburg Chapter of the TN NAACP. ECF No. 151-10, Scott Dep. at 26:2-5, 49:17-24. Therefore, to the extent that Defendants suggest that Plaintiff TN NAACP does not know of members with felony convictions, disputed.


4.     More specifically, the NAACP does not keep track of members that were convicted of a felony during the grace period.  (Ex. 4, Morris Dep., R. 151-4, at PageID# 1367.)

**Response:** Disputed. While Plaintiffs do not have a formal tracking system for members with felony convictions, TN NAACP disputes that there are no members with grace period convictions. Therefore, to the extent that Defendants suggest that there are no members with grace period felony convictions, that is unsupported by the cited source and is disputed.


5.     The NAACP sets up tables at voter registration events and holds public education workshops on the COR process.  (Ex. 4, Morris Dep., R. 151-4 at PageID# 1317-18, 1368-70.)

2

**Response:** Disputed in part. Plaintiffs do not dispute that TN NAACP sets up tables at voter registration events and holds public education workshops on the COR process as two examples of its activities. To the extent that Defendants suggest that these are the *only* rights restoration activities that TN NAACP engages in, disputed. Among other activities, TN NAACP members also assist people through the COR process, including taxiing people to government agencies to get COR forms filled out or to find documentation for felony convictions. ECF No. 156-2, Sweet-Love Decl. ¶ 16.

6.     The only expenses for these events are volunteers' time and gas money. (Ex. 4, Morris Dep., R. 151-4 at PageID# 1369, 1376.)

**Response:** Disputed. Volunteer time and gas money are two examples of expenses that the TN NAACP and its members spend at voter registration events and public education workshops on the COR process. Among other costs, TN NAACP members will also accompany individuals who are attempting to seek CORs and will occasionally help pay for records from county clerks of court and for the clerks' time spent procuring the records. ECF No. 156-2, Sweet-Love Decl. ¶ 16.

7.     There is no evidence that the NAACP has identified a member or a third party that was convicted between January 15, 1973, and May 17, 1981 (the "grace period") or prior to January 15, 1973. (*See* Ex. 4, Morris Dep., R. 151-4, at PageID# 1331-67; Ex. 14, NAACP First Interrogatory Response, R. 151-14, PageID# at 1857-78; Ex. 15, Attachments to NAACP Third Interrogatory Response, R. 151-15, PageID# 1879-86; Ex. 16, NAACP Third Interrogatory Response, R. 151-16, at PageID# 1887- 1901.)

3

**Response:** Disputed. Plaintiffs dispute this assertion to the extent that Defendants suggest that there are no TN NAACP members who have grace-period convictions or convictions prior to January 15, 1973. Additionally, Plaintiffs dispute that they have not identified any "third party" who has a grace-period conviction or convictions prior to January 15, 1973. The record is replete with individuals who fall into these categories. *See, e.g.*, Ex. 14 (Grace Period and Pre-1973 Compilation). Moreover, whether TN NAACP has identified a "third party" that was convicted during these time periods is irrelevant to any claim or defense. TN NAACP's standing does not depend on identifying any third party, and TN NAACP is not otherwise required to identify a third party to state its claims. Therefore, this assertion is disputed as immaterial.

8.     Tennessee's voter registration application provides the following information about applying to vote with a felony conviction:

> If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call 1-877-850-4959 or visit sos.tn.gov/restoration.

*Tennessee Mail-In Application for Voter Registration*, Tennessee Secretary of State, https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf (last visited July 23, 2021).

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf on July 23, 2021 included the above text.

Plaintiffs dispute this assertion to the extent that Defendants suggest that the voter registration form has always included this language, or even that there is only one version of the voter registration in use. *See* Pl. SOF, ECF No. 155 ¶ 32 (noting continued use of old inaccurate registration form in at least Knox, Hamilton, and DeKalb Counties); *see also* Ex. 10 at DEF002344

(June 29, 2023 Submission of Old Form in Humphreys County). For example, the voter registration form posted on the Secretary of State's website at the time the complaint was filed stated in relevant part: "To register to vote: . . . you must not have been convicted of a felony, or if you have, your voting rights must have been restored." *See* ECF No. 1-2 at 2 (Tenn. Mail-in Form, Ex. B).

Plaintiffs also dispute this assertion to the extent that the above text suggests that the included link, "sos.tn.gov/restoration", was functional since July 23, 2021. The link listed on the Tennessee voter registration form, has periodically been down throughout the course of this litigation. *See, e.g.*, Pl. Mot. for Summ. J. ("Pl. MSJ") Ex. 12, ECF No. 156-21; *Page Not Found*, Internet Archive Wayback Machine, [https://web.archive.org/web/20220711141623/https://sos.tn.gov/restoration](https://web.archive.org/web/20220711141623/https://sos.tn.gov/restoration) (last visited Sept. 18, 2023) (showing that "sos.tn.gov/restoration" did not exist as of July 11, 2022). To the extent that Defendants suggest that this website has always been active, that is unsupported by the cited source and is disputed.


9.    Box 4 of the voter registration application is labeled "Felony Conviction," and it asks, "Have you ever been convicted of a felony?"  *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at [https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf](https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf) on July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See* Pl. MSJ, ECF No. 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

10.    It provides a parenthetical explaining, "If expunged, answer 'no.'"  *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants suggest that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See* Pl. MSJ, ECF No. 154 at 13-16; *see also* Ex. 10 at DEF002344.


11.    Then, the form provides check boxes for "Yes" and "No."  *Id.*  It further states, "If yes, provide the following information (if known)."  *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants suggest that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See* Pl. MSJ, ECF No. 154 at 13-16; *see also* Ex. 10 at DEF002344.


12.    Then, the form provides space for the applicant to list the crimes, dates, and place relating to the felony conviction.  *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf on July 23, 2021 included the above space. To the extent that Defendants suggest that the voter

6

registration form has always included this space, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See* Pl. MSJ, ECF No. 154 at 13-16; *see also* Ex. 10 at DEF002344.

13.     Additionally, the form asks, "Have you received a pardon or had your voting rights restored?" *Id.* Immediately following, the form provides check boxes for "Yes" and "No." *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants suggest that the voter registration form has always included this language, or even that there is only one version of the voter registration form in use, that is unsupported by the cited source and is disputed. *See* Pl. MSJ, ECF No. 154 at 13-16; *see also* Ex. 10 at DEF002344.

14.     Adjacent to the check boxes is an instruction stating, "If yes, provide copy of document." *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants suggest that the voter registration form has always included this language, or even that there is only one version of the voter registration form in use, that is unsupported by the cited source and is disputed. *See* Pl. MSJ, ECF No. 154 at 13-16; *see also* Ex. 10 at DEF002344.

15.     The form requires an oath or affirmation and a signature of the applicant. *Id.*

**Response:** Undisputed to the extent that Defendants assert that this "oath or affirmation" states: "VOTER DECLARATION: I, being duly sworn on oath (or affirmation), declare that the above address is my legal residence and that I plan to remain at such residence for an undetermined period of time and say that to the best of my knowledge and belief all of the statements made by me are true." *Tennessee Mail-In Application for Voter Registration*, Tennessee Secretary of State, https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf (last visited October 5, 2023).

16.     On the "Go Vote TN" online registration portal, an applicant cannot continue to fill out the voter registration application after checking "Yes" in response to the felony question.  (Ex. 4, Lim Dep., R. 151-3, at PageID# 1259.)

**Response:** Disputed in part. Plaintiffs do not dispute that the online registration portal prevents an applicant from continuing to fill out the online voter registration application if they check "Yes" in response to the question: "Have you ever been convicted of a crime which is a felony in this state, by a court in this state, a court in another state, or a federal court?". *See Welcome to the Tennessee Online Voter Registration System*, https://ovr.govote.tn.gov/Registration/Registration Details/BM (last visited Oct. 6, 2023). However, in the cited source, Ms. Lim states that answering "Yes" to the felony question does stop the individual from going further "on the 'Go Vote TN [website].' It does not stop the person from submitting it at – we believe the Department of Safety still submits them."  ECF No. 151-3, Lim Dep. at 163:20-25. As such, to the extent that Defendant suggests that those who have tried to register to vote with a felony conviction have never been able to register online, or that the "felony question" on the online voter registration application provides sufficient clarity to the voter regarding their eligibility to register to vote online, that is unsupported by the cited source and is disputed.

[Proposed Fact Paragraph 17 Omitted from Defendants' Filing]

18.     However, the individual will be automatically directed to use the paper voter registration application.     *Online Voter Registration Portal*, Tennessee Secretary of State, https://ovr.govote.tn.gov/Registration/RegistrationDetails/BM (last visited July 24, 2023).

**Response:** Disputed in part. Plaintiffs do not dispute that the online application portal currently directs a person to use the paper voter registration application as provided at https://ovr.govote.tn.gov/Registration/RegistrationDetails/BM as of July 24, 2023. To the extent that Defendants suggest that individuals have always been automatically redirected to the paper application within the online voter registration portal, that is unsupported by the cited source and is disputed. To the extent that Defendants suggest that the paper application is a complete substitute for the online registration, or that paper forms are equally available as the online registration, this is unsupported by the cited source and disputed. To the extent that Defendants suggest that the online registration portal provides sufficient information regarding one's eligibility to vote after a felony conviction, this is unsupported by the cited source and is disputed. To the extent that this assertion suggests that those with non-disqualifying convictions are never able to register to vote online, or otherwise have not faced barriers to voter registration, that is unsupported by the cited source and is disputed.

19.     Individuals convicted of a felony between January 15, 1973, and May 17, 1981, did not lose their right to vote.  (Ex. 1, Goins Dec., R. 151-1, at PageID# 1091.)

9

**Response:** Disputed in part. Plaintiffs do not dispute that under Tennessee law, individuals convicted of a felony between January 15, 1973, and May 17, 1981, known as the grace period, never lost their right to vote. *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980). However, individuals within the grace period still face barriers to voter registration that have prevented them from accessing the ballot. For one, officials involved in rights restoration are often unaware that grace-period convictions are not disqualifying. For example, at least two Tennessee Department of Corrections regional directors, who are oversee officers that assist individuals with rights restoration, did not know that there even was a grace period in which individuals did not lose their right to vote. Ex. 15, Deposition of Rebecca Harvey (Harvey Dep.) at 60:1-3; 219:16-22 (stating no awareness of any grace period in which individuals did not lose their voting rights and no awareness of the child support requirement); Ex. 16, Deposition of Anthony Maxey (Maxey Dep.) at 43:4-8, 243:22-244:05, 245:16-20; 245:25-246:06 (stating no awareness of any grace period in which individuals did not lose their voting rights, nor that some convictions require a court order for restoration, nor that there are some dates for which a COR would not need to be submitted). The only written policy available to TDOC staff regarding CORs, Tennessee Department of Correction ("TDOC") Policy 705.06, does not reference the grace period or explain how to assist voters with convictions during that period with their rights restoration. *See* Ex. 17, Deposition of Christopher Hill (Hill Dep.) at 58:09-58:11. Thus, to the extent that this assertion suggests that grace period individuals were never *unable* to vote, or otherwise have not faced barriers to voting, disputed.

10

20.    Additionally, prior to January 15, 1973, individuals only lost their right to vote if the convicting court rendered the individual infamous.  (Ex. 1, Goins Dec., R. 151-1, at PageID# 1093.)

**Response:** Disputed in part. Plaintiffs do not dispute that under Tennessee state law, an individual only lost their right to vote because of a felony conviction prior to January 15, 1973 if they were convicted of one of 21 crimes that could be rendered infamous *and* that the judgment of conviction included a statement that rendered their crime "infamous." *Crutchfield*, 607 S.W.2d at 480. To the extent that Defendants suggest that a court was not required to render the conviction infamous, disputed.

Additionally, individuals within this group still face barriers to voter registration that have caused these individuals to be able to vote. As with grace-period convictions, there is also a lack of awareness and training for at least some officials tasked with filling out CORs, as well as a lack of written policy instructing officials at TDOC. Ex. 16, Maxey Dep. at 43:4-8, 243:22-244:05, 245:16-20; 245:25-246:06 (stating no awareness of any grace period in which individuals did not lose their voting rights, nor that some convictions require a court order for restoration, nor that there are some dates for which a COR would not need to be submitted); Ex. 18 (TDOC Policy 705.06, Hill Dep. Exhibit 6) (showing latest version of Policy 705.06 with no mention of pre-1973 convictions). Thus, to the extent that this assertion suggests that grace period individuals were never *unable* to vote, or otherwise have not faced barriers to voting resulting from Defendant Goins and Hargett's policies, disputed.

21.    On July 21, 2023, the Tennessee Secretary of State and the Division of Elections announced policy revisions for the processing of voter registration applications for individuals

with felony convictions prior to January 15, 1973, and for individuals with felony convictions between January 15, 1973, and May 17, 1981. (Ex. 1, Goins Dec., R. 151-1, at PageID# 1091-94.)

**Response:** Disputed in part. Plaintiffs do not dispute that on July 21, 2023, the Tennessee Secretary of State and the Division of Elections sent out a document outlining their new process for processing voter registration applications for individuals with felony convictions prior to January 15, 1973, and for individuals with felony convictions between January 15, 1973, and May 17, 1981. However, to the extent that this assertion suggests that the document reflects an accurate interpretation of state or federal law, disputed.

22.     The Division of Elections issued a memorandum to the county election commission in Tennessee to provide clarity and avoid rejection of voter registration applications for individuals who did not lose their voting rights. (Ex. 2., Memo on Older Felonies, R. 151-2, at PageID# 1095.)

**Response:** Disputed in part. Plaintiffs do not dispute that "Memo on Older Felonies" was sent to county election commissions. To the extent that Defendants assert that this memo "provide[s] clarity" (or was intended to do so) and "avoid[s] rejection" of eligible voter registration applicants, that is unsupported by the cited source and is disputed.

23.     This memorandum instructs county election commissions to process voter registration applications for individuals in two categories: (1) individuals with pre-January 15, 1973, convictions that did not commit an infamous crime and (2) individuals with convictions between January 15, 1973, and May 17, 1981. (Ex. 2., Memo on Older Felonies, R. 151-2, at PageID# 1095-96.)

12

**Response:** Disputed in part. Plaintiffs do not dispute that the memorandum includes instructions to elections official in processing felony convictions during the applicable time period. To the extent that Defendant asserts that the instructions included in the memorandum are lawful, disputed.

To the extent that Defendants assert that these instructions accurately describe how these convictions are disqualifying, disputed. If a person was convicted before January 15, 1973, they are only disenfranchised if that conviction is one of 21 specifically enumerated crimes *and* the judgment of conviction included a statement that rendered their crime "infamous." *Crutchfield*, 607 S.W.2d at 480. It is not that the crime itself is an infamous crime, but rather that a specific crime is only disenfranchising if the individual's judgement of conviction includes a statement rending that specific crime as "infamous." *See id.* Defendants' memorandum does not mention this, stating only that "[i]f an individual indicates on the face of their registration that they were convicted of one of the above felonies [listing which crimes are eligible to be declared infamous] prior to January 15, 1973, and declared infamous, the form must be rejected unless the applicant has had their rights restored." ECF No. 151-2 at 1-2 (PageID#1095-96) (Memo on Older Felonies). Defendants' memorandum does not instruct county election commissions regarding how an individual would know if their conviction was rendered "infamous," nor how they might find this out. Nor does the revised Voter Registration Appeal Form, cited in the Memo on Older Felonies, discuss this fully, stating that an individual is eligible if the "felony conviction was before January 15, 1973, and the judgement did not declare [the applicant] infamous. ([The applicant] did not lose [their] voting rights.")," without mention that only *some* felony convictions may be rendered infamous. Ex. 13 at DEF001097 (2023 Voter Registration Appeal Request). As such, to the extent that this assertion suggests that the memorandum provides accurate instructions regarding the

restoration process for individuals within the applicable time period, that is unsupported by the cited source and is disputed.

24.     The memorandum also provides a list of infamous crimes for the county election commissions to reference when reviewing a voter registration application listing a pre-January 15, 1973 felony conviction.  (Ex. 2., Memo on Older Felonies, R. 151-2, at PageID# 1096.)

**Response:** Disputed in part. Plaintiffs do not dispute that the memo includes a list of crimes which can be rendered infamous. To the extent that Defendants assert a conviction for such crimes is disqualifying on its own, disputed. As discussed, Plaintiffs' response to Paragraph 23, it is not simply that a conviction for any of the crimes listed in the "Memo on Older Felonies" that disqualifies the individual from voting, but that the judgement of conviction included a statement rendering a conviction for one of the crimes listed as "infamous." *Crutchfield*, 607 S.W.2d at 480. Plaintiffs aver that it is not accurate to label these as "infamous crimes," and it would be more accurate to describe them as those crimes which are eligible to be rendered infamous.

25.     The memorandum also mentions an updated Voter Registration Rejection Appeal Form that provides allows an appealing individual to indicate that they did not lose their right to vote because they fall in one of the aforementioned categories.  (Ex. 2., Memo on Older Felonies, R. 151-2, at PageID# 1095.)

**Response:** Disputed in part. Plaintiffs do not dispute that the "Memo on Older Felonies" mentions the updated Voter Registration Rejection Appeal Form. To the extent that Defendants assert that the memo "provides" or "allows" an appealing individual to indicate that they did not lose their

voting rights because they fall into a specific category, that is unsupported by the cited source and is disputed.

26.　　On June 29, 2023, the Tennessee Supreme Court issued its opinion in *Falls v. Goins*, -- S.W.3d----, No. M2020-01510-SC-R11-CV, 2023 WL 4243961 (Tenn. 2023).

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Undisputed.

27.　　On July 21, 2023, the Tennessee Secretary of State and the Division of Elections also announced policy revisions regarding the COR process.　(Ex. 1, Goins Dec., R. 151-1, at PageID# 1091.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed in part. Plaintiffs do not, for purposes of this motion, dispute that the Tennessee Secretary of State and the Elections Division announced that it would change the process by which it processes the voter registration applications of certain individuals with felony convictions. To the extent that this assertion suggests that the policy revisions or any documents associated with the revision reflect an accurate interpretation of state or federal law or are consistent with state or federal law, disputed.

28.　　The guidance on the COR process was revised to require:

A person convicted of a felony in a Tennessee court, an out-of-state court, or a federal court must:

1. Have been pardoned by a Governor, U.S. President, or other appropriate authority of a state *or* have had full rights of citizenship restored as prescribed by law, **and**

15

2. Have paid all restitution to the victim or victims of the offense order by the court as part of the sentence, if any; **and**

3. Have paid all court costs assessed, if any, unless the court made a finding of indigency; **and**

4. Is current in all child support obligations, if any.

(Ex. 5, COR Memo, R. 151-5 at PageID# 1393.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed in part. Plaintiffs do not dispute this assertion accurately states the contents of the cited memorandum. However, Plaintiffs dispute that these stated criteria are legally "required," insofar that this assertion suggests that the criteria are legal under state and federal law, or that the Secretary of State and the Elections Division has the authority under state law to require this new process, or that they are accurate statement of the legal criteria for a COR under T.C.A. § 40-29-202. To the extent this assertion suggests that Defendants had legal authority to promulgate and enforce these criteria or have legal authority to deny CORs or rights restoration based on these criteria, that is disputed as a matter of fact and unsupported by the cited source.

29. The COR form has been updated to reflect this policy change. (Ex. 7, COR Form, R. 151-7, at PageID# 1396-97).

**Response:** The parties agree that this fact is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed in part. Plaintiffs do not dispute that the COR form has been updated to reflect the new requirements imposed by Defendants for voters seeking rights restoration. Additionally, as stated *supra* para. 28, Plaintiffs dispute that the new instructions are legal under state and federal law, that the Secretary of State and the Elections Division had the

16

authority under state law to require this new process, and that the criteria as stated on the COR form are an accurate statement of the legal criteria for a COR under T.C.A. § 40-29-202.

Plaintiffs also dispute any suggestion that the revised COR form adequately explains to applicants what is needed under the new process. Indeed, the issues from the prior version of the COR that continue into the new version include, but are not limited to: the new form is not an application that can be filled out by the COR-seeker and submitted to a neutral decision-maker for a formal approval or denial, the new form does not include any reference to grace period or pre-1973 convictions, the new form does not include any definition of what may be considered a "court cost," and the new form does not include the specific statutory codes for several of the permanently disqualifying crimes. Thus, to the extent that this assertion suggests that the updated COR form remedies the procedural problems or provides clarity or guidance in any way to the voter, that is unsupported by the cited source.

30. The Division of Elections also issued a frequently asked questions document. (Ex. 6, FAQs, R. 151-6, at PageID# 1395.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Undisputed.

31. No evidence has been produced that the individual Plaintiffs have been pardoned by a governor or had their full rights of citizenship restored with regard to all of their convictions. (Amended Complaint, R. 102, PageID 621-26; Ex. 8, Weare Dep., R. 151-8, at PageID# 1398-1455; Ex. 9, Tournier Dep., R. 151-9, at PageID# 1467-1541; Ex. 13, Scott Dep., R. 151-10 at PageID# 1555-1652; Ex. 11, Perry Dep., R. 151-11, at PageID# 1668-1718; Ex. 12, Hendrix Dep.,

Vol. I and II, R. 151-12, at PageID# 1728-1811; Exhibit 13, Gray Dep., R. 151-13, at PageID# 1815-50 ).

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed. Plaintiff Leola Scott has had her full citizenship rights restored as to all her convictions. *See* Ex. 14 (Scott Citizenship Order). Plaintiffs also dispute that a pardon or restoration of full rights of citizenship is a valid requirement for a COR or voting rights restoration in Tennessee, notwithstanding Defendants' new instructions to the contrary. Furthermore, as representatives of the putative class, Plaintiffs seek to represent the class of all individuals who have attempted to obtain a COR sufficient to restore their voting rights but have not to date been issued a COR sufficient to restore their voting rights, ECF 122, which includes individuals who have obtained pardons or restoration of full rights of citizenship. *See, e.g.*, Ex. 69 (Baker Files); Ex. 63 (Wright File) at DEF015931; Ex. 78 (Banks File) at DEF015677; Ex. 76 (Burgess File) at DEF016104; Ex. 77 (Brown File). As such, to the extent that this assertion suggests that no member of the putative class has been pardoned or achieved citizenship rights restoration, that is unsupported by the cited sources and disputed.

32.     No evidence has been produced that the NAACP has identified a member or a third party that has been pardoned or had their full citizenship rights restored regarding all of their convictions. (*See* Ex. 4, Morris Dep., R. 151-4, at PageID# 1331-67; Ex. 14, NAACP First Interrogatory Response, R. 151-14, PageID# at 1857-78; Ex. 15, Attachments to NAACP Third Interrogatory Response, R. 151-15, PageID# 1879-86; Ex. 16, NAACP Third Interrogatory Response, R. 151-16, at PageID# 1887- 1901.)

18

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed. Plaintiffs have identified at least one NAACP member, Ms. Scott, *supra at 31*, and several third parties (and putative class members) who have received a pardon or restoration of full rights of citizenship. *See supra* ¶ 31. Plaintiffs dispute that this is a legal requirement of rights restoration in Tennessee, notwithstanding Defendants' new instructions to the contrary. Plaintiffs also dispute the validity of Defendants' new position as of January 2024 that restoration "full citizenship rights" must include restoration of gun rights. *See* Ex. 64 (12/13/23 Henry-Robertson Dep.) 284:20-291:13 (discussing Defendants previous interpretation of full restoration of citizenship which only required restoration of the right to vote, run for office, and serve on a jury); *see also* Ex. 65 (Lim memo on out-of-state convictions) (stating expressly that it does not matter if gun rights are restored as long as the other three core rights are restored); Ex. 66 (Lim training docs) at 17. At the time Defendants filed this statement of undisputed material facts, Defendants had not yet even decided what it meant for a person to have restored their full rights of citizenship; nor did they conclude that gun rights would need to be restored as part of the July 2023 changes until January 2024, six months after the new guidance was announced. *See, e.g.*, Ex. 41 (12/13/23 Hall Dep.) at 83:19-21 ("Q: Are firearm rights contained within citizenship rights? A: I -- I don't know.").


33. Parole and probation officers ("PPOs") fill out and issue certificate of restoration forms to eligible offenders. (Ex. 18, Exhibit 4 to Ricci Dep., R. 151-18, at PageID# 2044-46.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed. PPOs refuse to complete COR forms and thus do not "issue" COR forms sufficient to restore voting rights as the term "issue" is used in T.C.A. § 40-29-203.

19

*See, e.g.*, Ex. 43 (Harvey Dep.) at 103:17-104:01 (discussing practice of refusing to fill out CORs for federal convictions, even if that conviction is related to a case that they are supervising the applicant under); Ex. 44 (Mathes Dep.) 38:10-18 (stating practice of refusing to fill out CORs for those whom a conviction "does not require supervision."); Ex. 46 (Sivley Dep.) at 74:11-75:10, 57:25 – 59:22 ("So when it is an out-of-state felony conviction and you'[re] giving someone a blank COR to be filled out, is it your general guidance that they reach out to the court clerk in the county in the state of their conviction?... I usually direct them to contact the court clerk in the county of conviction assuming that there's a possibility the court clerk may fill out the form in its entirety."). When they do fill out COR forms, PPOs fill out only certain sections, leaving the applicant to seek completion of their COR forms elsewhere. *See, e.g.*, Ex. 43 (Harvey Dep.) at 48:2-17, 66:5-14; 67:21-68:13; Ex. 44 (Mathes Dep.) at 70:23-71:17. PPOs are not provided sufficient knowledge or training to determine when a COR requestor is eligible for restoration, and have, on occasion, improperly completed COR forms for those who are ineligible for restoration. *See, e.g.*, Ex. 57 (Killinger Dep.) at 48, 212-17 ("It would appear that the [COR] form was filled out in error.").

These deficiencies have been further exacerbated by Defendant's changes to the rights restoration process, leading to confusion as to which parts of the form PPOs should complete, whether an individual needs to get their full rights of citizenship restored first, and what documentation may need to be submitted for a COR to be completed. *See, e.g.*, Ex. 34 (12/05/23 Henry-Robertson Dep.) at 120:13-121:09 (stating there is no "particular order" to the new process); Ex. 60 (12/04/23 Ricci Dep.) at 152:10-153:03 (testifying that she is "unsure" as to whether citizenship rights restoration must happen first and that TDOC's policy on rights restoration was "under review" because of the changes, and as such, there is "nothing in the policy"

as of December 4, 2023, the ate of the deposition), 181:02-19 (testifying that there is no formal training on what an "instrument restoring the full rights of citizenship," as stated on the COR form, would look like, no training for district directors on this definition, and no examples provided to officers); 183:21-184:01 (testifying that TDOC does not train officers on how to interpret a pardon document and that the Elections Division does not provide assistance with training officers on this); 184:02-19 (testifying that there is no training regarding what a "certified" document, as used on the revised COR form, would mean); Ex. 61 (Shaw Dep.) at 97:19-100:24, 104:24-105:01 (testifying that for TDOC District 40 that she had not received instructions as to as to what citizenship rights entails no as to how to tell "whether a [pardon] documentation is genuine").

34.     PPOs have detailed instructions about how to fulfill their responsibility to "assis[t] eligible offenders in the restoration of their voting rights" provided by Tennessee Department of Correction policy 705.06.  (Ex. 18, Exhibit 4 to Ricci Dep., R. 151-18, at PageID# 2044-46.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed. TDOC does not provide detailed instructions on the voting rights restoration process. Policy 705.06 is thin on instructions and permits PPOs to refuse to fully complete CORs. *See* Ex. 50 (New Policy 705.06). A prior version of this policy, which expired on October 10, 2022, primarily concerned obligations of a PPO upon a person's discharge from supervision (when most individuals are not yet eligible) and did not require PPOs to fill out CORs or determine eligibility upon request. *See* ECF 185-18 (Prior Policy 705.06); ECF 185-6 (Burch Rep.) at 27-28; Ex. 49 (Hill Dep.) at 51:07-51:24 (confirming this policy expired in 2022). Training materials of the Election Division also specify that PPOs are under no obligation to complete CORs: "Note: we do not tell a probation officer if they should sign the form or not, that is not our

21

job. They just need to fill out the form correctly if they can. It is our job to review the paperwork." ECF 185-6 (Burch Rep.) at 28. PPOs are not provided sufficient knowledge or training to determine when a COR requestor is eligible for restoration, and have, on occasion, improperly completed COR forms for those who are ineligible for restoration. *See, e.g.*, Ex. 57 (Killinger Dep.) at 48, 212-17 ("It would appear that the [COR] form was filled out in error.").

Applicants may submit a blank COR to be completed by a TDOC agent, only to receive no response or further communication. *See* Ex. 51 (Tournier Dep.) at 18:19-25 ("The lady at the [local parole and probation office] would not set me up with somebody to fill it out. She just handed me a form and told me to fill out the top portion, which I did, even though it said at the top not to fill it out myself, and then that they'd contact me. And I never heard a word back.").

These deficiencies have been further exacerbated by Defendant's changes to the rights restoration process, as TDOC officers had not received no new training on the changes to the process and no plans were in the works, as of December 4, 2023. *See* Ex. 60 (12/04/23 Ricci Dep.) at 209:2-6; 57:1-3; 181:10-11; 199:21-23. No newly created training materials have been disclosed since.


35. TDOC guidance instructs that "[a]ll offenders" must be provided with a blank certificate-of-restoration form "upon discharge." (Ex. 17, Ricci Dep., R. 151-17, at PageID# 1944, 1950.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed. This assertion is unsupported by the cited source.


36. Applicants who are not immediately eligible upon discharge may later obtain a form once they become eligible. (*See* Ex. 17, Ricci Dep., R. 151-17, at PageID# 1944.)

**Response:** The parties agree that this assertion is immaterial to Counts 4 through 6.

**Response 08/01/2024:** Disputed. To the extent, Defendants assert that COR seekers who were not eligible at discharge are able to "obtain" a COR form sufficient to restore their voting rights, that is contradicted by TDOC policy, which permits PPOs to refuse to fully complete CORs. *See* Ex. 50 (New Policy 705.06). Policy 705.06 states that it is a TDOC staff responsibility to "to complete Section 2 of the [COR] form when requested by the offender," which requires the authority to confirm whether court costs and restitution are owed or not owed. *Id.* at DEF017410. However, the policy then directly contradicts itself by stating that "[s]taff are not responsible for deciding whether an offender is qualified/disqualified" and are "not responsible for determining whether the offender has paid restitution and court cost obligations." *Id.* at DEF017411. Under this TDOC policy, a TDOC official may refuse to determine whether court costs or restitution are still owed, effectively deny an applicant their COR in doing so. *See id.* (instructing staff to "leave the section(s) blank" if they cannot access the information on the form).

Despite their statutory obligation to issue CORs upon request, TDOC PPOs can and do refuse to issue CORs or complete the form without assessing an applicant's eligibility. *See* ECF 185-6 (Burch Rep.) at 27-28; Ex. 43 (Harvey Dep.) at 107:21-108:04 (discussing practice of refusing to fill out CORs for federal convictions, even if that conviction is related to a case that they are supervising the applicant under); Ex. 44 (Mathes Dep.) at 38:10-18 (stating practice of refusing to fill out CORs for those whom a conviction "does not include supervision"); Ex. 48 (Felon Restorations Training) at 368 (Elections Division Training Document advising election officials that "[i]f the applicant insists that the appropriate agents will not complete the COR, the applicant should be advised to seek a court order" and that this "[s]ituation typically occurs w/

23

individuals who insist they don't have any court ordered restitution or that they've paid the restitution, but can't get a probation officer or court clerk to sign off on the form.").

None of the regional TDOC offices deposed in discovery indicated that the office created or maintained any documentation whatsoever tracking when individuals requested CORs outside of supervision, who requested the COR, how such CORs were completed, and which officers completed the CORs. *See, e.g.*, Ex. 53 (Maxey Dep.) at 78:02-79:19, 81:07-82:10 ("A: Now, we may not be able to make that determination the day the offender is in the office. It may take us a few days to get that information, but we will follow up on that . . . Q: In that case is there a policy or standard practice in the office for tracking those kind of still-open cases? A: There's no set tracking mechanism, no."); *see also* Ex. 54 (Sullivan Cty. Clerk Prod.) at 10 ("There are no records kept of the number of individuals that request the forms or assistance . . . There are no records kept of an individual requesting assistance."); ECF 185-6 (Burch Report) at 25.

And, to the extent that Defendants assert that there will be *any* Tennesseans who are "eligible" under their new criteria at discharge, that is disputed; a person cannot receive a citizenship restoration or pardon until *after* they have been discharged from their sentence. *See* T.C.A. §§ 40-29-101(c), 105(b)(1), (c)(2); Ex. 79 (Pardon application).

Dated: August 1, 2024

Respectfully submitted,

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

\* Admitted pro hac vice

*/s/ Blair Bowie*
Blair Bowie\*
Danielle Lang\*
Alice Huling\*
Valencia Richardson\*
Aseem Mulji\*
Ellen Boettcher\*
Kate Uyeda, BPR No. 040531
Kathryn Huddleston\*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org
VRichardson@campaignlegal.org
Amulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org
KHuddleston@campaignlegal.org

Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

       I hereby certify that on August 1, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

ANDREW C. COULAM (BPR #030731)
Deputy Attorney General
Andrew.Coulam@ag.tn.gov

DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov

ZACHARY BARKER (BPR #035933)
Assistant Attorney General
Zachary.barker@ag.tn.gov

ROBERT W. WILSON (BPR # 034492)
Assistant Attorney General
Robert.Wilson@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

                                         /s/ *Blair Bowie*
                                         Blair Bowie

26