IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al.,<br><br>Defendants. | Civil No. 3:20-cv-01039<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE FRENSLEY<br><br>[Putative Class Action] |

**SUPPLEMENTAL BRIEF ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This Court has directed the Parties to file supplemental briefs "addressing how, if at all, the July 2023 policy changes and any changes identified by the State in response to this Order affect the class certification analysis." Doc. 273. The short answer: they do not. The Court should grant class certification anew, for the same reasons that class certification was originally appropriate. Plaintiffs meet all four requirements of Federal Rule of Civil Procedure 23(a), and certification as a Rule 23(b)(2) class is appropriate.

## BACKGROUND

Six individual Plaintiffs seek class certification as to their procedural due process and equal protection claims—Counts One, Two, and Three of the First Amended Complaint—challenging Tennessee's unequal and error-ridden implementation of the statutes granting restoration of voting rights to Tennesseans who lost the right to vote due to a felony conviction. Doc. 105 at 2; Doc. 102 at 39-45. The Tennessee legislature created the Certificate of Restoration (COR) procedure in 2006 to provide an administrative pathway for restoring the right to vote after a felony conviction that need not involve seeking a pardon or petitioning a court. *See* Doc. 276 ¶¶ 55-58.

This Court originally granted class certification on April 13, 2023. Doc. 123. On July 21, 2023, Defendant Goins released a memorandum announcing changes to the procedures for requesting and issuing CORs. Doc. 151-5. Under these new procedures, Defendants refuse to issue CORs and restore voting rights to otherwise eligible applicants unless they "[h]ave been pardoned by a Governor, U.S. President, or other appropriate authority of a state, or have had their full rights of citizenship restored as prescribed by law." *Id.* at 1; *see also* Doc. 275-37 (06/18/24 Henry-Robertson Dep.) at 113:1-11 (describing "pardon or court order restoring full citizenship rights" requirement as a COR eligibility criterion). This new requirement is not among the statutory prerequisites for COR issuance; instead, it is an administrative requirement without basis in state law.

1

*See* T.C.A. § 40-29-204. On February 8, 2024, the Sixth Circuit vacated class certification and remanded for further proceedings "in light of the Defendants' recent policy changes and the reopening of discovery." Doc. 215 at 3.

## ARGUMENT

**I.  Defendants' New Policies and Procedures Do Not Change the Class Certification Analysis.**

Defendants' changes to the COR process on July 21, 2023, and since, do not change the class certification analysis. The class previously certified by the Court—"Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a [Certification of Restoration ('COR')] from the pardoning, incarcerating, or supervising authority, but to date have not received a COR sufficient to restore their voting rights," Doc. 105 at 3—remains appropriately defined and satisfies the requirements of Rule 23. The class brings claims contending that they have been denied CORs without due process and that the COR procedures they are subjected to are arbitrary. *Id.* at 6-7.

Regardless of Defendants' procedural changes' or additional hurdles grafted onto the COR process, the class still encompasses all people who request a COR under Defendants' procedures (whatever they may be) and thus remains the appropriate class to challenge them. Plaintiffs' class definition is supported by a litany of case law explaining that this is the typical definition for classes bringing procedural due process claims—all people who have been denied a certain interest under procedures challenged as constitutionally deficient. *See, e.g.*, *Barry v. Corrigan*, 79 F. Supp. 3d 712, 730 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) (certifying class of "all past, present, and future applicants for, or recipients of, benefits administered [by a public assistance agency] who have suffered or will suffer actual or threatened denial, termination, or reduction of public assistance benefits based on [challenged procedures]");

2

*Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016) (confirming the ripeness of the claims from a class of "[a]ll individuals who have applied for Medicaid (TennCare) . . . who have not received a final eligibility determination" within set timeframes and "not been given the opportunity for a 'fair hearing' by the State Defendants after these time periods have run").

The putative class includes all individuals subject to Defendants' arbitrary and unconstitutional implementation of the statutory COR process. *See* T.C.A. § 40-29-201 *et seq*. Defendants cannot shield themselves from class certification by moving the goal posts as to the procedures they control. Rather, by doing so, Defendants highlight the arbitrariness and lack of procedural certainty underlying their procedures.

    A.  <u>The validity of Defendants' new procedures is a merits question.</u>

Defendants' new procedures effectively impose on the class—all "Tennessee residents who have requested or attempted to request a COR"—a *new* unlawful prerequisite for acquiring a COR, compounding the risk of erroneous deprivation in violation of due process and further guaranteeing arbitrary outcomes based on where a person was convicted or resides. Obtaining a pardon or restoration of full citizenship rights is not a valid COR requirement under Tennessee law, and members of the putative class need not do so to become eligible for a COR. Doc. 278 at 16-18. But ultimately, the (un)lawfulness of this new requirement is a question to be resolved on the merits: it is neither necessary nor appropriate to resolve at class certification. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Indeed, determining whether Defendants' new procedures are constitutionally permissible will be part and parcel of answering the common questions presented by the class, including whether Defendants'

procedures afford adequate process and whether class members are subject to arbitrarily different rules and procedures for regaining the right to vote. *See* Doc. 105 at 6-7.

Critically, determining the legality of the new requirement will be an important part of considering the second *Mathews v. Eldridge* common question: whether the class has been provided adequate process prior to the deprivation of their interest. 424 U.S. 319, 335 (1976) (establishing that, in order to determine what procedures must be provided, courts must balance three factors: (i) the private interest, (ii) the risk of erroneous deprivation of that interest and the value of additional procedural safeguards, and (iii) the cost to the government of additional procedural safeguards); *see also Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 799-800 (6th Cir. 2018) (describing the balancing of the factors "less as a three-way see-saw, and more as a two-step template," wherein courts must determine whether the risk of an erroneous deprivation is "too high"; if so, then at least some additional process is required). The common answer to this question turns on whether Defendants' current procedures create a high risk of erroneous deprivation of the putative class members' statutory right to a COR and constitutional right to vote. Doc. 105 at 6-7.

Plaintiffs argue that the new requirement is another unlawful criterion being used to erroneously deny CORs and voting rights restoration to otherwise eligible Tennesseans that further exacerbates the risk of erroneous deprivation of the putative class members' rights. For example, the recent changes to the new procedures requiring restoration of gun rights on the grounds that it is part of "full restoration of citizenship," further aggravates the risk of erroneous deprivation because eligible COR-seekers have been denied based on this extra-legal and unwritten policy. Doc. 276 ¶ 174-177. Whether this requirement, alongside the rest of Defendants' implementation of the statutes providing for restoration of voting rights, violates due process is ultimately a merits question in this litigation. It will require this Court to assess whether Defendants' assessment of

an applicant's satisfaction of their newly created pardon and citizenship requirement is justified or if it is evidence of a shifting-sands approach, resulting in Defendants' erroneously and arbitrarily denying eligible COR-seekers their constitutional and statutory rights.

Considering the legality of Defendants' new procedures will also be necessary in determining whether the class is subject to arbitrarily different rules and procedures for regaining the right to vote based only on the county of a person's felony conviction or residence. Doc. 105 at 7. Defendants have admitted to applying their new restoration requirement unequally based on COR seekers' county of residence. *See* Doc. 276 ¶ 158. Specifically, while the Elections Division was in the process of creating the new requirement in July 2023, it accepted and approved CORs from applicants of certain counties under the older criteria but delayed and ultimately denied CORs submitted at the same time from similarly situated applicants of other counties under its new procedures. *Id.* The parties vehemently disagree as to whether the Tennessee Supreme Court's decision in *Falls v. Goins*, 673 S.W.3d 173 (Tenn. 2023), necessitated Defendants' 2023 procedural changes. *Compare* Doc. 157-3 at 1, *with* Doc. 278 at 16-18. And while the Court will need to resolve the legal permissibility of the new requirements to assess the merits of questions common to the class, the existence of those common issues is not in question.

### B. Putative class members do not need to satisfy Defendants' new "pre-requisite" to be part of the class.

Defendants argue that Plaintiffs do not have standing because when the complaint was filed in this case, they had not yet met the later created "pre-requisite" or "first step" of obtaining a pardon or civil rights restoration prior to seeking a COR, Doc. 151 at 8-9, and are likely say the same of the putative class. No such "first-step" or "pre-requisite" existed at the time of filing the amended complaint, and Defendants' argument that its belated creation changes the class certification analysis fails for several reasons, including that Defendants' argument requires

5

accepting their new requirements are lawful, which, as described above, is a merits question inappropriate for the class certification stage.

Defendants again attempt to recast the Plaintiff class as Tennesseans who were *erroneously* denied CORs, arguing that under their new procedures any person who has not obtained a pardon or restoration is by definition not yet eligible for a COR—so the denial of a COR as to them would not be in error. *See* Doc. 109 at 3. But this is an argument against a class that Plaintiffs do not seek to certify. *See Barry*, 79 F. Supp. 3d at 730 ("As with all of defendant's counterarguments, this depends on defendant's redefinition of plaintiffs' harm as 'their erroneous disqualifications based on LEIN records of outstanding felony warrants.' The Court can find no reason why it should accept defendant's definition of plaintiffs' harm over plaintiffs' own definition.") (citations omitted). In procedural due process cases, classes are defined by the individuals subject to the challenged procedures, not the individuals ultimately entitled to the substantive benefit regulated by the procedures. *See Barry v. Lyon*, 834 F.3d 706, 722 (6th Cir. 2016) ("To the extent that the subclass includes persons who are actually felons who are intentionally fleeing and are actively being sought for prosecution [i.e., people who are ultimately ineligible for the substantive benefit], they might now lack substantive claims but could still advance a due process argument. That possibility does nothing to undermine the district court's class certification."). Defendants argue that their new "pre-requisite" is part of the COR process, *see, e.g.*, Doc. 157-3 at 1, and they've changed the COR form to require certification that the seeker meets this requirement. Doc. 157-2. Thus, the new requirement is part and parcel of the procedures that the Plaintiffs challenge, and for which they seek class certification.

Additionally, there is much evidence that Defendants are *not* treating pardon or citizenship restoration as a pre-requisite to seeking a COR. This evidence includes direct statements from the

Elections Division that the "first step" of obtaining a pardon or citizenship restoration and the "second step" of obtaining a COR can actually be done in any order. *See, e.g.*, Doc. 275-34 (12/05/23 Henry-Robertson Dep.) at 120:13-121:09 (testifying that there is "no particular order" in which the steps must be completed); *see also*, Doc. 275-41 (12/13/23 Hall Dep.) at 12:15-20; *see also, e.g.*, Doc. 274-2 (TDOC policy 705.06) at 2 ("Sections 1.b. and c. are not required to be completed by the offender before requesting staff to complete Section 2."). The class as defined—people who have unsuccessfully attempted to navigate the COR procedures—is the appropriate group to challenge these procedures, regardless of Defendants' new requirement.

## II. Plaintiffs' Class Should be Certified.

Thus, for the reasons set forth in Plaintiffs' memorandum in support of class certification, Doc. 105, Plaintiffs' proposed class continues to meet the requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. Class certification under Rule 23(b)(2) remains appropriate for Counts One, Two, and Three of Plaintiffs' First Amended Complaint.

**Numerosity.** The new procedures do not affect the numerosity of the class. Its size remains roughly between 1,774 and hundreds of thousands of class members, *see* Doc. 105 at 4-6, well over the threshold of "between 21 and 40" described in *Allard v. SCI Direct, Inc.*, No. 16-cv-01033, 2017 WL 3236448, at *3 (M.D. Tenn. July 31, 2017). Plaintiffs' proposed class definition and the size of Plaintiffs' proposed class are unaffected by the new procedures, and the class remains sufficiently numerous.

**Commonality.** Plaintiffs have identified three common questions for the procedural due process claims and one common question for the equal protection claim, thereby satisfying the commonality requirement. Doc. 105 at 6-7. Those questions are, for the procedural due process

7

claims, (1) whether Plaintiffs have been deprived of a statutorily or constitutionally protected interest in restoration of their right to vote; (2) whether adequate process was afforded prior to that deprivation; and (3) whether Defendants must provide additional procedures to ensure due process. *Id.* For the equal protection claim, Plaintiffs have identified the common question whether the class is subject to arbitrarily different rules and procedures for regaining the right to vote based only on the county of a person's felony conviction. *Id.* These common questions persist following Defendants' new policy. And despite Defendants' arguments to the contrary, "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citations omitted).

It is true that the named Plaintiffs have been forced to go to complicated and sometimes disparate lengths to try to obtain CORs *because* of Defendants' procedural failures. For example, Defendants provide no uniform means of requesting completion of a COR from a neutral decision-maker, with some officials responsible for completing CORs having explicit policies against completing all or part of the CORs, causing some Plaintiffs to attempt to have their CORs completed elsewhere. Doc. 276 ¶¶ 80, 95-96. Likewise, Defendants do not issue a written statement of reasons when they refuse to complete a COR, so Plaintiffs have no basis to evaluate their actual eligibility and no way to appeal, or even to understand, whether the refusal to complete a COR was based on inaccurate records. Doc. 276 ¶¶ 103-104. As described above, Defendants' new procedures only serve to exacerbate these problems. That the named Plaintiffs had such different experiences attempting to restore their voting rights demonstrates the unfairness of Defendants' procedures; it is itself evidence of the due process and equal protection violations that Plaintiffs allege. But Plaintiffs' common questions as to the sufficiency of Defendants' procedures remain. And because these common questions "will yield . . . common answer[s] for the entire

8

class that go[] to the heart of" Plaintiffs' claims, the putative class satisfies Rule 23's commonality requirement. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 508 (6th Cir. 2015).

**Typicality.** Typicality "is not an identicality requirement," and "[t]he threshold for satisfying the typicality prong is a low one." *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (quotations omitted). It is far exceeded here. As before, injuries to named plaintiffs and the class are all caused by the same, constitutionally inadequate system, unchanged by the new procedures. *See* Doc. 105 at 8-9. Defendants failed to provide each plaintiff with a uniform application to access the restoration process; an impartial decisionmaker; and the opportunity to appeal. Doc. 276 ¶¶ 2-4, 6, 8, 12, 14-15, 18, 22. "Where, as here, 'it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 185 (S.D. Ohio 2012).

**Adequacy of Representation.** The new procedures have no bearing whatsoever on the adequacy of class representation, and Defendants have not previously argued that Plaintiffs fail to meet this factor. *See* Doc. 105 at 9-12.

Finally, Defendants' argument that the unique factual circumstances of the individual Plaintiffs mean that "a single injunction will not be able to globally address [their] claims," Doc. 108 at 12, misunderstands a Rule 23(b)(2) class, particularly in the procedural due process context. Plaintiffs are still seeking injunctive and declaratory relief that will provide relief for the entire class, including those who have not yet satisfied the new requirement, such that the new procedures have no bearing on Plaintiffs' satisfaction of Rule 23(b)(2) certification.

9

*Barry v. Lyon* is instructive. There plaintiffs brought a class-action challenging Michigan's automatic disqualification from SNAP eligibility of anyone flagged as having an outstanding warrant for a felony charge or conviction. 834 F.3d at 710-11. The named *Barry* plaintiffs, like the named plaintiffs here, presented a wide variety of factual circumstances regarding their difficulty assessing and proving their eligibility for SNAP benefits after having been flagged as ineligible. *Id.* at 711-15. Each interfaced with a variety of different non-party government actors to attempt to clarify their eligibility. *Id.* The *Barry* defendant who ultimately approved or denied their SNAP benefits argued against class certification on the ground that the "real harm" to plaintiffs was caused by the decisions and recordkeeping of those disparate non-party officials. *Id.* at 722. However, the Sixth Circuit upheld class certification because ultimately the non-party records "caused no harm to plaintiffs until defendant used [them] to disqualify plaintiffs from food assistance benefits," finding that "the question of whether the disqualification [wa]s lawful [wa]s different from the question of whether the [] records [we]re accurate." *Id*. Here too, it is ultimately Defendants who are statutorily responsible for issuing and verifying CORs, and it is their refusal to do so in a fair, accessible, uniform, and reviewable way that causes the class's procedural injury. That individual plaintiffs and putative class members have been compelled to respond differently to Defendants' implementation of the COR statutes proves the unlawful arbitrariness of the implementation, and is no obstacle to class certification. An injunction requiring Defendants to provide additional, uniform procedural safeguards to the putative class will remedy that injury in one fell swoop.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court re-certify the class.

10

Dated: August 14, 2024

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org


\* Admitted pro hac vice

Respectfully submitted,

*/s/ Charles K. Grant*
Blair Bowie*
Danielle Lang*
Alice Huling*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Kathryn Huddleston*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org
VRichardson@campaignlegal.org
Amulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org
KHuddleston@campaignlegal.org

Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

ANDREW C. COULAM (BPR #030731)
Deputy Attorney General
Andrew.Coulam@ag.tn.gov

DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov

ZACHARY BARKER (BPR #035933)
Assistant Attorney General
Zachary.barker@ag.tn.gov

ROBERT W. WILSON (BPR # 034492)
Assistant Attorney General
Robert.Wilson@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

/s/ *Charles K. Grant*
Charles K. Grant