**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TENNESSEE CONFERENCE OF THE** | ) | |
| **NATIONAL ASSOCIATION FOR THE** | ) | |
| **ADVANCEMENT OF COLORED** | ) | |
| **PEOPLE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 3:20-cv-01039** |
| | ) | |
| **v.** | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Frensley** |
| | ) | |
| **WILLIAM LEE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS

---

In support of their Motion for Summary Judgment, and pursuant to Local Rule 56.01(d), Defendants submit this Reply Statement of the Undisputed, Material Facts:

1.      Plaintiff, the Tennessee State Conference of the National Association for the Advancement of Colored People ("NAACP"), is a membership organization in Tennessee.  (Ex. 6, Morris Dep. at 18.)

**Response**: Undisputed.

**Reply**: None.  Defendants provided proper support for their fact.

2.      The NAACP advocates for political, education, health, and social rights.  (*Id.*)

**Response**: Undisputed.

**Reply:** None.  Defendants provided proper support for their fact.

3.      The NAACP does not keep track of whether any of its members have a felony conviction. (Ex. 6, Morris Dep. at 24.)

**Response**: Disputed. While Plaintiff does not have a formal tracking system for members with felony convictions, Plaintiff Tennessee Conference of the NAACP ("TN NAACP") is aware of members who have felony convictions. Class Representative and Plaintiff Leola Scott, for example, has past felony convictions and is a member of and the Civic Engagement Chair for the Dyersburg Chapter of the TN NAACP. ECF No. 151-10, Scott Dep. At 26:2-5, 49:17-24. Therefore, to the extent that Defendants suggest that Plaintiff TN NAACP does not know of members with felony conviction, disputed.

**Reply**: This fact remains undisputed. The deposition transcript cited for this fact contains exactly the statement that is quoted. That the TN NAACP happens to know of one person (who is not a class member because there is no class at this time) does not negate the fact that TN NAACP does not keep track.

4.      More specifically, the NAACP does not keep track of members that were convicted of a felony during the grace period. (*Id.* at 60.)

**Response**: Disputed. While Plaintiffs do not have a formal tracking system for members with felony convictions, TN NAACP disputes that there are no members with grace period convictions. Therefore, to the extent that Defendants suggest that there are no members with grace period felony convictions, that is unsupported by the cited source and is disputed.

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither. The cited material for this fact does support the fact. Plaintiffs have provided no proof whatsoever that there are NAACP members who have felony convictions in the grace period.

2

4. The NAACP sets up tables at voter registration events and holds public education workshops on the COR process. (Ex. 6, Morris Dep. at 10-11, 61-63.)

**Response**: Disputed in part. Plaintiffs do not dispute that TN NAACP sets up tables at voter registration events and holds public education workshops on the COR process as two examples of its activities. To the extent that Defendants suggest that these are the *only* rights restoration activities that TN NAACP engages in, disputed. Among other activities, TN NAACP members also assist people through the COR process, including taxiing people to government agencies to get COR forms filled out or to find documentation for felony convictions. ECF 156-2, Sweet-Love Decl. ¶ 16.

**Reply**: None. Defendants provided proper support for their fact.

6. The only expenses for these events are volunteers' time and gas money. (*Id.* at 62, 66.)

**Response**: Disputed. Volunteer time and gas money are two examples of expenses that the TN NAACP and its members spend at voter registration events and public education workshops on the COR process. Among other costs, TN NAACP members will also accompany individuals who are attempting to seek CORs and will occasionally help pay for records from county clerks of court and for the clerks' time spent procuring the records. ECF 156-2 Sweet-Love Decl. ¶ 16.

**Reply**: The deposition testimony directly conflicts with cited declaration and the declaration could thus be construed as improper. *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) (a party cannot create a material issue of fact by filing an affidavit that contradicts earlier deposition testimony).

7. There is no evidence that the NAACP has identified a member or a third party that was convicted between January 15, 1973, and May 17, 1981 (the "grace period") or prior to January 15, 1973. (*See* Ex. 6, Morris Dep. at 24-60.)

3

**Response**: Disputed. Plaintiffs dispute this assertion to the extent that Defendants suggest that there are no TN NAACP members who have grace-period convictions prior to January 15, 1973. Additionally, Plaintiffs dispute that they have not identified any "third party" who has a grace-period conviction or convictions prior to January 15, 1973. *See, e.g.*, Exhibit 14 (Grace Period and Pre-1973 Compilation). Moreover, whether TN NAACP has identified a "third-party" that was convicted during these time periods is irrelevant to any claim or defense. TN NAACP's standing does not depend on identifying any third party, and TN NAACP is not otherwise required to identify a third party to state its claims. Therefore, this assertion is disputed as immaterial.

**Reply**: None. Upon further review, Defendants agree that Plaintiffs have identified a third party related to this statement of fact, and Defendants agree that this fact is immaterial.

Further, as to Plaintiffs' assertion that this fact is immaterial – see Plaintiff's Responses to Fact no. 19 and 20, below. Apparently, Plaintiffs believe that Grace Period felonies are material.

8. Tennessee's voter registration application provides the following information about applying to vote with a felony conviction:

> If you have had a felony conviction, your eligibility to register and vote depends upon the crime you were convicted of and the date of your conviction. To assist in processing your application, provide the required information in box 4 and any responsive documents you have. For more information about this process, call 1-877-850-4959 or visit sos.tn.gov/restoration.

*Tennessee Mail-In Application for Voter Registration*, Tennessee Secretary of State, https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf (last visited July 23, 2021).

**Response**: Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/forms/ss-3010.pdf, om July 21, 2021 included the above text.

Plaintiffs dispute this assertion to the extent that Defendants suggest that the voter registration form has always included this language, or even that there is only one version of the voter registration in use. *See* Pl SOF, ECF no. 155 ¶ 32 (noting continued use of old inaccurate registration form in at least Knox, Hamilton, and DeKalb counties; *see also* Exhibit 10 at DEF002344 (June 29, 2023 submission of Old Form in Humphreys County). For example, the voter registration form posted on the Secretary of State's website at the time the complaint was filed stated in relevant part: "to register to vote: … you must not have been convicted of a felony, or if you have, your voting rights must have been restored." *See* ECF No. 1-2 at 2 (Tenn. Mail-in Form, EX. B).

Plaintiffs also dispute this assertion to the extent that the above text suggests that the included link, "sos.tn.gov/restoration", was functional since July 23, 2021. The link listed on the Tennessee voter registration form, has periodically been down throughout the course of this litigation. See, e.g., Pl. Mot. For Summ. J. ("Pl. MSJ") Ex. 12 ECF No. 156-21, Page Not Found, Internet Archive Wayback Machine, https://web.archive.org/web/20220711141623/https://sos.tn.gov/restoration (last visited Sept. 18, 2023)(showing that "sos.tn.gov/restoration" did not exist as of July 11, 2022). To the extent that Defendants suggest that this website has always been active, that is unsupported by the cited source and is disputed).

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither. Defendants responded to Plaintiff's SOF, ECF 155 ¶ 32, see ECF 181, at Page ID# 2907. Plaintiffs did not file a Reply to this proper response. Exhibit 10 involves court

costs that Mr. Gray still owes, (*see* D.E. 275-10). D.E. 1-2 is wholly irrelevant because that Complaint is no longer in effect. The Amended Complaint, (D.E. 102), supersedes the Complaint.

As to the assertion that the Secretary of State's website has "periodically been down throughout the course of this litigation," that assertion is wholly unsupported. That the website was down for a short time in July 2022 does not show "periodic" down times – it just shows one brief time.

Defendants provided proper support for their fact.

9. Box 4 of the voter registration application is labeled "Felony Conviction," and it asks, "Have you ever been convicted of a felony?" *Id.*

**Response**: Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See*, Pl. MSJ, ECF 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

**Reply**: This is not a proper response and should be disregarded. Facts that occurred at the time of the Complaint are not at issue--the Amended Complaint, which was filed in October 2022, (D.E. 102), is the operative Complaint. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

10. It provides a parenthetical explaining, "If expunged, answer 'no.'" *Id.*

6

**Response**: Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See*, Pl. MSJ, ECF 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

**Reply**: This is not a proper response and should be disregarded. Facts that occurred at the time of the Complaint are not at issue—the Amended Complaint, which was filed in October 2022, (D.E. 102), is the operative Complaint. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

11.     Then, the form provides check boxes for "Yes" and "No." *Id.* It further states, "If yes, provide the following information (if known)." *Id.*

**Response:** Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See*, Pl. MSJ, ECF 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

**Reply**: This is not a proper response and should be disregarded. Facts that occurred at the time of the Complaint are not at issue – the Amended Complaint, which was filed in October 2022, (D.E. 102), is the operative Complaint. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

12. Then, the form provides space for the applicant to list the crimes, dates, and place relating to the felony conviction. *Id.*

**Response**: Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See*, Pl. MSJ, ECF 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

**Reply**: This is not a proper response and should be disregarded. Facts that occurred at the time of the Complaint are not at issue – the Amended Complaint, which was filed in October 2022, (D.E. 102), is the operative Complaint. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

13. Additionally, the form asks, "Have you received a pardon or had your voting rights restored?" *Id.* Immediately following, the form provides check boxes for "Yes" and "No." *Id.*

8

**Response**: Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf on July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See*, Pl. MSJ, ECF 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

**Reply**: This is not a proper response and should be disregarded. Facts that occurred at the time of the Complaint are not at issue – the Amended Complaint, which was filed in October 2022, (D.E. 102), is the operative Complaint. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

14.     Adjacent to the check boxes is an instruction stating, "If yes, provide copy of document." *Id.*

**Response**: Disputed in part. Plaintiffs do not dispute that the voter registration application posted on the Secretary of State's website at https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf on, July 23, 2021 included the above text. To the extent that Defendants imply that the voter registration form has always included this language, or even that there is only one version of the voter registration in use, that is unsupported by the cited source and is disputed. *See*, Pl. MSJ, ECF 154 at 13-16; *see also* Ex. 10 at DEF002344 (June 29, 2023 Submission of Old Form in Humphreys County).

**Reply**: This is not a proper response and should be disregarded. Facts that occurred at the time of the Complaint are not at issue – the Amended Complaint, which was filed in October 2022, (D.E. 102), is the operative Complaint. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

15. The form requires an oath or affirmation and a signature of the applicant.

*Id.*

**Response**: Undisputed to the extent that Defendants assert that this "oath or affirmation" states "VOTER DECLARATION: I, being duly sworn on oath (or affirmation), declare that the above address is my legal residence and that I plan to remain at such residence for an undetermined period of time and say that to the best of my knowledge and belief all of the statements made by me are true." Tennessee Mail-In Application for Voter Registration, Tennessee Secretary of State, https://sos-tn-gov-files.tnsosfiles.com/ss-3010.pdf (last visited October 5, 2023).

**Reply**: None. Defendants provided proper support for their fact.

16. On the "Go Vote TN" online registration portal, an applicant cannot continue to fill out the voter registration application after checking "Yes" in response to the felony question. (Ex. 4, Lim Dep., at 163.)

**Response**: Disputed in part. Plaintiffs do not dispute that the online registration portal prevents an applicant from continuing to fill out the online voter registration application if that check "Yes" in response to the question: "Have you ever been convicted of a crime which is a felony in this state, by a court in another state, or a federal court?". See Welcome to the Tennessee Online Registration System, https://ovr.govote.tn.gov/Registration/RegistrationDetail/BM (last visited

10

Oc. 6, 2023). However, in the cited source, Ms. Lim states that answering "Yes" to the felony question does not stop the individual from going further "on the Go Vote TN [website].' It does not stop the person from submitting it at – we believe that Department of Safety still submits them." ECF No. 151-3, Lim. Dep. At 163:20-25. As such to the extent that Defendant suggests that those who have tried to register to vote with a felony conviction have never been able to register online, or that the "felony question" on the online voter registration application provides sufficient clarity to the voter regarding their eligibility to register to vote online, that is unsupported by the source and is disputed.

**Reply**: Plaintiffs misstate the testimony of Jessica Lim. To clarify, Defendants quote the exchange from Ms. Lim's deposition in full:

> Q       Doesn't the online voter registration stop you from going any further once you check "Yes" to the felony question?
>
> A       It does on the "Go Vote TN." It does not stop the person from submitting it at – we believe the Department of Safety still submits them.

(D.E. 151-3, Jessica Lim Deposition, PageID # 1259.) The rest of Plaintiffs' "fact" is argument and not proper here.

Defendants provided proper support for their fact.

**(There is no 17)**

18.     However, the individual will be automatically directed to use the paper voter registration application. *Online Voter Registration Portal*, Tennessee Secretary of State, https://ovr.govote.tn.gov/Registration/RegistrationDetails/BM (last visited July 24, 2023).

**Response**: Disputed in part. Plaintiffs do not dispute that the online application portal currently directs a person to use the paper voter registration application as provided at https://ovr.govote.tn.gov/Registration/RegistrationDetails/BM, as of July 24, 2023. To the extent

that Defendants suggest that individuals have been automatically redirected to paper application within the online voter registration portal, that is unsupported by the cited source and is disputed. To the extent that Defendants suggest that the paper application is a complete substitute for the online registration, or that paper forms are equally available as the online registration, this is unsupported by the cited source and disputed. To the extent Defendant suggest that the online registration portal provides sufficient information regarding one's eligibility to vote after a felony conviction, that is unsupported by the cited source and is disputed. To the extent that this assertion suggests that those with non-disqualifying convictions are never able to vote online, or otherwise have not faced barrier to voter registration, that is unsupported by the cited source and is disputed.

**Reply**: Much of this "fact" is improper argument and should be disregarded.

Defendants provided proper support for their fact.

19. Individuals convicted of a felony between January 15, 1973, and May 17, 1981, did not lose their right to vote. (Ex. 5, Griffy & Hall Dep., at 82).

**Response**: Disputed in part. Plaintiffs do not dispute that under Tennessee law, individuals convicted of a felony between January 15, 1973 and May 17, 1981, known as the grace period, never lost their right to vote. *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980). However, individuals within the grace period still face barriers to voter registration that have prevented them from accessing the ballot. For one, officials involved in rights restoration are often unaware that grace-period convictions are not disqualifying. For example, at least two Tennessee Department of Corrections regional directors, who are oversee officers that assist individuals with rights restoration, did not know that there was even a grace period in which individuals did not lose their right to vote. Exhibit 15, Deposition of Rebecca Harvey (Harvey Dep.) at 60:1-3, 219:16-22 (stating no awareness of grace period in which individuals did not lose their voting

12

rights and no awareness of the child support requirement); Ex. 16, Deposition of Anthony Maxey (Maxey Depo.) at 43:4-8, 243:22-244:05, 245:16-20, 245:25-246:06 (stating no awareness of any grace period in which individuals did not lose their voting rights, nor that some convictions require a court order for restoration, nor that there are some dates for which a COR would not need to be submitted). The only written policy available to TDOC staff regarding CORs, Tennessee Department of Correction (TDOC) Policy 705.06, does not reference the grace period or explain how to assist voters with convictions during the period with their rights restoration. See Ex. 17, Deposition of Christopher Hill (Hill Dep.) at 58:08-58:11. Thus, to the extent that this assertion suggests that grace period individuals were never *unable* to vote, or otherwise have not faced barriers to voting, disputed.

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.) Plus, much of the rhetoric in the Response, is just that – rhetoric and argument, not actual facts.

Further, at deposition NAACP admitted that it could not name a single grace period felon who was not granted the right to vote. (Ex. 6, Morris Dep. at 24.)

Defendants provided proper support for their fact.

20.     Additionally, prior to January 15, 1973, individuals only lost their right to vote if the convicting court rendered the individual infamous. (*Id.*)

13

**Response**: Disputed in part. Plaintiffs do not dispute that under Tennessee state law, an individual only lost the right to vote because of a felony conviction prior to January 15, 1973 if they were convicted of one of 21 crimes that could be rendered infamous *and* that the judgment of conviction included a statement that rendered their crime "infamous." *Crutchfield*, 607 S.W.2d at 480. To the extent that Defendants suggest that a court was not required to render the conviction infamous, disputed.

Additionally, individuals within this group still face barriers to voter registration that have caused these individuals to be able to vote. As with grace-period convictions, there is also a lack of awareness and training for at least some officials tasked with filling out CORs, as well as a lack of written policy instructing officials at TDOC. Ex. 16, Maxey Dep. At 43:4-8, 243:22-244:05, 245:16-20, 245 25-246:06 (stating that no awareness of any grace period in which individuals did not lose their voting rights, nor that some convictions require a court order for restoration, nor that there are some dates for which a COR would not need to be submitted); Ex. 18 (TDOC Policy 705.06, Hill Dep. Exhibit 6) (showing latest version of Policy 705.06 with no mention of pre-1973 convictions). Thus, to the extent that this assertion suggests that grace period individuals were never *unable* to vote, or otherwise have not faced barriers to voting resulting from Defendant Goins and Defendant Hargett's policies, disputed.

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither. Taking the very last sentence first, this fact is not about "grace period" convictions; it is about pre-January 15, 1973 convictions. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment

14

Response as to Counts Four, Five, and Six, (D.E. 185.) Most of this Response is not "fact," but rather argument, which is not proper here.

In any event, there is no evidence that the NAACP has identified a member or a third party who was convicted between January 15, 1973, and May 17, 1981 (the "grace period") or prior to January 15, 1973. (*See* Ex. 6, Morris Dep. at 24-60.)

Defendants provided proper support for their fact.

21. On July 21, 2023, the Tennessee Secretary of State and the Division of Elections announced policy revisions for the processing of voter registration applications for individuals with felony convictions prior to January 15, 1973, and for individuals with felony convictions between January 15, 1973, and May 17, 1981. (Ex. 1, Goins Aff., at 1.)

**Response**: Disputed in part. Plaintiffs do not dispute that on July 21, 2023, the Tennessee Secretary of State and the Division of Elections sent out a document outlining their new process for processing voter registration applications for individuals with felony convictions prior to January 15, 1973, and for individuals with felony convictions between January 15, 1973 and May 19, 1981. However, to the extent that this assertion suggests that the document reflects an accurate statement of state or federal law, disputed.

**Reply**: None. Defendants provided proper support for their fact.

22. The Division of Elections issued a memorandum to the county election commission in Tennessee to provide clarity and avoid rejection of voter registration applications for individuals who did not lose their voting rights. (Ex. 2., Memo on Older Felonies, at 1.)

**Response**: Disputed in part. Plaintiffs do not dispute that "Memo on Older Felonies" was sent to county election commissions. To the extent that Defendants assert that this memo "provide[s]

clarity" (or was intended to do so) and "avoid[s] rejection of eligible voter registration applicants, that is unsupported by the cited source and is disputed.

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither. This Response is simply argument, not facts.

Defendants provided proper support for their fact.

23. This memorandum instructs county election commissions to process voter registration applications for individuals in two categories: (1) individuals with pre-January 15, 1973, convictions that did not commit an infamous crime and (2) individuals with convictions between January 15, 1973, and May 17, 1981. (*Id.* at 1-2.)

**Response**: Disputed in part. Plaintiffs do not dispute that the memorandum includes instructions to election official in processing felony convictions during the applicable time period. To the extent that Defendant asserts that the instructions included in the memorandum are lawful, disputed.

To the extent that Defendants assert that these instructions accurately describe how these convictions are disqualifying, disputed. If a person was convicted before January 15, 1973, they are only disenfranchised if that conviction is one of 21 specifically enumerated crimes *and* the judgment of conviction includes a statement rendering that crime as "infamous." *See, id*. Defendants' memorandum does not mention this, stating only that "[i]f an individual indicates on the face of their registration that they were convicted of one of the above felonies [listing which crimes are eligible to be declared infamous] prior to January 15, 1973, and declared infamous, the form must be rejected unless the applicant has had their rights restored." ECF No. 151-2

(PageID#1095-96) (Memo on Older Felonies). Defendants' memorandum does not instruct county election officials regarding how an individual would know if their conviction was rendered "infamous," nor how they might find this out. Nor does the revised Voter Registration Appeal Form, cited in the Memo on Older Felonies, discuss this fully, stating that an individual is eligible if the "felony conviction was before January 15, 1973, and the judgement did not declare [the applicant] infamous. ([The applicant] did not lose [their] voting rights."), without mention that only *some* felony convictions may be rendered infamous. Ex. 13 at DEF001097 (2023 Voter Registration Appeal Request). As such, to the extent that this assertion suggests that the memorandum provides accurate instructions regarding the restoration process for individuals within the applicable time period, that is unsupported by the cited source and is disputed.

**Reply**: This entire Response is argument, not fact, and is thus improper. For clarification, the exhibits referenced by Plaintiffs are the exhibits to their Notice of Filing in Support of their Summary Judgment Response as to Counts Four, Five, and Six, (D.E. 185.)

Defendants provided proper support for their fact.

24. The memorandum also provides a list of infamous crimes for the county election commissions to reference when reviewing a voter registration application listing a pre-January 15, 1973 felony conviction. (*Id.* at 2.)

**Response**: Disputed in part. Plaintiffs do not dispute that the memo includes a list of crimes which can be rendered infamous. To the extent that Defendants assert a conviction for such crimes is disqualifying on its own, disputed. As discussed, Plaintiffs' response to Paragraph 23, it is not simply that a conviction for any of the crimes listed in the "Memo on Older Felonies" that disqualifies the individual from voting, but that the judgement of conviction including a statement rendering a conviction for one of the crimes listed as "infamous." *Crutchfield*, 607 S.W.2d at 480.

Plaintiffs aver that it is not accurate to label these as "infamous crimes," and it would be more accurate to describe them as those crimes which are eligible to be rendered infamous.

**Reply**:  This is not a proper Response and should be disregarded.  The entire Response is argument, not fact.

Defendants provided proper support for their fact.

25.     The memorandum also mentions an updated Voter Registration Rejection Appeal Form that provides allows an appealing individual to indicate that they did not lose their right to vote because they fall in one of the aforementioned categories.  (*Id.* at 2; Ex.3, Rejection Appeal Form, at 1.)

**Response**: Disputed in part.  Plaintiffs do not dispute that the "Memo on Older Felonies" mentions the updated Voter Registration Appeal Form.  To the extent that Defendants assert that the memo "provides" or "allows" an appealing individual to indicate that they did not lose their voting rights because they fall into a specific category, that is unsupported by the cited source and is disputed.

**Reply**:  This is not a proper response and should be disregarded.  This Response is argument, not fact.

Defendants provided proper support for their fact.

26.     On June 29, 2023, the Tennessee Supreme Court issued its opinion in *Falls v. Goins*, --S.W.3d----, No. M2020-01510-SC-R11-CV, 2023 WL 4243961 (Tenn. 2023).

**Response**: Undisputed.

**Reply**: None.  Defendants provided proper support for their fact.

27.     On July 21, 2023, the Tennessee Secretary of State and the Division of Elections also announced policy revisions regarding the COR process.  (Ex. 1, Goins Aff., at 1.)

18

**Response**: Disputed in part. Plaintiffs do not, for purposes of this motion, dispute that the Tennessee Secretary of State and the Elections Division announced that it would change the process by which it processes the voter registration applications of certain individuals with felony convictions. To the extent that this assertion suggests that the policy revisions or any documents associated with the revision reflect an accurate interpretation of state or federal law or are consistent with state or federal law, disputed.

**Reply**: None. Defendants provided proper support for their fact.

28. The guidance on the COR process was revised to require:

A person convicted of a felony in a Tennessee court, an out-of-state court, or a federal court must:

1. Have been pardoned by a Governor, U.S. President, or other appropriate authority of a state _or_ have had full rights of citizenship restored as prescribed by law, **and**

2. Have paid all restitution to the victim or victims of the offense order by the court as part of the sentence, if any; **and**

3. Have paid all court costs assessed, if any, unless the court made a finding of indigency; **and**

4. Is current in all child support obligations, if any.

(Ex. 8, COR Memo, at 1.)

**Response**: Disputed in part. Plaintiffs do not dispute this assertion accurately states the contents of the cited memorandum. However, Plaintiffs dispute that these stated criteria are legally "required," insofar that this assertion suggests that the criteria are legal under state and federal law, or that the Secretary of State and the Elections Division has the authority under state law to require this new process, or that they are accurate statement of the legal criterial for a COR under T.C.A. §40-29-202. To the extent this assertion suggests that Defendants have the legal authority to

promulgate and enforce these criteria or have legal authority to deny CORs or rights restoration based on these criteria, that is disputed as a matter of fact and unsupported by the cited source.

**Reply**: This is not a proper response and should be disregarded. This Response is argument, not fact. Defendants provided proper support for their fact.

29. The COR form has been updated to reflect this policy change. (Ex. 10, COR Form, at 1).

**Response**: Disputed in part. Plaintiffs do not dispute that the COR form has been updated to reflect the new requirements imposed by Defendants for voters seeking rights restoration. Additionally, as stated *supra* para. 28, Plaintiffs dispute that the new instructions are legal under state and federal law, that the Secretary of State and the Elections Division had the authority under state law to require this new process, and that the criteria as stated on the COR form are an accurate statement of the legal criteria under T.C.A. §40-29-202.

Plaintiffs also dispute any suggestion that the revised COR form adequately explains to applicants what is needed under the new process. Indeed, the issues from the prior version of the COR that continue into the new version include, but are not limited to: the new form is not an application that can be filled out by the COR-seeker and submitted to a neutral decision-maker for a formal approval or denial, the new form does not include any definition of what may be considered a "court cost," and the new form does not include the specific statutory codes for several of the permanently disqualifying crimes. Thus, to the extent that this assertion suggests that the updated COR form remedies the procedural problems or provides clarity or guidance in any way to the voter, that is unsupported by the cited source.

**Reply**: This is not a proper response and should be disregarded. This Response is argument, not fact. Defendants provided proper support for their fact.

30. The Division of Elections also issued a frequently asked questions document. (Ex. 9,

FAQs, at 1.)

**Response**: Undisputed.

**Reply**: None.  Defendants provided proper support for their fact.

31.     No evidence has been produced that the individual Plaintiffs have been pardoned by a governor or had their full rights of citizenship restored with regard to all of their convictions. (Amended Complaint, D.E. 102, PageID 621-26; Ex. 11, Weare Dep. at 1-56; Ex. 12, Tournier Dep., at 1-74; Ex. 13, Scott Dep., at 1-97; Ex. 14, Perry Dep., at 1-50; Ex. 15, Hendrix Dep., Vol. I and II, 1-73; Exhibit 16, Gray Dep., at 1-35 )**.**

**Response**: Disputed. Plaintiff Leola Scott has had her full citizenship rights restored as to all her convictions.  See Ex. 14 (Scott Citizenship Order).  Plaintiffs also dispute that a pardon or restoration of full rights of citizenship is a valid requirement for a COR or voting rights restoration in Tennessee, notwithstanding Defendants' instructions to the contrary.  Furthermore, as representatives of the putative class, Plaintiffs seek to represent the class of all individuals who have attempted to obtain a COR sufficient to restore their voting rights but have to date not been issued a COR sufficient to restore their voting rights, ECF 122, which includes individuals who have obtained pardons or restoration of full rights of citizenship.  See, e.g., Ex. 69 (Baker Files); Ex. 63 (Wright File) at DEF015931; Ex. 78 (Baker File) at DEF016677; Ex 6 (Burgess File) at DEF016104; Ex. 77 (Brown File).  As such, to the extent that this assertion suggests that no member of the putative class has been pardoned or achieved citizenship rights restoration, that is unsupported by the cited sources and disputed.

**Reply**: This Response is improper and should be disregarded.  Plaintiffs are asking this Court to consider facts relevant to standing that occurred after the Amended Complaint was filed in October 2022, (*see* D.E. 102).  That is not proper. *Patton v. Fitzhugh*, 2024 WL 3366333 at *4 (M.D. Tenn.

2024).  The facts that are in place at the time of the filing of the operative complaint are what govern, not later-in-time facts.  *Fox,* 67 F. 4th at 295; *Blick*, 105 F. 4th at 876.  All of the "facts," including Ms. Scott's Order (which occurred in July 2024) that Plaintiffs seek to now assert occurred after October 2022.

Thus, Plaintiffs' Response is improper.  Defendants provided proper support for their fact, especially since Ms. Scott's order was issued *after* Defendants made this statement of fact.

32.     No evidence has been produced that the NAACP has identified a member or a third party that has been pardoned or had their full citizenship rights restored regarding all of their convictions. (*See* Ex. 6, Morris Dep. 24-60.)

**Response**: Disputed.  Plaintiffs have identified at least one NAACP member, Ms. Scott, *supra at 31*, and several third parties (and putative class members) who have received a pardon or restoration of full rights of citizenship.  *See supra* ¶ 31.  Plaintiffs dispute that this is a legal requirement of rights restoration in Tennessee, notwithstanding Defendant's new instructions to the contrary.  Plaintiffs also dispute the validity of Defendant's new position as of January 2024 that restoration "full citizenship rights" must include the restoration of gun rights.  *See* Ex. 63 (12/13/23 Henry-Robertson Dep.) 284: 20-291:13 (discussing Defendants previous interpretation of full restoration of citizenship which only required restoration of the right to vote, run for office, and serve on a jury); see also Ex. 65 (Lim memo on out-of-state convictions) (stating expressly that it does not matter if gun rights are restored as long as the other three core rights are restored); Ex. 66 (Lim training docs) at 17.  At the time Defendants filed this statement of undisputed material facts, Defendants had not yet decided what it meant for a person to have restored their full rights of citizenship; nor did they conclude that gun rights would need to be restored as part of the July 2023 changes until January 2024, six months after the new guidance was announced.  *See, e.g.*,

Ex. 41, (12/13/23 Hall Dep.) at 83:19-21 ("Q: Are firearm rights contained within citizenship rights? A: I – I don't know").

**Reply**: This Response is improper and should be disregarded. Much of this Response is argument, not fact. As to whether some people have had their full citizenship rights restored, as noted in Reply to Plaintiffs' Response to Statement of Fact 31, these are facts that occurred after the Amended Complaint was filed, and thus have no bearing on any of the issues here. Defendants provided proper support for their fact.

33.     Parole and probation officers ("PPOs") fill out and issue certificate of restoration forms to eligible offenders. (Ex. 18, Ex. 4 to Ricci Dep., R 151-18 at PageID# 2044-46.)

**Response**: Disputed. PPOs refuse to complete COR forms and thus do not "issue" COR forms sufficient to restore voting rights as the term "issue" is used in T.C.A. § 40-29-203. *See, e.g.*, Ex. 43 (Harvey Dep.) at 103:17-104:01 (discussing practice of refusing to fill out CORs for federal convictions even if that conviction is related to a case they are supervising the applicant under); Ex. 44 (Mathes Dep.) 38:10-18 (stating practice of refusing to fill out CORs for those whom a conviction "does not require supervision."); Ex. 46 (Silvey Dep. At 74:11-75:10, 57:25-59:22 ("So when it is an out-of-state felony conviction and you'[re] giving someone a blank COR to be filled out, is it your general guidance that they reach out to the court clerk in the county in the state of their conviction? … I usually direct them to contact the court clerk in the county of conviction assuming that there's a possibility the court clerk may fill out the form in its entirety."). When they do fill out COR forms, PPOs fill out only certain sections, leaving the applicant to seek completion of their COR forms elsewhere. *See, e.g.*, Ex 43 (Harvey Dep.) at 48:2-17, 66:5-14; 67:21-68:13; Ex. 44 (Mathes Dep.) at 70:23-71:17. PPOs are not provided sufficient knowledge or training to determine when a COR requestor is eligible for restoration, and have, on occasion,

improperly completed COR forms for those who are ineligible for restoration. See, e.g. Ex. 57 (Killinger Dep.) at 48, 212-17 ("It would appear that the [COR] form was filled out in error.")

These deficiencies have been further exacerbated by Defendant's changes to the rights restoration process, leading to confusion as to which parts of the form PPOs should complete, whether an individual needs to get their full rights of citizenship restored first, and what documentation may need to be submitted for a COR to be completed. See, e.g., Ex. 34 (12/05/23 Henry-Robertson Dep.) at 120:13-121-09 (stating that there is no "particular order to the new process); Ex. 60 (12/04/23 Ricci Dep.) at 152:10-153:03 (testifying that she is "unsure" as to whether citizenship rights restoration must happen first and that TDOC's policy on rights restoration was "under review" because of the changes, and as such, there is "nothing in the policy" as of December 4, 2023, the ate of the deposition), 181:02-19 (testifying that there is no formal training on what an "instrument restoring the full rights of citizenship," as stated on the COR form, would look like, no training for district directors on this definition, and no examples provided to officers); 183:21-184:01 (testifying that TDOC does not train officers on how to interpret a pardon document and that the Elections Division does not provide assistance with training officers on this); 184:02-19 (testifying that there is no training regarding what a "certified" document, as used on the revised COR form, would mean); Ex. 61 (Shaw Dep. At 97:19-100:24, 104:24-105:01 (testifying that for TDOC District 40 that she had not received instructions as to what citizenship rights entails no as to how to tell "whether a [pardon] documentation is genuine.").

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither in their response.

24

Exhibit 34, excerpts from the transcript of Beth Henry-Robertson's deposition, does not include the pages 120, 121 to which Plaintiffs cite. (Henry-Robertson Dep., D.E. 275-34.)

Exhibit 43, excerpts from the transcript of Rebecca Harvey's deposition, does not contain pages 103 and 104 to which Plaintiffs cite. (Harvey Dep., D.E. 275-43.) Further, in reading the parts of the deposition that *were* included, it is apparent that Ms. Harvey explains that TDOC would not have information for a federal felony conviction. (*See id.*, PageID# 5434.) It is not proper to couch it as a "refusal."

Exhibit 44, excerpts from the transcript of Carol Ann Mathes's deposition, contains the pages cited. However, it is disingenuous to characterize the failure to complete a COR for someone not in their supervision as a "refusal." (Mathes Dep., D.E. 275-44, PageID# 5471.) It would be difficult for the officers to obtain the information, and much easier for the convicted felon to obtain the information.

Exhibit 46, excerpts from the transcript of Sherri Sivley's deposition, does involve out-of-state convictions. Again, it is disingenuous to characterize it as a "refusal," – TDOC has no control over out-of-state convictions. And it is not always possible for TDOC to provide information about those convictions. (*See* Henry-Robertson Dep., D.E. 260-7, PageID# 4540-4541 (describing the information in the TDOC database used by Division of Elections)).

Exhibit 57, excerpts from the transcript of Patrick Killinger's deposition, does not include the pages 48 and 212 to which Plaintiffs cite.

As far as filling out only parts of the forms, state officials do not always have access to the information sought – the convicted felon is in a better position to obtain that information. (Lim Dep., D.E. 151-3 at PageID# 1283.)

25

As far as citing to TDOC officials' depositions about the rights of citizenship restoration, that is disingenuous. Ms. Ricci stated that the policy was under review, so there was no policy on that issue yet anyway. (Ricci Dep., D.E. 275-60, PageID# 5787). However, that policy is now in place, and TDOC officials are under no obligation to make determinations regarding an individual's restoration of full citizenship rights. (TDOC Policy, D.E. 274-2, PageID# 4750.)

Plus, much of the Response is argument, not fact, and thus improper.

Defendants provided proper support for their fact.

34. PPOs have detailed instructions about how to fulfill their responsibility to "assis[t] eligible offenders in the restoration of their voting rights" provided by Tennessee Department of Correction policy 705.06. (Ex. 18, Exhibit 4 to Ricci Dep., R. 151-18 at PageID# 2044-46).

**Response**: Disputed. TDOC does not provide detailed instructions on the voting rights restoration process. Policy 705.06 is thin on instructions and permits PPOs to refuse to fully complete CORs. See Ex. 50 (New Policy 705.06). A prior version of this policy, which expired on October 10, 2022, primarily concerned obligations of a PPO upon a person's discharge from supervision (when most individuals are not yet eligible) and did not require PPOs to fill out CORs or determine eligibility upon request. See, ECF 185-18 (Prior Policy 705.06); ECF 185-6 (Burch Rep.) at 27-28; Ex. 49 (Hill Dep.) at 51:07-51:24 (confirming that this policy expired in 2022). Training materials of the Election Division also specify that PPOs are under no obligation to complete CORs: "Note: we do not tell a probation officer if they should sign the form or not, that is not our job. They just need to fill out the form correctly if they can. It is our job to review the paperwork." ECF 185-6 (Burch Rep.) at 28. PPOs are not provided sufficient knowledge or training to determine whether a COR requestor is eligible for restoration, and have, on occasion, improperly

completed COR forms for those who are ineligible for restoration. See, e.g. Ex 57 (Killinger Dep. At 48, 212-17 (It would appear that the [COR] form was filled out in error.").

Applicants may submit a blank COR to be completed by a TDOC agent, only to receive no response or further communication. See Ex. 51 (Tourner Dep.) at 18:19-25 ("The lade at the [local parole and probation office] would not set me up with somebody to fill it out. She just handed me a form and told me to fill out the top portion, which I did, even though it said at the top not to fill it out myself, and then that they'd contact me. And I never heard a word back.")

These deficiencies have been further exacerbated by Defendant's changes to the rights restoration process, as TDOC officers had not received no new training on the changes to the process and no plans were in the works, as of December 4, 2023. *See* Ex. 60 (12/04.23 Ricci Dep.) at 209:2-6, 57:1-3, 181:10-11. 199:21-23. No newly created training materials have been disclosed since.

**Reply**: This Response is improper and should be disregarded. It does not answer the fact that Defendants proposed, but instead goes on a long dissertation and argument of their grievances in other areas. Plaintiffs submitted a 35-page brief and a 70-page Statement of their own "facts." The point of the Response to the Defendants' facts should be just that – a response to the facts stated here, not yet another opportunity to raise further argument. The cited material supports the fact stated. While TDOC has since revised that policy, (TDOC Policy, D.E. 274-2, PageID# 4750), the factual assertion remains the same. Defendants provided proper support for their fact.

35. TDOC guidance instructs that "[a]ll offenders" must be provided with a blank certificate-of-restoration form "upon discharge." (Ex. 17, Ricci Dep., R. 151-17, at PageID# 1944, 1950).

**Response**: Disputed. This assertion is unsupported by the cited source.

27

**Reply**: The cited materials state that an inmate is provided with an application and a COR form in their reentry release package.  (Ricci Dep., R. 151-17, at PageID# 1944, 1950.)

36.     Applicants who are not immediately eligible upon discharge may later obtain a form once they become eligible.  (See, Ex. 17, Ricci Dep., R. 151-17, at PageID# 1944).

**Response**: Disputed.  To the extent, Defendants assert that COR seekers who were not eligible at discharge are able to "obtain" a COR form sufficient to restore their voting rights, that is contradicted by TDOC policy, which permits PPOs to refuse to fully complete CORs.  *See* Ex. 50 (New Policy 705.06). Policy 705.06 states that it is a TDOC staff responsibility to "to complete Section 2 of the [COR] form when requested by the offender," which requires the authority to confirm whether court costs and restitution are owed and not owed.  *Id*. at DEF017410.  However, the policy then directly contradicts itself by stating that "[s]taff are not responsible for deciding whether an offender is qualified/disqualified" and are "not responsible for determining whether the offender has paid restitution and court cost obligations."  *Id.* at DEF 017411.  Under this TDOC policy, a TDOC official may refuse to determine whether court costs or restitution are still owed, effectively deny an applicant their COR in doing so.  *See id*. (instructing staff to "leave the section(s) blank" if they cannot access the information on the form.).

Despite their statutory obligation to issue CORs upon request, TDOC PPOs can and do refuse to issue CORs or complete the form without assessing an applicant's eligibility.  *See* ECF 185-6 (Burch Rep.) at 27-28; Ex. 43 (Harvey Dep.) at 107:21-108:04 (discussing practice of refusing to fill out CORs for federal convictions, even if that conviction is related to a case that they are supervising the applicant under); Ex. 44 (Mathes Dep.) at 38:10-18 (stating practice of refusing to fill out CORs for those whom a conviction "does not include supervision"); Ex. 48 (Felon Restoration Training) at 368 (Elections Division Training advising election officials that

"[i]f the applicant insists that the appropriate agents will not complete the COR, the applicant should be advised to seek a court order" and that this "[s]ituation typically occurs w/individuals who insist that they don't have any court ordered restitution or that they've paid the restitution, but can's get a probation officer or court clerk to sign off on the form.").

None of the regional TDOC officers deposed in discovery indicated that the office created or maintained any documentation whatsoever tracking when individuals requested CORs outside of supervision, who requested the COR, or how such CORs were completed, and which officers completed the CORs. *See, e.g.*, Ex. 53 (Maxey Dep.) at 78:02-79:19, 81:07-82:10 ("A. Now, we may not be able to make that determination the day the offender is in the office. It may take us a few days to get that information, but we will follow up on that … Q. In that case is there a policy or standard practice in the office for tracking those kind of still-open cases? A. There's no set tracking mechanism, no."); *see also* Ex. 54 (Sullivan Cty. Clerk Prod.) at 10 ("There are no records kept of the number of individuals that request the forms or assistance … There are no records kept of an individual requesting assistance."); ECF 185-6 (Burch Report) at 25.

And, to the extent that Defendants assert that there will be *any* Tennesseans who are "eligible" under their new criteria at discharge, that is disputed; a person cannot receive a citizenship restoration or pardon until *after* they have been discharged from their sentence. *See* T.C.A. §§ 40-29-101(c), 105(b)(1), (c)(2); Ex. 79 (Pardon application).

**Reply**: This is not a proper response and should be disregarded. Fed. R. Civ. P. 56 (c)(1) provides that a party asserting a fact must support that fact by either citing to particular materials in the record or showing that the materials cited do not establish the presence or absence of a fact. Plaintiffs did neither.

29

Further, the Response does not answer the fact that Defendants proposed, but instead goes on a long dissertation and argument of their grievances in other areas. Plaintiffs submitted a 35-page brief and a 70-page Statement of their own "facts." The point of the Response to the Defendants' facts should be just that – a response to the facts stated here, not yet another opportunity to raise further argument. The cited material supports the fact stated. All fact no. 36 says is that the felon can be given a form. Period. *NAACP does not dispute that basic fact.*

Further, D.E.185-6 is just an expert report, it is not evidence. And all Ms. Burch does is postulate that there are problems – she does not identify specific examples.

With regard to Plaintiffs assertion that TDOC will "refuse" to fill out a COR, Ms. Harvey simply explains that TDOC would refer individuals to the federal probation office for CORs related to a federal felony conviction. (Harvey Dep, D.E. 275-43, PageID# 5434.) It is not proper to couch that statement as a "refusal." It is also disingenuous to characterize the inability to complete a COR for someone not in TDOC supervision as a "refusal." (*See* Mathes Dep., D.E. 275-44, PageID# 5471 (responding "No, ma'am," when asked "[I]f someone who wasn't previously under community supervision came into your office to seek the COR, would you be *able* to complete that application for them?")

As to TDOC's lack of tracking for people who are not in their supervision, that does not mean anything. There is nothing to indicate that people have been erroneously deprived of a COR *to which they are entitled.*

Defendants provided proper support for this fact.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Zachary L. Barker*
ZACHARY L. BARKER, BPR # 035933
Senior Assistant Attorney General

PHILIP HAMMERSLEY
Assistant Solicitor General

ANDREW COULAM
Deputy Attorney General

DAWN JORDAN
Senior Counsel

DAVID RUDOLPH
Senior Assistant Attorney General

ROBERT WILSON
Senior Assistant Attorney General

General Litigation Division
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Zachary.Barker@ag.tn.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the above document has been forwarded electronically. Notice of this filing will be sent by the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| Blair Bowie | Charles K. Grant |
| Danielle Lang | Denmark J. Grant |
| Alice C. Huling | Baker, Donelson, Bearman |
| Valencia Richardson | Caldwell & Berkowitz, P.C. |
| Aseem Mulji | 1600 West End Avenue, Suite 2000 |
| Ellen Boettcher | Nashville, TN 37203 |
| Kate Uyeda | |
| Kathryn Huddleston | |
| Campaign Legal Center | |
| 1101 14th Street NW, Suite 400 | |
| Washington, DC 20005 | |
| | |
| Phil Telfeyan | Keeda Haynes |
| Natasha Baker | Free Hearts |
| Equal Justice Under Law | 2013 25th Ave. N. |
| 400 7th St. NW, Suite 602 | Nashville, TN 37208 |
| Washington, DC 20004 | |

Date: August 15, 2024

                                       */s/ Zachary L. Barker*
                                       Senior Assistant Attorney General