IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:20-cv-01039 |
| v. | ) ) ) | Judge Campbell<br>Magistrate Judge Frensley |
| WILLIAM LEE, et al. | ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The certificate of restoration ("COR") process exists as a matter of legislative grace—not constitutional requirement. Yet Plaintiffs claim an entitlement to CORs that simply does not exist. None of Plaintiffs' claims survive summary judgment. Plaintiffs failed to establish and maintain standing, failed to demonstrate a liberty interest in a COR, and failed to negate Defendants' rational basis for the COR process. This Court should grant Defendants' motion for summary judgment.

I. **Plaintiffs Understate the Significance of the Tennessee Supreme Court's decision in *Falls v. Goins*.**

*Falls v. Goins* controls the statutory interpretation of Tennessee's voting rights restoration process. The Tennessee Supreme Court held that the statutes setting out the eligibility requirements for registering to vote and the statutes governing the COR process must be read together, or construed *in pari materia*. *Falls v. Goins*, 673 S.W.3d 173, 183 (Tenn. 2023). That construction results in a two-step process by which an infamous felon must: (1) restore their full rights of citizenship via pardon, court order, or as otherwise prescribed by law; and (2) meet the additional eligibility requirements for requesting a COR. *Id.* (citing Tenn. Code Ann. §§ 2-19-143; 40-29-201 through -205); *see also* Tenn. Code Ann. § 2-2-139(a).[1] The court also clarified that the *infamous felon* bears the burden of proving compliance with the eligibility requirements. *Id.* at 180. When interpreting state law, this Court must "apply the law of the state's highest court."[2]

---

[1] Because the plaintiff in *Falls* only sought declaratory judgment under Tenn. Code Ann. § 2-19-143, the Tennessee Supreme Court did not consider the requirements of Tenn. Code Ann. § 2-2-139(a). *Falls*, 673 S.W.3d at 177. But, the Tennessee Supreme Court's instruction requiring harmonious construction of the statutes setting out eligibility requirements for registering to vote and the statutes governing the COR process necessarily extends to § 2-2-139(a) as its requirements are similar to § 2-19-143.

[2] If this Court finds that *Falls v. Goins* does not satisfactorily establish a two-step process for restoring the right to vote for all infamous felons, then the Court should certify the question of state law to the Tennessee Supreme Court. *See Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 449-450 (6th Cir. 2009) (holding that a certified question is appropriate "when the question is new and state law is unsettled").

1

*See Peterson v. Johnson*, 714 F.3d 905, 913 (6th Cir. 2013).

Coordinator Goins could not ignore the Tennessee Supreme Court's statutory construction because his statutory duties require him to "[a]uthoritatively interpret the elections laws for all persons administering them." Tenn. Code Ann. § 2-11-202(a)(4). *Falls*' holding compelled Coordinator Goins to implement a two-step process for all infamous felons in July 2023.[3] (COR Memo, D.E. 151-5, PageID# 1393-94.) Ultimately, Plaintiffs' displeasure with the two-step process is irrelevant. The requirements for requesting a COR and registering to vote are set by Tennessee statutes, Tennessee court opinions, and the Tennessee Coordinator of Elections' interpretation of Tennessee's election laws. And any due process or equal protection challenge to the COR process presented by Plaintiffs cannot change those requirements, but those challenges only concern the process by which an infamous felon may comply with those requirements and whether those requirements are equally enforced.

## II. Plaintiffs Lack Standing for Counts One through Three.

Plaintiffs must have standing at the time the Amended Complaint was filed and maintain it thereafter. *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (holding that a plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter"); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (determining standing "at the outset of litigation."). "So a plaintiff who lacks standing from the start cannot rely on factual changes during the suit to establish it." *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 295

---

[3] While Plaintiffs point to *Falls*' disclaimer limiting the scope of the Court's analysis, they overread that limitation. The Court stated that it would not entertain a hypothetical case where a person had regained their citizenship and voting rights in another state before establishing residency in Tennessee. *Falls*, 673 S.W.3d at 178. The Court's logic and statutory interpretation are broadly applicable, and the opinion is instructive to Tennessee officials, and other courts, who must interpret and apply the same statutes. *Falls*' disclaimer is not implicated here because no individual Plaintiff restored his or her voting rights before moving to Tennessee.

2

(6th Cir. 2023). Since Plaintiffs lacked standing when they filed the Amended Complaint, this Court lacks jurisdiction.

### A. The individual plaintiffs cannot establish an injury in fact.

As Defendants have argued, the individual Plaintiffs lacked standing when they filed suit. (*See* Def.'s Supp. Brief, D.E. 284, PageID# 6249-52.) And, the individual Plaintiffs' attempts to gain standing throughout this litigation are too little, too late. (*Id.*) The operative Complaint was filed on October 22, 2022.[4] (*See*, Am. Compl., D.E. 102.) At that point, none of the individual plaintiffs were eligible to request a certificate of restoration.[5] Tenn Code Ann. §§ 40-29-203(a); 2-19-143; 2-2-139(a). None had restored their full rights of citizenship, and none had proven that they had satisfied their legal financial obligations of court costs, restitution, or currency of child support payments. (*See* Def.'s Supp. Brief, D.E. 284, PageID# 6251-52.)

All of the individual Plaintiffs allege either the denial of a COR or the inability to receive a COR as their injury. (Am. Compl., D.E. 102, PageID# 621-26.) But Plaintiffs were not entitled to request or receive a COR because they had not completed the first step of the two-step process, restoration of their full citizenship rights, before filing the Amended Complaint. *See Falls*, 673 S.W.3d at 183. Thus, all individual Plaintiffs lack standing.

---

[4] When the Amended Complaint was filed, Mr. Hendrix already had his voting rights restored and had been voting. (Hendrix Dep., D.E. 151-12, PageID# 1755, 1787.) Thus, he has no standing to sue because he suffered no prospective injury.

[5] While the Tennessee Supreme Court issued *Falls* after Plaintiffs filed the Amended Complaint, the decision was just a clarification of existing statutory law, and thus the law always applied. *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 312-313 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."); *see Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review . . . .").

3

## B. The NAACP lacks organizational standing.

Article III standing prevents organizational plaintiffs from bringing lawsuits on public policy issues if success does not give the organization, or one of its members, "some relief other than the satisfaction of making the government comply with the law." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014). To establish standing, then, the NAACP has the burden of proving three elements as a matter of law—namely, "that it has suffered (or will suffer) a 'concrete and particularized' injury; that a 'causal connection' exists between the injury and the defendant's conduct; and that the requested remedy will redress the injury." *TN NAACP v. Lee*, 105 F.4th 888, 892 (6th Cir. 2024) (per curiam) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016). That burden is "substantially more difficult" for the NAACP because it challenges government conduct that regulates "someone else" rather than NAACP itself. *NAACP*, 105 F.4th at 902 (quotation omitted). The COR process "'neither require[s] nor forbid[s] any action' on [the] part" of the NAACP. *See id.* at 902 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Instead, the COR process applies to eligible individuals convicted of an infamous crime who seek to restore their right to vote. So, the NAACP needs "much more" than usual to show that the COR process actually causes the organization to suffer any cognizable injury. *Changizi v. Dep't of Health & Human Servs.*, 82 F.4th 492, 496 (6th Cir. 2024) (citation omitted). NAACP has not provided any "specific facts" demonstrating a cognizable injury. *See NAACP*, 105 F.4th at 905-06.

The NAACP's standing argument is contrary to the Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024). There, medical associations challenged FDA regulations allowing easier access to an abortion pill. *Id.* at 372–74, 394. The associations claimed organizational standing because "the FDA regulations" they challenged "had

4

rendered their public-education efforts more costly by forcing them to devote extra time and expense to informing the public about the risks of the abortion drug." *NAACP*, 105 F.4th at 905 (citing *All. for Hippocratic Med.*, 602 U.S. at 393–95). But the Supreme Court found those costs insufficient because "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 394.

Like the associations in *Alliance*, the NAACP too lacks standing because the organization itself suffers no concrete injury from the COR process. The NAACP has neither pled nor demonstrated any direct injury to itself from the challenged conduct. (Am. Compl. D.E. 102, PageID# 620-21.) And Plaintiffs cannot use their last-minute declarations—information provided the same day that Plaintiffs' filed their response—to "supply evidence" for their attempt to defeat Defendants' motion for summary judgment. *See* Fed. R. Civ. P. 37(c)(1); *see also Taylor*, 624 F. App'x at 329 (citing Fed. R. Civ. P. 37(c)(1) and affirming the exclusion of witnesses whose identities were not "disclose[d] during discovery"); (Bowie Email, D.E. 285-1). But even the declarations provided by Plaintiffs—a last minute attempt to manufacture standing during the year that Plaintiffs had to concoct their Response—do not show direct injury. Third Sweet-Love Dec., D.E. 275-28; Randolph Dec., D.E. 275-29; Tipton-Boyd Dec., D.E. 275-30; Carter Dec., D.E. 275-31; Lumpkin Dec., D.E. 275-32.) At most, the resource-diversion theory shows that the NAACP voluntarily expended resources to generally assist and advise "others how to comport with" the COR process. (*Id.*); *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014). The NAACP cannot "manufacture its own standing" by voluntarily expending resources to counteract conduct that does not harm the organization itself. *All. for Hippocratic Med.*, 602 U.S. at 394; *see Shelby*

5

*Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020) (per curiam); *Fair Elections*, 770 F.3d at 460–61.

Indeed, accepting the NAACP's standing theory here would create the exact free-for-all the Supreme Court warned about in *Alliance*, where "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *All. for Hippocratic Med.*, 602 U.S. at 395. The NAACP's resource-diversion theory leads to the same result. That "expansive theory of standing" defies the limited role of federal courts, *id.*, and flouts "separation-of-powers principles," *Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013).

### C. The NAACP cannot establish representational standing.

To invoke representational standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, (1977)). Additionally, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009). Speculation that "it is certainly possible—perhaps even likely—that one individual will meet all of these criteria . . . does not suffice." *Id.* at 499.

The NAACP identifies only one member whom it claims has standing in her own right, Leola Scott. But, Ms. Scott lacks standing. While it appears that she restored her citizenship rights as of July 2024, Ms. Scott did not have her full rights of citizenship restored when the Amended Complaint was filed—the relevant time for determining standing. Plus, Ms. Scott's most recent

6

COR form indicates that she still owes court costs, (*see*, Scott COR Form, D.E. 275-11, PageID# 4858), another failure to meet the eligibility requirements for requesting a COR. Tenn. Code. Ann. §§ 40-29-203(a); 40-29-202(b)(2). To the extent that Ms. Scott complains that a county court clerk incorrectly determined that she owes court costs, that alleged harm is attributable to court clerk— not Defendants. And since Ms. Scott lacks standing, so does the NAACP.

### III. Plaintiffs Have Not Been Deprived of Due Process.

Even if the Court had jurisdiction, neither Plaintiffs' state-created liberty interest theory (Count One) nor their constitutional liberty interest theory (Count Two) entitle Plaintiffs to due process protections. The right to vote is not even a liberty interest. *Richardson v. Texas Sec. of State*, 978 F.3d 220, 230 (5th Cir. 2020). And there is no support for finding a liberty interest in the process for restoring that right. Because Plaintiffs lack a liberty interest in the COR process, they are *not* entitled to due process protections. Defendant's motion for summary judgment should be granted on both Counts.

#### A. Plaintiffs have no state-created liberty interest in a COR.

Plaintiffs cannot point to a single case holding that a convicted felon has a "state-created liberty interest" in *restoration* of the right to vote. (Pls.' Response, D.E. 278, PageID# 6171-73.) Nor can they, because state-created liberty interests are limited to particular sorts of freedom from physical restraint. *Richardson*, 978 F.3d at 231 (citing *Sandin v. Conner*, 515 U.S. 472, 484). Plaintiffs cite no cases suggesting that state-create liberty interests exist outside the context of bodily confinement.

Plaintiffs' analogy to parole applicants who have a liberty interest does not hold up to scrutiny. First, parole releases a prisoner from bodily confinement. Clearly, a COR does not. Second, Plaintiffs' analogy rests on two United States Supreme Court holdings, *Greenholtz v.*

7

*Nebraska Penal Inmates*, 442 U.S. 1, 99 (1979) and *Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987), where the Court found that certain states' parole statutes created a liberty interest triggering due process protections. But the statutes provided that prospective parolees were *entitled* to, or shall be granted parole, unless the parole board found that certain factors existed. That placed the burden on the parole board to find an exception to parole. Plaintiffs argue, "By requiring COR requestors to satisfy additional criteria not found or referenced in § 40-29-203, Defendants' new procedures contradict its express mandate that CORs 'shall be issued' to any requestor that satisfies § 40-29-202's eligibility criteria." (Pl.'s Resp., D.E. 278, PageID# 6174.) But Plaintiffs gloss over the requirement that a person must be "eligible to apply for a voter registration card and have the right of suffrage restored" *before* requesting a COR. Tenn. Code Ann. § 40-29-203. Full rights of citizenship to be restored before a person is eligible to register and vote. *Id.* § 2-2-139(a). Thus, the statutes at issue here are dissimilar to the parole statutes; Tennessee law places the burden on the *infamous felon* to demonstrate that he is entitled to a COR, not on Defendants to demonstrate that the felon is ineligible. In other words, Tenn. Code. § 40-29-203(a) puts the burden on the infamous felon to demonstrate eligibility *before* they may even *request* a COR, *Falls*, 673 S.W.3d at 179 ("[I]t is incumbent upon that person to prove payment of restitution, court costs, and that said person is current in all child support obligations.") This changes the calculus for determining the existence of a liberty interest. Unlike parole seekers in *Greenholtz* and *Allen*, if there is a liberty interest it would not vest until an infamous felon meets the criteria for *requesting* a COR.

Further, as the Supreme Court observed in *Greenholz*, "Decisions of the Executive Branch, however serious their impact, do not automatically involve due process protection; there simply is no constitutional guarantee that all executive decision making must comply with standards that assure error-free determinations." 442 U.S. at 7.

Because Plaintiffs lack a state-created liberty interest, their due process claim fails.

### B. Plaintiffs have no constitutional liberty interest in certificates of restoration.

Plaintiffs also claim to have a "constitutional liberty interest" in restoration of voting rights. But, the Sixth Circuit has made clear that the right to vote is not a constitutional liberty interest. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 479 (6th Cir. 2008). Plaintiffs support their novel position by citing *Lostutter v. Kentucky*, No. 21-5476, 2021 WL 4523705, at *3 (6th Cir. Oct. 4, 2021), where the only issue was whether an Executive Order mooted those plaintiffs' claims. But *Lostutter* is wholly inapposite to the claims here as it did not address whether a felon has a liberty interest in voting rights restoration that triggers due process protections, which is evidenced by the court refusing to consider the merits of plaintiffs' "novel" challenges. *Id.* at *3. And Plaintiffs' string of citations regarding the right to vote are inapplicable; disenfranchised felons have no right to vote. *See Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. 1986); *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). Because Plaintiffs have no legitimate claim of entitlement to the right to vote, their due process claim necessarily fails, *e.g.*, *Jones v. McKinney*, 172 F.3d 48 (6th Cir. 1998) (unpublished) (dismissing for a lack of a constitutional liberty interest).

### IV. Plaintiffs Have Not Been Denied Equal Protection.

*Bush v. Gore*, 531 U.S. 98 (2004) (per curiam) does not set the level of scrutiny applicable to Tennessee's COR process. And neither does *Stein v. Thomas*, 672 F. App'x. 565, 569 (6th Cir. 2016), which analyzed a vote recount and uses *Bush* as an example—but notes that *Bush* is "non-precedential." *Bush* expressly dealt with individuals' right to vote and the treatment of "one person's vote over that of another." *Bush*, 531 U.S. 104-05. *Stein* upheld a temporary restraining order where a presidential candidate and a voter presented a "colorable argument" that their state-created "recount right" was arbitrarily abridged. *Stein v*, 672 Fed. Appx. at 570.

9

At every turn, Plaintiffs attempt to make this case about the right to vote. (Pl.'s Resp., D.E. 278, PageID# 6187-88.) But again, disenfranchised felons have *no right to vote*. *See supra* Part III.A. Nor can Defendants unequally favor "one person's vote over that of another" because disenfranchised felons cannot cast votes. *Id.* Plaintiffs' attempt to rename their equal protection claim in Count Three as a "*Bush v. Gore* Claim" does not change the applicable scrutiny. Plus, Plaintiffs' argument that their challenge to the COR process, rather than the underlying substantive criteria, changes the applicable level of scrutiny makes little sense. (Pl.'s Resp. D.E. 278, PageID# 6188.) Plaintiffs' select-a-scrutiny approach would change the applicable legal standard based merely on the phrasing of a plaintiff's challenge. Plaintiffs offer no persuasive reason for this Court to depart from the rational basis standard that the Sixth Circuit applied in reviewing Tennessee's COR statutes in *Johnson v. Bredesen*. *See* 624 F.3d 742, 746 (6th Cir. 2010).

To prevail on rational basis review, Plaintiffs must prove the lack of a rational basis "either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill will." *Id.* at 747 (quotation omitted). Plaintiffs have no such proof. The structure of the COR process is supported by Tennessee's interest in saving taxpayer resources and easing administrative burdens. (Def.'s Mem. in Supp., D.E. 151, PageID# 1079-80.) Instead of providing proof, Plaintiffs resort to critiques that do not negate the bases supporting the current COR process; they just display Plaintiffs' differing opinion. Thus, Defendants are entitled to summary judgment on Count Three.

## CONCLUSION

For the above reasons, this Court should grant Defendants' motion for summary judgment on Counts One, Two, and Three.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Zachary L. Barker*
ZACHARY L. BARKER, BPR # 035933
Senior Assistant Attorney General

PHILIP HAMMERSLEY
Assistant Solicitor General

ANDREW COULAM
Deputy Attorney General

DAWN JORDAN
Senior Counsel

DAVID RUDOLPH
Senior Assistant Attorney General

ROBERT WILSON
Senior Assistant Attorney General

General Litigation Division
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Zachary.Barker@ag.tn.gov

*Counsel for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the above document has been forwarded electronically. Notice of this filing will be sent by the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

Blair Bowie
Danielle Lang
Alice C. Huling
Valencia Richardson
Aseem Mulji
Ellen Boettcher
Kate Uyeda
Kathryn Huddleston
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

Phil Telfeyan
Natasha Baker
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004

Charles K. Grant
Denmark J. Grant
Baker, Donelson, Bearman
Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203

Keeda Haynes
Free Hearts
2013 25th Ave. N.
Nashville, TN 37208

Date: August 15, 2024

*/s/ Zachary L. Barker*
Senior Assistant Attorney General