# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:20-cv-01039 |
| v. | ) ) | **Judge Campbell** **Magistrate Judge Frensley** |
| **WILLIAM LEE, et al.** | ) ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S SEPTEMBER 12, 2024, ORDER REGARDING EFFECT OF THE TENNESSEE DIVISION OF ELECTIONS' POLICY CHANGES ON ANALYSIS OF CLASS CERTIFICATION

The Court requested that Defendants submit a brief addressing seven (7) questions regarding the effect, if any, that the Tennessee Division of Elections' July 2023-to-present policy changes may have upon Plaintiffs' request for class certification. Defendants respectfully respond to the Court's questions, as set forth below.

The Division of Elections made policy changes on July 21, 2023, because the Tennessee Supreme Court clarified in *Falls v. Goins*, 673 S.W.3d 173 (Tenn. 2023), that in determining restoration eligibility, the statutes setting out the requirements for registering to vote and the statutes governing the COR process must be read together, that is construed *in pari materia*. 673 S.W.3d at 183; *see* Def.'s Reply, D.E. 287, PageID# 6455-56. The policy changes were a direct result of the Tennessee Supreme Court's opinion in *Falls v. Goins*.

Under the July 21, 2023, post-*Falls* policy changes, a person convicted of a felony in a Tennessee court, an out-of-state court, or a federal court must complete a two-step process. Those steps are set for in a memorandum distributed by Coordinator Goins, which states:

1. Have been pardoned by a Governor, U.S. President, or other appropriate authority of a state, **or** have had full rights of citizenship restored as prescribed by law, **and**
2. Have paid all restitution to the victim or victims of the offense ordered by the court as part of the sentence, if any; **and**
3. Have paid all court costs assessed, if any, unless the court made a finding of indigency; **and**
4. Is current in all child support obligations, if any.

(Restoration Memo, D.E. 151-5, PageID# 1393-94.) The first requirement is considered step one in the restoration process. Satisfaction of requirements two through four is referred to as the step two in the restoration process. Below, Defendants address how these policy changes have impacted the analysis of Plaintiffs' request for class certification.

1

## Questions Relating to Class Certification Analysis

1. **The Division of Elections policy changes on July 21, 2023, and since, affect the class certification analysis because Plaintiffs lack standing under the policy changes, and even if Plaintiffs do have standing, they cannot satisfy the elements of class certification under the policy changes.**

As set forth more fully below, the policy changes affect the class certification analysis because Plaintiffs lack standing (question 2) to seek a Certificate of Restoration (COR) under the policy changes or they have already received one, and because the policy changes further support Defendants' position that Plaintiffs cannot meet the class certification requirements of numerosity commonality (question 4), typicality (question 5), and certification analysis under Rule 23(b)(2)(question 7).

## Questions Relating to Standing

2. **The Division of Elections policy changes on July 21, 2023, and since, affect the class certification analysis of standing because Plaintiffs either are not eligible to request a certificate of restoration or their right to vote has been restored, and therefore have not suffered an injury-in-fact.**

The Division of Elections policy changes on July 21, 2023, and since, affect the class certification analysis of standing because none of the Plaintiffs have a concrete and particularized injury. "[A] court has no power to certify a class if it lacks jurisdiction." *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 294 (6th Cir. 2023). A plaintiff must have standing at the outset of the litigation. *Fox*, 67 F.4th at 294. The facts at the time of the filing of the operative complaint are what govern, not later-in-time facts. *Id.* at 295. "So a plaintiff who lacks standing from the start cannot rely on factual changes during the suit to establish it." *Id.*

Here, Plaintiffs filed the operative Complaint on October 22, 2022. (*See*, Am. Compl., D.E. 102.) Previously, Defendants did not challenge the class certification motion for lack of standing. However, Plaintiffs now lack standing because they are either are not eligible to request

2

a COR under the policies as they exist post-July 21, 2023, or because they have already restored their right vote.[1]

The Division of Elections policy changes on July 21, 2023, and since, materially change the class certification analysis of standing because none of the unrestored individual Plaintiffs have alleged or shown that they have undergone the two-step process, and two of the individual Plaintiffs have received restoration of the right to vote. Plaintiffs attempt to circumvent this standing failure by arguing that they are only concerned with "procedural rights," and thus do not have to show redressability or causation. (*See*, Pl's Resp. in Opp., D.E. 278, PageID# 6160). That argument fails. No matter what rights Plaintiffs seek, to have an Article III injury, they must still show that they have suffered a concrete and particularized harm. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 712 (6th Cir. 2015). "[T]he procedures in question [must be] designed to protect some threatened concrete interest of [plaintiff's] that must be the ultimate basis of his standing." *Id.*

The Division of Elections policy changes on July 21, 2023, and since, mirror Tennessee's statutory requirements as clarified in *Falls v. Goins*. And under those statutes and policy, Plaintiffs have no "concrete interest" in receiving a COR. When Plaintiffs filed the Amended Complaint, none of the individual Plaintiffs had their citizenship rights restored as required by Tennessee

---

[1] It is true that the *Falls* decision and the corresponding Division of Elections' 2023 policy change came out after Plaintiffs filed the Amended Complaint. However, the *Falls* decision does not constitute a "fact"; the decision merely clarified existing law, and thus the law always applied. *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 312-313 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."); *see Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review . . . .").

3

statutes and Division of Elections' July 2023 policy changes. Therefore, none of the unrestored individual Plaintiffs can show that they were eligible to request a COR, *see* Tenn. Code Ann. § 40-29-203(a), and they lack standing. And those Plaintiffs who have restored their right to vote suffer no injury.[2] Therefore, the individual Plaintiffs cannot act as class representatives. *See Fox*, 67 F.4th at 292-94; *Patton*, 2024 WL 3366333, at *4.

All of the individual Plaintiffs allege either the denial of a COR or the inability to receive a COR as their injury. (Amended Complaint, D.E. 102, PageID# 621-26.) But it does not matter what procedures are afforded to them—ultimately the unrestored Plaintiffs are not entitled to a COR because they have not completed the two-step process required by Tennessee law and set forth in the Division of Elections' July 21, 2023, policy changes. The individual Plaintiffs all lack standing to sue, or their claims are moot, thus this Court lacks subject matter jurisdiction to certify a class. *Fox*, 67 F.4th at 294.

---

[2] Ms. Scott's and Mr. Hendrix's right to vote has been restored, and they are eligible to register to vote. (Scott Restoration Letter, Exhibit 1; Hendrix Dep., D.E. 151-12, PageID# 1755, 1787.) Indeed, Ms. Scott has completed the two-step process required by the Division of Elections July 21, 2023, policy changes, and Mr. Hendrix was restored before the policy changes. Thus, there is no injury to redress for standing, and their claims are moot. But, even if Ms. Scott and Mr. Hendrix remain as representative Plaintiffs, their circumstances highlight that individual analyses are necessary—Ms. Scott received restoration under the post-July 21, 2023, policy; Mr. Hendrix received restoration before the policy change. Plaintiffs argue that the claims of Mr. Hendrix, who has been allowed to register to vote and has actually voted, are not moot for purposes of a class action. Not so. *Fox*, 67 F.4th at 294 (Plaintiff whose case is moot is precluded from seeking relief on behalf of himself or the class); *Patton*, 2024 WL 3366333 at *4. Plaintiffs rely on *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) in support (*see* Resp. in Opp. Mot. SJ. D.E. 278, PageID# 6162, fn. 1), but that case is wholly inapposite. There, a certified class action was on appeal. Here, no class is certified. (Sixth Circuit Order, D.E. 215, PageID# 3552-53.) And an Amended Complaint was filed on October 22, 2022. (*See* D.E. 102). By that time, Mr. Hendrix already had his voting rights restored and had been voting. Thus, he has no standing to sue because he suffers no injury.

4

**Questions Relating to Class Certification Requirements**

Even if the individual Plaintiffs have standing, they have not established the class certification requirements, because the two-step process reflected in the Division of Elections July 21, 2023, policy changes create steps that require individual analysis for each Plaintiff.

3. **The Division of Elections policy changes on July 21, 2023, and since, do not affect the class certification analysis of numerosity because the changes do not impact the number of potential class members.**

The numerosity requirement demands that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Previously, the State Defendants argued that Plaintiffs failed to meet the numerosity requirement because their arguments amounted to mere speculation. (*See* Def.'s Resp., D.E. 108, PageID 763-64 (citing *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005)(holding that impracticality of joinder must be affirmatively shown and not speculative).) That argument remains undisturbed by the policy changes, though the policy changes do, as explained below, impact other class certification requirements.

4. **The Division of Elections policy changes on July 21, 2023, and since, affect the class certification analysis of commonality because potential class members may be at different stages of the voting rights restoration process.**

Commonality demands a showing of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Defendants previously argued against commonality. The policy changes further fracture the class and prevent Plaintiffs from meeting this requirement.

The decision in *DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013), is instructive because it analyzes class certification in the context of a process with multiple stages—like the two-step process for restoring the right to vote under the Division of Elections July 21, 2023, and subsequent policy changes. In *DL*, the plaintiffs alleged that the District of Columbia's educational policies and practices "resulted in systemic failures," and the district court certified a class

5

comprising special needs children living in the District of Columbia. *Id.* at 122-23. But the circuit court reversed, determining that the "harms alleged to have been suffered" "involve[d] different policies and practices at different stages" of the process. *Id.* at 127. And critically, the district court identified "no single or uniform policy or practice that bridges all their claims." *Id.* Instead, the claims failed to satisfy commonality because they were "based on multiple, disparate failures to comply with the [District's] statutory child obligations, rather than a truly systemic policy or practice which affects them all." *Id.* at 128.

Plaintiffs' proposed common question on their equal protection claim is "whether the class is subject to arbitrarily different rules and procedures for regaining the right to vote based only on the county of a person's felony conviction. (Mem. in Supp., D.E. 105, PageID# 677.) Plaintiffs' complaint of "disparate failures," shows there is no "truly systemic policy or practice" imposed by Defendants. *See DL*, 713 F.3d at 128. Indeed, Plaintiffs repeatedly allege the *absence* of a "single or uniform policy or practice," *id.* at 127, and describe the framework as a "scattershot system across Tennessee's ninety-five counties" that creates "disparate results." (Am. Compl., D.E. 102, PageID# 612-13). Plaintiffs' purported injuries stem from policies, procedures, and decisions that allegedly *vary*. Mr. Weare and Mr. Tournier complain that officials from another state will not fill out their COR forms. (*Id.* at PageID# 622-24). Mr. Perry had issues with child support, (Perry Dep., D.E. 151-11, PageID 1714), which is verified at the state level. Mr. Gray has issues with court costs and county-level officials. (*See* Gray Clerk Email, D.E. 275-10, PageID# 4848, Gray Receipt, D.E. 275-9, PageID# 4846.) *Falls v. Goins* and Division of Elections July 21, 2023, policy changes add to this mix because Plaintiffs, and indeed all people who would be in this alleged class, may be at different steps of the two-step process. This adds additional "rule and procedures" within the ambit of Plaintiffs' proposed question and creates more separation between

6

the potential plaintiffs. For example, Mr. Gray has not restored his full citizenship rights, but Ms. Scott—whose right to vote has been restored—received a court order restoring her citizenship rights.

Plaintiffs' procedural-due-process claims also do not involve a common question because the amount of process an applicant received, as well as the amount of any additional process to which that applicant might be entitled, may well vary from applicant to applicant under the Division of Elections July 21, 2023, policy changes. "[T]he Due Process Clause is flexible and calls for such procedural protections as the particular situation demands." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015). Plaintiffs' proposed questions related to due process (Pl.'s Mem. of Law, D.E. 105, PageID# 676-77), ignore this flexibility. Plaintiffs argue that all class members are subject to the same *risk* of erroneous deprivation created by the COR process. *Id.* at 826. This is incorrect. The "risk of erroneous deprivation" is *not* the same for all COR applicants. Any risk would *vary* depending on each county's policies and each applicant's circumstances—*including which step the applicant is on in the two-step process from Falls v. Goins and the Division of Elections July 21, 2023, policy changes*.

Plaintiffs assert that the class has not been given protections required by the Due Process Clause. But an inquiry into whether a COR applicant has received constitutionally adequate process must consider the policies of counties and localities, as well as protections afforded under the statutory scheme as memorialized in Division of Elections' July 21, 2023, policy change. Such an inquiry must be individualized, which may produce different results for applicants from one county to another or from one step of the process to another. This Court must look at each Plaintiff, determine what process that applicant had been afforded based on that applicant's county of conviction and step in the process, weigh the risk of erroneous deprivation for each distinct

circumstance, and then consider whether the existing remedies satisfy constitutional requirements. *Cf. Garcia*, 782 F.3d at 741. This defeats commonality. *See*, *e.g.*, *Secreti v. PTS of Am., LLC*, 2015 WL 3505146, at *3–4 (M.D. Tenn. June 3, 2015) (finding no commonality among class of inmates because their claims would require individualized balancing based on each inmates' circumstances); *see also Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 553–54 (7th Cir. 2016) (finding no commonality because the class action against the jail for inadequate dental care would depend on the facts of each individual and could not be resolved for the class as a whole).

5. **The Division of Elections policy changes on July 21, 2023, and since, affect the class certification analysis of typicality because each COR applicant may be in different circumstances based on their position in the two-step process.**

Rule 23(a) also forbids class certification unless "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[W]here there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for—under those circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009).

Plaintiffs' equal-protection and procedural-due-process claims demand individualized consideration of each COR applicant's particular circumstances under the Division of Elections' 2023 policy change and individualized consideration of county-level policies. And the defenses available to Defendants could vary depending on the procedures used by certain local jurisdictions and the procedures available to each individual COR applicant under the Division of Elections' 2023 policy change. The differing claims of the named Plaintiffs show that individualized assessments are necessary. Mr. Perry and Mr. Gray were unable to obtain CORs based on court costs. (*See* Perry Reponses, D.E. 275-1, PageID# 4767; Gray Clerk Email, D.E. 275-10, PageID#

8

4848, Gray Receipt, D.E. 275-9, PageID# 4846.) Mr. Tournier and Mr. Weare require action from out-of-state officials as to their out-of-state convictions. (Tournier Responses, D.E. 275-19, PageID# 4952; Weare Dep., D.E. 151-8, PageID# 1438-46.) Only Ms. Scott appears to have restored her citizenship rights as required by Tennessee statutes and the Division of Elections' 2023 policy change, and her right to vote has been restored. (Scott Dec. Ex., D.E. 275-11, PageID# 4861-62; Scott Restoration Letter, Exhibit 1.) Each Plaintiff's case must be reviewed individually to determine his or her eligibility to request a COR and to determine which step of the two-step process is relevant to that Plaintiff. And beyond those issues, there are other circumstances under the Division of Elections' 2023 policy change that require case-by-case determinations: some people may have permanently disqualifying felonies, some people may no longer have felony convictions due to diversion or expungement, some people may have felony convictions only during the "grace period," many people may have not gotten their citizenship rights restored, some people may have only partially restored their citizenship rights, some people may have out of state convictions, some people may have federal convictions, some people may owe court costs and/or fines, and some people may owe child support. There are a host of reasons, *individual reasons*, why a person may not be eligible to apply for a COR. And those reasons differ based on the individual's progression in the two-step process from Division of Elections' 2023 policy change. There is no typicality.

6. **The Division of Elections policy changes on July 21, 2023, and since, do not affect the class certification analysis of adequacy of representation because the changes do not impact this factor.**

The policy changes have no effect on counsel's competence or antagonism between the potential class representative and the potential class members. *See American Medical Systems*, 75 F.3rd 1069, 1083 (6th Cir. 1996).

9

7. **The Division of Elections policy changes on July 21, 2023, and since, affect the class certification analysis of Rule 23(b)(2) because the new process results in differing risks of erroneous deprivation that this Court cannot remedy uniformly.**

As with the commonality and typicality factors that Defendants previously argued were not met, the July 2023-to-present policy changes further support a finding that this factor has not been satisfied. The Rule 23(b)(2) requirement, is met if "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Gooch v. Life Investors Ins. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (citation omitted). As a result of the policy changes, potential class members at different points of the two-step process for restoring their voting rights have differing risks of erroneous deprivation. If a potential class member is faced with the denial of an attempt to restore their full-rights of citizenship by a circuit court, this Court must analyze the risk of erroneous deprivation when the applicant has remedies available via appeal. If a potential class member is faced with denial based on an inadequate COR, this Court must analyze the risk when the applicant can pursue mandamus, appeal of a voter registration denial, or the common law writ of certiorari. Moreover, potential class members may face differing risks based on the actions of out-of-state officials or Tennessee officials who are not a party to this lawsuit—like the clerks of court. The varying postures of potential class members under the Division of Elections July 21, 2023, policy changes, and since, prevent Plaintiffs from establishing a pattern or practice generally applicable to the class as a whole. Thus, injunctive or declaratory relief would not be appropriate with respect to the entire proposed class.

## CONCLUSION

For the above reasons, this Court should deny Plaintiffs' motion for class certification.

10

Case 3:20-cv-01039   Document 294   Filed 09/19/24   Page 11 of 13 PageID #: 7897

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Zachary L. Barker*
ZACHARY L. BARKER, BPR # 035933
Senior Assistant Attorney General

DAWN JORDAN
Senior Counsel

DAVID RUDOLPH
Senior Assistant Attorney General

ROBERT WILSON
Senior Assistant Attorney General

General Litigation Division
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Zachary.Barker@ag.tn.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and exact copy of the above document has been forwarded electronically. Notice of this filing will be sent by the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

Blair Bowie
Danielle Lang
Alice C. Huling
Valencia Richardson
Aseem Mulji
Ellen Boettcher
Kate Uyeda
Kathryn Huddleston
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

Phil Telfeyan
Natasha Baker
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004

Charles K. Grant
Denmark J. Grant
Baker, Donelson, Bearman
Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203

Keeda Haynes
Free Hearts
2013 25th Ave. N.
Nashville, TN 37208

Date: September 19, 2024

*/s/ Zachary L. Barker*
Senior Assistant Attorney General