**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al., <br><br>                  Plaintiffs, <br><br>     v. <br><br> WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al., <br><br>                  Defendants. | Civil No. 3:20-cv-01039 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY <br><br> [Putative Class Action] |

## PLAINTIFFS' BRIEF IN RESPONSE TO THE COURT'S SEPTEMBER 20TH ORDER REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This Court has directed the Parties to file supplemental briefs "expressly stating their positions as to which complaint is the operative complaint for purposes of determining standing for each of the named Plaintiffs on each claim that Plaintiffs seek class certification." Doc. 295.

In short, the original complaint filed on December 3, 2020, is operative for purposes of determining the standing of Plaintiffs Perry, Gray, Weare, and Tournier to bring Counts 1-3, but they also had standing at the time of filing the First Amended Complaint on October 20, 2022. The First Amended Complaint is operative for purposes of determining Plaintiff Scott's standing to bring Counts 1-3. Each Plaintiff had standing at the requisite time to bring each of their claims on behalf of the proposed class.[1]

## BACKGROUND

On December 3, 2020, four of the six named Plaintiffs—Lamar Perry, Curtis Gray Jr., John Weare, and Benjamin Tournier—filed the original complaint in this case. Doc. 1 at 33-39.[2] On March 30, 2022, this Court found that their complaint sufficiently alleged standing to bring their due process and equal protection claims in Counts 1-3. Doc. 83 at 6-7.

On October 3, 2022, Plaintiffs moved for leave to file a proposed First Amended Complaint. Docs. 99, 99-1. The Court granted the motion, and the First Amended Complaint was refiled on the docket on October 20, 2022. Docs. 101, 102. The First Amended Complaint alleges

---

[1] As discussed below, Plaintiff Hendrix's claims have been voluntarily dismissed.

[2] The original complaint included one additional plaintiff, Ms. Amanda Lee Martin. Doc. 1 at 16. Ms. Martin did not renew her claims in the First Amended Complaint, Doc. 99 at 2, because the Election Division had restored her voting rights on December 18, 2020, just 16 days after filing her original complaint. *See* Ex. A (Martin Restoration Letter & File) at 1. The Election Division did so by accepting COR forms that Ms. Martin had last submitted *in 2012*, more than eight years earlier, which the Elections Division had at that time rejected because she had not used a newer version of the COR form. *See id.* at 25-26. The unusual timing and circumstances of Ms. Martin's restoration plainly reveal an effort to "pick[] off" the claims of putative class representatives. *Unan v. Lyon*, 853 F.3d 279, 286 (6th Cir. 2017).

1

the same due process and equal protection claims in Counts 1-3 as the original complaint, but it includes two additional Plaintiffs—Leola Scott and Reginald Hendrix. Doc. 102 at 39-45.

On November 1, 2022, Individual Plaintiffs moved for class certification as to Counts 1-3 of the First Amended Complaint. Doc. 104. On April 13, 2023, this Court certified the following class for those claims: "Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a Certification of Restoration ("COR") from the pardoning, incarcerating, or supervising authority, but to date have not received a COR sufficient to restore their voting rights." Doc. 123.

On February 8, 2024, the Sixth Circuit vacated the order and remanded the case for "reconsideration of the motion for class certification" in light of the State's policy changes announced on July 21, 2023 and subsequent additional discovery. Doc. 215 at 3. Plaintiffs' motion for class certification remains pending. Doc. 273.

## ARGUMENT

### I. Standing is Assessed as of When Plaintiffs First Filed Their Claims.

Standing is assessed based on the circumstances in existence "at the time the complaint was filed." *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 525 (6th Cir. 2001). As this Court indicated in its order, the weight of this Circuit's authority regards a "plaintiff's original complaint" as operative for determining standing when her claim was carried over into an amended complaint. *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 392 n.7 (6th Cir. 2022) (citing *Lynch v. Leis*, 382 F.3d 642 (6th Cir. 2004)); *see also Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) ("Whether a party has standing to redress an injury is measured as of the time the injury is first asserted; here, in the original complaint."); *Price v. Medicaid Dir.*, 838 F.3d 739, 746 (6th Cir. 2016) ("The plaintiffs have standing to assert only the claims they had standing to assert when the claims themselves were first pled."). And, as a corollary, when an amended

2

complaint adds a new plaintiff to an existing claim, "the operative complaint" for purposes of determining that plaintiff's standing "is the one adding [the plaintiff] to the action." *Lynch*, 382 F.3d at 647.

Here, all six Individual Plaintiffs seek class certification as to the same due process and equal protection claims in Counts 1-3 of the First Amended Complaint. The first and only time Ms. Scott pled these claims was in the First Amended Complaint, so that is the operative complaint for purposes of determining her standing. *See id*. And because Mr. Perry, Mr. Gray, Mr. Weare, and Mr. Tournier first pled these claims in their original complaint on December 3, 2020, that is the time at which to assess their standing to bring Counts 1-3. *See Yellen*, 54 F.4th at 336.

The Sixth Circuit has at times regarded an amended complaint instead operative for standing purposes when filed to cure a jurisdictional defect in the initial complaint. *See NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 480 (6th Cir. 2022) (amended complaint had to "stand on its own jurisdictional basis" where much of original complaint was dismissed); *Bare v. Cardinal Health, Inc.*, No. 22-5557, 2023 WL 395026, at *2 (6th Cir. Jan. 25, 2023) (holding that standing had to be assessed based on amended complaint after plaintiff's original complaint was dismissed for lack of standing); *but see id.* at *3 (acknowledging that the plaintiff still could have argued that original complaint was operative). Here, however, the original complaint was found to have no jurisdictional defect and is thus operative for purposes of determining standing. Even if standing were to be assessed as of the First Amended Complaint, it would make no difference: the circumstances establishing the standing of Messrs. Perry, Gray, Weare, and Tournier to file suit did not change between the filing of the original and amended complaint. *Supra* Part II.A-D.

3

## II.     Each Individual Plaintiff Had Standing When They First Filed Their Due Process and Equal Protection Claims.

The Court has also ordered the parties to state their position on which complaint is operative for each Plaintiff on "each claim" for which they seek class certification. Doc. 295 at 2. Before proceeding plaintiff by plaintiff and claim by claim, Plaintiffs briefly address Defendants' continued misrepresentation of the relevant legal standard.

Plaintiffs' procedural due process and uniformity claims in Counts 1-3 allege violations of procedural rights, which "are treated uniquely under the standing inquiry." *Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 712 (6th Cir. 2015). Contrary to Defendants' insistence, the Sixth Circuit makes clear that plaintiffs seeking to remedy a violation of their procedural rights—*i.e.*, to compel state actors to provide certain legally required procedures—need not prove for standing purposes that they will be found eligible to receive the substantive right or benefit at stake. *Wright v. O'Day*, 706 F.3d 769, 771-72 (6th Cir. 2013) ("[A] litigant can suffer an injury-in-fact from the denial of procedural protections even if, when applied, the procedures might not result in relief."). Because the harm in procedural rights cases is a failure to afford *procedures* to which a plaintiff is legally entitled, the central standing questions are instead (i) whether the right or benefit affected by the denial of procedures is concrete, particularized, and actual (establishing injury-in-fact); and (ii) whether the procedures sought are those Defendants failed to afford but could in this case be ordered to provide (establishing causation and redressability).[3] *Id.*; *see also Amiri v. Sec'y, Dep't of Homeland Sec.*, 818 F. App'x 523, 526 n.4 (6th Cir. 2020).

---

[3] Contrary to Defendants' assertions, Plaintiffs have never stated that they "do not have to show redressability or causation." Defs. Br., Doc. 294 at 3. Rather, Plaintiffs have correctly stated that causation and redressability "are satisfied so long as the procedural protection plaintiffs seek are those that Defendants failed, but could be ordered, to provide." *See* Pls. Resp. in Opp., Doc. 278 at 4.

4

This two-step "procedural-standing analysis," *Wright*, 706 F.3d at 771-72, applies not only to Plaintiffs' due process claims but also to their equal protection claim under *Bush v. Gore*, which alleges that Defendants' implementation of the COR statute lacks procedures necessary to "avoid arbitrary and disparate treatment" of COR seekers, resulting in a system where similarly situated Tennesseans can be granted or denied access to the franchise based solely on where they live, were convicted, or directed their COR request. 531 U.S. 98, 104-05 (2000); *see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 466, 478 (6th Cir. 2008). This claim, like the due process claims, vindicates Plaintiffs' procedural rights under the Equal Protection Clause and seeks only procedure as relief. *See* Am Compl., Doc. 102 (seeking, *inter alia*, "a uniform, formal mechanism to request a COR before an impartial decisionmaker" and "uniform procedures for interpreting the COR requirements").

Here, Plaintiffs are Tennesseans disenfranchised because of a felony conviction, all of whom tried to request a COR on reasonable belief they were eligible but were denied without procedures required by due process and equal protection. *See Wolf v. McDonnell*, 418 U.S. 539, 558 (1974); *Bush*, 531 U.S. at 105. Such procedures are necessary to avoid arbitrary and non-uniform treatment. At minimum they include an accessible means to request a COR from a responsive decisionmaker, uniform standards to assess eligibility, notice of eligibility determinations based on the legal criteria, reasons for denial if deemed ineligible, and an opportunity to be heard if denied. Plaintiffs have standing to seek recourse for denial of these procedures because obtaining a COR and thereby regaining the right to vote is a concrete, actual, and personal interest. And Defendants, as administrators of the COR process, failed (but could be ordered) to provide the requested procedures. "This is enough for Article III standing." *Wright*, 706 F.3d at 771.

Defendants nevertheless insist that Plaintiffs lack standing because they did not satisfy an administrative pre-requisite that *did not exist* at the time they attempted to request a COR. Defs. Br., Doc. 294 at 3-4. The Election Division did not begin requiring COR applicants to obtain a pardon or court order restoring full citizenship rights until July 21, 2023, nine months after Plaintiffs filed their Amended Complaint and 2.5 years after the original complaint. Doc. 291-76. At the time the complaints were filed, Defendants' own policies recognized CORs and court-ordered citizenship restoration as alternative pathways to voting rights restoration, not as two requisite steps. *See* Docs. 151-6; 291-49 at 9-10; 156-23 at 8-9; 156-24 at 7. Indeed, if Plaintiffs *had* received such court orders at the time, they would have lacked standing to challenge Defendants' COR procedures because their voting rights would have already been recognized as restored. Furthermore, Defendants' argument that *Falls v. Goins* retroactively imposed this two-step requirement on Plaintiffs contradicts federal standing requirements, would be inequitable if required, and belies the state court's own limitation of its ruling to the facts before it "and th[o]se facts only." 673 S.W.3d 173, 178 (Tenn. 2023). It also contradicts Defendants' own recognition that voters whose rights were restored before the new policy "remain eligible to vote." Doc. 151-6.

Additionally, Defendants' contention that Plaintiffs lack standing to challenge the COR process (the "second step") because they have not obtained a pardon or court order (the "first step") contradicts their own sworn statements indicating that these steps can happen in any order. *See* Doc. 283 at 7-8 (citing evidence). And insofar as the new requirement is in fact treated as a pre-requisite to obtaining a COR sufficient to restore voting rights, Plaintiffs have standing to challenge it because their claims in Counts 1-3 challenge the totality of Defendants' procedures for requesting and obtaining CORs and voting rights restoration. *See* Am Compl., Doc. 102 ¶¶ 1,

6

129, 142, 147. Because Defendants' new "pre-requisite" erects yet another unlawful procedural hurdle to obtain a COR and restore voting rights, Plaintiffs maintain standing to challenge it on behalf of the proposed class of COR seekers. *See* Doc. 283 at 7.

### A. Lamar Perry

Mr. Perry had standing to bring his procedural due process and equal protection claims when he filed his initial complaint on December 3, 2020, and continued to have standing when he filed his amended complaint on October 20, 2022.

In 2020, before filing this lawsuit, Mr. Perry attempted to request a COR in Shelby County, where he lives. Doc. 291-2 at 9; 151-11 at 32:18-33:6. Abiding Defendants' instructions for requesting a COR at that time, *see* Doc. 1-1 at 2, he sought to have a COR form filled out by the Shelby County Criminal Court Clerk. Doc. 291-2 at 9-10 (PageID#6521-22); 151-11 at 48:8-25 (testifying that he was directed to the court clerk by the Shelby County Office of Reentry).[4] The Clerk's office refused to fill out the form citing outstanding court costs, even though his only outstanding legal financial obligation (LFO) at the time was a $952.10 fine, which is not disqualifying. Doc. 291-2 at 9 (PageID# 6522); 291-3 at PL000077.

During Defendants' deposition of Mr. Perry and in their summary judgment briefing, Defendants suggested that Mr. Perry was properly denied a COR in 2020 because of alleged child support arrears. *See* Defs. Resp. to Pls.' Stmt. of Mat. Facts, Doc. 285 at 5; Doc. 151-11 at 43:20-25, 45:25-46:9. But Mr. Perry *was* eligible for a COR because, as he explained, those child support obligations were assessed in error—*i.e.*, he did not in fact owe them. *See* Doc. 151-11 at 45:25-

---

[4] The Secretary of State's website at the time expressly directed COR seekers to get a COR form "completed by an agent, such as a probation/parole officer *or criminal court clerk*" before submitting it to the local county election commission in the county in which the individual resides. *See* Ex. B (web archive of Tennessee Sec'y of State's *Restoration of Voting Rights* webpage as of Nov. 29, 2020) (emphasis added); Decl. of Aseem Mulji.

7

46:9 ("I have a court date with child support on the 30th of June [] to dispute all of this because … we took marriage license down there, my wife gave them a letter and showing … all three kids have been living with me . . . since day one.").[5] This was later confirmed in 2023 when a state court judge formally terminated the obligations and set his arrears to $0. Doc. 291-5. All this is a distraction, however, as Mr. Perry was not denied voting rights restoration on that basis and the Clerk's office refused him a COR without due process before Defendants could even assess his child support obligations. *See* Doc. 151-11 at 32:8-10, 43:20-25; *see also id.* at 47:4-16 (expressing understandable confusion as to why child support obligations, which he did not in fact owe, would have "to do with … getting [his] voting rights").

***Procedural Due Process***: Defendants' COR process afforded Mr. Perry no opportunity to appeal the criminal court clerk's refusal to complete his COR form. *See* Doc. 1-1 at 2. It did not provide him an application procedure to request a COR from the issuing authority that constitutes "sufficient proof that [he] is no longer disqualified from voting," Tenn. Code Ann. § 40-29-203. *See* Doc. 1-1 at 2. Nor did it require the issuing authority to provide him a written notice of denial explaining which eligibility criteria it believed he did not satisfy (including child support), which he could appeal if erroneous. *See id.* To date, Mr. Perry has not been issued a COR sufficient to restore his voting rights or an appealable denial, and Defendants' COR process remains without these procedural protections. *See* Pls. Mot. Summ. J. Opp'n, Doc. 278 at 25-26.

Thus, as of the filing of the original complaint in 2020 and the amended complaint in 2022, Mr. Perry was denied a COR restoring his right to vote without the minimum requirements of due process. This constitutes an injury-in-fact because Defendants' "disregard of" these procedural

---

[5] Defendants state that Mr. Perry made a payment of $6,735 toward these arrears on March 1, 2021, *see* Doc. 285 at 5, but they omit that this payment was garnished involuntarily. Doc. 151-11 at 46:10-25.

8

requirements "impair[ed] a concrete interest" of Mr. Perry's in obtaining a COR and restoring his voting rights. *Wright*, 706 F.3d at 772 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 (1992)). Had these procedures been in place, Mr. Perry could have received a clear notice of decision on his COR request, sought review of that decision if erroneous, or else understood what he needed to pay or do to become eligible in time to vote in the 2020 or 2022 elections. Instead, his COR request was refused, and he remained disenfranchised. This concrete injury was caused by Defendants' decision not to afford COR seekers requisite procedures and could be remedied by an order directing them to do so. *Id.* Mr. Perry thus has standing to pursue his procedural due process claims in Counts 1 and 2 on behalf of the previously certified class.

*Equal Protection*: Mr. Perry also has standing to challenge Defendants' application of the COR statutes under the Equal Protection Clause. When he sought a COR in 2020, he was subject to a process that lacks procedural safeguards to prevent arbitrary and disparate treatment. *See* Pls. Stmt. of Undisputed Material Facts, Doc. 276 ¶¶ 110-18, 178-85. For instance, he sought a COR in Shelby County where he resides, but the court clerk refused to fill out his COR based on unpaid fines. Doc. 291-2 at 10 (PageID#6522). This is because the Shelby County court clerk's policy was to count *all* LFOs, including fines, when determining whether a person owes court costs for purposes of voting rights restoration. Burch Rep., Doc. 185-6 at 34. However, if Mr. Perry had made his request in Davidson County, he would not have been denied for this reason because agents who fill out COR forms in Davidson County only consider specific LFOs to be "court costs" and would not have considered Mr. Perry's outstanding fines as disqualifying. *See id.* Defendants' failure to implement uniform procedures and standards in their implementation of the COR statutes thus resulted in Mr. Perry's disparate and arbitrary treatment based on the county where he lives and attempted to request a COR, and thereby impaired his concrete, actual and personal interest in

9

voting rights restoration. *See Wright*, 706 F.3d at 771. The injury would be remedied by an order requiring Defendants to implement such procedures. He thus has standing to seek such uniform procedures under the Equal Protection Clause.

## B. Curtis Gray, Jr.

Mr. Gray had standing to bring his procedural due process and equal protection claims when he filed his initial complaint on December 3, 2020, and continued to have standing when he filed his amended complaint on October 20, 2022.

In 2020, Mr. Gray attempted to restore his voting rights by having his representatives ask the Shelby County Criminal Court Clerk's office to fill out a COR form, as Defendants' instructions for requesting a COR directed at that time. Doc. 291-8 at 29:19-31:5; 1-1 at 2; Ex. B. The clerk's office refused to do so until he paid off the full balance of his LFOs, which includes a $500 "fine" and $259 "cost." Doc. 291-10; 291-11 at PL000070; 291-57 at 11-12 (PageID#7519).

***Procedural Due Process***: Defendants' COR process afforded Mr. Gray no statement of reasons explaining why he was ineligible and no means for him to appeal the court clerk's assessment of what he must pay to receive a COR. Doc. 291-9 at 9 (PageID#6594); Doc. 1-1 at 2. Nor did it provide him an application procedure to request a COR from the issuing authority that constitutes "sufficient proof that [he] is no longer disqualified from voting," Tenn. Code Ann. § 40-29-203. *See* Doc. 1-1 at 2. To date, Mr. Gray has received no written notice of reasons for the denial of his request nor an opportunity to be heard regarding the clerk's assessment, and Defendants' COR process remains without these procedural protections. *See* Pls. Mot. Summ. J. Opp'n, Doc. 278 at 25-26 (PageID# 6181-82).

Thus, as of when he filed suit in 2020 and amended his complaint in 2022, Mr. Gray was denied a COR restoring his right to vote without the minimum requirements of due process. Defendants' failure to afford him these procedures inflicts cognizable harm because it affects his

concrete interest in restoring his right to vote. *See Amiri*, 818 F. App'x at 526 n.4. Had these procedures been in place, Mr. Gray would have received a notice confirming what he needed to pay or do to become eligible for voting rights restoration and an opportunity to be heard if erroneous. This concrete injury was caused by Defendants' decision not to afford COR seekers requisite procedures and could be remedied by an order directing them to do so. Mr. Gray thus has standing to pursue his procedural due process claims in Counts 1 and 2 on behalf of the previously certified class.

*Equal Protection*: Mr. Gray also has standing to challenge Defendants' application of the COR statutes under the Equal Protection Clause. When he sought a COR in 2020, he was subject to a process that lacks procedural safeguards to prevent arbitrary and disparate treatment. *See* Pls. Stmt. of Undisputed Material Facts, Doc. 276 ¶¶ 110-18, 178-85. For example, the court clerk's office in Shelby County where he resides had a policy of counting all LFOs when determining whether he owes court costs for purposes of voting rights restoration, whereas officials in Davidson County who fill out CORs do not. *See* Burch Rep., Doc. 185-6 at 34. Defendants' failure to implement uniform procedures and standards in their implementation of the COR statutes thus subjects Mr. Gray to disparate and arbitrary treatment based on the county where he lives and attempts to request a COR, and thereby impairs his concrete, actual and personal interest in voting rights restoration. *See Wright*, 706 F.3d at 771. The injury would be remedied by an order requiring Defendants to implement such procedures. He thus has standing to seek such uniform procedures under the Equal Protection Clause.

## C. Benjamin Tournier

Mr. Tournier had standing to bring his procedural due process and equal protection claims when he filed his initial complaint on December 3, 2020, and continued to have standing when he filed his amended complaint on October 20, 2022.

Mr. Tournier is a resident of Jackson in Madison County, Tennessee. Doc. 291-17 at 10 (PageID#6668). Although his felony convictions are from Arizona, he moved to Tennessee through an interstate compact to be with his mother and completed parole in 2003 under TDOC authority. *Id.* at 10. In 2020, before filing this lawsuit, Mr. Tournier began to try to get CORs completed for his convictions, relying on pro bono help. *Id.*; Doc. 151-9 at 13:17-22, 20:11-13. He first tried to find Arizona officials to fill out his COR through his pro bono representative, but those requests went unanswered, refused, or redirected to Arizona's rights restoration system. Doc. 291-17 at 9-10 (PageID#6667-68); 151-9 at 32:7-10. He then tried to request a COR from the Tennessee probation and parole office in Madison County. Doc. 291-17 at 9-10 (PageID#6667-68); 151-9 at 18:16-25. At that office, he was instructed to "fill out the top portion" of the COR form "even though it said at the top [of the form] not to fill it out [himself]." Doc. 151-9 at 18:21-24. He was told an officer would contact him once the form was complete, but no one ever did. *Id.* at 18:24-25, 34:1-11; Doc. 291-17 at 12 (PageID#6670).

***Procedural Due Process***: Despite having made a request to the TDOC probation and parole office in Madison County, the office did not (and has never) said Mr. Tournier is eligible, ineligible, or issued notice of denial of his COR request with a statement of reasons that he could appeal if erroneous. Doc. 291-17 at 11 (PageID#6669). Nor did Defendants' COR process afford Mr. Tournier a uniform application procedure to request a COR from TDOC, which is where he completed supervision, or any another entity in Tennessee that is statutorily charged with issuing CORs. *See* Doc. 1-1 at 2; Tenn. Code Ann. § 40-29-203. In attempting to comply with the COR process, Mr. Tournier was given incorrect instructions to fill out the form itself – instructions which could have resulted in his form being rejected had it ever been completed and submitted. Doc. 151-9 at 18:21-24; Doc. 291-17 at 12. To date, Mr. Tournier has not been issued a COR

sufficient to restore his voting rights, and Defendants' COR process remains without these procedural protections. *See* Pls. Mot. Summ. J. Opp'n, Doc. 278 at 25-26.

Thus, as of when he filed suit in 2020 and amended his complaint in 2022, Mr. Tournier was denied a COR without the minimum requirements of due process, impairing his concrete interest in restoring his right to vote. Had these procedures been in place, Mr. Tournier could have had the ability to direct his request for a COR to a responsive decisionmaker in TDOC or another issuing authority in Tennessee, received clear notice of decision on his request, sought review of that decision if erroneous, or else understood what he needed to pay or do to become eligible for voting rights restoration. Instead, his COR request was flatly ignored, and he was left with no procedures for further appeal or instructions as to what to do next. This concrete injury was caused by Defendants' decision not to afford COR seekers requisite procedures and could be remedied by an order directing them to do so. Mr. Tournier thus has standing to pursue his procedural due process claims in Counts 1 and 2 on behalf of the previously certified class.

***Equal Protection***: Mr. Tournier also has standing to challenge Defendants' application of the COR statutes under the Equal Protection Clause. When he sought a COR in 2020, he was subject to a process that lacks procedural safeguards to prevent arbitrary and disparate treatment. *See* Pls. Stmt. of Undisputed Material Facts, Doc. 276 ¶¶ 110-18, 178-85. For example, the parole and probation office where Mr. Tournier directed his COR request flatly ignored his request—it neither filled out and returned any portion of the form nor offered Mr. Tournier any guidance or assistance as to where he should have directed his request. In contrast, the 30(b)(6) representative for TDOC District 30, overseeing TDOC offices in East Tennessee,[6] testified that if a person with

---

[6] Tenn. Dep't of Correction, *Field Office Directory*, https://www.tn.gov/correction/cs/field-office-directory.html.

a felony conviction in another state requested a COR in that district, officers would be able to see the felony conviction information in their offender management system "if [TDOC] had supervised for it." Doc. 291-44 at 106:1-5, 105:16-21. If not, they would otherwise assist the individual by helping them reach out to the appropriate probation office in their state of conviction; however, no uniform TDOC policy guides their handling of these cases. *Id.* at 106:6-22. Defendants' failure to implement uniform procedures and standards in their implementation of the COR statutes thus subjects Mr. Tournier to disparate and arbitrary treatment based on the county where he lives and attempted to request a COR, and thereby impaired his concrete, actual and personal interest in voting rights restoration. The injury would be remedied by an order requiring Defendants to implement such procedures. He thus has standing to seek such uniform procedures under the Equal Protection Clause.

### D. John Weare

Mr. Weare had standing to bring his procedural due process and equal protection claims when he filed his initial complaint on December 3, 2020, and continued to have standing when he filed his amended complaint on October 20, 2022.

Mr. Weare resides in Lewis County, Tennessee. Doc. 291-23 at 9. He was convicted of three felonies in Arizona: one in 1983 in Maricopa County whose judgment was vacated and charges dropped, another in 1997 in Maricopa County, and one in 2003 in Yuma County whose judgment of guilt was set aside and indictment dismissed. *See* Docs. 291-24; 291-25, 291-26. In 2020, before filing this lawsuit, Mr. Weare attempted to find officials in Maricopa and Yuma counties to fill out his COR, but was "switch[ed] … around" from official to official in one county and received a total refusal to complete the COR in another county. Doc. 151-8 at 24:15-21, 30:19-32:8; 291-23 at 9-10 (PageID#6725-26). Mr. Weare had inquired with his Election Commission in Tennessee but received no relevant information about how to restore his voting rights. Doc.

14

151-8 at 53:9-21. Although not necessary to have standing, on October 1, 2024, the Circuit Court of Lewis County ordered that "Mr. Weare's *full citizenship rights* are hereby restored to the fullest extent of the law." Ex. C ¶ 4.

**Procedural Due Process**: Defendants' COR process did not afford Mr. Weare a uniform application procedure to request a COR from one of Tennessee's issuing authorities, including the Governor, which is the state's pardoning authority. *See* Doc. 1-1 at 2; Tenn. Code Ann. § 40-29-203; Doc. 201-53 at 89:12-92:02. Nor does Defendants' COR process afford him a decision on such a request and, if denied, a statement of reasons for denial and an opportunity to be heard. Thus, under Defendants' COR process, there was (and is) no available procedure that would enable Mr. Weare, as a practical matter, to request and be issued a COR if eligible. He was (and is) stuck in a never-ending loop trying to convince out-of-state officials to fill out Defendants' COR form, even though such officials are under no duty to do so. And even if an Arizona official did agree to fill out his COR, they would be under no obligation to attest to Mr. Weare's completion of sentence, payment of restitution and court costs, and currentness on child support obligations, as those terms are understood under Tennessee law. *See* Doc. 1-1.

Thus, as of when he filed suit in 2020 and amended his complaint in 2022, Mr. Weare was effectively denied a COR without the minimum requirements of due process, impairing his concrete interest in restoring his right to vote. Had these procedures been in place, Mr. Weare could have had the ability to direct his request for a COR to a responsive decisionmaker of an issuing authority in Tennessee, received clear notice of decision on his request, sought review of that decision if erroneous, or else understood what he needed to pay or do to become eligible for voting rights restoration. Instead, he remains without any way to initiate a request. This concrete injury was caused by Defendants' decision not to afford COR seekers requisite procedures and

15

could be remedied by an order directing them to do so. Mr. Weare thus has standing to pursue his procedural due process claims in Counts 1 and 2 on behalf of the previously certified class.

*Equal Protection*: Mr. Weare also has standing to challenge Defendants' application of the COR statutes under the Equal Protection Clause. When he sought a COR in 2020, he was subject to a process that lacks procedural safeguards to prevent arbitrary and disparate treatment. *See* Pls. Stmt. of Undisputed Material Facts, Doc. 276 ¶¶ 110-18, 178-85. As a COR seeker with only felony convictions from another state who did not complete supervision in Tennessee, Mr. Weare has no clear administrative path under Defendants' existing COR procedures to request and be issued a COR if eligible. This is despite having the same right to a COR as those who were convicted of felonies in Tennessee or federal courts, whose court clerks or probation officers are willing and able to evaluate and attest to the satisfaction of the eligibility criteria on Defendants' COR form. *See* Burch Rep., Doc. 185-6 at 20 (identifying an estimated 5,549 individuals with Tennessee convictions whose voting rights have been restored by COR). Defendants' failure to implement uniform procedures and standards in their implementation of the COR statutes thus subjects Mr. Weare to disparate and arbitrary treatment based on where he was convicted, and thereby impairs his concrete, actual, and personal interest in voting rights restoration. The injury would be remedied by an order requiring Defendants to implement such procedures. He thus has standing seek such uniform procedures under the Equal Protection Clause.

### E. Leola Scott

Ms. Scott had standing to bring her procedural due process and equal protection claims when she first filed those claims in the First Amended Complaint on October 20, 2022. Although Defendants granted her restoration of voting rights on August 28, 2024, the claims for which she seeks class certification are not moot.

In 2022, before filing her claim, Ms. Scott attempted to request a COR by asking a probation officer in Dyer County for a COR. Doc. 291-13 at 10 (PageID#6630). The officer filled out the top half of three COR forms, one for each of her three felonies, but refused to fill out the rest. *Id.* She took the three partially completed forms to the Clerk of Court in Dyer County, who completed them. *Id.* However, on two COR forms, the clerk certified that Ms. Scott still owed court costs. *Id.* One case had a balance of $93 for "clerk data processing" and "sheriff data processing." *Id.* at 11 (PageID#6631). The other had a balance of $2,297, including $2,000 labeled as a fine. *Id.* The clerk did not provide any written notice explaining which LFOs were deemed court costs for the purpose of voting rights restoration, and simply told her that she had outstanding balances. *Id.* Ms. Scott believed that the summation of these LFOs was in error, and she would have appealed the clerk's determination of ineligibility due to court costs if she had been provided the opportunity. *Id.*; Doc. 291-12 ¶¶ 5-7.

*Procedural Due Process*: Defendants' COR process afforded Ms. Scott no opportunity to appeal the court clerk's determination that she had outstanding court costs making her ineligible for a COR. *See* Doc. 1-1 at 2. It did not provide her an application procedure to request a COR from the issuing authority that constitutes "sufficient proof that [he] is no longer disqualified from voting," Tenn. Code Ann. § 40-29-203. *See* Doc. 1-1 at 2. Nor did it require the issuing authority to provide her a written notice of denial explaining which supposed "court costs" precluded her eligibility, which she could appeal if erroneous. *See id.* When she filed her complaint, Ms. Scott had not been issued a COR sufficient to restore her voting rights, and Defendants' COR process remains without these procedural protections. *See* Pls. Mot. Summ. J. Opp'n, Doc. 278 at 25-26.

Thus, as of when she filed suit in 2022, Ms. Scott was denied a COR without the minimum requirements of due process, impairing her concrete interest in restoring her right to vote. Had

17

these procedures been in place, Ms. Scott could have received a written notice of decision on her COR request with a statement of reasons, sought review of that decision, and understood which LFOs the state believed she needed to pay or do to become eligible to regain her voting rights. Instead, her COR request was effectively denied, and she remained disenfranchised at the time she filed suit. This concrete injury was caused by Defendants' decision not to afford COR seekers requisite procedures and could be remedied by an order directing them to do so. Ms. Scott thus has standing to pursue her procedural due process claims in Counts 1 and 2 on behalf of the previously certified class.

*Equal Protection*: Ms. Scott also has standing to challenge Defendants' application of the COR statutes under the Equal Protection Clause. When she sought a COR in 2022, she was subject to a process that lacks procedural safeguards to prevent arbitrary and disparate treatment. *See* Pls. Stmt. of Undisputed Material Facts, Doc. 276 ¶¶ 110-18, 178-85. The court clerk's office in Dyer County where she resides and sought a COR marked that she still owed "court costs" simply because she had an outstanding balance of LFOs, but if she had made her request in Davidson County, for example, the agents in that county would have differentiated between different types of LFOs. *See* Burch Rep., Doc. 185-6 at 34. Defendants' failure to implement uniform procedures and standards in their implementation of the COR statutes thus subjected Ms. Scott to disparate and arbitrary treatment based on the county where she lives and attempted to request a COR, and thereby impaired her concrete, actual, and personal interest in voting rights restoration. The injury would be remedied by an order requiring Defendants to implement such procedures. She thus has standing seek such uniform procedures under the Equal Protection Clause.

*Mootness*: Since filing suit, Ms. Scott has worked to ensure that she is unquestionably eligible for rights restoration, even under Defendants' unlawful procedures. She did so by paying

18

off all LFOs outstanding on two of her felony convictions that were not fines, including obligations that she did not believe were valid "court costs" barring her from voting rights restoration. Doc. 291-12 ¶ 8. She filed a court petition for restoration of full rights of citizenship, which was granted. *Id.* ¶ 9. She then sought to get new COR forms filled out for the two cases on which she had just made payments, which required multiple trips to the TDOC community supervision and court clerk's offices. *Id.* ¶¶ 10-11. When she tried to submit those COR forms to the Dyer County Administrator of Elections (AOE), the AOE once again denied her voting rights restoration. *Id.* ¶ 12. She was told that her documentation would not be accepted if she did not also submit a new COR form for her third conviction, even though nothing had changed since 2022 as to her eligibility with respect to that conviction. *Id.* She returned to the community supervision office and court clerk's office to get the same information for that conviction transferred over to a new COR form and submitted all the new forms to the AOE on July 22, 2024. *Id.* ¶¶ 13-14.

Defendants, in their summary judgment reply brief, maintained that Ms. Scott was ineligible due to court costs. Doc. 287 at 7-8; 285 at 13. But in an about face, their most recent filing attaches a letter from the Election Division confirming that Ms. Scott's voting rights have been rightfully restored as August 28, 2024, and contends in a footnote that her class claims are now moot. Defs. Br., Doc. 294 at 5 n.2. Not so fast.

"A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Brunner*, 548 F.3d at 473 (internal quotation marks and citation omitted). The question is whether claims for injunctive and declaratory relief "are still redressable now." *Rice v. Vill. of Johnstown, Ohio*, 30 F.4th 584, 594 (6th Cir. 2022). In this case, Ms. Scott's interests remain live, and her claims are redressable. Her voting rights were restored not because Defendants afforded her due process but *despite* the fact that severe constitutional

deficiencies remain, as evidenced by her recent experience again navigating that process. *See* Doc. 291-12 ¶¶ 8-14. Furthermore, when due-process rights are violated, "even if [the plaintiff] did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process." *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (allowing nominal damages where due-process violation caused no actual damages given "the importance to organized society that procedural due process be observed").

Even if Ms. Scott's claims are moot, this does not moot the claims of unnamed putative class members because her class certification motion remains pending on remand. The Supreme Court has recognized that "[t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). Such claims can proceed under the "'inherently transitory' exception to normal mootness rules when the named plaintiff's claims become moot prior to class certification." *Wilson v. Gordon*, 822 F.3d 934, 944 (6th Cir. 2016); *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction"). There are two requirements for the exception to apply: "(1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury." *Wilson*, 822 F.3d at 945. In the first element, a claim is transitory such that would likely evade review not only when it is inherently fleeting but also when there is *uncertainty* about how long a claim will remain live. *Id.* at 945-46; *see Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017).

Both requirements of the "inherently transitory" exception are met here. First, a COR seeker's ability to restore their voting rights after they have been refused or denied under

20

Defendants' existing procedures depends on numerous contingencies—finding out or guessing correctly as to why their initial request was denied or refused, finding willing agent(s) to fill out and certify a COR form again, ensuring those agents all do so correctly, finding the time and resources to travel to multiple government offices multiple times, having the money to pay LFOs that these agents say are court costs or restitution but are not, resolving erroneously assessed child support obligations, among others. Because Plaintiffs cannot know when they may get their rights restored under Defendants' current procedures and thus how long their claims for procedural relief may remain live, their claims are sufficiently transitory. *See Wilson*, 822 F.3d at 945-46; *Unan*, 853 F.3d at 287. The second element is also plainly met by the presence of other named Plaintiffs with live claims and evidence that there are thousands of citizens who may reasonably believe they are eligible to restore their voting rights but will be forced to navigate Defendants' constitutionally deficient process to do so. *See* Burch. Rep., Doc. 185-6 at 8-9. Ms. Scott's due process and equal protection claims for which she seeks class certification are therefore not moot.

## F. Reginald Hendrix

As stated above, Mr. Hendrix's claims have been dismissed but his standing, too, would be assessed as of when he filed the First Amended Complaint on October 20, 2022. Defendants claimed, without evidence, that Mr. Hendrix was "restored and voting" by that time. Defs. Br., Doc. 294 at 5 n.2. While Defendants did at some point restore Mr. Hendrix's right to vote in time to cast a ballot in the 2022 general election, they never disclosed Mr. Hendrix's restoration letter to counsel or to Mr. Hendrix himself.[7] Until they do so, Plaintiffs cannot verify the exact date of

---

[7] Mr. Hendrix testified that he had not received the letter at Defendants' May 16, 2023, deposition. Ex. D at 59:3-7. Plaintiffs' counsel explained that Defendants are in possession of all restoration letters and that they had not yet provided a supplemental response that would include Mr. Hendrix's letter. *Id.* at 8-17. Defendants' counsel committed to "work on getting that." *Id.* at 18-21. On June 2, 2023, Plaintiffs notified Defendants that they had not produced voting rights

his restoration. Based on other records produced by the Election Division, Plaintiffs were able to determine that Defendants were still verifying Mr. Hendrix's child support status as of the afternoon of October 11. *See* Ex. E.  The motion for leave to file the amended complaint, which attached the amended complaint itself as an exhibit, was filed on October 2, 2022. That motion was granted on October 20, 2022, and the amended complaint was filed on the docket the same day. Because Defendants are in sole possession of the records that could resolve this question, Plaintiffs must concede that it is *possible* that Mr. Hendrix's letter of restoration could have been issued between October 11 and October 20, before the First Amended Complaint was officially filed on the docket. At any rate, this is a question the Court need not address, as there are other named Plaintiffs with standing and the Parties have stipulated to Mr. Hendrix's voluntary dismissal.

*    *    *

Defendants' zealous efforts during this litigation to interrogate Plaintiffs' satisfaction of the COR eligibility criteria and present evidence of supposed ineligibility to this Court have no bearing on Plaintiffs' standing to vindicate their procedural rights. If anything, those efforts demonstrate that Defendants are capable of providing COR seekers with notice of the state's eligibility determination. But rather than doing so only in response to due process litigation, the Constitution requires Defendants to afford such notice as a matter of course *during the COR process*, along with procedures to request a COR and receive one if eligible, or if deemed ineligible, to receive notice and an opportunity to be heard. As COR seekers who were denied

---

restoration approval letters since June 2022 and reminded them of their duty to supplement under Rule 26(e). On September 25, 2024, Plaintiffs reminded Defendants of this gap in production, and Defendants committed to providing these documents, but that production has not yet occurred.

CORs without these constitutionally mandated procedures, each Plaintiff had standing at the time

they filed suit to secure these procedures on behalf of themselves and the previously certified class.

## CONCLUSION

For the foregoing reasons, Individual Plaintiffs have standing and respectfully request that

the Court re-certify the class.

Dated: October 1, 2024

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

\* Admitted pro hac vice

Respectfully submitted,

/s/ *Blair Bowie*
Blair Bowie*
Danielle Lang*
Alice Huling*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Kathryn Huddleston*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org
VRichardson@campaignlegal.org
Amulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org
KHuddleston@campaignlegal.org

Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

23

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

ANDREW C. COULAM (BPR #030731)
Deputy Attorney General
Andrew.Coulam@ag.tn.gov

DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov

ZACHARY BARKER (BPR #035933)
Assistant Attorney General
Zachary.barker@ag.tn.gov

ROBERT W. WILSON (BPR # 034492)
Assistant Attorney General
Robert.Wilson@ag.tn.gov

Office of the Tennessee Attorney General
General Litigation Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

/s/ *Blair Bowie*
Blair Bowie