# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:20-cv-01039 |
| v. | ) ) ) | Judge Campbell Magistrate Judge Frensley |
| WILLIAM LEE, et al. | ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS FOR LACK OF STANDING

A Motion to Dismiss based on standing, even at this juncture, is appropriate. *Perma v. Health One Credit Union*, 983 F.3d 258, 274 (6th Cir. 2020). Article III of the Constitution requires the existence of a case-or-controversy at the outset of a case and throughout its life. The claims of Lamar Perry, Curtis Gray, Jr., John Weare, Benjamin Tournier, and the NAACP are due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). The individual Plaintiffs are not eligible to obtain a certificate of restoration and thus do not have standing to sue.[1] And the NAACP lacks organizational or representational standing.[2] Defendants raise this Motion to Dismiss at this time because the issue of standing goes to the heart of whether this court has subject matter jurisdiction.

---

[1] Frank Strada is the current Commissioner of Tennessee Department of Correction.

[2] The Sixth Circuit has already found that "Tennessee has shown that it will likely prevail on ther merits" of the standing question in the appeal of the NVRA claims.

It would be a waste of judicial resources to go through a 5-7 day trial only to find that these Plaintiffs did not have standing.

## STANDARD OF REVIEW

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs bear the burden of proving jurisdiction exists. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Sixth Circuit precedent holds that a Motion to Dismiss for lack of subject matter jurisdiction may be brought at any time. *Perma v. Health One Credit Union*, 983 F.3d 258, 274 (6th Cir. 2020). Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. According to Fed. R. Civ. P. 12(h)(3), "if the court determines at any time that it lack subject matter jurisdiction, the court must dismiss the action."

Rule 12(b)(1) motions can either challenge the sufficiency of the pleading, which is a facial attack, or can challenge the factual existence of subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). In the context of a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Here, Defendants raise a factual attack.

## ARGUMENT

A court should dismiss any claim over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom*

*Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies, and a series of "justiciability doctrines" enforce that limitation. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). "Perhaps the most important" of these doctrines is standing. *Id.*

Federal courts lack subject-matter jurisdiction if a claim does not present a case or controversy. *Tenn. Conf. of the NAACP v. Lee* ("*NAACP*"), 105 F.4th 888, 901 (6th Cir. 2024). To present a case or controversy, a plaintiff must establish all three elements of standing: (1) injury—that the plaintiff suffered an injury in fact, (2) traceability—that the injury is causally connected to a defendant's actions, and (3) redressability—that the injury is likely to be resolved by a favorable judicial decision. *Id.* at 902 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

When plaintiffs bring suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, they are not excused from the requirements of Article III. *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009). Standing goes to a court's subject matter jurisdiction, and it is a fundamental requirement. *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 292-94 (6th Cir. 2023); *Patton v. Fitzhugh*, No. 3:23-cv-00637, 2024 WL 3366333 at *4 (M.D. Tenn. 2024). A plaintiff must have standing at the outset of the litigation and must maintain standing throughout. *Fox*, 67 F.4th at 294; *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (holding that a plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter"). The facts at the time of the filing of the operative complaint are what govern, not later-in-time facts. *Id.* at 295.

Here, Plaintiffs lack standing to maintain their suit. At the time they filed the operative Complaint, Plaintiffs owed legal financial obligations and none had their full rights of citizenship

3

restored. Additionally, the NAACP lacks organizational standing because it has suffered no injury, and it cannot claim representational standing through an Individual Plaintiff whose claims are not moot.

## I. The Individual Plaintiffs Owe Financial Obligations.

Tennessee law provides that only "a person *eligible*" to "have the right of suffrage restored" "may request"—and "then shall be issued"—a Certificate of Restoration. Tenn. Code § 40-29-203(a) (emphasis added). Plainly, then, no legitimate claim of entitlement exists absent an affirmative eligibility determination because that is what triggers the obligation to issue the certificate. And to receive a Certificate of Restoration, the person must show that they have paid all court costs owed, paid all restitution owed, and be current in child support obligations. *See* Tenn. Code § 40-29-202(b). Here, however, at the time Plaintiffs filed the operative Complaint: Lamar Perry owed child support; Curtis Gray, Jr. owed court costs; John Weare failed to obtain documentation that court costs had been paid; and Benjamin Tournier owed restitution. (*See* Lamar Perry Deposition, ECF 151-11, pgs. 10, 45-46; Curtis Gray Deposition, ECF 151-13, pgs. 21, 24-25; John Weare Deposition, ECF 151-08, pgs. 40, 48; Benjamin Tournier Deposition, ECF 151-10, pg. 50.) Significantly, Plaintiffs did not deny these facts, i.e., that Lamar Perry owed child support at the time the operative Complaint was filed; (Plaintiffs' Statement of Material Facts, ECF 276, PageID# 6062-63); that Curtis Gray, Jr. owed court costs (*Id.* at PageID# 6064); that Benjamin Tournier owed legal financial obligations (*Id.* at PageID# 6068); and did not show that John Weare provided proof that he owed no court costs (*Id.* at PageID# 6069-70). These Plaintiffs were thus ineligible to receive certificates of restoration. They lack standing to sue and their claims should be dismissed.

## II. None of the Individual Plaintiffs Have Had Their Full Rights Of Citizenship Restored.

The Tennessee Supreme Court recently clarified the process that felons must go through to restore their voting rights. In *Falls v. Goins*, 673 S.W.3d 173 (Tenn. 2023), the Court interpreted two statutory provisions addressing the same subject matter: Tenn. Code § 40-29-202(b) (payment of legal financial obligations) and Tenn. Code Ann. § 2-19-143 (restoration of full citizenship rights). The Court held that the two statutes must be read in pari materia, and thus convicted felons must satisfy the requirements of both statutes in order to register to vote. *Falls*, 673 S.W.3d at 182-83. It is the felon's burden to provide evidence that he satisfied both provisions. *Id.* at 177.[3]

None of the Plaintiffs had their full rights of citizenship restored at the time they filed the operative Complaint. (See ECF 151-11 (Lamar Perry Deposition); ECF 151-13 (Curtis Gray Deposition); ECF 151-08 (John Weare Deposition); ECF 151-10) (Benjamin Tournier Deposition)).[4] They thus lack standing to sue on that basis as well.

## III. The NAACP lacks organizational standing.

For organizational standing, the NAACP has the burden of proving three elements as a matter of law—namely, "that it has suffered (or will suffer) a 'concrete and particularized' injury; that a 'causal connection' exists between the injury and the defendant's conduct; and that the requested remedy will redress the injury." *TN NAACP v. Lee*, 105 F.4th 888, 892 (6th Cir. 2024)

---

[3] It is true that the *Falls* decision came out after the First Amended Complaint. However, the *Falls* decision does not constitute a "fact;" the decision clarified existing law, and thus the law always applied. *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-313 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."); *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review…..").

[4] While John Weare had his citizenship rights restored with regard to one of his convictions, he has not had his citizenship rights restored for both of his convictions. (ECF 151-08 at 50.)

5

(per curiam) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016). That burden is "substantially more difficult" for the NAACP because it challenges government conduct that regulates "someone else" rather than the NAACP itself. *NAACP*, 105 F.4th at 902 (quotation omitted). The COR process "'neither require[s] nor forbid[s] any action' on [the] part" of the NAACP. *See id.* at 902 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Instead, the COR process applies to eligible individuals convicted of an infamous crime who seek to restore their right to vote. So, the NAACP needs "much more" than usual to show that the COR process actually causes the organization to suffer any cognizable injury. *Changizi v. Dep't of Health & Human Servs.*, 82 F.4th 492, 496 (6th Cir. 2024) (citation omitted). NAACP has not provided any "specific facts" demonstrating a cognizable injury. *See NAACP*, 105 F.4th at 905-06.

The NAACP's standing argument is contrary to the Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024). The Supreme Court found that public education costs were insufficient for standing because "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 394. The NAACP lacks standing because it has neither pled nor demonstrated any direct injury to itself from the challenged conduct. And Plaintiffs cannot use their last-minute declarations—information provided the same day that Plaintiffs' filed their response—to "supply evidence" for their attempt to defeat Defendants' motion for summary judgment. *See* Fed. R. Civ. P. 37(c)(1); *see also Taylor*, 624 F. App'x at 329 (citing Fed. R. Civ. P. 37(c)(1) and affirming the exclusion of witnesses whose identities were not "disclose[d] during discovery"); (Bowie Email, D.E. 285-1). At most, the NAACP's resource-diversion theory shows

that the NAACP voluntarily expended resources to generally assist and advise "others how to comport with" the COR process. (*Id.*); *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014). The NAACP cannot "manufacture its own standing" by voluntarily expending resources to counteract conduct that does not harm the organization itself. *All. for Hippocratic Med.*, 602 U.S. at 394; *see Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020) (per curiam); *Fair Elections*, 770 F.3d at 460–61. Indeed, with regard to another claim in this case, the Sixth Circuit has already found that Defendants are likely to succeed on their argument that the NAACP lacks standing under a diversion of resources theory. *See Tennessee Conf. of the NAACP v. Lee,* 105 F.4th 888, 901-07 (6th Cir. 2024).

## IV. The NAACP cannot establish representational standing.

To invoke representational standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, (1977)). Additionally, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009). Speculation that "it is certainly possible—perhaps even likely—that one individual will meet all of these criteria . . . does not suffice." *Id.* at 499. The NAACP identifies only one member whom it claims has standing in her own right, Leola Scott. But, Ms. Scott lacks standing and her claims are moot. (Mot. to Dismiss Leola Scott, D.E. 303, PageID# 8005-06.) Ms. Scott's voting rights were restored in August and she is a registered voter in Tennessee. (Goins Dec., D.E. 303-1, PageID# 8008-09.) Since Ms. Scott lacks standing and her claims are moot, the NAACP cannot meet the standards for representational standing.

7

## **CONCLUSION**

Based on the foregoing, the claims of all Plaintiffs are due to be dismissed.

> Respectfully submitted,
>
> JONATHAN SKRMETTI
> Attorney General and Reporter
>
> /s/ *Dawn Jordan*
> DAWN JORDAN, BPR # 20383
> Special Counsel
>
> ZACHARY L. BARKER
> Senior Assistant Attorney General
>
> DAVID RUDOLPH
> Senior Assistant Attorney General
>
> ROBERT WILSON
> Senior Assistant Attorney General
>
> Office of the Attorney General
> P.O. Box 20207
> Nashville, TN 37202-0207
> Zachary.Barker@ag.tn.gov
>
> *Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the above document has been forwarded electronically. Notice of this filing will be sent by the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

Blair Bowie
Danielle Lang
Alice C. Huling
Valencia Richardson
Aseem Mulji
Ellen Boettcher
Kate Uyeda
Kathryn Huddleston
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

Charles K. Grant
Denmark J. Grant
Baker, Donelson, Bearman
Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203

Phil Telfeyan
Natasha Baker
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004

Keeda Haynes
Free Hearts
2013 25th Ave. N.
Nashville, TN 37208

Date: October 23, 2024

*/s/ Dawn Jordan*
Special Counsel