IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al., <br><br> Defendants. | Civil No. 3:20-cv-01039 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY <br><br> [Putative Class Action] |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFF LEOLA SCOTT**

This Court should deny Defendants' Motion to Dismiss the claims of Plaintiff Leola Scott for the following reasons.

**INTRODUCTION**

Plaintiff Scott had standing to bring her procedural due process and equal protection claims when she first filed those claims in the First Amended Complaint on October 20, 2022. On August 28, 2024, Plaintiff Leola Scott's voting rights were restored after decades of disenfranchisement and over two years of attempting to restore her voting rights under Tennessee's constitutionally deficient process. While Plaintiff Scott is now able to vote in Tennessee, her claims are not moot, and even if they were, several exceptions to the mootness doctrine apply. As such, Plaintiff Scott's voting rights restoration does not affect TN NAACP's representational standing. Finally, under the One Plaintiff Rule, this Court need not address whether Plaintiff Scott has standing or whether

her claims are moot because other plaintiffs with standing have raised the same constitutional claims. Therefore, this Court should deny Defendants' motion to dismiss her claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* A facial attack questions the sufficiency of the allegations of subject matter jurisdiction asserted in the complaint. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).[1] A factual attack, on the other hand, raises a factual controversy about whether subject-matter jurisdiction exists. *Id.* When reviewing a factual attack, the district court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.*

The district court "has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990); *see Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."). The court "may consider affidavits, allow discovery, hear oral testimony, order an evidentiary hearing, or even postpone its determination if the question of jurisdiction is intertwined with the merits." *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988). No

---

[1] Defendants do not wage a facial attack on Plaintiff Scott's complaint, nor would that attack be successful. This Court has already ruled that similar facts alleged by other plaintiffs in this case were sufficient to demonstrate their standing as to the same claims. *See* Mem., Doc. 83 at 6-7. Plaintiff Scott's complaint, *see* Doc. 102, withstands facial attack under Rule 12(b)(1) for the same reasons.

matter how the court opts to resolve a jurisdictional question under Rule 12(b)(1), "it must do so in a manner that is fair to the non-moving party," and the non-moving party must "be afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986) (internal citation omitted).

## ARGUMENT

### I. Plaintiff Scott Had Standing When She Filed Suit.

Standing is assessed when a plaintiff first files her claims. *See, e.g.*, *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 525 (6th Cir. 2001). Plaintiff Scott had standing to bring her procedural due process and equal protection claims when she first filed them in the First Amended Complaint on October 20, 2022, as explained in Plaintiffs' recent supplemental brief on class certification, Doc. 300 at PageID#7939-41, and summary judgment opposition, Doc. 278 at PageID#6160-65, both of which are incorporated here by reference. Defendants contend that "Plaintiff Scott must maintain standing at all stages of the litigation." Doc. 304 at PageID#8016. But this argument conflates standing with mootness. *See Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021) ("Standing and mootness, albeit related, are distinct doctrines with separate tests to evaluate their existence at different times of the litigation."). As the Sixth Circuit has explained, "standing concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring at the time the complaint was filed,' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 525 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 184 (2000)).

### II. Plaintiff Scott's Claims on Behalf of the Proposed Class Are Not Moot.

"A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *League of Women Voters of Ohio v. Brunner*, 548 F.3d

3

463, 473 (6th Cir. 2008) (internal quotation marks and citation omitted). The question is whether claims for injunctive and declaratory relief "are still redressable now." *Rice v. Vill. of Johnstown, Ohio*, 30 F.4th 584, 594 (6th Cir. 2022). Here, the answer unequivocally is that they are.

As an initial matter, Plaintiff Scott continues to retain an interest in this matter, and her claims are redressable. A party's claims are not moot if she retains "a concrete interest, however small, in the outcome of the litigation." *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013). To date, Plaintiff Scott has not technically been issued a Certificate of Restoration ("COR") that can serve as proof that she is no longer disqualified from voting due to a felony conviction, a document to which she is entitled and in which she has a state-created liberty interest protected by due process. *See* Doc. 278 at PageID#6170-71; Tenn. Code Ann. §§ 40-29-203(a), (c).[2] She retains an interest in the declaratory relief and procedures she seeks as remedies, which would enable her to request and receive such a COR. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (allowing nominal damages "even if [the plaintiff] did not suffer any other actual injury, [because] the fact remains that they were deprived of their right to procedural due process."). This remains true even where Plaintiff Scott has otherwise been allowed to register to vote and the Election Division has recognized her voting rights as restored.

---

[2] Plaintiff Scott's liberty interest in receiving the requisite documentary proof under state law that she is no longer disqualified from voting due to her felony convictions is not trivial. *See* Tenn. Code Ann. §§ 40-29-203(a), (c). As the Court found in its decision granting Plaintiffs' summary judgment motion as to Count 6, the Election Division has a policy of rejecting voter registration applications from individuals who have restored their voting rights after a felony conviction unless they also submit unspecified documentary proof of restoration. *See* Doc. 221 at PageID#3654. The next time Plaintiff Scott moves or otherwise re-registers to vote, she will be subject to this policy. *See, e.g.*, Tipton-Boyd Decl., Doc. 291-31 at ¶¶ 6, 25-29.

### a. Plaintiff Scott's Claims Fall Under Exceptions to the Mootness Doctrine for Class Action Lawsuits.

Even if Plaintiff Scott's personal interest has expired (it has not), this does not moot the claims of unnamed putative class members because her class certification motion remains pending on remand. *See* Doc. 215 at PageID#3553; Doc. 273.

A Plaintiff can maintain a "personal stake" in litigation through her advocacy to obtain class certification. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) ("The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined . . . [by] continu[ing] vigorously to advocate his right to have a class certified[.]"). Here, too, Plaintiff Scott maintains a "personal stake" in this case through her vigorous advocacy to ensure that the class is re-certified. Plaintiff Scott has been part of this suit for two years, *see* Doc. 99; Doc. 99-1, answered Defendants' discovery requests, and sat for Defendants' deposition of her, Doc. 151-10, all to represent a class of Tennesseans seeking to restore their voting rights, just as she has been seeking to do over the past two plus years.

The Supreme Court has also recognized that "[t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). Such claims can proceed under the "'inherently transitory' exception to normal mootness rules when the named plaintiff's claims become moot prior to class certification." *Wilson v. Gordon*, 822 F.3d 934, 944 (6th Cir. 2016); *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction").

There are two requirements for this exception to apply: "(1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class

5

certification, and (2) that it is certain other class members are suffering the injury." *Wilson*, 822 F.3d at 945. In the first element, a claim is transitory such that would likely evade review not only when it is inherently fleeting but also when there is uncertainty about how long a claim will remain live. *Id.* at 945-46; *see Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017); *Gawry v. Countrywide Home Loans, Inc.,* 395 Fed. Appx. 152, 158–59 (6th Cir. 2010) ("the crux of the 'inherently transitory' exception is the uncertainty about the length of time a claim will remain alive").

Here, both requirements of the "inherently transitory" exception are met. First, it is uncertain how long a COR seeker's claims about the deficiencies in the COR process will remain live, such that their claims are inherently transitory. While Defendants assert that Plaintiff Scott's claims are not inherently transitory because the timing of her voting rights restoration was somehow in her control, Doc. 304 at PageID#8015-16, this is not so. A COR seeker's ability to restore her voting rights after she has been refused or denied under Defendants' existing procedures depends on numerous contingencies—finding out or guessing correctly as to why their initial request was denied or refused, finding willing agent(s) to fill out and certify a COR form again, ensuring those agents all do so correctly, finding the time and resources to travel to multiple government offices multiple times, having the money to pay legal financial obligations that agents erroneously say are court costs or restitution, and resolving improperly assessed child support obligations, among others. Plaintiff Scott, for example, was forced to spend the past two plus years trying to restore her voting rights, jumping through every new hoop Defendants placed in front of her. *See* Doc. 300 at PageID#7939-41; Scott Decl., Doc. 275-11 ¶¶ 5–14. That it would take two plus years to ultimately prevail in restoring her voting rights was not inevitable or predictable.

Indeed, the time it will take to jump through Tennessee's restoration hoops "cannot be ascertained at the outset." *Gerstein v. Pug*h, 420 U.S. 103, 111 n.11 (1975). Plaintiff Tournier, for

6

example, requested a COR form from his local TDOC office and then simply never heard from them again. Doc. 151-9 at PageID#1485:24-25, PageID#1501:1-11; Doc. 291-17 at PageID#6670; Doc. 300 at PageID#7935. And the fact that Defendants "can quickly process a delayed application soon after litigation begins," *Wilson*, 822 F.3d at 945, further supports the application of the "inherently transitory" exception here. *See* Doc. 300 at PageID#7924 n.2 (describing how the Elections Division denied COR forms in 2012 for a former named plaintiff in this case, Amanda Lee Martin, and then approved those previously-denied COR forms nearly eight years later—just 16 days after she filed suit). Additionally, Defendants have significantly changed the requirements for issuance of CORs and voting rights restoration over the last year. *See* Doc. 231 at PageID#3725-28; Doc. 276 ¶¶ 68-75. Goal posts in perpetual motion enshrine uncertainty as to timing and success of all restoration efforts.[3] Because Plaintiffs cannot know when they may get their rights restored under Defendants' shifting procedures and thus how long their claims for procedural relief upon denial may remain live, their claims are sufficiently transitory. *See Wilson*, 822 F.3d at 945–46; *Unan*, 853 F.3d at 287.

  The second element is also plainly met by the presence of other named Plaintiffs with live claims and evidence that there are thousands of citizens who may reasonably believe they are eligible to restore their voting rights but will be forced to navigate Defendants' constitutionally deficient process to do so. *See* Burch Rep., Doc. 185-6 at PageID#3029-30. Plaintiff Scott's due process and equal protection claims for which she seeks class certification are therefore not moot.

---

[3] *See* Doc. 276 ¶¶ 174-77.


### b. Plaintiff Scott's Claims Fall Under the Capable of Repetition Yet Evading Review Exception to the Mootness Doctrine

There is also an exception to the mootness doctrine when a claim is "capable of repetition yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). That exception requires that: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.*

The "same complaining party" component of the second prong of the *Weinstein* test is often relaxed in election cases, as well as other cases involving the public interest. *See, e.g.*, *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Lawrence v. Blackwell*, 430 F.3d 368, 371–72 (6th Cir. 2005) ("the second prong [] is somewhat relaxed in election cases."); 13C Charles A. Wright, et al., Federal Practice & Procedure 3533.8.3 (3d ed. 2008) ("The requirement that the plaintiff show a prospect of personal future involvement with challenged practices may be relaxed substantially with respect to matters of apparent public interest."). In these cases, rather than focusing on whether the individual plaintiff will be subject to the same unlawful action, courts focus on whether the issues presented are likely to recur. Thus, in election cases, a plaintiff's claims are not moot when, as here, "the issues properly presented [] will persist as the [] statutes are applied in future elections." *Storer*, 415 U.S. at 737 n.8. Indeed, numerous circuit courts of appeal, including the Sixth Circuit, have recognized the broad adoption of a relaxed "same complaining party" requirement in the election context. *See Lawrence v. Blackwell*, 430 F.3d 368, 371–72 (6th Cir. 2005); *see also Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1303 (11th Cir. 2018); *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 165 (5th Cir. 2009); *Merle v. United States*, 351 F.3d 92, 95 (3d Cir. 2003); *Majors v. Abell*, 317 F.3d 719, 723 (7th Cir. 2003); *Schaefer v. Townsend*, 215 F.3d

1031, 1033 (9th Cir. 2000); *Vote Choice, Inc. v. DiStefano*, 4 F.3d 26, 37 n.12 (1st Cir. 1993); *McLain v. Meier*, 637 F.2d 1159, 1162 n.5 (8th Cir. 1980).

Here, Plaintiff Scott's claims are not moot because "the issues properly presented, and their effects on [people with convictions], will persist as the [Tennessee COR procedures] are applied in future elections." *Storer*, 415 U.S. at 737 n.8. Indeed, in this case, the unconstitutional procedures challenged by Plaintiff Scott are not only likely, but certain to recur. In every election, tens of thousands of Tennesseans will be subject to the same due process and equal protection violations as Plaintiff Scott.[4]

### III. Plaintiff Scott's Restoration Does Not Affect TN NAACP's Representational Standing as to Counts 1-3.

Defendants have not moved to dismiss TN NAACP in this Motion, *see* Doc. 303, so Plaintiffs need not address the organization's standing in this response to a motion to dismiss a different plaintiff. Defendants have, however, moved to dismiss TN NAACP in a separate motion, *see* Doc. 309, so Plaintiffs will respond to that argument there.

### IV. Under the One Plaintiff Rule, this Court Need Not Address Defendants' Claims as to Plaintiff Scott's Standing and Mootness.

Under the "One Plaintiff Rule," this Court need not address Defendants' claims of lack of standing and mootness. It is well established that if one plaintiff's claims satisfy Article III's case or controversy requirement, federal courts need not address the individual standing (and in this case, also the mootness) of every plaintiff. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n. 2 (2006) (affirming that "the presence of one party with standing is

---

[4] The evidence shows that individuals are made to go through the COR process even though they were already eligible to vote. *See, e.g.*, Burch Rep., Doc. 185-6 at PageID#3053; Doc. 276 ¶ 174. Thus, although it is not necessary to meet the "capable of repetition yet evading review" exception in the election context, even Plaintiff Scott may again be subject to this policy if she moves or otherwise must re-register to vote. *See, e.g.*, Tipton-Boyd Decl., Doc. 291-31 at ¶¶ 6, 25-29.

9

sufficient to satisfy Article III's case-or-controversy requirement"); *Horne v. Flores*, 557 U.S. 433, 445 (2009) ("[T]he critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.") (internal quotations and emphasis omitted); *see also In re California Palms Addiction Recovery Campus, Inc.*, 87 F.4th 734, 739 n. 2 (6th Cir. 2023); *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019); *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015). The other Plaintiffs have raised the same constitutional claims as Plaintiff Scott, and as previously briefed, *see* Doc. 278 at PageID#6160-65; Doc. 300 at PageID#7925-45, they have standing and their claims remain live. As such, this Court need not address whether Plaintiff Scott has standing or whether her identical claims are moot.

## CONCLUSION

This Court should deny Defendants' Motion to Dismiss the claims of Plaintiff Leola Scott for the foregoing reasons.

Dated: October 29, 2024

Respectfully submitted,

/s/ Charles K. Grant
Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com
dgrant@bakerdonelson.com

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208

Blair Bowie*
Danielle Lang*
Alice Huling*
Kathryn Huddleston*
Valencia Richardson*
Aseem Mulji*
Ellen Boettcher*
Kate Uyeda, BPR No. 040531
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
bbowie@campaignlegal.org
dlang@campaignlegal.org
ahuling@campaignlegal.org
khuddleston@campaignlegal.org

10

Case 3:20-cv-01039    Document 317    Filed 10/29/24    Page 10 of 12 PageID #: 8092

(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

vrichardson@campaignlegal.org
amulji@campaignlegal.org
eboettcher@campaignlegal.org
kuyeda@campaignlegal.org

\* Admitted pro hac vice

*Counsel for the Plaintiffs*

11

Case 3:20-cv-01039   Document 317   Filed 10/29/24   Page 11 of 12 PageID #: 8093

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on October 29, 2024 by operation of the Court's electronic filing system on the following:

Zachary Barker
Dawn Jordan
Andrew C. Coulam
David M. Rudolph
Robert W. Wilson

Office of the Tennessee Attorney
General Public Interest Division
P.O. Box 20207
Nashville, TN 37202

/s/ Charles K. Grant
Charles K. Grant