IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CONFERENCE of the NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, on behalf of itself and its members, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, et al.,<br><br>        Defendants. | Civil No. 3:20-cv-01039<br><br>JUDGE RICHARDSON<br>MAGISTRATE JUDGE FRENSLEY<br><br>[Putative Class Action] |

## PLAINTIFFS' MOTION FOR TRIAL SETTING AND STATUS CONFERENCE; NOTICE OF PROCEDURAL HISTORY

Plaintiffs Tennessee Conference of the NAACP ("TN NAACP"), Lamar Perry, Curtis Gray, John Weare, Benjamin Tournier, and Leola Scott respectfully move the Court to set a new trial date and schedule a status conference to determine pre-trial deadlines and a briefing schedule for pending motions. Pursuant to L.R. 7.01(a)(1), Plaintiffs have conferred with Defendants, who oppose this motion.

In addition, due to this case's recent reassignment, Plaintiffs provide a brief procedural history to summarize the events that have shaped the issues now before the Court.

## MOTION FOR TRIAL SETTING AND STATUS CONFERENCE

Before reassignment, this case had been set for a December 2024 bench trial since February 2024. *See* Doc. 214. On September 27, the Court issued a trial setting order scheduling the trial to begin on December 10, a pretrial conference on December 3, and various pre-trial deadlines. Doc. 297. Plaintiffs readied the case for trial accordingly. On October 29, the Court held a status

1

conference at which Judge Campbell invoked Judicial Ethics Canon 3(D) and temporarily stayed all deadlines in the case. Docs. 319, 320. On November 19—just three weeks before trial was set to begin—Judge Campbell recused. Doc. 321. Upon reassignment, the Court cancelled the trial and pre-trial conference dates and all pre-trial motion deadlines due to pending motions and the reassignment. Doc 323.

Plaintiffs respectfully request that the Court set a new trial date and convene a status conference to discuss new pretrial deadlines and a briefing schedule for outstanding motions. After four years of litigation, two rounds of extensive discovery, and rulings on all summary judgment motions, this case is trial-ready. Only one of Plaintiffs' six claims (Count 6) is adjudicated and on appeal to the Sixth Circuit. Docs. 237, 242. As to the remaining claims, this Court denied Defendants' motion for summary judgment, citing extensive disputes of material fact, and granted Plaintiffs partial judgment on Count 4. *See* Docs. 222 (order as to Counts 4-6), 301 (order as to Counts 1-3). Plaintiffs thereafter made significant progress toward presenting these claims at trial before the end of the year, including preparation of exhibit lists, witnesses, deposition designations, and pre-trial stipulations. This matter's reassignment should not needlessly prolong the resolution of claims that the Court deemed ripe for adjudication and that are, as a practical matter, ready for trial. Any extended delay would further prejudice Plaintiffs' opportunity to secure relief in time for the next election should they prevail on the merits. The case should therefore proceed to trial at the next available opportunity.

Plaintiffs also ask that the Court convene a status conference to discuss pre-trial deadlines and to determine a briefing schedule for outstanding motions. Before reassignment, the Court temporarily stayed all deadlines in this case, including briefing deadlines on outstanding motions. Doc. 319. A status conference would provide the Court and litigants with an opportunity to discuss

where these outstanding motions stand and, if necessary, determine a schedule to finish briefing them. Motions outstanding include:

1. <u>Defendants' Motion to Dismiss Plaintiff Leola Scott, Docs. 303, 304</u>: This motion, filed on October 15, contends that Plaintiff Leola Scott's claims challenging Defendant' rights restoration process are moot following restoration of her voting rights in late August. Plaintiffs filed a response explaining that even if Ms. Scott has lost a personal stake in the outcome, her claims on behalf of the putative class remain live under various exceptions to the mootness doctrine. Doc. 317. Defendants filed a reply brief despite the Court's stay of all briefing deadlines. Doc. 324. Plaintiffs have filed a motion for leave to file a short sur-reply.

2. <u>Defendants' Motion to Dismiss Plaintiffs for Lack of Standing, Docs. 309, 310</u>: This motion, filed October 23, seeks to dismiss the remaining plaintiffs based on the same standing objections raised in Defendants' summary judgment motion, which this Court denied. *See* Docs. 151 at 14-21;[1] 287 at 3-8; 301. Before deadlines were universally stayed, Plaintiffs sought an extension to file their opposition to this motion in light of its proximity to Election Day. Doc. 316. Plaintiffs request a new response deadline.

3. <u>Defendants' Motion to Reconsider Court's Order Denying Summary Judgment, Doc. 311</u>: This motion, also filed October 23, raises the same standing arguments as Defendants' motion to dismiss. No response is permitted to a motion to reconsider unless the Court orders one. *See* LR 7.01(a)(3).

4. <u>Defendants' Motion to Modify the Scheduling Order and Continue the Trial Date, Docs. 313, 314</u>: This motion is moot because the Court has already canceled the December trial

---

[1] Pinpoint citations for docket entries in this motion refer to the document page numbers listed in the CM/ECF-generated footer.

date Defendants sought to continue. *See* Doc. 323. In a recent notice to the Court, Defendants claim that in a "supplement" to their motion they requested a continuance until after the Sixth Circuit rules on their appeal of Count 6. Doc. 322 at 2. But that "supplement" only contains a request to continue the trial date "by approximately two (2) months." Doc. 318 at 2. Defendants' "supplement," moreover, is not an appropriate vehicle to move for a stay of proceedings pending interlocutory appeal—if that is the relief Defendants seek, they must file the requisite motion. If Defendants' continuance motion is not denied as moot, Plaintiffs request a response deadline.

5. <u>Plaintiffs' Motion for Class Certification, Docs. 104, 105</u>: Plaintiffs' class certification motion was filed on November 1, 2022, and granted by this Court on April 13, 2023. Docs. 104-05, 122-23. Defendants filed a petition to appeal the decision to the Sixth Circuit, which on February 8, 2024, vacated the class certification order and remanded for reconsideration in light of changes Defendants made to the challenged procedures in July 2023. Doc. 215. On July 30, 2024, the Court directed the parties to submit supplemental briefs addressing whether the changes impact, if at all, the class certification analysis. Doc. 283. And on September 9, 2024, the Court ordered the parties to submit supplemental briefing identifying the operative complaint for purposes of determining each Plaintiffs' standing as to each claim on class certification. Doc. 295. Plaintiffs' motion for class certification is fully briefed and pending on remand.

None of these outstanding motions need preclude this case from proceeding to trial. Class certification can be resolved with the merits. And not one of Defendants' eleventh-hour motions to dismiss or reconsider based on standing raise meaningfully new standing questions. They instead repeat, often verbatim, the same arguments that have been briefed and presented to this Court several times over. *See, e.g.*, Doc. 151 at 15-16 (Defs.' Memo. iso Mot. Summ. J.); Doc. 287 at 4 (Defs.' Reply iso Mot. for Summ. J.); Doc. 284 at 2-6 (Defs.' Supp. Br. in Opp. to Class

4

Cert.) (stricken by Court as unresponsive); Doc. 294 at 3-5 (Defs.' 2d Supp. Br. in Opp. to Class Cert.); Doc. 299 at 5 (Defs.' Supp. Br. on Standing). The Court considered these same issues in evaluating Defendants' motion for summary judgment as to Counts 1-3 and denied that motion, finding that disputes of material fact "pervade the record" and that such legal questions should be decided with the benefit of an evidentiary record presented at trial. Doc. 301 at 3.

Indeed, the Court is well within its discretion to hold trial before resolving these repetitious motions. Courts have "considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990); *see Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."). They "may consider affidavits, allow discovery, hear oral testimony, order an evidentiary hearing, or even postpone its determination if the question of jurisdiction is intertwined with the merits." *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988). No matter how the Court opts to resolve the jurisdictional questions raised in these motions, "it must do so in a manner that is fair to the non-moving party," and the non-moving party must "be afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986) (internal citation omitted). A trial presents precisely this opportunity. These pending motions may be briefed alongside trial preparation, they should be resolved only after the Court has been afforded its fact-finding opportunity at trial.

## **NOTICE OF PROCEDURAL HISTORY**

Given reassignment, Plaintiffs also provide the Court with this procedural history to highlight key developments that affect the issues now before it and summarize how the case has

evolved. This history—which spans four years—only underscores the need to move this case to trial.

### A. Complaint, Motion to Dismiss, and First Amended Complaint

This case was filed on December 3, 2020. *See* Doc. 1. The Complaint challenged Defendants' administration of Tennessee's statutes granting restoration of voting rights to eligible citizens who lost the right to vote because of a felony conviction. Under these laws, an individual who meets certain criteria—completion of sentence and payment of court costs, restitution, and child support—has a statutory right to request and obtain from the state's incarcerating, pardoning or supervising authorities a Certificate of Voting Rights Restoration (COR) that proves that they are no longer disqualified from voting. *See* T.C.A. §§ 40-29-201 *et seq*. Plaintiffs alleged that Defendants' arbitrary and error-ridden administration of these laws deprives Plaintiffs of their right to request and receive a COR and regain their constitutional right to vote in violation of the Due Process Clause of the U.S. Constitution (Counts 1 & 2). Plaintiffs further alleged a violation of their right to uniform, non-arbitrary treatment under the Equal Protection Clause (Count 3). Counts 1-3 were brought by all Plaintiffs, including the TN NAACP and five individuals on behalf of the class of all COR applicants, against four state officials tasked with administering these voting rights restoration laws: the Governor, the Commissioner of the Tennessee Department of Corrections (TDOC), Secretary of State Tre Hargett, and Coordinator of Elections Mark Goins.

The Complaint also included two statutory claims brought solely by Plaintiff TN NAACP against Defendants Goins and Harget challenging their voter registration forms and procedures under the National Voter Registration Act (NVRA). Under Tennessee law, not all felony convictions result in the loss of the right to vote, and the effect of a felony conviction on the right to vote depends on the date and crime of conviction. *See Crutchfield v. Collins*, 607 S.W.2d 478,

480 (Tenn. Ct. App. 1980); *Gaskin v. Collins*, 661 S.W.2d 865, 868 (Tenn. 1983). Moreover, some people disqualified for a felony conviction can regain their right to vote. Plaintiff TN NAACP alleged that the instructions on the state's voter registration forms fail to provide voters who have prior convictions with sufficient information to determine their eligibility to vote in violation of the NVRA (Count 4). TN NAACP further alleged that Defendant Goins' and Hargett's policy and practice of rejecting all voter registration forms indicating a felony conviction absent additional documentation likewise violates various sections of the NVRA (Count 5) and unduly burdens the constitutional right to vote in violation (Count 6).[2]

On December 30, 2020, Defendants moved to dismiss the action on grounds that Plaintiffs lacked standing, that their constitutional claims were barred by sovereign immunity, and that they failed to state a claim. Docs. 24, 25-1. Discovery relating to the constitutional claims was stayed pending the Court's decision on that motion, Doc. 60, but Plaintiffs began conducting discovery relating to their statutory claims under the NVRA. On March 30, 2022, the Court denied Defendants' Motion to Dismiss as to all claims except for Count 5, which the Court dismissed without prejudice due to insufficient pre-suit notice under the NVRA. Docs. 83, 84. The Court rejected Defendants' various justiciability claims, finding TN NAACP and all Individual Plaintiffs had Article III standing to pursue their claims. Doc. 83 at 6-11.

On October 20, 2022, after providing requisite pre-suit notice on Count 5, Plaintiffs refiled that claim as the new Count 6 in the now operative First Amended Complaint. *See* Doc. 102. The First Amended Complaint carried over the remaining claims (except for Count 7, which settled). It also dropped one Individual Plaintiff (Ms. Amanda Lee Martin) and added two others (Ms. Leola

---

[2] The initial Complaint also included a poll tax claim against Rutherford County Circuit Court Clerk for charging COR applicants (Count 7), which was promptly settled and voluntarily dismissed. Doc. 61.

Scott and Mr. Reginal Hendrix).³ By way of summary, the First Amended Complaint alleges six claims in total:

- Counts 1 & 2: Challenge to Defendants' administration of voting rights restoration laws in violation of procedural due process on behalf of Plaintiff TN NAACP and Individual Plaintiffs as representatives of the putative class of all COR seekers,

- Count 3: Challenge to Defendants' administration of voting rights restoration laws in violation of equal protection on behalf of Plaintiff TN NAACP and Individual Plaintiffs as representatives of the putative class of all COR seekers,

- Count 4: Challenge to Tennessee's voter registration forms in violation of the NVRA on behalf of Plaintiff TN NAACP,

- Count 5: Challenge to Tennessee's voter registration policies and practices as imposing undue burden on the constitutional right to vote on behalf of Plaintiff TN NAACP,

- Count 6: Challenge to Tennessee voter registration policies and practices in violation of the NVRA on behalf of Plaintiff TN NAACP.

**B. Discovery and Post-Discovery Negotiations**

Following the Court's denial of Defendants' Motion to Dismiss, discovery opened on all claims, including Plaintiffs' constitutional claims in Counts 1-3, and was scheduled to close on April 3, 2023. Doc. 90 at 8. During this time, Plaintiffs worked diligently to build a factual record. They requested documents concerning Defendants' administration of voting rights restoration and voter registration, including data and information relating to the state's assessment of each of the statutory eligibility criteria for issuing CORs under T.C.A. §§ 40-29-202, 204. They commissioned two expert analyses of those procedures and deposed 18 fact witnesses, including Defendants' 30(b)(6) representatives and third-party officials involved in administering the rights restoration and voter registration process. For their part, Defendants delayed productions, retained no experts, and neglected to notice a single deposition before March 31, 2023, resulting in multiple modifications to the scheduling order, including two delays of the close of discovery. *See* Doc.

---

³ Mr. Hendrix has since voluntarily dismissed his claims. Docs. 298, 302.

120 at 2-3; *see also* Docs. 95, 110, 125, 128. Discovery ultimately closed on May 28, 2023. Docs. 125, 128.

Following the close of discovery, on June 12, 2023, the parties informed the Court that they had made "significant progress towards a [negotiated] resolution" of Counts 1-3 regarding the rights restoration process and that neither party anticipated filing motions for summary judgment on those claims. Doc. 139. Those discussions ended abruptly on July 18, 2023, at which time Defendants unilaterally withdrew their settlement offers and informed Plaintiffs for the first time that they intended to file a summary judgment motion not only on Counts 4-6 but also on Counts 1-3 regarding the COR process. *See* Doc. 172 at 3-4.

C. **Defendants' July 2023 Policy Changes**

On July 21, 2023, less than two weeks before the summary judgment deadline, Plaintiffs learned from a reporter that Defendant Goins had that day issued a memorandum to county election and various state officials significantly changing the state's procedures for individuals with felony convictions to request a COR, purportedly based on his reading of the Tennessee Supreme Court's June 29, 2023 decision in *Falls v. Goins*, 617 S.W.3d 173 (Tenn. June 29, 2023). Defendant Goins's memorandum also announced changes to the procedure for issuing CORs and to the COR form itself. *See* Doc. 151-5 (July 2023 COR Memo). Under the new procedures, Defendants refuse to issue CORs to otherwise eligible applicants unless they also provide proof that they "have been pardoned by a Governor, U.S. President, or other appropriate authority of a state or have had their full rights of citizenship restored as prescribed by law." *Id.* at 1. This new requirement is not among the statutory pre-requisites for COR issuance; instead, it is a new administrative requirement without basis in state law. *See* T.C.A. § 40-29-204; Pls. Resp. in Opp. to Defs.' Mot. for Summ.

J., Doc. 278 at 18-20 (explaining why Defendants' new requirement is not supported by Tennessee law).

The same day, Defendant Goins issued another memorandum outlining a new policy for processing voter registration applications from individuals with felony convictions on or before May 17, 1981. *See* 151-2 (July 2023 Memo on Older Felonies) (stating new policies were "to avoid rejecting" voter registration applications from individuals "who did not lose their voting rights").

### D. Summary Judgment Briefing and Additional 56(d) Discovery

On August 2, 2023, the parties filed their respective summary judgment motions. Defendants moved for summary judgment on all six claims based upon the recently issued memoranda that Plaintiffs had had no opportunity to probe in discovery. Doc. 151. In their brief, Defendants challenged Plaintiffs' standing and argued that the procedures in their July 2023 COR Memo negated Plaintiffs' right to due process and equal protection in seeking a COR as alleged in Counts 1-3. *Id.* at 7-14, 15, 17, 25, 30. They also contended that the July 2023 Memo on Older Felonies mooted Plaintiffs' claims challenging voter registration procedures in Counts 5 and 6. *Id.* at 36-37; *see also* Doc. 180 at 12-16. Plaintiffs filed cross-motions for summary judgment on their NVRA claims in Counts 4 and 6. Doc. 154.

On September 12, 2023, Plaintiffs filed a motion for relief under Rule 56(d) to reopen discovery and defer briefing on Defendants' summary judgment motion as to Counts 1-3, in order to give Plaintiffs an opportunity to probe the July 2023 memoranda. Docs. 171, 172. The Court granted that motion and reopened discovery until December 18, 2023, to allow discovery on Defendants' July 2023 procedures. Doc. 179. Briefing on Counts 4-6 proceeded as scheduled, and the summary judgment motions as to those claims were fully briefed by October 25, 2023. *See* Docs. 151, 154, 180, 182, 190, 192.

During the additional 56(d) discovery period, Plaintiffs made additional requests for production to the Election Division (the office overseen by Coordinator Goins), TDOC, and the Governor regarding the development and administration of the new procedures and issued dozens of subpoenas to county election administrators, court clerks, and the Governor's Executive Clemency Unit that handles pardon requests. Plaintiffs also conducted Rule 30(b)(6) depositions of the Tennessee Elections Division, TDOC, three county election offices, and the TDOC District office covering Davidson County, as well as individual depositions of Defendant Goins and Election Division staff members DJ Hall and Beth Henry-Robertson.

During depositions, the Election Division indicated that it was internally considering whether their new "requirement" that COR seekers obtain either a pardon or court-ordered "full" restoration of civil rights meant that applicants would also have to get their gun rights restored before they would be issued CORs. *See* Doc. 291-41 (Ex. 40 12/14/23 Goins Dep.) at 112:3-7; Doc. 291-35 (Ex. 34 12/5/23 Henry-Robertson Dep.) at 23:6-10. The Election Division also indicated that it was holding on granting or denying certain individuals' COR requests pending this decision. *See* Doc. 291-42 (Ex. 41 12/13/24 Hall Dep.) at 109:21-110:03, 84:04-100:09. On January 23, 2024, Plaintiffs learned—once again, after the close of discovery and from a reporter— that the Election Division had decided to require restoration of gun rights before any eligible Tennessean would be issued a COR.[4]

Following 56(d) discovery, the Court reinstated Defendants' summary judgment motion as to Counts 1-3 and ordered Plaintiffs to file their responses to that motion no later than August 1, 2024. Doc. 214. Plaintiffs continued to review the evidence and moved to re-depose Defendant

---

[4] *See* Jonathan Mattise, *Felons must get gun rights back if they want voting rights restored, Tennessee officials say*, Associated Press (Jan. 23, 2024), https://apnews.com/article/tennessee-felon-voting-rights-restoration-a50000a97f73c2767eaa8b9b1a2eee52.

Goins and his 30(b)(6) representative, Beth Henry-Robertson, in light of the additional changes to rights restoration procedures, which the Court granted. Doc. 240. Plaintiffs filed their opposition to Defendants' summary judgment motion on August 1, 2024. Doc. 278. Defendants filed their reply on August 15, 2024, at which time Defendants' motion for summary judgment as to Counts 1-3 was also fully briefed. Doc. 287.

### E. Summary Judgment Rulings

On April 18, 2024, the Court denied Defendant Goins' and Hargett's motion for summary judgment as to Counts 4-6. *See* Doc. 221. The Court granted Plaintiffs partial summary judgment on Count 4, ruling that certain misstatements and omissions on the state's voter registration forms violated the NVRA, but declined to rule on whether the forms described the voter eligibility criteria concerning felony convictions with adequate specificity. *Id.* at 44-45. The Court granted Plaintiffs summary judgment in full on Count 6, ruling that Defendants' policy of rejecting voter registration forms by eligible voters with felony convictions and demands for additional documentation violated the NVRA. *Id.* at 50-51. The Court also ruled that Defendants' July 2023 Memo on Older Felonies did not, as Defendants had argued, moot any of Plaintiffs' claims. *Id.* at 29-32. On June 6, 2024, the Court ordered a permanent injunction to enforce its ruling on Count 6. *See* Doc. 237. Defendants filed a notice of appeal, Doc. 242, and sought a stay of the injunction pending appeal, which the Sixth Circuit granted. *See* Docs. 248, 248-1.

On October 9, 2024, the Court denied Defendants' motion for summary judgment as to Counts 1-3 because they "ha[d] not shown the absence of genuine disputes over material facts." Doc. 301 at 3. The Court noted that material disputes "pervade" the "contested and fluid factual record" as to these claims, making the issues Defendants' raised on summary judgment, including standing, unsuitable for summary disposition. *See id.* at 1, 3.

### F. Class Certification

Class certification proceedings have advanced parallel to other pretrial activities. Individual Plaintiffs, who seek relief in Counts 1-3 on behalf of all similarly situated COR applicants, filed their motion for class certification on November 1, 2022. Docs. 104-05. On April 13, 2023, the district court granted the motion and certified the plaintiff class of Tennessee residents who have been disenfranchised because of a felony conviction and have requested or attempted to request a COR but to date have not received one sufficient to restore their voting rights. Doc. 122, 123.

Defendants petitioned to appeal class certification to the Sixth Circuit, which on February 8, 2024, vacated the district court's certification order and remanded for reconsideration in light of Defendants' changes to the COR process in July 2023. Doc. 215. The Sixth Circuit determined that "it would be premature" for it to "review the certification decision" because it was "unclear how the [July 2023] policies are being implemented and how, if at all, the new policies affect the class certification analysis." *Id.* at 3.

On July 30, 2024, the Court directed the parties to submit supplemental briefs addressing this question. Doc. 283. The parties filed their respective briefs on August 14, 2024. Plaintiffs' brief explained that the previously certified class remains appropriately defined and satisfies the requirements of Rule 23 notwithstanding Defendants' July 2023 changes. Doc. 283. Defendants' brief, however, was struck by the Court as off-topic and nonresponsive. Docs. 284, 288. Rather than correct the error, Defendants moved the Court to reconsider. Doc. 289. The Court denied that motion and ordered Defendants to try again, this time utilizing specific phrases to ensure that their brief would be responsive to the Court's inquiry. *See* Doc. 293 at 5-7. Defendants filed that brief on September 19, 2024.

On September 20, 2024, the Court ordered the parties to submit additional supplemental briefs on class certification identifying which complaint the parties believe is operative for purposes of determining each Individual Plaintiffs' standing as to each claim. Doc. 295. Those briefs were filed on October 1, 2024. Docs. 299, 300. Individual Plaintiffs' motion for class certification is pending.

### G. Trial Preparation, Additional Motions, and Reassignment

On September 27, the Court set trial to begin on December 10 and scheduled a pre-trial conference for December 3 and several pre-trial deadlines throughout November. Doc. 297. Plaintiffs set out to ready the case for trial according to the Court's schedule.

During this time, Defendants filed multiple duplicative motions. On October 15, Defendants filed a motion to dismiss Plaintiff Leola Scott. Docs. 303-04. On October 23, Defendants filed another motion to dismiss the remaining Plaintiffs for lack of standing, recycling the same arguments that had been presented to the Court in previous motions. Docs. 309-10. The same day, Defendants filed a motion to reconsider the Court's summary judgment decision on the same grounds. Doc. 311. And on October 25, Defendants filed a motion to continue the trial by two months because of their eleventh-hour motions and purported scheduling conflicts. Docs. 313-14.

On October 29, Judge Campbell held a status conference where he invoked Judicial Ethics Canon 3(D), citing possible grounds for recusal due to his personal relationship with an attorney who recently joined the Tennessee Department of Correction, and sought the parties' positions on whether he should recuse himself from the case. *See* Minute Entry for Proceedings. The same day, the Court stayed all pending deadlines in the matter. Doc. 320. On November 19, Judge Campbell

ultimately recused himself. Doc. 321. Upon reassignment, the Court cancelled the trial and pretrial conference and all pretrial motion deadlines. Doc. 323.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court set a new trial date and schedule a status conference to determine new pretrial deadlines and a briefing schedule on pending motions.

Dated: December 9, 2023

Keeda Haynes, BPR No. 031518
Free Hearts
2013 25th Ave. N,
Nashville, TN 37208
(615) 479-5530
keeda@freeheartsorg.com

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

\* Admitted pro hac vice

Respectfully submitted,

/s/ *Blair Bowie*
Blair Bowie\*
Danielle Lang\*
Alice Huling\*
Valencia Richardson\*
Aseem Mulji\*
Ellen Boettcher\*
Kate Uyeda, BPR No. 040531
Kathryn Huddleston\*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
Bbowie@campaignlegal.org
Dlang@campaignlegal.org
Ahuling@campaignlegal.org
VRichardson@campaignlegal.org
Amulji@campaignlegal.org
EBoettcher@campaignlegal.org
KUyeda@campaignlegal.org
KHuddleston@campaignlegal.org

Charles K. Grant, BPR No. 017081
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
cgrant@bakerdonelson.com

dgrant@bakerdonelson.com

*Counsel for the Plaintiffs*
dgrant@bakerdonelson.com

*Counsel for the Plaintiffs*

dgrant@bakerdonelson.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to counsel for parties below. Counsel for the parties may access these filings through the Court's electronic filing system:

DAWN JORDAN (BPR #020383)
Special Counsel
dawn.jordan@ag.tn.gov

ANDREW C. COULAM (BPR #030731)
Deputy Attorney General
Andrew.Coulam@ag.tn.gov

DAVID M. RUDOLPH (BPR #13402)
Senior Assistant Attorney General
david.rudolph@ag.tn.gov

ZACHARY BARKER (BPR #035933)
Assistant Attorney General
Zachary.barker@ag.tn.gov

ROBERT W. WILSON (BPR # 034492)
Assistant Attorney General
Robert.Wilson@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202

*Attorneys for State Defendants*

/s/ *Charles K. Grant*
Charles K. Grant